1   ROBERT H. PLATT (Bar No. CA 108533)
    rplatt@manatt.com
2   MARK S. LEE (Bar No. CA 094103)
    mlee@manatt.com
3   DONALD R. BROWN (Bar No. CA 156548)
    dbrown@manatt.com
4   MANATT, PHELPS & PHILLIPS, LLP
    11355 West Olympic Boulevard
5   Los Angeles, CA 90064-1614
    Telephone: (310) 312-4000
6   Facsimile: (310) 312-4224

FILED
CLERK, U.S. DISTRICT COURT
APR 3 0 2013
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

7   Attorneys for *Plaintiff*
    TICKETMASTER L.L.C.

8

9               UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11  TICKETMASTER L.L.C., a Virginia      Case No. CV13-3035 ABC (VBKx)
    limited liability company,
12                                        COMPLAINT FOR:
            Plaintiff,
13                                        (1)  BREACH OF CONTRACT;
        vs.                               (2-3) COPYRIGHT
14                                             INFRINGEMENT (17 U.S.C.
    JOSEPH SHALOM, MICHAEL                     § 101, *et seq.*);
15  SILVERMAN, MARCUS CLIETT,            (4-5) VIOLATION OF DIGITAL
    MAX SHALAM, RODNEY JORDAN,                MILLENNIUM COPYRIGHT
16  JERRY HIMER, MICHAEL                      ACT (17 U.S.C. § 1201, *et seq.*);
    FRATIANNI, EZRA AZIZO, JOSEPH       (6)  FRAUD;
17  HOGAN, SVETLANA MINGAEVA,           (7)  AIDING AND ABETTING
    BENG SWEET, JR., and DOES 1              FRAUD;
18  through 10, inclusive,               (8)  INDUCING BREACH OF
                                             CONTRACT; AND
19          Defendants.                  (9)  INTENTIONAL
                                             INTERFERENCE WITH
20                                            CONTRACT

21                                        Demand for Jury Trial

22

23

24          Plaintiff Ticketmaster L.L.C. ("Ticketmaster") alleges the following

25  against defendants Joseph Shalom, Michael Silverman, Marcus Cliett, Max Shalam,

26  Rodney Jordan, Jerry Himer, Michael Fratianni, Ezra Azizo, Joseph Hogan,

27  Svetlana Mingaeva, Beng Sweet, Jr., and Does 1-10 (collectively, "Defendants"):

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

307930656.6                                          COMPLAINT

1  ROBERT H. PLATT (Bar No. CA 108533)
   rplatt@manatt.com
2  MARK S. LEE (Bar No. CA 094103)
   mlee@manatt.com
3  DONALD R. BROWN (Bar No. CA 156548)
   dbrown@manatt.com
4  MANATT, PHELPS & PHILLIPS, LLP
   11355 West Olympic Boulevard
5  Los Angeles, CA 90064-1614
   Telephone: (310) 312-4000
6  Facsimile: (310) 312-4224

7  Attorneys for *Plaintiff*
   TICKETMASTER L.L.C.

8

9               UNITED STATES DISTRICT COURT

10        FOR THE CENTRAL DISTRICT OF CALIFORNIA

11 | TICKETMASTER L.L.C., a Virginia | Case No. CV
12 | limited liability company, |
   | | COMPLAINT FOR:
13 |         Plaintiff, |
   | | (1)   BREACH OF CONTRACT;
14 |     vs. | (2-3) COPYRIGHT
   | | INFRINGEMENT (17 U.S.C.
15 | JOSEPH SHALOM, MICHAEL | § 101, *et seq.*);
   | SILVERMAN, MARCUS CLIETT, | (4-5) VIOLATION OF DIGITAL
16 | MAX SHALAM, RODNEY JORDAN, | MILLENNIUM COPYRIGHT
   | JERRY HIMER, MICHAEL | ACT (17 U.S.C. § 1201, *et seq.*);
17 | FRATIANNI, EZRA AZIZO, JOSEPH | (6)   FRAUD;
   | HOGAN, SVETLANA MINGAEVA, | (7)   AIDING AND ABETTING
18 | BENG SWEET, JR., and DOES 1 | FRAUD;
   | through 10, inclusive, | (8)   INDUCING BREACH OF
19 | | CONTRACT; AND
   |         Defendants. | (9)   INTENTIONAL
20 | | INTERFERENCE WITH
   | | CONTRACT
21 | |
   | | Demand for Jury Trial
22

23

24        Plaintiff Ticketmaster L.L.C. ("Ticketmaster") alleges the following

25 against defendants Joseph Shalom, Michael Silverman, Marcus Cliett, Max Shalam,

26 Rodney Jordan, Jerry Himer, Michael Fratianni, Ezra Azizo, Joseph Hogan,

27 Svetlana Mingaeva, Beng Sweet, Jr., and Does 1-10 (collectively, "Defendants"):

28

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over the federal claims in this Complaint pursuant to 28 U.S.C. Sections 1331 and 1338(a), and has jurisdiction over the other claims in this Complaint under California law pursuant to 28 U.S.C. Section 1367(a).

2.      This Court also has subject matter jurisdiction over all of the claims in this Complaint pursuant to 28 U.S.C. Section 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000.

3.      Venue is proper in this Court pursuant to 28 U.S.C. Sections 1391(b) and 1400 in that a substantial part of the events giving rise to the claims occurred in this judicial district, and Ticketmaster's principal place of business is within this judicial district.   In addition, the Terms of Use that govern the relationship between the parties provide for venue in state or federal court in Los Angeles County for disputes relating to the granting of a conditional license for use of Ticketmaster's website, which is the subject of this lawsuit.

## SUMMARY

4.      Ticketmaster sells tickets for entertainment and sports events to the general public on behalf of its clients through a variety of means, including its website, ticketmaster.com.  To meet the demands of consumers and its own clients, Ticketmaster strives to provide an equitable ticket distribution system that affords all consumers a fair opportunity to acquire the best available tickets for events.  To that end, the Terms of Use for Ticketmaster's website prohibit the use of robots and other automated devices that give users of such devices an unfair advantage in searching for and buying tickets.  The website itself, in turn, employs a variety of security features, including a feature commonly known as CAPTCHA that is designed to detect automated devices and prevent them from accessing the website and purchasing tickets in violation of the Terms of Use.  Nonetheless, some users of

1  the website manage to evade those security features and use automated devices to

2  the detriment of Ticketmaster, its clients, and the general public.

3       5.    In that regard, Ticketmaster is informed and believes, and based

4  thereon alleges, that defendant Joseph Shalom ("Shalom"), substantially assisted by

5  defendants Michael Silverman, Marcus Cliett, Max Shalam, Rodney Jordan, Jerry

6  Himer, Michael Fratianni, Ezra Azizo, Joseph Hogan, Svetlana Mingaeva, Beng

7  Sweet, Jr., and Does 1-6 (collectively, the "Additional Purchasers"), has been using

8  automated devices to access and navigate through Ticketmaster's website and

9  improperly procure tickets for the purpose of reselling them at a profit through

10  third-party resale platforms and other means.  In doing so, Shalom and the

11  Additional Purchasers inundate Ticketmaster's website with page requests and

12  ticket reserve requests far in excess of amounts allowed under the Terms of Use—

13  for example, making 100,000 or even 200,000 ticket reserve requests in a single

14  day.  As part of this conspiracy to circumvent Ticketmaster's security measures

15  through the use of prohibited automated devices, Shalom and the Additional

16  Purchasers surreptitiously attempt to conceal their identities by using a variety of

17  account names, email addresses, physical addresses, Internet Protocol (IP)

18  addresses, and credit cards.

19       6.    Ticketmaster is also informed and believes, and based thereon

20  alleges, that Does 7-8 have assisted Shalom, the Additional Purchasers, and others

21  by creating, marketing and providing automated devices that are designed to

22  interact with Ticketmaster's website, and also by providing ongoing assistance in

23  the use of those devices to breach the website's Terms of Use.  Although

24  Ticketmaster continues to upgrade its security features, Does 7-8 continue to create

25  or employ new devices or methods designed to circumvent those newly designed

26  security features.

27       7.    In addition, Ticketmaster is informed and believes, and based

28  thereon alleges, that Does 9-10 have assisted Shalom and the Additional Purchasers

1    by purchasing the tickets that Shalom and the Additional Purchasers improperly

2    obtained from Ticketmaster while knowing or recklessly disregarding that those

3    tickets had been obtained in violation of Ticketmaster's rights.

4           8.      These deceptive and improper actions are harming Ticketmaster as

5    well as consumers who seek to lawfully purchase tickets through Ticketmaster's

6    website.  The use of automated devices, which can access and navigate a website

7    and complete tasks and transactions far more quickly than human users can,

8    deprives legitimate consumers of the opportunity to purchase tickets through

9    Ticketmaster, a problem that is compounded when, as here, users of these devices

10   purchase tickets in quantities far in excess of contractual per customer ticket limits.

11   The use of automated devices also circumvents Ticketmaster's technological copy

12   protection systems and results in the improper and unlicensed copying of pages

13   from the website.  In addition, the use of automated devices alters data on the

14   website and interferes with the website's operation, increases Ticketmaster's

15   operational costs, deprives Ticketmaster, its clients and its advertisers of various

16   revenue streams, and drives existing and potential customers away from

17   Ticketmaster by making it more difficult for them to obtain the tickets of their

18   choice through Ticketmaster.

19          9.      Ticketmaster therefore asserts claims against Defendants for breach

20   of contract, copyright infringement, violations of the federal Digital Millennium

21   Copyright Act, fraud, inducing breach of contract, and intentional interference with

22   contract.  As relief, Ticketmaster seeks an injunction, compensatory damages,

23   punitive damages, disgorgement of Defendants' ill-gotten gains, imposition of a

24   constructive trust, and recovery of attorneys' fees and costs incurred by

25   Ticketmaster to prosecute this lawsuit.

26                             **THE PARTIES**

27         10.    Plaintiff Ticketmaster L.L.C. is a Virginia limited liability

28   company with its principal place of business in Los Angeles, California.  The sole

1    member of Ticketmaster L.L.C. is Live Nation Entertainment, Inc., a Delaware

2    corporation with its principal place of business in Beverly Hills, California.

3          11.    Ticketmaster is informed and believes, and based thereon alleges,

4    that defendant Joseph Shalom is an individual who resides in New York.

5          12.    Ticketmaster is informed and believes, and based thereon alleges,

6    that defendant Michael Silverman is an individual who resides in New York.

7          13.    Ticketmaster is informed and believes, and based thereon alleges,

8    that defendant Marcus Cliett is an individual who resides in New York.

9          14.    Ticketmaster is informed and believes, and based thereon alleges,

10   that defendant Max Shalam is an individual who resides in New York.

11         15.    Ticketmaster is informed and believes, and based thereon alleges,

12   that defendant Rodney Jordan is an individual who resides in New York.

13         16.    Ticketmaster is informed and believes, and based thereon alleges,

14   that defendant Jerry Himer is an individual who resides in New York.

15         17.    Ticketmaster is informed and believes, and based thereon alleges,

16   that defendant Michael Fratianni is an individual who resides in New York.

17         18.    Ticketmaster is informed and believes, and based thereon alleges,

18   that defendant Ezra Azizo is an individual who resides in New York.

19         19.    Ticketmaster is informed and believes, and based thereon alleges,

20   that defendant Joseph Hogan is an individual who resides in New York.

21         20.    Ticketmaster is informed and believes, and based thereon alleges,

22   that defendant Svetlana Mingaeva is an individual who resides in New York.

23         21.    Ticketmaster is informed and believes, and based thereon alleges,

24   that defendant Beng Sweet, Jr. is an individual who resides in either New York or

25   Kentucky.

26         22.    The true names, residences and capacities, whether individual,

27   corporate or otherwise, of defendants Does 1 through 10 are unknown to

28   Ticketmaster, and Ticketmaster therefore sues those defendants under such

1    fictitious names.  Ticketmaster is informed and believes, and based thereon alleges,

2    that each Defendant was, and is, an agent and employee of the remaining

3    Defendants, and in doing the things alleged herein, was acting within the course and

4    scope of such agency and employment and with the knowledge, consent and

5    approval of the other Defendants.  Ticketmaster is informed and believes, and based

6    thereon alleges, that each Defendant is responsible in some manner for the acts

7    alleged herein and for the damages that Ticketmaster has sustained.  Ticketmaster

8    will further amend this Complaint to show the true names and capacities of Does 1-

9    10 when they are ascertained.[1]

10          23.     Ticketmaster is informed and believes, and based thereon alleges,

11   that at all times mentioned herein, each Defendant conspired with, acted in concert

12   and active participation with, and aided and abetted every other Defendant in

13   committing the wrongful acts alleged in this Complaint.  Ticketmaster is further

14   informed and believes, and based thereon alleges, that each of the Defendants

15   knew, or consciously avoided knowing, that the other Defendants were engaged or

16   intended to engage in conduct that violated Ticketmaster's rights and also violated

17   federal and California law.

18                              **FACTS**

19   **A.     Ticketmaster Attempts To Make Its Ticketing System As Fair And
             Equitable As Possible For Consumers.**

20

21          24.     Ticketmaster distributes tickets for live entertainment events to the

22   general public on behalf of its clients, who are venues, promoters, entertainers and

23   sports franchises.  Ticketmaster sells tickets via retail ticket outlets, telephone call

24   centers, and Ticketmaster's website, www.ticketmaster.com.  Ticketmaster spends

25   substantial time, energy and resources attempting to ensure that its website is

26

27   _____

[1]      Rule 19-1 of the Local Rules of the Central District of California imposes a
28   limit of ten Doe defendants.  Ticketmaster will seek leave to add defendants if the
     current number the number of Doe defendants turns out to be insufficient.

1   current, accurate, easy to understand, and easy to use for the benefit of its clients

2   and the public.

3       25.     Demand for tickets sold through Ticketmaster, including via

4   ticketmaster.com, often exceeds the supply of tickets available for purchase.

5   Because Ticketmaster may only sell tickets that its clients have released to

6   Ticketmaster for sale, Ticketmaster cannot expand or adjust the supply of tickets at

7   any given time to meet the demand.  Moreover, Ticketmaster's clients set the price

8   of the tickets sold through Ticketmaster, and they oftentimes set those prices below

9   market.  All of these factors can inspire intense competition among consumers and

10  others to purchase tickets to the same event when the tickets become available for

11  sale on ticketmaster.com.

12      26.     Recognizing this competitive reality, Ticketmaster has undertaken

13  various measures to make the ticket buying process as fair and equitable as possible

14  for consumers.   For example, Ticketmaster attempts to regulate the speed with

15  which users may copy the web pages necessary to search for, reserve, and purchase

16  tickets on ticketmaster.com.   At its clients' request, Ticketmaster also limits the

17  number of tickets that may be purchased in any single transaction.

18      27.     In addition, Ticketmaster has undertaken substantial measures

19  intended to prevent the use of computer programs or other automated devices—

20  sometimes called software robots or "bots"—which can give users of such devices

21  an unfair advantage over human consumers in the ticket purchasing process.  One

22  of those measures is a security computer program, commonly known as CAPTCHA

23  ("Completely Automated Public Turing test to tell Computers and Humans Apart"),

24  that is designed to distinguish between human users and automated devices.  When

25  a user submits a ticket request, a box appears on the screen with random characters

26  partially obscured behind hash marks, which the user is instructed to retype in order

27  to proceed with the ticket request.  Most automated devices cannot decipher and

28

1   retype the random characters, and thus cannot proceed past that screen to complete

2   a ticket transaction.

3   **B.   Use Of Ticketmaster's Website Is Conditioned on Contractual Terms Of**
    **Use.**

4

5       28.    Permission to view and use ticketmaster.com by any member of the

6   public is, and at all relevant times has been, conditioned on users' agreement to

7   Terms of Use that are set forth on the website.  (A copy of Ticketmaster's current

8   Terms of Use is attached hereto as Exhibit "A.")

9       29.    To ensure that users are aware of and consent to the website's

10  Terms of Use, the Ticketmaster website repeatedly and systematically alerts users

11  to the existence—and the content—of the Terms of Use.  For example, at all

12  relevant times, the home page for ticketmaster.com has stated that, by continuing

13  past the home page, users consent to the Terms of Use for the website.  The phrase

14  "Terms of Use" in that statement on the home page is, and has been, a readily

15  visible hypertext link to the Terms of Use themselves that, when clicked, causes the

16  full Terms of Use to appear on the user's screen.  The same message and related

17  hyperlink to Ticketmaster's Terms of Use appear on almost every webpage on the

18  website.  Thus, at all relevant times, users have been repeatedly reminded that use

19  of the site is governed by the Terms of Use, and that continuing to use the site with

20  that knowledge constitutes acceptance of those Terms of Use.

21      30.    Furthermore, to purchase tickets through ticketmaster.com, users

22  have always been required to set up an account with Ticketmaster, and in doing so,

23  users have been instructed to review the website's Terms of Use.  At all relevant

24  times, it has been necessary as part of the account set-up procedure for the user to

25  expressly consent to the Terms of Use by clicking a button labeled "Accept and

26  Continue."  (A copy of the current version of the webpage with the "Accept and

27  Continue" button as part of the account set-up procedure is attached hereto as

28  Exhibit "B.")

31.     In addition, to complete a ticket purchase, users must click a "Submit Order" button at the bottom of a Payment page.   The "Submit Order" button is located directly above a statement that says, "By continuing past this page, you agree to our Terms of Use," and embedded in this statement is a hyperlink that, when clicked, causes the Terms of Use to appear on the user's screen.   (A copy of the current version of the Payment webpage with the "Submit Order" button as part of the ticket purchase procedure is attached hereto as Exhibit "C.")

## C.     The Terms of Use Grant a Limited License to View the Website and Prohibit Abusive Use of the Site.

32.     Ticketmaster's website is a work of authorship protected by copyright law.  *See Ticketmaster L.L.C. v. RMG Tech., Inc.*, 507 F. Supp. 2d 1096 1104-11 (C.D. Cal. 2007).   Ticketmaster (or its predecessors) has registered versions of its website or portions thereof, with the Copyright Office.   These copyright registrations include the following:

| Title | Registration No. | Date of Registration |
|---|---|---|
| Ticketmaster.com: Online Order Search | TX-5-067-039 | May 30, 2000 |
| Ticketmaster.com: Order Information | TX-5-067-040 | May 30, 2000 |
| Ticketmaster.com Website Homepage, Event Ticket Order Pages | TXu-1-348-580 | May 22, 2007 |
| Event Ticket Order Validation Code | TXu-1-348-581 | May 22, 2007 |
| Event Ticket Order Limiting Code | TXu-1-348-582 | May 22, 2007 |
| Ticketmaster Interactive Seat Map Version 2012 | TX-7-628-432 | January 25, 2013 |

33.     As described above, users who wish to purchase tickets through ticketmaster.com must navigate through a series of pages on the website by clicking on designated hypertext links on those pages.   Viewing Ticketmaster's homepage

and clicking on the hyperlinks to reach the various other pages that must be viewed to purchase tickets from the website causes copies of each of those pages to be created and to appear on a user's computer.

34. The current version of the Terms of Use (Ex. A hereto) includes a section called Ownership of Content and Grant of Conditional License. That section states in part as follows:

> We grant you a limited, conditional, no-cost, non-exclusive, non-transferable, non-sub-licensable license to view this Site and its Content to purchase tickets as permitted by these Terms for non-commercial purposes only if, as a condition precedent, you agree that you will not:
>
> - Use any robot, spider, offline reader, site search/retrieval application or other manual or automatic device, tool, or process to retrieve, index, data mine or in any way reproduce or circumvent the navigational structure or presentation of the Site or its contents, including with respect to any CAPTCHA displayed on the Site. . . .;
> - Use any automated software or computer system to search for, reserve, buy or otherwise obtain tickets, *tm* ticket cash™, promotional codes, vouchers, gift cards or any other items available on the Site, including sending information from your computer to another computer where such software or system is active;
> - Take any action that imposes or may impose (in our sole discretion) an unreasonable or disproportionately large load on our infrastructure;
> - Access, reload or refresh transactional event or ticketing pages, or make any other request to transactional servers, more than once during any three-second interval;
> - Request more than 1,000 pages of the Site in any 24-hour period, whether alone or with a group of individuals;
> - Make more than 800 reserve requests on the Site in any 24-hour period, whether alone or with a group of individuals;
> - Reproduce, modify, display, publicly perform, distribute or create derivative works of the Site or the Content;
> - Use the Site or the Content in an attempt to, or in conjunction with, any device, program or service designed to circumvent any technological measure that effectively controls access to, or the rights in, the Site and/or Content in any way including, without limitation, by manual or automatic device or process, for any purpose.

35.     That section of the Terms of Use further states as follows:

> This license is expressly conditioned on your preexisting agreement to comply with, and your actual compliance with, each of the provisions described in this Ownership of Content and Grant of Conditional License section. This license exists only so long as you strictly comply with each of the provisions described in this section. Any use of the Site or Content by you or anyone acting on your behalf that does not strictly comply with each and every provision in this section exceeds the scope of the license granted to you herein, constitutes unauthorized reproduction, display, or creation of unauthorized derivative versions of the Site and Content, and infringes our copyrights and other rights in the Site and Content. You will not acquire any ownership rights by using the Site or the Content.

36.     Thus, any use of the website that violates any of the various prohibitions in the Terms of Use—for example, using robots, spiders and other automated devices to improperly navigate the website and request, reserve and purchase tickets, making any other attempts to circumvent technological measures intended to protect the website, and making excessive page and reserve requests— exceeds the scope of the user's limited copyright license.  Although the Terms of Use have been revised from time to time, for at least the past ten years every version of the Terms of Use has contained substantially similar prohibitions on the use of automated devices and other abusive use of the website.

37.     The Terms of Use also limit the number of tickets that a user may purchase for an event.  At all relevant times, the Terms of Use have contained a hyperlink to, and have expressly incorporated, Ticketmaster's Purchase Policy.  The hyperlink to Ticketmaster's Purchase Policy is easily visible and readily accessible in the first paragraph of the Terms of Use.  Clicking on the "Purchase Policy" hyperlink causes the full Purchase Policy to appear on the user's screen.

38.     The current version of the Purchase Policy states as follows:

> **Number of Tickets per Customer, or Ticket Limits.** When purchasing tickets on our Site, you are limited to a specified number of tickets for each event (also known as a "ticket limit").  This limit is posted during the purchase

process and is verified with every transaction. This policy is in effect to discourage unfair ticket buying practices.

39.     Previous versions of the Purchase Policy have contained a substantially similar provision.

40.     In sum, at all relevant times, the Terms of Use, including the Purchase Policy, have prohibited users from, among other things, using bots and other automated devices to access and navigate the site and conduct transactions, abusing the Ticketmaster system with excessive requests for web pages, including reserve requests, and purchasing tickets in excess of the per customer ticket limit.

**D.     Defendants Have Been Systematically Misusing And Abusing Ticketmaster's Website.**

41.     Based on information that Ticketmaster has recently discovered, compiled, and analyzed, Ticketmaster is informed and believes, and based thereon alleges, that for at least the past two years, Shalom, with the assistance of others, has been using automated devices to navigate through ticketmaster.com and to purchase large quantities of tickets. Ticketmaster is also informed and believes, and on that basis alleges, that as early as 2006, Shalom actively sought—and apparently acquired—technology that would increase the speed of his internet connection for the express and admitted purpose of running software to purchase tickets. In addition, in an effort to unload some of the tickets that he had wrongfully acquired, Shalom has attempted (unsuccessfully) to bribe a Ticketmaster employee to cancel ticket orders in violation of Ticketmaster policy.

42.     Based on this same investigation, Ticketmaster is informed and believes, and based thereon alleges, that a substantial number of ticket purchases involving Shalom and the use of automated devices have been made in the name of the Additional Purchasers (as defined in Paragraph 5 above). For example, a substantial volume of ticket purchases that implicate the use of automated devices has been made through accounts in the name of the Additional Purchasers that are

1   linked to Shalom's home address and to email addresses with the domain name
2   thegossip.net—a domain name that is registered to Shalom.  It is unclear at this
3   point whether the Additional Purchasers (i) have used automated devices to make
4   purchases themselves, or (ii) have knowingly allowed Shalom and others to use
5   their identities, credit and debit cards, and Ticketmaster accounts to make such
6   purchases, but they are liable in either event.

7          43.    While the tactics used by Shalom, with the assistance of the
8   Additional Purchasers and others, have evolved over time, Ticketmaster is informed
9   and believes, and based thereon alleges, that Shalom's most recent tactic is to use
10  prohibited automated devices to circumvent the Ticketmaster website's CAPTCHA
11  and then, through the simultaneous use of multiple IP addresses, to launch
12  thousands of recurring reserve requests for tickets for specific events.  When a
13  reserve request is made, the Ticketmaster system will temporarily set aside tickets
14  matching the request to give the user time to complete the purchase of the tickets.
15  In the normal course, tickets that are temporarily set aside on reserve are released
16  from reserve and become available to other users if the purchase is not completed
17  within a certain time.  However, Shalom, by using automated devices to regenerate
18  reserve requests at a speed that legitimate consumers honoring the Terms of Use
19  cannot match, simply grabs the same—or similar—tickets again and thus continues
20  to place large quantities of tickets on temporary reserve while deciding which
21  tickets, and how many, to purchase.  When deployed during an onsale for a popular
22  event, this practice of making rapid, excessive, and repeated reserve requests
23  creates an artificial shortage of tickets available to satisfy reserve requests by
24  legitimate consumers.

25         44.    Ticketmaster's records show that, from January 1 through February
26  22, 2013, Shalom, with assistance from some, if not all, of the Additional
27  Defendants, made at least 10,000 reserve requests on Ticketmaster's website per
28

1   day.  On most days, the number of reserve requests was close to, or more than,

2   100,000, and on some days the number exceeded 200,000.

3          45.     Abusive reserve requests are only one example of the defendants'

4   misconduct.  Ticketmaster has also discovered evidence that, for the past few years,

5   Shalom, with the assistance of the Additional Defendants, has been using

6   automated devices and engaging in subterfuge through the use of multiple IP

7   addresses, credit and debit cards, and email addresses, and throughout that time has

8   repeatedly and systematically requested and copied more than 1000 pages of the

9   website in applicable 24-hour periods, made more than 800 reserve requests in

10  applicable 24-hour periods, and accessed, reloaded or refreshed transactional events

11  or ticketing pages and made other requests to transactional servers more than once

12  during applicable 3-second intervals, all of which exceeds the scope of the license

13  granted by Ticketmaster's Terms of Use.

14         46.     Ticketmaster is informed and believes, and based thereon alleges,

15  that many of these purchases involved ticket quantities in excess of stated per

16  customer ticket limits, and that most if not all of these wrongfully acquired tickets

17  were purchased for the commercial purpose of reselling them for a profit through

18  various means, including, for example, through StubHub.com and other ticket

19  resale sites.

20         47.     Throughout the course of their misconduct, Shalom and the

21  Additional Purchasers had ample opportunity to review Ticketmaster's Terms of

22  Use, and they repeatedly assented to those terms, expressly and impliedly.

23  Ticketmaster is informed and believes, and based thereon alleges, that these

24  defendants not only expressly assented to the Terms of Use when creating various

25  online accounts, but that they regularly visited, or oversaw other persons in visiting,

26  the website, and during each visit they have been reminded of the Terms of Use and

27  have been invited to review them.  They also expressly reaffirmed their assent to

28  the Terms of Use when completing purchases of tickets.

48.     The misconduct of Shalom and the Additional Purchasers has been facilitated by Does 7-8. Ticketmaster is informed and believes, and based thereon alleges, that for at least the past two years, Defendants Does 7-8 have been developing, marketing and selling software applications that enable users like Shalom to employ automated devices to unlawfully and improperly access Ticketmaster's website and quickly purchase large quantities of tickets in violation of the website's Terms of Use. These automated devices are designed to, and do, circumvent CAPTCHA and other security measures on Ticketmaster's website.

49.     Ticketmaster is informed and believes, and based thereon alleges, that Does 7-8 visited ticketmaster.com with the commercial purpose of developing their computer programs, and that they repeatedly visited the Ticketmaster homepage and ticket purchase pages and thus were repeatedly reminded of the governing Terms of Use each time they viewed a ticketmaster.com webpage. Ticketmaster is also informed and believes, and based thereon alleges, that Does 7-8 purchased tickets on ticketmaster.com when testing their computer programs, and thus clicked on the "Accept and Continue" button on the ticket purchase page with each purchase. Each and every viewing of the ticketmaster.com homepage and purchase page caused a copy of both pages to be created on their computers.

50.     The misconduct of Shalom and the Additional Purchasers has been further facilitated by Does 9-10, who have purchased tickets from Shalom and the Additional Purchasers knowing or recklessly disregarding that Shalom and the Additional Purchasers had acquired the tickets in violation of Ticketmaster's rights. In that regard, Ticketmaster is informed and believes, and based thereon alleges, that Defendants Does 9-10 have themselves visited Ticketmaster's website and purchased tickets on the site and, thus, have had ample opportunity to review Ticketmaster's Terms of Use and have assented to those terms, expressly as well as impliedly. Ticketmaster is also informed and believes, and based thereon alleges, that Does 9-10 know or have recklessly disregarded that Shalom and the Additional

1    Purchasers violate provisions in the Ticketmaster website's Terms of Use to obtain

2    the tickets that they turn around and sell to Does 9-10—who in turn resell the same

3    tickets to consumers for a profit—yet Does 9-10 nonetheless induce and actively

4    encourage Shalom and the Additional Purchasers to obtain tickets in a way that

5    violates Ticketmaster's rights.

6        51.    Throughout this course of misconduct, Shalom and the Additional

7    Defendants have attempted to evade Ticketmaster's efforts to prevent the use of

8    prohibited devices.  Although most automated devices cannot decipher and retype

9    the random characters generated by the CAPTCHA security program utilized on

10   ticketmaster.com, and thus cannot proceed past that screen to complete a ticket

11   transaction, some automated devices are designed to circumvent CAPTCHA, and

12   Ticketmaster is informed and believes, and based thereon alleges, that Shalom and

13   the Additional Purchasers have been using (or substantially assisting in the use of)

14   such devices for at least the past year.

15       52.    The Ticketmaster system sometimes can detect the presence of an

16   automated device, and when that occurs, the system generates a message to the user

17   explaining that the use of automated devices is prohibited.  Ticketmaster is

18   informed and believes, and based thereon alleges, that its system has generated such

19   messages in response to automated devices used by Shalom and the Additional

20   Purchasers.  However, those defendants have ignored these messages and instead

21   have continued to use automated devices to navigate through the Ticketmaster

22   website and wrongfully acquire tickets.

23       53.    The Ticketmaster system also can temporarily disable an automated

24   device when such a device is detected.  Ticketmaster is informed and believes, and

25   based thereon alleges, that its system has from time to time temporarily disabled

26   automated devices used by Shalom and the Additional Purchasers.  However,

27   Ticketmaster is informed and believes, and based thereon alleges, that in each such

28   instance, those defendants simply deployed a new automated device from a

1  different application server and/or IP address and continued with their unauthorized

2  use of the Ticketmaster system.

3      54.    Ticketmaster diligently tries to identify users of prohibited

4  automated devices, but some users of these devices go to great lengths to deceive

5  Ticketmaster.  Ticketmaster is informed and believes, and based thereon alleges,

6  that Shalom and the Additional Purchasers have used many different names, credit

7  cards and email addresses to purchase tickets from Ticketmaster.  In addition,

8  Ticketmaster is informed and believes, and based thereon alleges, that these same

9  defendants have systematically removed data from the computers they use to access

10  ticketmaster.com, such as by cleaning out the "cookies" on the computers, in a

11  further attempt to elude identification by Ticketmaster as repeat visitors to the site.

12      55.    Thus, it was not until recently that Ticketmaster was able to

13  assemble the information necessary to link Shalom and the Additional Purchasers

14  with all of these ticket purchases and the related use of prohibited automated

15  devices.

16

## E.   **Defendants' Misuse And Abuse Has Harmed Ticketmaster's Website And Operations.**

18      56.    Ticketmaster has been harmed, and continues to be harmed, by the

19  use of automated devices by Shalom, the Additional Defendants, Does 7-8, and

20  others.  To meet the demands of consumers and its own clients, Ticketmaster must

21  provide an equitable ticket distribution system that affords all consumers a fair

22  opportunity to acquire the best available tickets for events.  The use of automated

23  devices undermines this effort, because automated devices can navigate through

24  Ticketmaster's website and reserve and purchase tickets at a speed that legitimate

25  consumers cannot match.  As a result, the inventory of tickets available to

26  consumers who do not use such devices is substantially diminished, which has led

27  some consumers to question Ticketmaster's ability to ensure a level playing field for

28  the purchase of tickets.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

57.     This harm is compounded by the fact that the use of automated devices inundates the Ticketmaster system with thousands of requests for tickets, and each request causes tickets to be temporarily placed on reserve, even if they are not ultimately purchased. While a ticket is on reserve, it is unavailable to any other user of the site. Not only does this further diminish the inventory of tickets for legitimate consumers, but it impedes Ticketmaster's ability to provide an important service to its clients. Clients use the Ticketmaster system to monitor ticket sales activity to make a variety of decisions, including whether to open more seats for sale to the public or to move the seats to other distribution channels. The artificially high volume of seats revolving in and out of reserve status due to the use of automated devices makes it difficult for Ticketmaster's clients to gauge how well tickets for an event are actually selling, which in turn interferes with the clients' ability to make the ongoing decisions that are based on sales activity. In addition, Ticketmaster is informed and believes, and based thereon alleges, that Shalom and the Additional Purchasers improperly extend the duration of reserve requests, which exacerbates the problems described above.

58.     In addition, users of automated devices deprive Ticketmaster of revenue and revenue opportunities. For example, Ticketmaster's website is part of a carefully crafted business model that integrates other services and features into the ticket purchasing process. The website is designed so that users will follow certain steps and will be directed to view certain predetermined pages in the process of requesting and purchasing tickets. Based on this expected flow of traffic, Ticketmaster, its clients, and others who place advertisements on Ticketmaster's website offer services and other opportunities on particular pages, ranging from event parking to signing up for client newsletters, all of which present an opportunity for immediate or future revenue. However, automated devices, which do not use traditional browsers, bypass the HTML code for these features, with the result that users of those devices may never even view these offers. These same

1   offenders further exacerbate the problem by purchasing enormous quantities of

2   tickets, which diminishes the ticket inventory for legitimate consumers and reduces

3   the number of legitimate consumers who will reach the pages that provide these up-

4   sell opportunities.

5       59.    Furthermore, by accessing the Ticketmaster system at targeted

6   points, automated devices alter the security features of the website itself. Normally,

7   users receive automatic and temporary permission—in effect, a token—to make

8   requests on the system. That token is automatically revoked if the pace of requests

9   exceeds a certain limit. However, by systematically deleting cookies on the user's

10   system, automated devices enable the user to constantly assume a new identity and

11   acquire new tokens even though that same user is far exceeding the stated request

12   limit.

13       60.    All of these problems involve, in one way or another, unauthorized

14   reproduction and alteration of the Ticketmaster system, as well as deletion,

15   destruction and alteration of data on the system.

16       61.    Equally important, the use of automated devices diverts resources

17   from the service of legitimate consumers. Ticketmaster must incorporate

18   extraordinary actions to enhance the website infrastructure to enable it to support all

19   of the activity on its website, including all of the artificial and inflated activity

20   generated by the automated devices, and otherwise ensure the ongoing integrity of

21   the website in the face of this onslaught of devices. The use of these prohibited

22   devices also significantly increases the costs of, among other things, data storage,

23   computer processing, troubleshooting and system maintenance.

24

25   **FIRST CLAIM FOR RELIEF**
   **Breach Of Contract**

26   **(Against Shalom, the Additional Purchasers (as defined in ¶ 5), and Does 7-8)**

27       62.    Ticketmaster alleges and incorporates by reference all of the

28   preceding paragraphs.

63.     At all relevant times, the home page and most other pages on ticketmaster.com have informed users that their use of the website is subject to express terms and conditions set forth in the Terms of Use, and that by continuing past the page in question, the user expressly and/or impliedly agrees to be bound by those terms.  Users have a reasonable opportunity to review the Terms of Use upon first entering the website, and they also have a reasonable opportunity to review the Terms of Use during their use of the site.  The link to the Terms of Use is displayed in such a manner as to provide consumers with clear notice of their existence.

64.     Ticketmaster is informed and believes, and based thereon alleges, that Shalom and the Additional Purchasers, acting for themselves and for each other, expressly assented to the Terms of Use when setting up accounts on ticketmaster.com and submitting requests to purchase tickets.  Ticketmaster is also informed and believes, and based thereon alleges, that Does 7-8 expressly assented to the Terms of Use when creating accounts on ticketmaster.com and submitting ticket requests.

65.     The Terms of Use prohibit, among other things, the use of bots and other automated devices, abusive use of the website, and exceeding per-customer ticket limits.  These Terms of Use are fair and reasonable.

66.     Ticketmaster has performed all conditions, covenants and promises required to be performed by it in accordance with the Terms of Use.

67.     Based on information that Ticketmaster has recently discovered and compiled, Ticketmaster is informed and believes, and based thereon alleges, that for at least the past year, Shalom, by use of technology manufactured or otherwise provided by Does 7-8 (themselves also bound by the Terms of Use), has repeatedly and systematically breached the Terms of Use by using bots and other automated devices to access the website and buy tickets, and by buying tickets in quantities that exceed per customer ticket limits.

68.     Ticketmaster is further informed and believes, and based thereon alleges, that the Additional Purchasers (all of whom are bound by the Terms of Use) have breached the Terms of Use either by allowing Shalom and others to use their identities, credit and debit cards, and Ticketmaster accounts to purchase tickets by the use of automated devices and in quantities that exceed per customer ticket limits, or by using automated devices themselves to the same end.

69.     Ticketmaster is informed and believes, and based thereon alleges, that as part of this misuse of Ticketmaster's website, Shalom, along with the Additional Purchasers and Does 7-8 (directly or in concert with Shalom), repeatedly and systematically requested more than 1000 pages of the website in applicable 24-hour periods, made more than 800 reserve requests in applicable 24-hour periods, and accessed, reloaded or refreshed transactional events or ticketing pages and made other requests to transactional servers more than once during applicable 3-second intervals.

70.     It can be impracticable and extremely difficult to ascertain the damages from abusive use of Ticketmaster's website.  Therefore, Ticketmaster has made a reasonable attempt at a formula for calculating the damages caused by abusive use of its website.  The current version of the Terms of Use includes the following liquidated damages provision that includes this formula:

> You agree that your abusive use of the Site may cause damage and harm to us, including impaired goodwill, lost sales and increased expenses. You also agree that monetary damages for your abusive use of the Site are difficult to determine and that if you, or others acting with you, request more than 1,000 pages of the Site or make more than 800 reserve requests on the Site in any 24-hour period, you, and those acting with you, will be jointly and severally liable for liquidated damages in the amount of twenty-five cents ($0.25) for each page request or reserve request made during that 24-hour period which exceeds those limits.

71.    Previous versions of the Terms of Use included a substantially identical liquidated damages provision. For example, the immediately prior version stated as follows:

> You agree that Abusive Use of the Site, as defined above, causes damage and harm to Ticketmaster in the form of, among other things, impaired goodwill, lost sales, and increased expenses associated with responding to Abusive Use of the Site. You further agree that monetary damages for Abusive Use of the Site are difficult to ascertain and that proof of monetary damages for Abusive Use would be costly and inconvenient to calculate. Accordingly you agree that liquidated damages are warranted for Abusive Use. Therefore, you agree that if you, or others acting in concert with you, alone or collectively request more than 1000 pages of the Site in any twenty-four hour period, you, and those acting in concert with you, will be jointly and severally liable for liquidated damages in the amount of twenty-five cents ($0.25) per page request each time that a page request is made after that first 1000 during that twenty-four hour period. You also agree that this will be the measure of damages for any abusive use that occurred prior to this provision of these Terms being in effect.

72.    Ticketmaster is entitled to liquidated damages in accordance with the foregoing provisions, in an amount to proven at trial when the full extent of these defendants' page requests and reserve requests is ascertained, but which, based on the volume of excess page requests and reserve requests made by these defendants, is far in excess of $75,000. In addition, Ticketmaster is entitled to compensatory damages, in an amount to be proven at trial, as an alternative to liquidated damages, should the liquidated damages provision be unenforceable for any reason.

73.    The Terms of Use also provide that Ticketmaster is entitled to injunctive relief to enjoin violations of the Terms of Use. The current version of the Terms of Use provides in part as follows: "You agree that monetary damages may not provide us a sufficient remedy and that we may pursue injunctive or other relief for your violation of these Terms." Previous versions of the Terms of Use have contained a substantially similar, if not identical, provision.

74.     The conduct of Shalom, the Additional Purchasers, and Does 7-8 has significantly and irreparably damaged Ticketmaster and will continue to do so unless restrained by this Court.  Thus, in addition to liquidated damages and other damages for abusive use of its website, Ticketmaster is entitled to the preliminary and permanent injunctive relief prayed for in this Complaint.

## SECOND CLAIM FOR RELIEF
### Copyright Infringement, 17 U.S.C. § 101 *et seq.*
### (Against Shalom and the Additional Purchasers (as defined in ¶ 5))

75.     Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

76.     Ticketmaster owns valid U.S. Copyright registrations in its website and specific portions thereof.

77.     In using bots, programs, or other automatic devices on the ticketmaster.com website to acquire tickets for the commercial purpose of reselling them, Shalom has acted in excess of the terms of the license agreement created by Ticketmaster's Terms of Use, and thereby copied or caused to be copied without authorization pages from the ticketmaster.com site and other original elements of Ticketmaster's copyrighted website.

78.     Ticketmaster is informed and believes, and on that basis alleges, that the Additional Purchasers have induced and materially contributed to the infringing activities of Shalom and others, knowing of and directly benefiting from that infringing activity.

79.     As a proximate result of this direct, contributory, and vicarious copyright infringement, and the inducement of others to infringe Ticketmaster's copyrights by copying pages from ticketmaster.com in excess of its Terms of Use, Ticketmaster has suffered and is suffering significant damage in an amount not presently known with certainty, but which will be proven at trial.   Further,

1   Ticketmaster is suffering irreparable harm because of these defendants' infringing

2   activity.

3          80.   Ticketmaster is entitled to the range of relief provided by 17 U.S.C.

4   §§ 502-505, including injunctive relief, an order for the impounding and destruction

5   of all copies of all bots, programs, or other automatic devices used by these

6   defendants to violate Ticketmaster's rights, compensatory damages in an amount to

7   be determined, statutory damages, and its costs and attorneys' fees.

8

9                               **THIRD CLAIM FOR RELIEF**
                       **Copyright Infringement, 17 U.S.C. § 101** *et seq.*
10                               **(Against Does 7-8)**

11         81.   Ticketmaster alleges and incorporates by reference all of the

12  preceding paragraphs.

13         82.   Ticketmaster owns valid U.S. Copyright registrations in its website

14  and specific portions thereof.

15         83.   In creating, causing the use of, and using bots, programs, or other

16  automatic devices on the ticketmaster.com website to acquire tickets for the

17  commercial purpose of reselling them, Does 7-8 acted in excess of the terms of the

18  license agreement created by Ticketmaster's Terms of Use, and copied, caused to

19  be copied, and induced the copying without authorization of pages from the

20  ticketmaster.com site and other original elements of Ticketmaster's copyrighted

21  website. Ticketmaster is informed and believes, and on that basis alleges, that these

22  defendants had the right and ability to supervise the infringing activities of their

23  customers, and induced and materially contributed to the infringing activities of

24  their customers while knowing of and directly benefiting from that infringing

25  activity.

26         84.   As a proximate result of this direct, contributory and vicarious

27  copyright infringement by Does 7-8 and their inducement of others to infringe

28  Ticketmaster's copyrights by copying pages from ticketmaster.com in excess of its

1   Terms of Use, Ticketmaster suffered and is suffering significant damage in an

2   amount not presently known with certainty, but which will be proven at trial.

3   Further, Ticketmaster is suffering irreparable harm because of these defendants'

4   infringing activity.

5       85.     Ticketmaster is entitled to the range of relief provided by 17 U.S.C.

6   §§ 502-505, including injunctive relief, an order for the impounding and destruction

7   of all copies of all bots, programs, or other automatic devices used by these

8   defendants to violate Ticketmaster's rights, compensatory damages in an amount to

9   be determined, statutory damages, and its costs and attorneys' fees.

10

11              **FOURTH CLAIM FOR RELIEF**

12   **Violation Of Digital Millennium Copyright Act, 17 U.S.C. § 1201** *et seq.*
    **(Against Shalom and the Additional Purchasers (as defined in ¶ 5))**

13      86.     Ticketmaster alleges and incorporates by reference all of the

14   preceding paragraphs.

15      87.     Ticketmaster is informed and believes, and based thereon alleges,

16   that Shalom is using bots, programs, or other technology, products, services,

17   devices, components, or parts thereof, that are primarily designed and produced to

18   circumvent the technological measures by which Ticketmaster effectively controls

19   access to its copyrighted website, and that the Additional Purchasers are either

20   using the same devices or are actively participating in Shalom's use of those

21   devices.

22      88.     Ticketmaster is informed and believes, and based thereon alleges,

23   that these bots, programs, or other technical devices have no commercially

24   significant purpose or use other than to circumvent the technological measures that

25   Ticketmaster uses to control access to its website, and that these defendants are

26   using those devices with knowledge of that improper purpose.

27

28

89.     Ticketmaster has suffered and is suffering significant damages in an amount not presently known with certainty, but which will be proven at trial, as a proximate result of these defendants' above-referenced misconduct.

90.     Ticketmaster is entitled to the range of relief provided by 17 U.S.C. §§ 1201-1203, including injunctive relief, compensatory or statutory damages, and its costs and attorneys' fees in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### Violation Of Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*
(Against Does 7-8)

91.     Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

92.     Ticketmaster is informed and believes, and based thereon alleges, that Does 7-8 are manufacturing, importing, trafficking in and using bots, programs, or other technology, products, services, devices, components, or parts thereof, that are primarily and intentionally designed and produced to circumvent the technological measures by which Ticketmaster effectively controls access to its copyrighted website.

93.     Ticketmaster is informed and believes, and based thereon alleges, that these bots, programs, or other technical devices have no commercially significant purpose or use other than to circumvent the technological measures that Ticketmaster uses to control access to its website, and that these defendants are creating, marketing, trafficking in and using those devices with knowledge that they are being used for that purpose.

94.     Ticketmaster has suffered significant damages in an amount not presently known with certainty, but which will be proven at trial, as a proximate result of these defendants' actions as described herein.

95.     Ticketmaster is entitled to the range of relief provided by 17 U.S.C. Sections 1201-1203, including injunctive relief, compensatory or statutory damages, and its costs and attorneys' fees in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### Fraud
**(Against Shalom, the Additional Purchasers (as defined in ¶ 5), and Does 7-8)**

96.     Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

97.     Defendants Shalom, the Additional Purchasers, and Does 7-8 have repeatedly accessed Ticketmaster's website, and in proceeding to use the website, represented to Ticketmaster that they would comply with the Terms of Use, and thus that they would not, among other things, use bots or other automated devices, abuse the website, or exceed per-customer ticket limits.

98.     Ticketmaster is informed and believes, and based thereon alleges, that these defendants, acting for themselves and for each other, clicked the "Accept and Continue" button on Ticketmaster's website when setting up online accounts and when completing ticket purchases, thereby representing to Ticketmaster that they would comply with the Terms of Use for the website, and thus that they would not, among other things, use bots or other automated devices, abuse the website, or exceed per-customer ticket limits.

99.     Each and every such representation was false. Ticketmaster is informed and believes, and based thereon alleges, that every time these defendants accessed and used the website, and every time they clicked the Accept and Continue button, they intended to, and did, violate the Terms of Use as described above and that each such instance by these defendants was also done on behalf of each other.

100.    Moreover, Ticketmaster is informed and believes, and based thereon alleges, that every time each of these defendants accessed and used

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Ticketmaster's website, they concealed from Ticketmaster their true intent to

2    violate the Terms of Use.

3         101.   Ticketmaster is informed and believes, and based thereon alleges,

4    that in an attempt to disguise the fact of so many purchases originating from the

5    same source, these defendants misrepresented their identities when interacting with

6    the Ticketmaster website and making many of the ticket purchases at issue.

7         102.   Ticketmaster relied on each such representation and omission by

8    providing the information and services available on the website to all of these

9    defendants, including the sale to these defendants of substantial quantities of

10   tickets.

11        103.   Ticketmaster's reliance was reasonable.  These defendants received

12   ample notice of the Terms of Use every time they accessed and used the website,

13   and it has been necessary for them to click the Accept and Continue button both

14   when setting up online accounts and when completing a ticket purchase.

15        104.   As a result of these defendants' fraudulent representations and

16   omissions, Ticketmaster sold them tickets that Ticketmaster otherwise could have

17   sold to legitimate users of the site but was unable to due to defendants' misconduct.

18        105.   Moreover, Does 7-8, through their fraudulent representations and

19   omissions, obtained information about the workings and architecture of

20   Ticketmaster's website to assist in their design of prohibited automated devices.

21   They also used Ticketmaster's website to test their devices, which in turn have been

22   used by others to defraud Ticketmaster.

23        106.   As a proximate result of this fraudulent misconduct, Ticketmaster

24   has been damaged in an amount to be proved at trial.

25        107.   Ticketmaster is informed and believes that the conduct of Shalom,

26   the Additional Purchasers, and Does 7-8 was undertaken with the intent to injure

27   Ticketmaster, or with a willful and conscious disregard of Ticketmaster's rights,

28   and constitutes clear and convincing evidence of oppression, fraud and malice

1    under California Civil Code § 3294.  As a result, Ticketmaster is entitled to an

2    award of punitive damages against these defendants in an amount sufficient to deter

3    them from future misconduct.

4

5                                **SEVENTH CLAIM FOR RELIEF**
                                   Aiding and Abetting Fraud

6       **(Against the Additional Purchasers (as defined in ¶ 5) and Does 7-8)**

7           108.    Ticketmaster alleges and incorporates by reference all of the

8    preceding paragraphs.

9           109.    Insofar as the Additional Purchasers did not use bots and automated

10   devices to access Ticketmaster's website but instead lent their accounts, identities,

11   and/or credit and debit cards to Shalom and others with actual knowledge that

12   Shalom and others would use them to help carry out their own fraudulent conduct

13   toward Ticketmaster, the Additional Purchasers aided and abetted this fraud by

14   Shalom and others.

15          110.    Does 7-8, in turn, aided and abetted all of the fraudulent

16   misconduct alleged above, in that they had actual knowledge that their customers

17   were acquiring their products and services for the purpose of defrauding

18   Ticketmaster, and they provided substantial assistance to those customers,

19   including Shalom, for this purpose by providing their products and services and

20   counseling their customers how to exploit the Ticketmaster system.

21          111.    Thus, the Additional Purchasers and Does 7-8 are liable for all of

22   the damages and harm that Ticketmaster has incurred by reason of the fraudulent

23   misconduct of Shalom and others.

24          112.    Ticketmaster is informed and believes that the conduct of the

25   Additional Purchasers and Does 7-8 was undertaken with the intent to injure

26   Ticketmaster, or with a willful and conscious disregard of Ticketmaster's rights,

27   and constitutes clear and convincing evidence of oppression, fraud and malice

28   under California Civil Code § 3294.  As a result, Ticketmaster is entitled to an

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

307930656.6                                    29                              COMPLAINT

1   award of punitive damages against these defendants in an amount sufficient to deter

2   them from future misconduct.

3

4   **EIGHTH CLAIM FOR RELIEF**
    **Inducing Breach of Contract**

5   **(Against Does 7-10)**

6   113.   Ticketmaster alleges and incorporates by reference all of the

7   preceding paragraphs.

8   114.   At all relevant times, the home page and most other pages on

9   ticketmaster.com have informed users that their use of the website is subject to

10  express terms and conditions set forth in the Terms of Use, and that by continuing

11  past the page in question, they expressly and/or impliedly agree to be bound by

12  those terms.  Users have a reasonable opportunity to review the Terms of Use upon

13  first entering the website, and they also have a reasonable opportunity to review the

14  Terms of Use during their use of the site.  The link to the Terms of Use is displayed

15  in such a manner as to provide consumers with notice of their existence.

16  115.   Ticketmaster is informed and believes, and based thereon alleges,

17  that Does 7-10 expressly assented to the Terms of Use when setting up accounts on

18  ticketmaster.com and when submitting a request to purchase tickets.  Thus,

19  Ticketmaster is informed and believes that Does 7-10 have repeatedly provided

20  their express assent to the Terms of Use.

21  116.   The Terms of Use prohibit, *inter alia*, the use of bots and other

22  automated devices, abusive use of the website, and exceeding per-customer ticket

23  limits.  These Terms of Use are fair and reasonable.

24  117.   Ticketmaster has performed all conditions, covenants and promises

25  required to be performed by it in accordance with the Terms of Use.

26  118.   Shalom and the Additional Purchasers have repeatedly and

27  systematically breached the Terms of Use by using, individually or collectively,

28  bots and other automated devices to access the website and buy tickets, and by

1   buying tickets in quantities that exceed per customer ticket limits.  Ticketmaster is
2   informed and believes that, as part of this misuse of Ticketmaster's website,
3   Shalom and the Additional Purchasers repeatedly and systematically requested
4   more than 1000 pages of Ticketmaster's website in applicable 24-hour periods,
5   made more than 800 reserve requests in applicable 24-hour periods, and accessed,
6   reloaded or refreshed transactional events or ticketing pages and made other
7   requests to transactional servers more than once during applicable 3-second
8   intervals.

9       119.   Does 7-8 knew of the Terms of Use and that those Terms of Use
10  constitute an agreement between Ticketmaster and customers of Does 7-8,
11  including Shalom and the Additional Purchasers.  Moreover, Does 7-8 intended to
12  cause their customers, including Shalom and the Additional Purchasers, to breach
13  those agreements, or acted in reckless disregard of whether they were causing those
14  customers to breach their agreements with Ticketmaster.

15      120.   The conduct of Does 7-8 caused their customers, including Shalom
16  and the Additional Purchasers, to breach their contracts with Ticketmaster.  In fact,
17  the automated devices provided by Does 7-8 were the means by which Shalom and
18  the Additional Purchasers did in fact breach their contracts with Ticketmaster.

19      121.   Does 9-10 also knew of the Terms of Use and that those Terms of
20  Use constitute an agreement between Ticketmaster and Shalom and the Additional
21  Purchasers.  Does 9-10 intended to cause Shalom and the Additional Purchasers to
22  breach those agreements by offering to purchase tickets from Shalom and the
23  Additional Purchasers while knowing or recklessly disregarding that Shalom and
24  the Additional Purchasers would procure those tickets from Ticketmaster in a
25  manner that would violate the Terms of Use.

26      122.   The conduct of Does 9-10 caused Shalom and the Additional
27  Purchasers to breach their contracts with Ticketmaster.

28

123.    Ticketmaster has been harmed as a result, and the conduct of Does 7-10 was a substantial factor in causing such harm.  The Terms of Use contain a liquidated damages provision described in detail above.

124.    Ticketmaster is entitled to liquidated damages from Does 7-10 in accordance with that provision, in an amount to proven at trial when the full extent of the requests for pages on Ticketmaster's website by Shalom and the Additional Purchasers is ascertained.  In addition, Ticketmaster is entitled to compensatory damages, in an amount to be proven at trial, for breaches of the Terms of Use should the liquidated damages provision be unenforceable for any reason.

125.    Ticketmaster is informed and believes that the conduct of Does 7-10 was undertaken with the intent to injure Ticketmaster, or with a willful and conscious disregard of Ticketmaster's rights, and constitutes clear and convincing evidence of oppression, fraud and malice under California Civil Code Section 3294. As a result, Ticketmaster is entitled to an award of punitive damages against each of Does 7-10 in an amount sufficient to deter them from future misconduct.

## NINTH CLAIM FOR RELIEF
### Intentional Interference with Contractual Relations
#### (Against Does 7-10)

126.    Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

127.    As alleged above, Shalom and the Additional Purchasers were bound by the Terms of Use on Ticketmaster's website and at all relevant times Does 7-10 were aware that Shalom and the Additional Purchasers were bound by the Terms of Use.  Moreover, at all relevant times, Does 7-10 were aware of the content of the Terms of Use.

128.    The Terms of Use prohibit, *inter alia*, the use of bots and other automated devices, abusive use of the website, and exceeding per-customer ticket limits.  These Terms of Use are fair and reasonable.

129.   Ticketmaster has performed all conditions, covenants and promises required to be performed by it in accordance with the Terms of Use.

130.   By marketing and selling automated devices to circumvent Ticketmaster's security devices and providing tools and assistance to their customers to enable them to inundate Ticketmaster's website with requests and excess ticket purchases, Does 7-8 intended to disrupt the performance of the contracts between Ticketmaster and Shalom and the Additional Purchasers, or acted in reckless disregard of whether they would disrupt the performance of those contracts.

131.   By offering to purchase tickets from Shalom and the Additional Purchasers that Does 9-10 knew Shalom and the Additional Purchasers would procure from Ticketmaster in a manner that would violate the Terms of Use, Does 9-10 intended to disrupt the performance of the contracts between Ticketmaster and Shalom and the Additional Purchasers, or acted in reckless disregard of whether they would disrupt the performance of those contracts.

132.   Shalom and the Additional Purchasers have repeatedly and systematically breached the Terms of Use by using, or cooperating in the use of, bots and other automated devices to access the website and buy tickets, and by purchasing tickets in quantities that exceed per customer ticket limits.  Ticketmaster is informed and believes, and on that basis alleges, that as part of this misuse of Ticketmaster's website, Shalom and the Additional Purchasers repeatedly and systematically requested more than 1000 pages of Ticketmaster's website in applicable 24-hour periods, made more than 800 reserve requests in applicable 24-hour periods, and accessed, reloaded or refreshed transactional events or ticketing pages and made other requests to transactional servers more than once during applicable 3-second intervals.

133.   The conduct of Does 7-10 made it substantially more difficult and expensive for Ticketmaster to perform under those contracts.  As alleged in more

1    detail in Paragraphs 56-61 above, these violations have damaged Ticketmaster by,
2    among other things, diminishing the inventory of tickets available through
3    Ticketmaster to legitimate consumers, causing artificially high levels of tickets to
4    be placed on reserve and thereby interfering with the transmission of real time sales
5    information to Ticketmaster's clients, bypassing required website entry and exit
6    points, which directly and indirectly reduces integral revenue opportunities, altering
7    website security features through manipulation of request limit monitoring,
8    requiring Ticketmaster to undertake extraordinary actions to monitor and enhance
9    website infrastructure, and significantly increasing costs of data storage, computer
10   processing, troubleshooting and system maintenance.   Thus, the conduct of Does
11   7-10 was a substantial factor in causing harm to Ticketmaster.

12       134.    The Terms of Use contain a liquidated damages provision described
13   in detail above.  Ticketmaster is entitled to liquidated damages from Does 7-10 in
14   accordance with that provision, in an amount to proven at trial when the full extent
15   of the requests for pages on Ticketmaster's website by Shalom and the Additional
16   Purchasers is ascertained.   In addition, Ticketmaster is entitled to compensatory
17   damages, in an amount to be proven at trial, for breaches of the Terms of Use
18   should the liquidated damages provision be unenforceable for any reason.

19       135.    Ticketmaster is informed and believes that the conduct of Does 7-
20   10 was undertaken with the intent to injure Ticketmaster, or with a willful and
21   conscious disregard of Ticketmaster's rights, and constitutes clear and convincing
22   evidence of oppression, fraud and malice under California Civil Code Section 3294.
23   As a result, Ticketmaster is entitled to an award of punitive damages against each of
24   Does 7-10 in an amount sufficient to deter them from future misconduct.

26       WHEREFORE, Ticketmaster respectfully requests that the Court:
27       1.    Enjoin all Defendants from:

28

1     a. infringing or assisting any other person in infringing

2 Ticketmaster's rights in its copyrighted ticketmaster.com website works as set forth

3 herein by copying pages from that website in excess of the scope of the license

4 granted by the ticketmaster.com Terms of Use;

5     b. manufacturing, adapting, modifying, exchanging,

6 distributing, creating, importing, trafficking in, or using any bots, programs or other

7 technology, products, services, devices, components, or parts thereof to circumvent

8 the technological measures by which Ticketmaster controls access to its website;

9     c. accessing, visiting, purchasing tickets on, facilitating the

10 purchase of tickets on, or otherwise using ticketmaster.com for any purpose that is

11 in excess of the agreement formed by the Terms of Use by which users are

12 permitted to visit that website;

13     d. using, or causing, urging or assisting any other person to

14 use, automated means such as bots to access Ticketmaster's website;

15     e. using, or causing, urging or assisting any other person to

16 use, any program that is designed to circumvent security measures such as

17 CAPTCHA to attempt to access Ticketmaster's website;

18     f. designing, selling or marketing any program or device

19 that is designed to provide an automated means of accessing Ticketmaster's website

20 or that is designed to circumvent security measures such as CAPTCHA on

21 Ticketmaster's website;

22     g. soliciting the design, purchase, sale or use of any program

23 or device that is designed to provide an automated means of accessing

24 Ticketmaster's website or that is designed to circumvent security measures such as

25 CAPTCHA on Ticketmaster's website;

26     h. purchasing, selling, transferring or acquiring any program

27 or device that is designed to provide an automated means of accessing

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

307930656.6         35         COMPLAINT

1   Ticketmaster's website or that is designed to circumvent security measures such as

2   CAPTCHA on Ticketmaster's website;

3             i.    abusing Ticketmaster's website in any way, such as

4   exceeding limits in the Terms of Use for requesting web pages and making requests

5   to transactional servers more than once during any three-second interval;

6             j.    purchasing tickets in excess of per customer ticket limits;

7   and

8             k.    reselling any tickets obtained through Ticketmaster that

9   were not obtained legitimately in accordance with the Terms of Use;

10      2.    Order that Defendants be required to:

11            a.    account for, hold in constructive trust, pay over to

12  Ticketmaster, and otherwise disgorge all profits derived by Defendants from their

13  individual and collective misconduct as alleged herein; and

14            b.    pay to Ticketmaster the costs of this action, together with

15  reasonable attorneys' fees and disbursements, in accordance with federal and

16  California law, including but not limited to 17 U.S.C. Sections 505 and 1203;

17      3.    Award to Ticketmaster liquidated, compensatory, statutory and

18  punitive damages; and

19      4.    Award to Ticketmaster all further relief, as the Court deems just

20  and equitable.

21

22  Dated:  April 30, 2013          MANATT, PHELPS & PHILLIPS, LLP

23                                 ROBERT H. PLATT

24                                 MARK S. LEE
                                   DONALD R. BROWN

25

26                  By:  *Robert H Platt /DRB*

27                     Robert H. Platt
                       Attorneys for *Plaintiff*
                       TICKETMASTER L.L.C.

28

1

## JURY DEMAND

2

Ticketmaster demands a jury trial in this action.

3

4       Dated:  April 30, 2013                    MANATT, PHELPS & PHILLIPS, LLP
                                                  ROBERT H. PLATT
5                                                 MARK S. LEE
                                                  DONALD R. BROWN
6

7

8                                                 By: _____
                                                      Robert H. Platt
9                                                     Attorneys for *Plaintiff*
                                                      TICKETMASTER L.L.C.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**ticketmaster**
Put awesome on your radar.
Download App  For iPhone & Android
tm

**ticketmaster**

Los Angeles & Surrounding Areas

My Ticketmaster | Gift Cards | Retail Outlets | Help

[search box] Enter Artist, Team, or Venue    **SEARCH**

Welcome. (Sign In)

Home | Music | Sports | Arts & Theater | Family | Merchandise | Ticket Deals          🛒 My Cart (0)

---

**Shipping, Delivery and Returns**

Print Your Tickets
View Shipping Options
Refund Policy
Canceled and Rescheduled Events
Lost or Destroyed Tickets

**Using Your Account**

Sign In or Create Account
View Your Order History
Forgot Your Password?
Edit Profile
Edit Preferences
Edit Billing Info

**Buying Tickets**

Order Online
Order by Phone
Ticketmaster Retail Outlets
Ticket Tips
Accessible Seating

**We're Here To Help**

Read All FAQs
Correct Your Order
Closing Your Account
Contact Us
Live Chat

**Policies and Security**

Terms of Use
Purchase Policy
Privacy Policy
Fan Ratings and Reviews Policy

**Who We Are**

About Ticketmaster
Our Fan Guarantee
Ticketmaster Blog
Across the Globe
Careers
Ticketmaster Logos

**Be A Part of It**

Ticket Your Event

---

## Terms of Use

Last Updated: November 1, 2012

Welcome! The following are the terms of use ("Terms") that govern your use of the Ticketmaster sites and applications where this appears (collectively, the "Site"). Our Privacy Policy, Purchase Policy, and any other policies, rules or guidelines that may be applicable to particular offers or features on the Site are also incorporated into these Terms. By visiting or using the Site, you expressly agree to these Terms, as updated from time to time.

We may make changes to these Terms at any time. Any changes we make will be effective immediately when we post a revised version of these Terms on the Site. The "Last Updated" date above will tell you when these Terms were last revised. By continuing to use this Site after that date, you agree to the changes.

The Site is not intended for children under the age of 13 and no person under the age of 13 may use the Site. We strongly encourage all parents and guardians to monitor the Internet use by their children. If you use the Site, you affirm you are at least 13 years old.

### Account Registration

You may browse the Site without registering for an account. You will be required to register for an account to use certain features of the Site, such as purchasing a ticket. Your account username may not include the name of another person with the intent to impersonate that person, or be offensive, vulgar or obscene. Your account username and password are personal to you. You will be responsible for the confidentiality and use of your username and password, and for all activities (including purchases) that are conducted through your account. You may not transfer or sell access to your account. We will not be liable for any harm related to disclosure of your username or password or the use by anyone else of your username or password. You may not use another user's account without that user's permission. You will immediately notify us in writing if you discover any unauthorized use of your account or other account-related security breach. We may require you to change your username and/or password if we believe your account is no longer secure or if we receive a complaint that your username violates someone else's rights. You will have no ownership in your account or your username. We may refuse registration, cancel an account or deny access to the Site for any reason.

### Code of Conduct

You agree that you will comply with all applicable laws, rules and regulations, and that you will not:

- Restrict or inhibit any other person from using the Site;
- Use the Site for any unlawful purpose;
- Express or imply that any statements you make are endorsed by us, without our prior written consent;
- Impersonate any person or entity, whether actual or fictitious, including any employee or representative of our company;
- Submit (a) any content or information that is unlawful, fraudulent, libelous, defamatory, or otherwise objectionable, or infringes our or any third party's intellectual property or other rights; (b) any non-public information about companies without authorization; or (c) any advertisements, solicitations, chain letters, pyramid schemes, surveys, contests, investment opportunities or other unsolicited commercial communication;
- Submit, or provide links to, any postings containing material that could be considered harmful, obscene, pornographic, sexually explicit, indecent, lewd, violent, abusive, profane, insulting, threatening, harassing, hateful or otherwise objectionable, includes the image or likeness of individuals under 18 years of age, encourages or otherwise depicts or glamorizes drug use (including alcohol and cigarettes), characterizes violence as acceptable, glamorous or desirable, or contains any personal contact information or other personal information identifying any third party;
- Submit, or provide links to, any postings containing material that harasses, victimizes, degrades, or intimidates an individual or group of individuals on the basis of religion, race, ethnicity, sexual orientation, gender, age, or disability;
- Engage in spamming or flooding;
- Harvest or collect information about Site users;
- Order a number of tickets for an event that exceeds the stated limit for that event;
- Use any password or code to participate in a presale or other offer on the Site if you did not receive the password or code from us or if you violate the terms of the presale or offer; or
- Use any area of the Site for commercial purposes, such as to conduct sales of tickets, products or services.

### Ownership of Content and Grant of Conditional License

The Site and all data, text, designs, pages, print screens, images, artwork, photographs, audio and video clips, and HTML code, source code, or software that resides or is viewable or otherwise discoverable on the Site (collectively, the "Content") is owned by us or our licensors. We own a copyright in the Site and Content. We may change the Content and features of the Site at any time.

We grant you a limited, conditional, no-cost, non-exclusive, non-transferable, non-sub-licensable license to view this Site and its Content to purchase tickets as permitted by these Terms for non-commercial purposes only if, as a condition precedent, you agree that you will not:

- Submit any software or other materials that contain any viruses, worms, Trojan horses, defects, date bombs, time bombs or other items of a destructive nature;
- Manipulate identifiers, including by forging headers, in order to disguise the origin of any posting that you submit;
- Link to any portion of the Site other than the URL assigned to the home page of our site;
- "Frame" or "mirror" any part of the Site;
- Modify, adapt, sub-license, translate, sell, reverse engineer, decompile or disassemble any portion of the Site or otherwise attempt to derive any source code or underlying ideas or algorithms of any part of the Site;
- Remove any copyright, trademark or other proprietary rights notices contained on the Site;
- Use any robot, spider, offline reader, site search/retrieval application or other manual or automatic device, tool, or process to retrieve, index, data mine or in any way reproduce or circumvent the navigational structure or presentation of the Site or its contents, including with respect to any CAPTCHA displayed on the Site. Operators of public search engines may use spiders to copy materials from the Site for the sole purpose of and solely to the extent necessary for creating publicly available searchable indices of the materials, but not caches or archives of such materials. We may revoke this exception at any time;
- Use any automated software or computer system to search for, reserve, buy or otherwise obtain tickets, ion ticket cash™, promotional codes, vouchers, gift cards or any other items available on the Site, including sending information from your computer to another computer where such software or system is active;
- Take any action that imposes or may impose (in our sole discretion) an unreasonable or disproportionately large load on our infrastructure;
- Access, reload or refresh transactional event or ticketing pages, or make any other request to transactional servers, more than once during any three-second interval;
- Request more than 1,000 pages of the Site in any 24-hour period, whether alone or with a group of individuals;
- Make more than 800 reserve requests on the Site in any 24-hour period, whether alone or with a group of individuals;
- Reproduce, modify, display, publicly perform, distribute or create derivative works of the Site or the Content;
- Use the Site or the Content in an attempt to, or in conjunction with, any device, program or service designed to circumvent any technological measure that effectively controls access to, or the rights in, the Site and/or Content in any way including, without limitation, by manual or automatic device or process, for any purpose.

This license is expressly conditioned on your preexisting agreement to comply with, and your actual compliance with, each of the provisions described in this Ownership of Content and Grant of Conditional License section. This license exists only so long as you strictly comply with each of the provisions described in this section. Any use of the Site or Content by you or anyone acting on your behalf that does not strictly comply with each and every provision in this section exceeds the scope of the license granted to you herein, constitutes unauthorized reproduction, display, or creation of unauthorized derivative versions of the Site and Content, and infringes our copyrights and other rights in the Site and Content. You will not acquire any ownership rights by using the Site or the Content.

The registered and unregistered trademarks, logos and service marks displayed on the Site are owned by us or our licensors. You may not use our trademarks, logos and service marks in any way without our prior written permission. You may inquire about obtaining permission by writing:

Live Nation Entertainment, Inc.
9348 Civic Center Drive
Beverly Hills, CA 90210
Attn: Trademark Department, Legal
copyrightofficer@livenation.com

*38*

Make a Purchase. When you engage in a transaction that includes the government collection of sales or other taxes, if we collect or remit taxes, where we are required to do so, you agree to pay any applicable taxes in connection with your purchases. We may block transactions in certain states and exchanges. We may impose conditions on your use of any coupon, promotional code or gift card. You will pay all charges incurred by you or any users of your account and credit card (or other applicable payment mechanism) at the price(s) in effect when such charges are incurred, including any applicable taxes. You may only use credit or debit cards, gift cards or vouchers that belong to you or to people who expressly authorize you to use such payment methods. You may use tm ticket cash™ only in accordance with the Code Terms of Use found at Ticketmaster.com/ticketcash. You may not attempt to conceal your identity by using multiple Internet Protocol addresses or email addresses to conduct transactions on the Site. You will not hold us liable if you do not comply with laws related to your transactions. We may provide law enforcement with information you provide to us related to your transactions to assist in any investigation or prosecution of you. If we are unable to verify or authenticate any information or tickets you provide during any registration, ordering, purchase, ticket posting, sale, authentication, delivery, payment or remittance process, or any other process, or if we are no longer able to verify or authorize your credit card or bank account information, your tickets may be cancelled, we may refuse to honor all pending and future ticket purchases made with those credit card or bank accounts and/or via any online accounts associated with those credit card or bank accounts. We may also prohibit you from using the Site.

## Forums and User Content

We may host fan reviews, message boards, blog feeds, social media feeds and other forums found on the Site (collectively, "Forums"), and you may be able to submit suggestions, reviews, concepts, audio and video recordings, photographs, artwork or other materials to the Forums or other areas of the Site ("User Content").

By submitting User Content, you certify that you are at least 18 years old, or you are at least 13 years old and have obtained your parent's or legal guardian's express consent to submit User Content.

You own all rights to your User Content. If you submit User Content to the Site, you grant us a worldwide, non-exclusive, transferable, sublicenseable, royalty-free right and license to use, reproduce, modify, create derivative works of, distribute, publicly perform, display, archive and commercialize your User Content, in our sole discretion, in all formats and in all media channels now known or hereinafter discovered, without any compensation or acknowledgment to you or anyone else. This license will not affect your ownership in your User Content, including the right to grant additional licenses to your User Content, except if it conflicts with these Terms. We are not obligated to post, display or otherwise use any User Content, or to attribute your User Content to you. You will not make or authorize any claim against us that our use of your User Content infringes any of your rights.

Statements, opinions and reviews posted by participants in a Forum may be inaccurate, offensive, obscene, threatening or harassing. We do not endorse and are not responsible for these postings. We will not be liable for any loss or harm caused by the posting or your reliance on information obtained through the postings.

You will be responsible for your User Content and the consequences of posting it. By submitting User Content, you represent to us that (i) you own, or have the necessary permission to submit the User Content and to grant the licenses to us under this section, and (ii) you have the written permission of every identifiable person in the User Content to use that person's name and likeness in the manner contemplated by the Site and these Terms or, if the person is a minor, the written permission of the minor's parent or legal guardian.

We will have the right (but not the obligation) to monitor the Site, the Forums and the User Content, and to disclose any User Content and the circumstances surrounding its submission in order to operate the Site properly, or to protect ourselves, our sponsors and our users, or to comply with legal obligations or governmental requests.

If we are notified that your User Content does not comply with these Terms, we may investigate the allegation and may decide to remove your User Content and cancel your account.

## Claims of Copyright Infringement On The Site

Under the Digital Millennium Copyright Act of 1998 (the "DMCA") if you believe in good faith that any content on the Site infringes your copyright, you may send us a notice requesting that the content be removed. The notice must include: (a) your (or your agent's) physical or electronic signature, (b) identification of the copyrighted work on our Site that is claimed to have been infringed (or a representative list if multiple copyrighted works are included in one notification), (c) identification of the content that is claimed to be infringing or the subject of infringing activity, including information reasonably sufficient to allow us to locate the content on the Site, (d) your name, address, telephone number and email address (if available); (e) a statement that you have a good faith belief that use of the content in the manner complained of is not authorized by you or your agent or the law; and (f) a statement that the information in the notification is accurate and, under penalty of perjury, that you or your agent is authorized to act on behalf of the copyright owner. If you believe in good faith that a notice of copyright infringement has been wrongly filed against you, you may send us a counter-notice. You may read more information about the DMCA at http://www.loc.gov/copyright.

Notices and counter-notices should be sent to Copyright Officer, Live Nation Entertainment, Inc., 9348 Civic Center Drive, Beverly Hills, CA 90210, copyrightofficer@livenation.com. There can be penalties for false claims under the DMCA. We suggest that you consult your legal advisor before filing a notice or counter-notice.

## Links

The Site contains links to other websites that may not be owned or operated by us. The fact that we may link to those websites does not indicate any approval or endorsement of those websites. We have no control over those websites. We are not responsible for the content of those websites, or the privacy practices of those websites. We strongly encourage you to become familiar with the terms of use and practices of any linked website. Your use of other websites is at your own risk and is subject to the terms of those websites. It is up to you to take precautions to ensure that whatever links you select or software you download (whether from the Site or other sites) is free of viruses, worms, Trojan horses, defects, date bombs, time bombs and other items of a destructive nature.

## Parental Controls

We cannot prohibit minors from visiting our Site, and must rely on parents and guardians to decide what materials are appropriate for children to view and purchase. There are parental control protections (such as computer hardware, software or filtering services) available that may assist you in limiting access to material that is harmful to minors. You can find information about parental controls at http://onguardonline.gov and http://kids.getnetwise.org. We do not endorse the products or services listed at these websites.

## Access from Outside the United States

The Site is directed to people residing in the United States. We do not represent that Content available on or through the Site is appropriate or available in other locations. We may limit the availability of the Site or any service or product described on the Site to any person or geographic area at any time. If you choose to access the Site from outside the United States, you do so at your own risk.

## Rules for Sweepstakes, Contests and Games

In addition to these Terms, sweepstakes, contests, games or other promotions (collectively, "Promotions") made available through the Site may have specific rules that are different from these Terms. By participating in a Promotion, you will become subject to those rules. We urge you to review the rules before you participate in a Promotion. Promotion rules will control over any conflict with these Terms.

## Mobile Messaging

We offer browsing and mobile messaging services which may include alerts, sweepstakes and offers for products. Mobile messaging is provided by Mozes, Inc. You may choose to receive mobile alerts by signing up or participating in a Promotion. If you do, you will also be subject to the Mozes terms of service located at http://www.mozes.com/product/terms-of-service. You may receive up to 5 messages per month.

Message and data rates may apply, according to your rate plan provided by your wireless carrier. We will not be responsible for any text messaging or other wireless charges incurred by you or by a person who has access to your wireless device or telephone number. You may not receive our alerts if your carrier does not permit text alerts. Your carrier may not allow you to use pre-paid phones or calling plans to receive alerts. We may send you a bounce back message for every message you send to us. Service may not be compatible with all wireless carriers or devices.

You may opt out of any alerts by replying with the text message "STOP" or by sending the text message "STOP" to the shortcode provided. You may also opt out of receiving text messages from us by sending the text message "STOP" to 842536. If you opt out by sending us a text message, we will send you a text to confirm your request. If you do not want to receive a confirmation text message, you may opt out by email or phone at the address or phone number listed at the end of this paragraph. It may take us up to 10 days to remove your mobile device number from our database. For additional help, text "HELP" to 842536, email support@mozes.com or call 888-281-7542.

We are not responsible for the accuracy of any information displayed in our mobile messaging, for any misdelivery or untimely delivery of any mobile messaging, or your deletion or failure to store any mobile messaging from us.

## Mobile Device Application

If you install or use our mobile application, software and services, including any accompanying documentation (collectively, "App"), we grant you a limited right to install and use the App on a single authorized device located in the United States and its territories or in another country where we may offer the App. You may use the App for your personal, non-commercial and entertainment purposes only. You agree to also comply with Apple's App Store Terms of Service, which you can find at http://www.apple.com/legal/itunes/us/terms.html#SERVICE. We do not grant you any rights to any related documentation, support, upgrades, maintenance or other enhancements to the App. You will not provide you with any device, internet access or wireless connection to use the App. We are not responsible for any aspect of the App's functionality, and another App user, or information you transmit through the App (including your location).

## Violation of these Terms

We may investigate any violation of these Terms, including unauthorized use of the Site. We may take legal action than we feel is appropriate. You agree that monetary damages may not provide us a sufficient remedy and that we may pursue injunctive or other relief for your violation of these Terms. If we determine that you have violated these Terms or the law, or for any other reason or for no reason, we may cancel your account, delete all your User Content and prevent you from accessing the Site at any time without notice to you. If that happens, you may no longer use the Site or any Content. You will still be bound by your obligations under these Terms. You agree that we will not be liable to you or any third party for termination of your access to the Site or to your account or any related information, and we will not be required to make the Site or your account or any related information available to you. We may also cancel any ticket or merchandise order, and tickets or merchandise acquired through your order. We may refuse to honor pending and future purchases made from all accounts we believe may be associated with you, or cancel a ticket or ticket order associated with any person we believe to be acting with you, or cancel your ticket postings, or exercise any other remedy available to us.

You agree that your abusive use of the Site may cause damage and harm to us, including impaired goodwill, lost sales and increased expenses. You also agree that monetary damages for your abusive use of the Site are difficult to determine and that if you, or others acting with you, request more than 1,000 pages of the Site or make more than 800 reserve requests on the Site in any 24-hour period, you, and those acting with you, will be jointly and severally liable for liquidated damages in the amount of twenty-five cents ($0.25) for each page request or reserve request made during that 24-hour period which exceeds those limits.

DISCLAIMER OF WARRANTIES

...PROVIDED "AS IS" AND "AS AVAILABLE" TO YOU, AND YOUR USE OF THE SITE IS AT YOUR OWN RISK. TO THE FULLEST EXTENT PERMISSIBLE BY LAW, WE DISCLOSE ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF TITLE, NON-INFRINGEMENT, ACCURACY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR WARRANTIES THAT MAY ARISE FROM COURSE OF DEALING OR COURSE OF PERFORMANCE OR USAGE OF TRADE. WE DO NOT GUARANTEE THAT THE SITE WILL ALWAYS BE SAFE, SECURE OR ERROR-FREE OR THAT THE SITE WILL ALWAYS FUNCTION WITHOUT DISRUPTIONS, DELAYS OR IMPERFECTIONS. WE ARE NOT RESPONSIBLE FOR THE ACTIONS OR INFORMATION OF THIRD PARTIES, AND YOU RELEASE US FROM ANY CLAIMS AND DAMAGES, KNOWN AND UNKNOWN, ARISING OUT OF OR IN ANY WAY CONNECTED WITH ANY CLAIM YOU HAVE AGAINST ANY SUCH THIRD PARTIES. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES, SO SOME OF THESE EXCLUSIONS MAY NOT APPLY TO YOU. IF YOU ARE A CALIFORNIA RESIDENT, YOU WAIVE CALIFORNIA CIVIL CODE §1542, WHICH SAYS: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Limitation of Liability

IN NO EVENT WILL WE OR OUR EVENT PROVIDERS, SUPPLIERS, ADVERTISERS AND SPONSORS, BE RESPONSIBLE OR LIABLE TO YOU OR ANYONE ELSE FOR, AND YOU HEREBY KNOWINGLY AND EXPRESSLY WAIVE ALL RIGHTS TO SEEK, DIRECT, INDIRECT, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES OF ANY TYPE OTHER THAN OUT OF POCKET EXPENSES, AND ANY RIGHTS TO HAVE DAMAGES MULTIPLIED OR OTHERWISE INCREASED, ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE CONTENT, OR ANY PRODUCT OR SERVICE PURCHASED THROUGH THE SITE, EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND REGARDLESS OF WHETHER THE CLAIM IS BASED UPON ANY CONTRACT, TORT, OR OTHER LEGAL OR EQUITABLE THEORY. WITHOUT LIMITING THE FOREGOING, YOU EXPRESSLY ACKNOWLEDGE AND AGREE THAT WE WILL HAVE NO LIABILITY OR RESPONSIBILITY WHATSOEVER FOR (a) ANY FAILURE OF ANOTHER USER OF THE SITE TO CONFORM TO THE CODES OF CONDUCT, (b) PERSONAL INJURY OR PROPERTY DAMAGE, OF ANY NATURE WHATSOEVER, WHETHER ARISING IN CONTRACT OR IN TORT, RESULTING FROM YOUR ACCESS TO AND USE OF OUR SITE, (c) ANY UNAUTHORIZED ACCESS TO OR USE OF OUR SECURE SERVERS AND/OR ANY AND ALL PERSONAL INFORMATION AND/OR FINANCIAL INFORMATION STORED THEREIN, (d) ANY BUGS, VIRUSES, WORMS, TROJAN HORSES, DEFECTS, DATE BOMBS, TIME BOMBS OR OTHER ITEMS OF A DESTRUCTIVE NATURE WHICH MAY BE TRANSMITTED TO OR THROUGH OUR SITE, (e) ANY ERRORS, MISTAKES, INACCURACIES OR OMISSIONS IN ANY CONTENT, OR (f) ANY LOST, STOLEN OR DAMAGED TICKETS. OR THE FAILURE OF A VENUE TO HONOR A TICKET. YOUR SOLE AND EXCLUSIVE REMEDY FOR DISSATISFACTION WITH THE SITE IS TO STOP USING THE SITE. THE LIMITATIONS IN THIS SECTION WILL APPLY EVEN IF ANY LIMITED REMEDY FAILS OF ITS ESSENTIAL PURPOSE. THE ALLOCATION OF RISK BETWEEN US IS AN ESSENTIAL ELEMENT OF THE BASIS OF THE BARGAIN BETWEEN US. OUR AGGREGATE LIABILITY ARISING OUT OF THESE TERMS OR THE USE OF THE SITE WILL NOT EXCEED THE GREATER OF ONE HUNDRED DOLLARS ($100) OR THE AMOUNT YOU HAVE PAID US IN THE PAST TWELVE MONTHS. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF DAMAGES, SO THESE MAY NOT APPLY TO YOU. IN SUCH CASES, OUR LIABILITY WILL BE LIMITED TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW. IN NO EVENT WILL ATTORNEYS' FEES BE AWARDED OR RECOVERABLE.

Indemnification

If anyone brings a claim against us related to your use of the Site, your User Content or your violation of these Terms, you agree to indemnify, defend and hold us and our affiliated companies, event providers, suppliers, advertisers and sponsors, and each of our officers, directors, employees, and agents, harmless from and against any and all claims, damages, losses and expenses of any kind (including reasonable legal fees and costs). We reserve the right to take exclusive control and defense of any claim, and you will cooperate fully with us in asserting any available defenses.

Disputes, Including Mandatory Arbitration and Class Action Waiver

Any dispute or claim relating in any way to your use of the Site, or to products or services sold or distributed by us or through us, will be resolved by binding arbitration rather than in court, with the following exceptions:

- You may assert claims in small claims court if your claims apply.
- If a claim involves the conditional license granted to you as described in the Ownership of Content and Grant of Conditional License section above, either of us may file a lawsuit in a federal or state court located within Los Angeles County, California, and we both consent to the jurisdiction of those courts for such purposes; and
- In the event that the arbitration agreement in these Terms is for any reason held to be unenforceable, any litigation against us (except for small-claims court actions) may be commenced only in a federal or state court located within Los Angeles County, California, and we both consent to the jurisdiction of those courts for such purposes.

The arbitration agreement in these Terms is governed by the Federal Arbitration Act. It is intended to be broadly interpreted, and will survive termination of these Terms. There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow these Terms as a court would.

To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to: Live Nation Entertainment, Inc., 9348 Civic Center Drive, Beverly Hills, CA 90210, Attn: Legal. You may download the forms located at: http://www.jamsadr.com/files/Uploads/Documents/JAMS_Arbitration_Demand.doc. The arbitration will be conducted by JAMS under its Streamlined Arbitration Rules and Procedures or, if applicable, its Comprehensive Arbitration Rules and Procedures, and any applicable supplemental rules including its Consumer Arbitration Standards of Minimum Fairness. The JAMS Rules are available online at http://www.jamsadr.com/rules-clauses or by calling 1-800-352-5267. Payment of all filing, administration and arbitration fees will be governed by JAMS's rules. We will reimburse those fees for claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous, but in no event will we pay for attorneys' fees. You may choose to have the arbitration conducted by telephone, based on written submissions, or in person in the county where you live or at another mutually agreed location.

We each agree that the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action. You agree to waive any right to a jury trial or to participate in a class action. If this specific provision is found to be unenforceable, then the entirety of this arbitration section will be null and void and neither of us will be entitled to arbitrate our dispute.

You agree that these Terms evidence a transaction involving interstate commerce and will be governed by and construed in accordance with federal law to the fullest extent possible. However, if your dispute is regarding the re-sale of a ticket made through TicketExchange for any event located in Illinois, then these Terms will be governed and construed in accordance with the laws of Illinois, without regard to conflict or choice of law rules, and you consent to personal jurisdiction, and agree to bring all actions, exclusively in Chicago, Illinois. If you have an inquiry regarding a ticket re-sale transaction made through TicketExchange for any event located in Illinois, please contact us at 550 W. Van Buren Street, 13th Floor, Chicago, Illinois 60607 or (877) 445-9450 or ticketexchange@ticketmaster.com.

No Reliance and Forward-Looking Statements

The information contained on the Site may not be current and should not be used or relied on for any investment decision regarding our securities or for any similar purpose. We file annual, quarterly and current reports, proxy statements and other information with the United States Securities and Exchange Commission ("SEC"). Copies of our filings are available at the Investor Relations section of this Site and also at the SEC's website at www.sec.gov.

Statements on the Site regarding our financial condition, results of operations and business and our expectations or beliefs concerning future events that are not historical facts are "Forward-Looking Statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Use of the words "believe," "expects," "anticipates," "plans," "estimates" or words of similar meaning is intended to identify Forward-Looking Statements but is not the exclusive means of identifying such statements. We caution you that there are some known and unknown factors that could cause actual results to differ materially from any future results, performance or achievements expressed or implied by such Forward-Looking Statements, including but not limited to economic, competitive, governmental and technological factors affecting our operations, markets, products, services and prices, as well as the risks and uncertainties set forth in the documents we file with the SEC, specifically the section titled "Item 1A. Risk Factors" of our most recent Annual Report on Form 10-K and Quarterly Reports on Form 10-Q and Current Reports on Form 8-K. We do not undertake any obligation to publicly update or revise any Forward-Looking Statements because of new information, future events or otherwise.

Questions

If you have any questions, comments or complaints regarding these Terms or the Site, please contact us at:

Live Nation Entertainment, Inc.
9348 Civic Center Drive
Beverly Hills, CA 90210
(800) 653-8000
Email

California users may also contact the Complaint Assistance Unit of the Division of Consumer Services, California Department of Consumer Affairs, located at 1625 North Market Blvd., Sacramento, CA 95834, (800) 952-5210.

© 2012 Live Nation Entertainment, Inc. All rights reserved.

FOLLOW US
Facebook
Twitter
Google Plus

DOWNLOAD APP
iPhone & Android

ABOUT US
Who We Are
Our Fan Guarantee
Ticketmaster Blog
Across the Globe
Careers

WE'RE HERE TO HELP
Your Account
Print Tickets
Refund Policy
Shipping Options
Help

OUR NETWORK
Live Nation
House of Blues
TicketWeb

BE A PART OF IT
Ticket Your Event
Custom Tickets

### ticketmaster®

BY CONTINUING PAST THIS PAGE, YOU AGREE TO OUR TERMS OF USE.

INTERNATIONAL: Canada   UK   Ireland   Spain   Mexico   Australia   More   PARTNERS: American Express   NBA   NFL   NHL   SLO VIP Services
Site Map · Privacy Policy

© 1999-2013 Ticketmaster. All rights reserved.

OTHER PARTNERS: Floorline · Gifts · Online Shopping · Friends · Shoebuy

40

# EXHIBIT B

# ticketmaster®

Note: The timer at bottom right shows how long you have to complete this page before we release your tickets for others to buy.

## Create Account

Already have a Ticketmaster Account?  **Log In**

\* = Required Text

First Name\*

E-mail Address\*

Retype E-mail Address\*

Type Password\*          Type Password 5-12 characters

Retype Password\*

Country of Residence\*     United States Of America ▸

Zip Code\*

By completing this registration form, you indicate that you consent to Ticketmaster using and disclosing the information you submit, as described in the Ticketmaster Privacy Policy. Use of your information collected in connection with a ticket purchase or auction bid will also be disclosed to you at the time of purchase or bid per Ticketmaster privacy policies relevant to the country where the event takes place.

If you are under 13 years old, you must not fill in this form or provide any information about yourself.

As a user of this web site, you agree that you are subject to this web sites Terms of Use.

**Accept and Continue**

BY CONTINUING PAST THIS PAGE, YOU AGREE TO OUR TERMS OF USE

Privacy Policy | © 1999-2013 Ticketmaster. All rights reserved

TRUSTe

Time left to complete page
**07:34**

41

# EXHIBIT C

# ticketmaster®

| REVIEW | DELIVERY | SIGN IN | PAYMENT » |
|--------|----------|---------|-----------|

Note: The timer at bottom right shows how long you have to complete this page before we release your tickets for others to buy. Your transaction is not initiated until you click the "Submit Order" button.



### Los Angeles Kings vs.
### Columbus Blue Jackets
STAPLES Center, Los Angeles, CA
Fri, Feb 15, 2013 07:30 PM

| Section | 322 |
|---------|-----|
| Row | 7 |
| Seats | 4 |
| Description | Price Level 16 |
| | UPPER CONCOURSE 300'S |
| | **Seating Chart** |

| Type | Full Price Adult |
|------|------------------|
| Ticket Price | US $45.00 x 1 |
| Convenience Charge | US $7.50 x 1 |

**SUBTOTAL**   **US $52.50**

| Tickets/Items | US $52.50 |
|---------------|-----------|
| **Order Processing Fee** | US $5.65 |
| Delivery via: **TicketFast Delivery** | US $2.50 |

**TOTAL CHARGES**   **US $60.65**

## Select Payment Method

▶ Gift Card   Redeem Now
You can redeem up to 5 Gift Cards per order.

**Select Payment Method**     **Payment Details**

● Credit Card
VISA [logos]

| Select Credit Card | Credit Card Number | Expiration Date | Security Code |
|--------------------|---------------------|-----------------|---------------|
| Select Card Type ▾ | | Month ▾   Year ▾ | |

**Redeem Membership Rewards Points from American Express®**

☐ YES, I would like to redeem Membership Rewards points for this order.
You will be prompted to enter the 4-digit American Express security code located on the front of your card to check and redeem your Membership Rewards Points.

**To Qualify:** You must use an American Express® Card enrolled in the U.S. Membership Rewards program for this purchase. Corporate Cards are ineligible. Initially, your American Express Card will be charged US $60.65 for this purchase. Once your Membership Rewards account has been verified you will be able to choose the number of points to redeem and American Express will credit your Card accordingly. If the minimum points are not available, the Card will remain charged and you will not receive a credit from American Express. By selecting this payment option, you agree to these additional terms and conditions.

**Time left to complete page**
**09:41**

42

**Enter Billing Address**

Your order may be cancelled without notice if you do not use the exact billing address of your credit card.

* = Required Text

Enter the Card Holder first and last name exactly as it appears on your credit card statement.

Card Holder First Name

Card Holder Last Name

Address*                                    Unit #              (Optional)

Address Line 2

City *                                       Military Address? Enter APO or FPO.

State*            -- Select State --

Zip Code*

Country *         United States Of America   Address in a different country?
                                             Choose a delivery method for your area.

Phone*                                       e.g 310-555-1212

Mobile Phone

☑ Store my credit card and billing information in our secure system to make future purchases faster and easier. You will have the opportunity later in the process to manage your account settings. Privacy Policy

43

## Protect Your Ticket Purchase - Allianz Global Assistance

**Get Event Ticket Insurance from Allianz Global Assistance for an additional $7.00/ticket**

If you can't attend this event for any number of covered reasons, including illness, airline delays, traffic accidents and more, you'll be reimbursed for this purchase.

Why is this needed? Event ticket insurance insures your financial investment of the event tickets including taxes and shipping costs (up to the amount of your policy limits) should you not be able to attend the event for a covered reason. Event Ticket Protector insurance does not offer coverage for cancellation due to a personal change of plans.

Coverage also includes parking and other event related items that have been added to your order. Limitations apply. See full Coverage Details. This charge is in addition to the order total displayed above and will be billed separately by Allianz Global Assistance. You may cancel your Event Ticket Insurance within 10 days of the purchase date and receive a full refund of insurance fees paid.

Insurance coverage is underwritten by BCS Insurance Company (OH, Administrative Office: Oakwood Terrace, IL), rated "A-" (Excellent) by A.M. Best Co., under BCS Form No. 52.201 or 52.401 series, or Jefferson Insurance Company (NY, Administrative Office: Richmond, VA), rated "A" (Excellent) by A.M. Best Co., under Jefferson Form No. 102-C or 102-P series, or Jefferson Form No. 105-C series or 105-P series depending on the insured's state of residence. Allianz Global Assistance is a brand of AGA Service Company. AGA Service Company is the producer and administrator of this plan and an affiliate of Jefferson Insurance Company. The insured shall not receive any special benefit or advantage because of the affiliation between AGA Service Company and Jefferson Insurance Company.

By clicking yes, you authorize Ticketmaster to send your name, address, and credit card information to Allianz Global Assistance, who will charge your card on the terms described above.

○ **YES**, Protect my Ticket Purchase to Los Angeles Kings **(Recommended)**

○ No.

Product available to residents of all states except WA.

## Submit Order

By clicking the "Submit Order" button, you are agreeing to the Ticketmaster Purchase Policy and Privacy Policy. All orders are subject to credit card approval and billing address verification. Please contact customer service if you have any questions regarding your order.

**Submit Order**

Your credit card will be charged

Cancel Order

BY CONTINUING PAST THIS PAGE, YOU AGREE TO OUR TERMS OF USE

Privacy Policy | © 1999-2013 Ticketmaster. All rights reserved.



44