FILED

13 APR 30 PM 3: 32

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: _____

1  ROBERT H. PLATT (Bar No. CA 108533)
   rplatt@manatt.com
2  MARK S. LEE (Bar No. CA 094103)
   mlee@manatt.com
3  DONALD R. BROWN (Bar No. CA 156548)
   dbrown@manatt.com
4  MANATT, PHELPS & PHILLIPS, LLP
   11355 West Olympic Boulevard
5  Los Angeles, CA 90064-1614
   Telephone: (310) 312-4000
6  Facsimile: (310) 312-4224

7  Attorneys for *Plaintiff*
   TICKETMASTER L.L.C.
8

9          UNITED STATES DISTRICT COURT

10      FOR THE CENTRAL DISTRICT OF CALIFORNIA

11  TICKETMASTER L.L.C., a Virginia      Case No. CV13 3035 ABC (VBKx)
    limited liability company,
12                                        NOTICE OF RELATED CASE
13              Plaintiff,                UNDER LOCAL RULE 83-1.3

14       vs.                             Complaint Filed: April 30, 2013

15  JOSEPH SHALOM, MICHAEL
    SILVERMAN, MARCUS CLIETT,
16  MAX SHALAM, RODNEY JORDAN,
    JERRY HIMER, MICHAEL
17  FRATIANNI, EZRA AZIZO, JOSEPH
    HOGAN, SVETLANA MINGAEVA,
18  BENG SWEET, JR., and DOES 1
    through 10, inclusive,
19
                Defendants.
20

21

22

23

24

25

26

27

28

**PLEASE TAKE NOTICE:**

Plaintiff Ticketmaster L.L.C. ("Ticketmaster") hereby provides notice that this case, *Ticketmaster L.L.C. v. Joseph Shalom*, Case No. CV-13-_____-___ ("*Shalom*"), which has been filed concurrently herewith on April 30, 2013, is related under Local Rule 83-1.3 to the following cases that were previously assigned to the Hon. Audrey B. Collins of this District:

1. *Ticketmaster L.L.C. v. Gary Charles Bonner*, Case No. CV-07-2531-ABC (JCx), filed on April 17, 2007 ("*Bonner*");

2. *Ticketmaster L.L.C. v Craig Rakowsky dba Ace Ticket Service*, Case No. CV-07-2533-ABC (JCx), filed on April 17, 2007 ("*Rakowsky*");

3. *Ticketmaster L.L.C. v Thomas Prior*, Case No. CV 07-2535-ABC (JCx), filed on April 17, 2007 ("*Prior*"); and

4. *Ticketmaster L.L.C. v RMG Technologies, Inc.*, Case No. CV-07-2534-ABC (JCx), filed on April 17, 2007 ("*RMG*").

*Shalom* qualifies as a case that is related to these four previous cases under all four subsections of Local Rule 83-1.3.1. Specifically:

(a) *Shalom* arises from the same or closely related transactions, happenings and events as the other cases;

(b) *Shalom* calls for the determination of the same or substantially related or similar questions of law and fact as the other cases;

(c) It would entail substantial duplication of labor if *Shalom* were to be heard by a judge other than the judge who adjudicated the other cases; and

(d) *Shalom* involves the same copyrights as the other cases.

## I.   SUPPORTING FACTUAL STATEMENT

### A.   The *Shalom* Case.

The gravamen of the current case—*Shalom*—is that the defendants are ticket brokers who are using automated devices to obtain an unfair advantage in the purchase of tickets through Ticketmaster's website, and in the process the

1   defendants are infringing Ticketmaster's copyrights in various webpages on its
2   website. Ticketmaster asserts claims in *Shalom* for breach of contract, copyright
3   infringement, violation of the Digital Millennium Copyright Act, fraud, and
4   interference with contract. As relief, Ticketmaster seeks, *inter alia*, an injunction to
5   halt the use of automated devices, and damages pursuant to a liquidated damages
6   provision in the website's Terms of Use. (A copy of the Complaint in *Shalom* is
7   attached hereto as Ex. A.)

8             **B.**    **The Previous Related Cases.**

9       In three of the four previous cases identified above—*Bonner, Rakowsky,* and
10  *Prior*—the gravamen was identical to that in *Shalom*. Ticketmaster claimed that
11  the defendants in those three previous cases were ticket brokers who were using
12  automated devices to obtain an unfair advantage in the purchase of tickets through
13  Ticketmaster's website, and in the process were infringing copyrights in
14  Ticketmaster's webpages. Ticketmaster also asserted the same claims for relief as
15  it does now in *Shalom*. (Copies of the complaints that were operative when each of
16  those four cases was resolved are attached hereto as Ex. B (*Bonner*), Ex. C
17  (*Rakowsky*), and Ex. D. (*Prior*).)

18       The gravamen in the fourth case—*RMG*—was also substantially identical to
19  that in *Shalom*. In *RMG*, Ticketmaster alleged that the defendant was a software
20  company that was distributing automated devices to ticket brokers who were using
21  the devices to improperly access Ticketmaster's website to purchase tickets, and
22  that, in the process the defendant was infringing copyrights in Ticketmaster's
23  webpages. (A copy of the complaint that was operative when the *RMG* case was
24  resolved is attached hereto as Ex. E.)

25       Accordingly, the same issues that were litigated in those four previous cases
26  will also be litigated in *Shalom*. For example:

27     &#8226;  The previous cases and *Shalom* are all based on the alleged use of automated
28        devices to purchase tickets through Ticketmaster's website.

- The previous cases and *Shalom* all involve the same claims and legal theories.
- The previous cases all resulted in the entry of permanent injunctions containing the same injunctive relief that Ticketmaster now seeks to obtain in *Shalom*. (Copies of the injunctions that were entered in *Bonner*, *Rakowsky*, *Prior* and *RMG* are attached hereto as Exs. F. G, H, and I, respectively; the injunctive relief that Ticketmaster seeks in *Shalom* is set forth in the *Shalom* Complaint (Ex. A hereto) on pages 34-36.)
- The previous cases and *Shalom* involve the same copyrighted webpages on Ticketmaster's website. (*Compare Shalom* Compl. ¶ 32 (Ex. A hereto) with *Bonner* Compl. ¶ 29 (Ex. B hereto), *Rakowsky* Compl. ¶ 14 (Ex. C hereto), *Prior* Compl. ¶ 16 (Ex. D hereto), and *RMG* Compl. ¶ 15 (Ex. E hereto).)
- The *RMG* case resulted in a published opinion by Judge Collins that (i) addressed the same legal issues that will be litigated in *Shalom*, and (ii) was based on substantially similar facts. (A copy of the opinion, *Ticketmaster v. RMG Tech., Inc.*, 507 F. Supp. 2d 1096 (C.D. Cal. 2007), is attached hereto as Ex. J.)
- The liquidated damages provision in the Ticketmaster website's Terms of Use that is at issue in *Shalom* is substantially similar to the liquidated damages provision in the Ticketmaster website's Terms of Use that was at issue in the four previous cases. (*Compare Shalom* Compl. ¶ 70 (Ex. A hereto) with *Bonner* Compl. ¶ 63 (Ex. B hereto), *Rakowsky* Compl. ¶ 48 (Ex. C hereto), *Prior* Compl. ¶ 50 (Ex. D hereto), and *RMG* Compl. ¶ 90 (Ex. E hereto).)
- The liquidated damages provision in question was enforced (and thus interpreted) by Judge Collins in the *RMG* case. (*See* Ticketmaster's request for default judgment, attached hereto as Ex. K, pages 19-21, and the Court's Default Judgment and Permanent Injunction (Ex. I hereto).)

1

**II.    CONCLUSION**

2    *Shalom* qualifies as a related case—i.e., as a case that is related to four

3    previous cases referred to above as *Bonner*, *Rakowsky*, *Prior*, and *RMG*—under

4    each of the four independent grounds in Local Rule 83-1.3.1(a), (b), (c) and (d) for

5    designating cases as related.   All four of those previous cases were assigned to

6    Judge Collins.    Therefore, Ticketmaster respectfully requests that *Shalom* be

7    designated as a related case and that it be assigned to Judge Collins on that basis.

8

9    Dated: April 30, 2013                    MANATT, PHELPS & PHILLIPS, LLP
                                             ROBERT H. PLATT
10                                           MARK S. LEE
                                             DONALD R. BROWN
11

12
                                             By: /s/ Robert H. Platt
13                                               Robert H. Platt
                                                 Attorneys for *Plaintiff*
14                                               TICKETMASTER L.L.C.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

306398947.6                          5                   NOTICE OF RELATED CASE

# EXHIBIT A

1  ROBERT H. PLATT (Bar No. CA 108533)
   rplatt@manatt.com
2  MARK S. LEE (Bar No. CA 094103)
   mlee@manatt.com
3  DONALD R. BROWN (Bar No. CA 156548)
   dbrown@manatt.com
4  MANATT, PHELPS & PHILLIPS, LLP
   11355 West Olympic Boulevard
5  Los Angeles, CA  90064-1614
   Telephone:  (310) 312-4000
6  Facsimile:  (310) 312-4224

7  Attorneys for *Plaintiff*
   TICKETMASTER L.L.C.

8

9              UNITED STATES DISTRICT COURT

10        FOR THE CENTRAL DISTRICT OF CALIFORNIA

11  TICKETMASTER L.L.C., a Virginia       | Case No. CV
    limited liability company,
12                                         | COMPLAINT FOR:
13              Plaintiff,
                                           | (1)    BREACH OF CONTRACT;
14       vs.                               | (2-3)  COPYRIGHT
                                           |        INFRINGEMENT (17 U.S.C.
15  JOSEPH SHALOM,  MICHAEL                |        § 101, *et seq.*);
    SILVERMAN, MARCUS CLIETT,              | (4-5)  VIOLATION OF DIGITAL
16  MAX SHALAM, RODNEY JORDAN,             |        MILLENNIUM COPYRIGHT
    JERRY HIMER, MICHAEL                   |        ACT (17 U.S.C. § 1201, *et seq.*);
17  FRATIANNI, EZRA AZIZO, JOSEPH          | (6)    FRAUD;
    HOGAN, SVETLANA MINGAEVA,              | (7)    AIDING AND ABETTING
18  BENG SWEET, JR., and DOES 1            |        FRAUD;
    through 10, inclusive,                 | (8)    INDUCING BREACH OF
19                                         |        CONTRACT; AND
              Defendants.                  | (9)    INTENTIONAL
20                                         |        INTERFERENCE WITH
                                           |        CONTRACT
21                                         |
                                           | Demand for Jury Trial
22

23

24        Plaintiff Ticketmaster L.L.C. ("Ticketmaster") alleges the following

25  against defendants Joseph Shalom, Michael Silverman, Marcus Cliett, Max Shalam,

26  Rodney Jordan, Jerry Himer, Michael Fratianni, Ezra Azizo, Joseph Hogan,

27  Svetlana Mingaeva, Beng Sweet, Jr., and Does 1-10 (collectively, "Defendants"):

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

307930656.6                          6                    MPLAINT

EXHIBIT
A

1

## JURISDICTION AND VENUE

2      1.     This Court has subject matter jurisdiction over the federal claims in
3  this Complaint pursuant to 28 U.S.C. Sections 1331 and 1338(a), and has
4  jurisdiction over the other claims in this Complaint under California law pursuant to
5  28 U.S.C. Section 1367(a).

6      2.     This Court also has subject matter jurisdiction over all of the claims
7  in this Complaint pursuant to 28 U.S.C. Section 1332(a) because the parties are
8  diverse and the amount in controversy exceeds $75,000.

9      3.     Venue is proper in this Court pursuant to 28 U.S.C. Sections
10  1391(b) and 1400 in that a substantial part of the events giving rise to the claims
11  occurred in this judicial district, and Ticketmaster's principal place of business is
12  within this judicial district.   In addition, the Terms of Use that govern the
13  relationship between the parties provide for venue in state or federal court in Los
14  Angeles County for disputes relating to the granting of a conditional license for use
15  of Ticketmaster's website, which is the subject of this lawsuit.

16

## SUMMARY

17      4.     Ticketmaster sells tickets for entertainment and sports events to the
18  general public on behalf of its clients through a variety of means, including its
19  website, ticketmaster.com. To meet the demands of consumers and its own clients,
20  Ticketmaster strives to provide an equitable ticket distribution system that affords
21  all consumers a fair opportunity to acquire the best available tickets for events. To
22  that end, the Terms of Use for Ticketmaster's website prohibit the use of robots and
23  other automated devices that give users of such devices an unfair advantage in
24  searching for and buying tickets. The website itself, in turn, employs a variety of
25  security features, including a feature commonly known as CAPTCHA that is
26  designed to detect automated devices and prevent them from accessing the website
27  and purchasing tickets in violation of the Terms of Use. Nonetheless, some users of

28

1   the website manage to evade those security features and use automated devices to
2   the detriment of Ticketmaster, its clients, and the general public.

3       5.      In that regard, Ticketmaster is informed and believes, and based
4   thereon alleges, that defendant Joseph Shalom ("Shalom"), substantially assisted by
5   defendants Michael Silverman, Marcus Cliett, Max Shalam, Rodney Jordan, Jerry
6   Himer, Michael Fratianni, Ezra Azizo, Joseph Hogan, Svetlana Mingaeva, Beng
7   Sweet, Jr., and Does 1-6 (collectively, the "Additional Purchasers"), has been using
8   automated devices to access and navigate through Ticketmaster's website and
9   improperly procure tickets for the purpose of reselling them at a profit through
10  third-party resale platforms and other means.  In doing so, Shalom and the
11  Additional Purchasers inundate Ticketmaster's website with page requests and
12  ticket reserve requests far in excess of amounts allowed under the Terms of Use—
13  for example, making 100,000 or even 200,000 ticket reserve requests in a single
14  day.  As part of this conspiracy to circumvent Ticketmaster's security measures
15  through the use of prohibited automated devices, Shalom and the Additional
16  Purchasers surreptitiously attempt to conceal their identities by using a variety of
17  account names, email addresses, physical addresses, Internet Protocol (IP)
18  addresses, and credit cards.

19      6.      Ticketmaster is also informed and believes, and based thereon
20  alleges, that Does 7-8 have assisted Shalom, the Additional Purchasers, and others
21  by creating, marketing and providing automated devices that are designed to
22  interact with Ticketmaster's website, and also by providing ongoing assistance in
23  the use of those devices to breach the website's Terms of Use.   Although
24  Ticketmaster continues to upgrade its security features, Does 7-8 continue to create
25  or employ new devices or methods designed to circumvent those newly designed
26  security features.

27      7.      In addition, Ticketmaster is informed and believes, and based
28  thereon alleges, that Does 9-10 have assisted Shalom and the Additional Purchasers

1    by purchasing the tickets that Shalom and the Additional Purchasers improperly
2    obtained from Ticketmaster while knowing or recklessly disregarding that those
3    tickets had been obtained in violation of Ticketmaster's rights.

4          8.      These deceptive and improper actions are harming Ticketmaster as
5    well as consumers who seek to lawfully purchase tickets through Ticketmaster's
6    website. The use of automated devices, which can access and navigate a website
7    and complete tasks and transactions far more quickly than human users can,
8    deprives legitimate consumers of the opportunity to purchase tickets through
9    Ticketmaster, a problem that is compounded when, as here, users of these devices
10   purchase tickets in quantities far in excess of contractual per customer ticket limits.
11   The use of automated devices also circumvents Ticketmaster's technological copy
12   protection systems and results in the improper and unlicensed copying of pages
13   from the website. In addition, the use of automated devices alters data on the
14   website and interferes with the website's operation, increases Ticketmaster's
15   operational costs, deprives Ticketmaster, its clients and its advertisers of various
16   revenue streams, and drives existing and potential customers away from
17   Ticketmaster by making it more difficult for them to obtain the tickets of their
18   choice through Ticketmaster.

19          9.      Ticketmaster therefore asserts claims against Defendants for breach
20   of contract, copyright infringement, violations of the federal Digital Millennium
21   Copyright Act, fraud, inducing breach of contract, and intentional interference with
22   contract. As relief, Ticketmaster seeks an injunction, compensatory damages,
23   punitive damages, disgorgement of Defendants' ill-gotten gains, imposition of a
24   constructive trust, and recovery of attorneys' fees and costs incurred by
25   Ticketmaster to prosecute this lawsuit.

26                               **THE PARTIES**

27          10.     Plaintiff Ticketmaster L.L.C. is a Virginia limited liability
28   company with its principal place of business in Los Angeles, California. The sole

1   member of Ticketmaster L.L.C. is Live Nation Entertainment, Inc., a Delaware

2   corporation with its principal place of business in Beverly Hills, California.

3         11.    Ticketmaster is informed and believes, and based thereon alleges,

4   that defendant Joseph Shalom is an individual who resides in New York.

5         12.    Ticketmaster is informed and believes, and based thereon alleges,

6   that defendant Michael Silverman is an individual who resides in New York.

7         13.    Ticketmaster is informed and believes, and based thereon alleges,

8   that defendant Marcus Cliett is an individual who resides in New York.

9         14.    Ticketmaster is informed and believes, and based thereon alleges,

10   that defendant Max Shalam is an individual who resides in New York.

11         15.    Ticketmaster is informed and believes, and based thereon alleges,

12   that defendant Rodney Jordan is an individual who resides in New York.

13         16.    Ticketmaster is informed and believes, and based thereon alleges,

14   that defendant Jerry Himer is an individual who resides in New York.

15         17.    Ticketmaster is informed and believes, and based thereon alleges,

16   that defendant Michael Fratianni is an individual who resides in New York.

17         18.    Ticketmaster is informed and believes, and based thereon alleges,

18   that defendant Ezra Azizo is an individual who resides in New York.

19         19.    Ticketmaster is informed and believes, and based thereon alleges,

20   that defendant Joseph Hogan is an individual who resides in New York.

21         20.    Ticketmaster is informed and believes, and based thereon alleges,

22   that defendant Svetlana Mingaeva is an individual who resides in New York.

23         21.    Ticketmaster is informed and believes, and based thereon alleges,

24   that defendant Beng Sweet, Jr. is an individual who resides in either New York or

25   Kentucky.

26         22.    The true names, residences and capacities, whether individual,

27   corporate or otherwise, of defendants Does 1 through 10 are unknown to

28   Ticketmaster, and Ticketmaster therefore sues those defendants under such

1    fictitious names. Ticketmaster is informed and believes, and based thereon alleges,

2    that each Defendant was, and is, an agent and employee of the remaining

3    Defendants, and in doing the things alleged herein, was acting within the course and

4    scope of such agency and employment and with the knowledge, consent and

5    approval of the other Defendants. Ticketmaster is informed and believes, and based

6    thereon alleges, that each Defendant is responsible in some manner for the acts

7    alleged herein and for the damages that Ticketmaster has sustained. Ticketmaster

8    will further amend this Complaint to show the true names and capacities of Does 1-

9    10 when they are ascertained.[1]

10           23.    Ticketmaster is informed and believes, and based thereon alleges,

11   that at all times mentioned herein, each Defendant conspired with, acted in concert

12   and active participation with, and aided and abetted every other Defendant in

13   committing the wrongful acts alleged in this Complaint. Ticketmaster is further

14   informed and believes, and based thereon alleges, that each of the Defendants

15   knew, or consciously avoided knowing, that the other Defendants were engaged or

16   intended to engage in conduct that violated Ticketmaster's rights and also violated

17   federal and California law.

18                                        **FACTS**

19   **A.    Ticketmaster Attempts To Make Its Ticketing System As Fair And
            Equitable As Possible For Consumers.**

20

21           24.    Ticketmaster distributes tickets for live entertainment events to the

22   general public on behalf of its clients, who are venues, promoters, entertainers and

23   sports franchises. Ticketmaster sells tickets via retail ticket outlets, telephone call

24   centers, and Ticketmaster's website, www.ticketmaster.com. Ticketmaster spends

25   substantial time, energy and resources attempting to ensure that its website is

26

27   [1]    Rule 19-1 of the Local Rules of the Central District of California imposes a
28   limit of ten Doe defendants. Ticketmaster will seek leave to add defendants if the
     current number the number of Doe defendants turns out to be insufficient.

1    current, accurate, easy to understand, and easy to use for the benefit of its clients
2    and the public.

3        25.    Demand for tickets sold through Ticketmaster, including via
4    ticketmaster.com, often exceeds the supply of tickets available for purchase.
5    Because Ticketmaster may only sell tickets that its clients have released to
6    Ticketmaster for sale, Ticketmaster cannot expand or adjust the supply of tickets at
7    any given time to meet the demand.  Moreover, Ticketmaster's clients set the price
8    of the tickets sold through Ticketmaster, and they oftentimes set those prices below
9    market.  All of these factors can inspire intense competition among consumers and
10   others to purchase tickets to the same event when the tickets become available for
11   sale on ticketmaster.com.

12       26.    Recognizing this competitive reality, Ticketmaster has undertaken
13   various measures to make the ticket buying process as fair and equitable as possible
14   for consumers.  For example, Ticketmaster attempts to regulate the speed with
15   which users may copy the web pages necessary to search for, reserve, and purchase
16   tickets on ticketmaster.com.  At its clients' request, Ticketmaster also limits the
17   number of tickets that may be purchased in any single transaction.

18       27.    In addition, Ticketmaster has undertaken substantial measures
19   intended to prevent the use of computer programs or other automated devices—
20   sometimes called software robots or "bots"—which can give users of such devices
21   an unfair advantage over human consumers in the ticket purchasing process.  One
22   of those measures is a security computer program, commonly known as CAPTCHA
23   ("Completely Automated Public Turing test to tell Computers and Humans Apart"),
24   that is designed to distinguish between human users and automated devices.  When
25   a user submits a ticket request, a box appears on the screen with random characters
26   partially obscured behind hash marks, which the user is instructed to retype in order
27   to proceed with the ticket request.  Most automated devices cannot decipher and

28

1    retype the random characters, and thus cannot proceed past that screen to complete
2    a ticket transaction.

3    **B.    Use Of Ticketmaster's Website Is Conditioned on Contractual Terms Of**
4           **Use.**

5           28.    Permission to view and use ticketmaster.com by any member of the
6    public is, and at all relevant times has been, conditioned on users' agreement to
7    Terms of Use that are set forth on the website. (A copy of Ticketmaster's current
8    Terms of Use is attached hereto as Exhibit "A.")

9           29.    To ensure that users are aware of and consent to the website's
10   Terms of Use, the Ticketmaster website repeatedly and systematically alerts users
11   to the existence—and the content—of the Terms of Use. For example, at all
12   relevant times, the home page for ticketmaster.com has stated that, by continuing
13   past the home page, users consent to the Terms of Use for the website. The phrase
14   "Terms of Use" in that statement on the home page is, and has been, a readily
15   visible hypertext link to the Terms of Use themselves that, when clicked, causes the
16   full Terms of Use to appear on the user's screen. The same message and related
17   hyperlink to Ticketmaster's Terms of Use appear on almost every webpage on the
18   website. Thus, at all relevant times, users have been repeatedly reminded that use
19   of the site is governed by the Terms of Use, and that continuing to use the site with
20   that knowledge constitutes acceptance of those Terms of Use.

21          30.    Furthermore, to purchase tickets through ticketmaster.com, users
22   have always been required to set up an account with Ticketmaster, and in doing so,
23   users have been instructed to review the website's Terms of Use. At all relevant
24   times, it has been necessary as part of the account set-up procedure for the user to
25   expressly consent to the Terms of Use by clicking a button labeled "Accept and
26   Continue." (A copy of the current version of the webpage with the "Accept and
27   Continue" button as part of the account set-up procedure is attached hereto as
28   Exhibit "B.")

1    31.    In addition, to complete a ticket purchase, users must click a

2    "Submit Order" button at the bottom of a Payment page. The "Submit Order"

3    button is located directly above a statement that says, "By continuing past this page,

4    you agree to our Terms of Use," and embedded in this statement is a hyperlink that,

5    when clicked, causes the Terms of Use to appear on the user's screen. (A copy of

6    the current version of the Payment webpage with the "Submit Order" button as part

7    of the ticket purchase procedure is attached hereto as Exhibit "C.")

8    **C.    The Terms of Use Grant a Limited License to View the Website and
     Prohibit Abusive Use of the Site.**

9

10    32.    Ticketmaster's website is a work of authorship protected by

11    copyright law. *See Ticketmaster L.L.C. v. RMG Tech., Inc.*, 507 F. Supp. 2d 1096

12    1104-11 (C.D. Cal. 2007). Ticketmaster (or its predecessors) has registered

13    versions of its website or portions thereof, with the Copyright Office. These

14    copyright registrations include the following:

| Title | Registration No. | Date of Registration |
|---|---|---|
| Ticketmaster.com: Online Order Search | TX-5-067-039 | May 30, 2000 |
| Ticketmaster.com: Order Information | TX-5-067-040 | May 30, 2000 |
| Ticketmaster.com Website Homepage, Event Ticket Order Pages | TXu-1-348-580 | May 22, 2007 |
| Event Ticket Order Validation Code | TXu-1-348-581 | May 22, 2007 |
| Event Ticket Order Limiting Code | TXu-1-348-582 | May 22, 2007 |
| Ticketmaster Interactive Seat Map Version 2012 | TX-7-628-432 | January 25, 2013 |

26    33.    As described above, users who wish to purchase tickets through

27    ticketmaster.com must navigate through a series of pages on the website by clicking

28    on designated hypertext links on those pages. Viewing Ticketmaster's homepage

1   and clicking on the hyperlinks to reach the various other pages that must be viewed

2   to purchase tickets from the website causes copies of each of those pages to be

3   created and to appear on a user's computer.

4          34.     The current version of the Terms of Use (Ex. A hereto) includes a

5   section called Ownership of Content and Grant of Conditional License.   That

6   section states in part as follows:

> We grant you a limited, conditional, no-cost, non-exclusive, non-transferable, non-sub-licensable license to view this Site and its Content to purchase tickets as permitted by these Terms for non-commercial purposes only if, as a condition precedent, you agree that you will not:
>
> . . .
> - Use any robot, spider, offline reader, site search/retrieval application or other manual or automatic device, tool, or process to retrieve, index, data mine or in any way reproduce or circumvent the navigational structure or presentation of the Site or its contents, including with respect to any CAPTCHA displayed on the Site. . . .;
> - Use any automated software or computer system to search for, reserve, buy or otherwise obtain tickets, *tm* ticket cash™, promotional codes, vouchers, gift cards or any other items available on the Site, including sending information from your computer to another computer where such software or system is active;
> - Take any action that imposes or may impose (in our sole discretion) an unreasonable or disproportionately large load on our infrastructure;
> - Access, reload or refresh transactional event or ticketing pages, or make any other request to transactional servers, more than once during any three-second interval;
> - Request more than 1,000 pages of the Site in any 24-hour period, whether alone or with a group of individuals;
> - Make more than 800 reserve requests on the Site in any 24-hour period, whether alone or with a group of individuals;
> - Reproduce, modify, display, publicly perform, distribute or create derivative works of the Site or the Content;
> - Use the Site or the Content in an attempt to, or in conjunction with, any device, program or service designed to circumvent any technological measure that effectively controls access to, or the rights in, the Site and/or Content in any way including, without limitation, by manual or automatic device or process, for any purpose.

1    35.    That section of the Terms of Use further states as follows:

2          This license is expressly conditioned on your preexisting
3          agreement to comply with, and your actual compliance
          with, each of the provisions described in this Ownership
4          of Content and Grant of Conditional License section.
          This license exists only so long as you strictly comply
5          with each of the provisions described in this section. Any
          use of the Site or Content by you or anyone acting on
6          your behalf that does not strictly comply with each and
          every provision in this section exceeds the scope of the
7          license granted to you herein, constitutes unauthorized
          reproduction, display, or creation of unauthorized
8          derivative versions of the Site and Content, and infringes
          our copyrights and other rights in the Site and Content.
9          You will not acquire any ownership rights by using the
          Site or the Content.

10   36.    Thus, any use of the website that violates any of the various

11   prohibitions in the Terms of Use—for example, using robots, spiders and other

12   automated devices to improperly navigate the website and request, reserve and

13   purchase tickets, making any other attempts to circumvent technological measures

14   intended to protect the website, and making excessive page and reserve requests—

15   exceeds the scope of the user's limited copyright license. Although the Terms of

16   Use have been revised from time to time, for at least the past ten years every

17   version of the Terms of Use has contained substantially similar prohibitions on the

18   use of automated devices and other abusive use of the website.

19   37.    The Terms of Use also limit the number of tickets that a user may

20   purchase for an event. At all relevant times, the Terms of Use have contained a

21   hyperlink to, and have expressly incorporated, Ticketmaster's Purchase Policy. The

22   hyperlink to Ticketmaster's Purchase Policy is easily visible and readily accessible

23   in the first paragraph of the Terms of Use. Clicking on the "Purchase Policy"

24   hyperlink causes the full Purchase Policy to appear on the user's screen.

25   38.    The current version of the Purchase Policy states as follows:

26         **Number of Tickets per Customer, or Ticket Limits.**
27         When purchasing tickets on our Site, you are limited to a
          specified number of tickets for each event (also known as
28         a "ticket limit"). This limit is posted during the purchase

---

1        process and is verified with every transaction. This policy
2        is in effect to discourage unfair ticket buying practices.

3        39.    Previous versions of the Purchase Policy have contained a

4    substantially similar provision.

5        40.    In sum, at all relevant times, the Terms of Use, including the

6    Purchase Policy, have prohibited users from, among other things, using bots and

7    other automated devices to access and navigate the site and conduct transactions,

8    abusing the Ticketmaster system with excessive requests for web pages, including

9    reserve requests, and purchasing tickets in excess of the per customer ticket limit.

10

**D.    Defendants Have Been Systematically Misusing And Abusing
11       Ticketmaster's Website.**

12        41.    Based on information that Ticketmaster has recently discovered,

13    compiled, and analyzed, Ticketmaster is informed and believes, and based thereon

14    alleges, that for at least the past two years, Shalom, with the assistance of others,

15    has been using automated devices to navigate through ticketmaster.com and to

16    purchase large quantities of tickets.  Ticketmaster is also informed and believes,

17    and on that basis alleges, that as early as 2006, Shalom actively sought—and

18    apparently acquired—technology that would increase the speed of his internet

19    connection for the express and admitted purpose of running software to purchase

20    tickets.  In addition, in an effort to unload some of the tickets that he had

21    wrongfully  acquired,  Shalom  has  attempted  (unsuccessfully)  to  bribe  a

22    Ticketmaster employee to cancel ticket orders in violation of Ticketmaster policy.

23        42.    Based on this same investigation, Ticketmaster is informed and

24    believes, and based thereon alleges, that a substantial number of ticket purchases

25    involving Shalom and the use of automated devices have been made in the name of

26    the Additional Purchasers (as defined in Paragraph 5 above).  For example, a

27    substantial volume of ticket purchases that implicate the use of automated devices

28    has been made through accounts in the name of the Additional Purchasers that are

1  linked to Shalom's home address and to email addresses with the domain name
2  thegossip.net—a domain name that is registered to Shalom. It is unclear at this
3  point whether the Additional Purchasers (i) have used automated devices to make
4  purchases themselves, or (ii) have knowingly allowed Shalom and others to use
5  their identities, credit and debit cards, and Ticketmaster accounts to make such
6  purchases, but they are liable in either event.

7      43.    While the tactics used by Shalom, with the assistance of the
8  Additional Purchasers and others, have evolved over time, Ticketmaster is informed
9  and believes, and based thereon alleges, that Shalom's most recent tactic is to use
10  prohibited automated devices to circumvent the Ticketmaster website's CAPTCHA
11  and then, through the simultaneous use of multiple IP addresses, to launch
12  thousands of recurring reserve requests for tickets for specific events. When a
13  reserve request is made, the Ticketmaster system will temporarily set aside tickets
14  matching the request to give the user time to complete the purchase of the tickets.
15  In the normal course, tickets that are temporarily set aside on reserve are released
16  from reserve and become available to other users if the purchase is not completed
17  within a certain time. However, Shalom, by using automated devices to regenerate
18  reserve requests at a speed that legitimate consumers honoring the Terms of Use
19  cannot match, simply grabs the same—or similar—tickets again and thus continues
20  to place large quantities of tickets on temporary reserve while deciding which
21  tickets, and how many, to purchase. When deployed during an onsale for a popular
22  event, this practice of making rapid, excessive, and repeated reserve requests
23  creates an artificial shortage of tickets available to satisfy reserve requests by
24  legitimate consumers.

25      44.    Ticketmaster's records show that, from January 1 through February
26  22, 2013, Shalom, with assistance from some, if not all, of the Additional
27  Defendants, made at least 10,000 reserve requests on Ticketmaster's website per

28

1  day. On most days, the number of reserve requests was close to, or more than,
2  100,000, and on some days the number exceeded 200,000.

3        45. Abusive reserve requests are only one example of the defendants'
4  misconduct. Ticketmaster has also discovered evidence that, for the past few years,
5  Shalom, with the assistance of the Additional Defendants, has been using
6  automated devices and engaging in subterfuge through the use of multiple IP
7  addresses, credit and debit cards, and email addresses, and throughout that time has
8  repeatedly and systematically requested and copied more than 1000 pages of the
9  website in applicable 24-hour periods, made more than 800 reserve requests in
10  applicable 24-hour periods, and accessed, reloaded or refreshed transactional events
11  or ticketing pages and made other requests to transactional servers more than once
12  during applicable 3-second intervals, all of which exceeds the scope of the license
13  granted by Ticketmaster's Terms of Use.

14        46. Ticketmaster is informed and believes, and based thereon alleges,
15  that many of these purchases involved ticket quantities in excess of stated per
16  customer ticket limits, and that most if not all of these wrongfully acquired tickets
17  were purchased for the commercial purpose of reselling them for a profit through
18  various means, including, for example, through StubHub.com and other ticket
19  resale sites.

20        47. Throughout the course of their misconduct, Shalom and the
21  Additional Purchasers had ample opportunity to review Ticketmaster's Terms of
22  Use, and they repeatedly assented to those terms, expressly and impliedly.
23  Ticketmaster is informed and believes, and based thereon alleges, that these
24  defendants not only expressly assented to the Terms of Use when creating various
25  online accounts, but that they regularly visited, or oversaw other persons in visiting,
26  the website, and during each visit they have been reminded of the Terms of Use and
27  have been invited to review them. They also expressly reaffirmed their assent to
28  the Terms of Use when completing purchases of tickets.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

307930656.6

14

COMPLAINT

1    48.    The misconduct of Shalom and the Additional Purchasers has been
2  facilitated by Does 7-8. Ticketmaster is informed and believes, and based thereon
3  alleges, that for at least the past two years, Defendants Does 7-8 have been
4  developing, marketing and selling software applications that enable users like
5  Shalom to employ automated devices to unlawfully and improperly access
6  Ticketmaster's website and quickly purchase large quantities of tickets in violation
7  of the website's Terms of Use. These automated devices are designed to, and do,
8  circumvent CAPTCHA and other security measures on Ticketmaster's website.

9    49.    Ticketmaster is informed and believes, and based thereon alleges,
10 that Does 7-8 visited ticketmaster.com with the commercial purpose of developing
11 their computer programs, and that they repeatedly visited the Ticketmaster
12 homepage and ticket purchase pages and thus were repeatedly reminded of the
13 governing Terms of Use each time they viewed a ticketmaster.com webpage.
14 Ticketmaster is also informed and believes, and based thereon alleges, that Does 7-
15 8 purchased tickets on ticketmaster.com when testing their computer programs, and
16 thus clicked on the "Accept and Continue" button on the ticket purchase page with
17 each purchase. Each and every viewing of the ticketmaster.com homepage and
18 purchase page caused a copy of both pages to be created on their computers.

19    50.    The misconduct of Shalom and the Additional Purchasers has been
20 further facilitated by Does 9-10, who have purchased tickets from Shalom and the
21 Additional Purchasers knowing or recklessly disregarding that Shalom and the
22 Additional Purchasers had acquired the tickets in violation of Ticketmaster's rights.
23 In that regard, Ticketmaster is informed and believes, and based thereon alleges,
24 that Defendants Does 9-10 have themselves visited Ticketmaster's website and
25 purchased tickets on the site and, thus, have had ample opportunity to review
26 Ticketmaster's Terms of Use and have assented to those terms, expressly as well as
27 impliedly. Ticketmaster is also informed and believes, and based thereon alleges,
28 that Does 9-10 know or have recklessly disregarded that Shalom and the Additional

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

307930656.6                              15                        COMPLAINT

1  Purchasers violate provisions in the Ticketmaster website's Terms of Use to obtain

2  the tickets that they turn around and sell to Does 9-10—who in turn resell the same

3  tickets to consumers for a profit—yet Does 9-10 nonetheless induce and actively

4  encourage Shalom and the Additional Purchasers to obtain tickets in a way that

5  violates Ticketmaster's rights.

6  51.  Throughout this course of misconduct, Shalom and the Additional

7  Defendants have attempted to evade Ticketmaster's efforts to prevent the use of

8  prohibited devices.  Although most automated devices cannot decipher and retype

9  the random characters generated by the CAPTCHA security program utilized on

10  ticketmaster.com, and thus cannot proceed past that screen to complete a ticket

11  transaction, some automated devices are designed to circumvent CAPTCHA, and

12  Ticketmaster is informed and believes, and based thereon alleges, that Shalom and

13  the Additional Purchasers have been using (or substantially assisting in the use of)

14  such devices for at least the past year.

15  52.  The Ticketmaster system sometimes can detect the presence of an

16  automated device, and when that occurs, the system generates a message to the user

17  explaining that the use of automated devices is prohibited.  Ticketmaster is

18  informed and believes, and based thereon alleges, that its system has generated such

19  messages in response to automated devices used by Shalom and the Additional

20  Purchasers.  However, those defendants have ignored these messages and instead

21  have continued to use automated devices to navigate through the Ticketmaster

22  website and wrongfully acquire tickets.

23  53.  The Ticketmaster system also can temporarily disable an automated

24  device when such a device is detected.  Ticketmaster is informed and believes, and

25  based thereon alleges, that its system has from time to time temporarily disabled

26  automated devices used by Shalom and the Additional Purchasers.  However,

27  Ticketmaster is informed and believes, and based thereon alleges, that in each such

28  instance, those defendants simply deployed a new automated device from a

1   different application server and/or IP address and continued with their unauthorized
2   use of the Ticketmaster system.

3       54.    Ticketmaster diligently tries to identify users of prohibited
4   automated devices, but some users of these devices go to great lengths to deceive
5   Ticketmaster. Ticketmaster is informed and believes, and based thereon alleges,
6   that Shalom and the Additional Purchasers have used many different names, credit
7   cards and email addresses to purchase tickets from Ticketmaster. In addition,
8   Ticketmaster is informed and believes, and based thereon alleges, that these same
9   defendants have systematically removed data from the computers they use to access
10  ticketmaster.com, such as by cleaning out the "cookies" on the computers, in a
11  further attempt to elude identification by Ticketmaster as repeat visitors to the site.

12      55.    Thus, it was not until recently that Ticketmaster was able to
13  assemble the information necessary to link Shalom and the Additional Purchasers
14  with all of these ticket purchases and the related use of prohibited automated
15  devices.

16

17  **E.    Defendants' Misuse And Abuse Has Harmed Ticketmaster's Website**
    **And Operations.**

18      56.    Ticketmaster has been harmed, and continues to be harmed, by the
19  use of automated devices by Shalom, the Additional Defendants, Does 7-8, and
20  others. To meet the demands of consumers and its own clients, Ticketmaster must
21  provide an equitable ticket distribution system that affords all consumers a fair
22  opportunity to acquire the best available tickets for events. The use of automated
23  devices undermines this effort, because automated devices can navigate through
24  Ticketmaster's website and reserve and purchase tickets at a speed that legitimate
25  consumers cannot match. As a result, the inventory of tickets available to
26  consumers who do not use such devices is substantially diminished, which has led
27  some consumers to question Ticketmaster's ability to ensure a level playing field for
28  the purchase of tickets.

57.   This harm is compounded by the fact that the use of automated devices inundates the Ticketmaster system with thousands of requests for tickets, and each request causes tickets to be temporarily placed on reserve, even if they are not ultimately purchased. While a ticket is on reserve, it is unavailable to any other user of the site. Not only does this further diminish the inventory of tickets for legitimate consumers, but it impedes Ticketmaster's ability to provide an important service to its clients. Clients use the Ticketmaster system to monitor ticket sales activity to make a variety of decisions, including whether to open more seats for sale to the public or to move the seats to other distribution channels. The artificially high volume of seats revolving in and out of reserve status due to the use of automated devices makes it difficult for Ticketmaster's clients to gauge how well tickets for an event are actually selling, which in turn interferes with the clients' ability to make the ongoing decisions that are based on sales activity. In addition, Ticketmaster is informed and believes, and based thereon alleges, that Shalom and the Additional Purchasers improperly extend the duration of reserve requests, which exacerbates the problems described above.

58.   In addition, users of automated devices deprive Ticketmaster of revenue and revenue opportunities. For example, Ticketmaster's website is part of a carefully crafted business model that integrates other services and features into the ticket purchasing process. The website is designed so that users will follow certain steps and will be directed to view certain predetermined pages in the process of requesting and purchasing tickets. Based on this expected flow of traffic, Ticketmaster, its clients, and others who place advertisements on Ticketmaster's website offer services and other opportunities on particular pages, ranging from event parking to signing up for client newsletters, all of which present an opportunity for immediate or future revenue. However, automated devices, which do not use traditional browsers, bypass the HTML code for these features, with the result that users of those devices may never even view these offers. These same

1  offenders further exacerbate the problem by purchasing enormous quantities of
2  tickets, which diminishes the ticket inventory for legitimate consumers and reduces
3  the number of legitimate consumers who will reach the pages that provide these up-
4  sell opportunities.

5      59.    Furthermore, by accessing the Ticketmaster system at targeted
6  points, automated devices alter the security features of the website itself. Normally,
7  users receive automatic and temporary permission—in effect, a token—to make
8  requests on the system. That token is automatically revoked if the pace of requests
9  exceeds a certain limit. However, by systematically deleting cookies on the user's
10 system, automated devices enable the user to constantly assume a new identity and
11 acquire new tokens even though that same user is far exceeding the stated request
12 limit.

13     60.    All of these problems involve, in one way or another, unauthorized
14 reproduction and alteration of the Ticketmaster system, as well as deletion,
15 destruction and alteration of data on the system.

16     61.    Equally important, the use of automated devices diverts resources
17 from the service of legitimate consumers. Ticketmaster must incorporate
18 extraordinary actions to enhance the website infrastructure to enable it to support all
19 of the activity on its website, including all of the artificial and inflated activity
20 generated by the automated devices, and otherwise ensure the ongoing integrity of
21 the website in the face of this onslaught of devices. The use of these prohibited
22 devices also significantly increases the costs of, among other things, data storage,
23 computer processing, troubleshooting and system maintenance.

24
25                **FIRST CLAIM FOR RELIEF**
                  Breach Of Contract
26 **(Against Shalom, the Additional Purchasers (as defined in ¶ 5), and Does 7-8)**
27     62.    Ticketmaster alleges and incorporates by reference all of the
28 preceding paragraphs.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

63. At all relevant times, the home page and most other pages on ticketmaster.com have informed users that their use of the website is subject to express terms and conditions set forth in the Terms of Use, and that by continuing past the page in question, the user expressly and/or impliedly agrees to be bound by those terms. Users have a reasonable opportunity to review the Terms of Use upon first entering the website, and they also have a reasonable opportunity to review the Terms of Use during their use of the site. The link to the Terms of Use is displayed in such a manner as to provide consumers with clear notice of their existence.

64. Ticketmaster is informed and believes, and based thereon alleges, that Shalom and the Additional Purchasers, acting for themselves and for each other, expressly assented to the Terms of Use when setting up accounts on ticketmaster.com and submitting requests to purchase tickets. Ticketmaster is also informed and believes, and based thereon alleges, that Does 7-8 expressly assented to the Terms of Use when creating accounts on ticketmaster.com and submitting ticket requests.

65. The Terms of Use prohibit, among other things, the use of bots and other automated devices, abusive use of the website, and exceeding per-customer ticket limits. These Terms of Use are fair and reasonable.

66. Ticketmaster has performed all conditions, covenants and promises required to be performed by it in accordance with the Terms of Use.

67. Based on information that Ticketmaster has recently discovered and compiled, Ticketmaster is informed and believes, and based thereon alleges, that for at least the past year, Shalom, by use of technology manufactured or otherwise provided by Does 7-8 (themselves also bound by the Terms of Use), has repeatedly and systematically breached the Terms of Use by using bots and other automated devices to access the website and buy tickets, and by buying tickets in quantities that exceed per customer ticket limits.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

307930656.6

20

COMPLAINT

1    68.    Ticketmaster is further informed and believes, and based thereon

2  alleges, that the Additional Purchasers (all of whom are bound by the Terms of

3  Use) have breached the Terms of Use either by allowing Shalom and others to use

4  their identities, credit and debit cards, and Ticketmaster accounts to purchase tickets

5  by the use of automated devices and in quantities that exceed per customer ticket

6  limits, or by using automated devices themselves to the same end.

7    69.    Ticketmaster is informed and believes, and based thereon alleges,

8  that as part of this misuse of Ticketmaster's website, Shalom, along with the

9  Additional Purchasers and Does 7-8 (directly or in concert with Shalom),

10  repeatedly and systematically requested more than 1000 pages of the website in

11  applicable 24-hour periods, made more than 800 reserve requests in applicable 24-

12  hour periods, and accessed, reloaded or refreshed transactional events or ticketing

13  pages and made other requests to transactional servers more than once during

14  applicable 3-second intervals.

15    70.    It can be impracticable and extremely difficult to ascertain the

16  damages from abusive use of Ticketmaster's website. Therefore, Ticketmaster has

17  made a reasonable attempt at a formula for calculating the damages caused by

18  abusive use of its website. The current version of the Terms of Use includes the

19  following liquidated damages provision that includes this formula:

20        You agree that your abusive use of the Site may cause
          damage and harm to us, including impaired goodwill, lost
21        sales and increased expenses. You also agree that
          monetary damages for your abusive use of the Site are
22        difficult to determine and that if you, or others acting with
          you, request more than 1,000 pages of the Site or make
23        more than 800 reserve requests on the Site in any 24-hour
          period, you, and those acting with you, will be jointly and
24        severally liable for liquidated damages in the amount of
          twenty-five cents ($0.25) for each page request or reserve
25        request made during that 24-hour period which exceeds
          those limits.

26

27

28

1    71. Previous versions of the Terms of Use included a substantially
2    identical liquidated damages provision. For example, the immediately prior version
3    stated as follows:

> You agree that Abusive Use of the Site, as defined above, causes damage and harm to Ticketmaster in the form of, among other things, impaired goodwill, lost sales, and increased expenses associated with responding to Abusive Use of the Site. You further agree that monetary damages for Abusive Use of the Site are difficult to ascertain and that proof of monetary damages for Abusive Use would be costly and inconvenient to calculate. Accordingly you agree that liquidated damages are warranted for Abusive Use. Therefore, you agree that if you, or others acting in concert with you, alone or collectively request more than 1000 pages of the Site in any twenty-four hour period, you, and those acting in concert with you, will be jointly and severally liable for liquidated damages in the amount of twenty-five cents ($0.25) per page request each time that a page request is made after that first 1000 during that twenty-four hour period. You also agree that this will be the measure of damages for any abusive use that occurred prior to this provision of these Terms being in effect.

14    72. Ticketmaster is entitled to liquidated damages in accordance with
15    the foregoing provisions, in an amount to proven at trial when the full extent of
16    these defendants' page requests and reserve requests is ascertained, but which,
17    based on the volume of excess page requests and reserve requests made by these
18    defendants, is far in excess of $75,000. In addition, Ticketmaster is entitled to
19    compensatory damages, in an amount to be proven at trial, as an alternative to
20    liquidated damages, should the liquidated damages provision be unenforceable for
21    any reason.

22    73. The Terms of Use also provide that Ticketmaster is entitled to
23    injunctive relief to enjoin violations of the Terms of Use. The current version of
24    the Terms of Use provides in part as follows: "You agree that monetary damages
25    may not provide us a sufficient remedy and that we may pursue injunctive or other
26    relief for your violation of these Terms." Previous versions of the Terms of Use
27    have contained a substantially similar, if not identical, provision.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

307930656.6                            22                         COMPLAINT

1    74.    The conduct of Shalom, the Additional Purchasers, and Does 7-8

2    has significantly and irreparably damaged Ticketmaster and will continue to do so

3    unless restrained by this Court. Thus, in addition to liquidated damages and other

4    damages for abusive use of its website, Ticketmaster is entitled to the preliminary

5    and permanent injunctive relief prayed for in this Complaint.

6

7                              **SECOND CLAIM FOR RELIEF**
                     **Copyright Infringement, 17 U.S.C. § 101** *et seq.*

8    **(Against Shalom and the Additional Purchasers (as defined in ¶ 5))**

9    75.    Ticketmaster alleges and incorporates by reference all of the

10   preceding paragraphs.

11   76.    Ticketmaster owns valid U.S. Copyright registrations in its website

12   and specific portions thereof.

13   77.    In using bots, programs, or other automatic devices on the

14   ticketmaster.com website to acquire tickets for the commercial purpose of reselling

15   them, Shalom has acted in excess of the terms of the license agreement created by

16   Ticketmaster's Terms of Use, and thereby copied or caused to be copied without

17   authorization pages from the ticketmaster.com site and other original elements of

18   Ticketmaster's copyrighted website.

19   78.    Ticketmaster is informed and believes, and on that basis alleges,

20   that the Additional Purchasers have induced and materially contributed to the

21   infringing activities of Shalom and others, knowing of and directly benefiting from

22   that infringing activity.

23   79.    As a proximate result of this direct, contributory, and vicarious

24   copyright infringement, and the inducement of others to infringe Ticketmaster's

25   copyrights by copying pages from ticketmaster.com in excess of its Terms of Use,

26   Ticketmaster has suffered and is suffering significant damage in an amount not

27   presently known with certainty, but which will be proven at trial.    Further,

28

1  Ticketmaster is suffering irreparable harm because of these defendants' infringing
2  activity.

3      80.    Ticketmaster is entitled to the range of relief provided by 17 U.S.C.
4  §§ 502-505, including injunctive relief, an order for the impounding and destruction
5  of all copies of all bots, programs, or other automatic devices used by these
6  defendants to violate Ticketmaster's rights, compensatory damages in an amount to
7  be determined, statutory damages, and its costs and attorneys' fees.

8
9                    **THIRD CLAIM FOR RELIEF**
10            **Copyright Infringement, 17 U.S.C. § 101 _et seq._**
                        **(Against Does 7-8)**

11     81.    Ticketmaster alleges and incorporates by reference all of the
12  preceding paragraphs.

13     82.    Ticketmaster owns valid U.S. Copyright registrations in its website
14  and specific portions thereof.

15     83.    In creating, causing the use of, and using bots, programs, or other
16  automatic devices on the ticketmaster.com website to acquire tickets for the
17  commercial purpose of reselling them, Does 7-8 acted in excess of the terms of the
18  license agreement created by Ticketmaster's Terms of Use, and copied, caused to
19  be copied, and induced the copying without authorization of pages from the
20  ticketmaster.com site and other original elements of Ticketmaster's copyrighted
21  website. Ticketmaster is informed and believes, and on that basis alleges, that these
22  defendants had the right and ability to supervise the infringing activities of their
23  customers, and induced and materially contributed to the infringing activities of
24  their customers while knowing of and directly benefiting from that infringing
25  activity.

26     84.    As a proximate result of this direct, contributory and vicarious
27  copyright infringement by Does 7-8 and their inducement of others to infringe
28  Ticketmaster's copyrights by copying pages from ticketmaster.com in excess of its

1    Terms of Use, Ticketmaster suffered and is suffering significant damage in an
2    amount not presently known with certainty, but which will be proven at trial.
3    Further, Ticketmaster is suffering irreparable harm because of these defendants'
4    infringing activity.

5    85.    Ticketmaster is entitled to the range of relief provided by 17 U.S.C.
6    §§ 502-505, including injunctive relief, an order for the impounding and destruction
7    of all copies of all bots, programs, or other automatic devices used by these
8    defendants to violate Ticketmaster's rights, compensatory damages in an amount to
9    be determined, statutory damages, and its costs and attorneys' fees.

10

11                        **FOURTH CLAIM FOR RELIEF**
      **Violation Of Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.***
12        **(Against Shalom and the Additional Purchasers (as defined in ¶ 5))**

13   86.    Ticketmaster alleges and incorporates by reference all of the
14   preceding paragraphs.

15   87.    Ticketmaster is informed and believes, and based thereon alleges,
16   that Shalom is using bots, programs, or other technology, products, services,
17   devices, components, or parts thereof, that are primarily designed and produced to
18   circumvent the technological measures by which Ticketmaster effectively controls
19   access to its copyrighted website, and that the Additional Purchasers are either
20   using the same devices or are actively participating in Shalom's use of those
21   devices.

22   88.    Ticketmaster is informed and believes, and based thereon alleges,
23   that these bots, programs, or other technical devices have no commercially
24   significant purpose or use other than to circumvent the technological measures that
25   Ticketmaster uses to control access to its website, and that these defendants are
26   using those devices with knowledge of that improper purpose.

27

28

MANATT, PHELPS &
PHILLIPS, LLP          307930656.6                    25    30                    COMPLAINT
ATTORNEYS AT LAW
LOS ANGELES

1        89.     Ticketmaster has suffered and is suffering significant damages in

2  an amount not presently known with certainty, but which will be proven at trial, as

3  a proximate result of these defendants' above-referenced misconduct.

4        90.     Ticketmaster is entitled to the range of relief provided by 17 U.S.C.

5  §§ 1201-1203, including injunctive relief, compensatory or statutory damages, and

6  its costs and attorneys' fees in an amount to be proven at trial.

7

8                                **FIFTH CLAIM FOR RELIEF**

9      **Violation Of Digital Millennium Copyright Act, 17 U.S.C. § 1201** *et seq.*
                                       **(Against Does 7-8)**

10       91.     Ticketmaster alleges and incorporates by reference all of the

11  preceding paragraphs.

12       92.     Ticketmaster is informed and believes, and based thereon alleges,

13  that Does 7-8 are manufacturing, importing, trafficking in and using bots,

14  programs, or other technology, products, services, devices, components, or parts

15  thereof, that are primarily and intentionally designed and produced to circumvent

16  the technological measures by which Ticketmaster effectively controls access to its

17  copyrighted website.

18       93.     Ticketmaster is informed and believes, and based thereon alleges,

19  that these bots, programs, or other technical devices have no commercially

20  significant purpose or use other than to circumvent the technological measures that

21  Ticketmaster uses to control access to its website, and that these defendants are

22  creating, marketing, trafficking in and using those devices with knowledge that they

23  are being used for that purpose.

24       94.     Ticketmaster has suffered significant damages in an amount not

25  presently known with certainty, but which will be proven at trial, as a proximate

26  result of these defendants' actions as described herein.

27

28

1    95.    Ticketmaster is entitled to the range of relief provided by 17 U.S.C.
2  Sections 1201-1203, including injunctive relief, compensatory or statutory
3  damages, and its costs and attorneys' fees in an amount to be proven at trial.

4

5  ### SIXTH CLAIM FOR RELIEF
   Fraud

6  **(Against Shalom, the Additional Purchasers (as defined in ¶ 5), and Does 7-8)**

7    96.    Ticketmaster alleges and incorporates by reference all of the
8  preceding paragraphs.

9    97.    Defendants Shalom, the Additional Purchasers, and Does 7-8 have
10  repeatedly accessed Ticketmaster's website, and in proceeding to use the website,
11  represented to Ticketmaster that they would comply with the Terms of Use, and
12  thus that they would not, among other things, use bots or other automated devices,
13  abuse the website, or exceed per-customer ticket limits.

14    98.    Ticketmaster is informed and believes, and based thereon alleges,
15  that these defendants, acting for themselves and for each other, clicked the "Accept
16  and Continue" button on Ticketmaster's website when setting up online accounts
17  and when completing ticket purchases, thereby representing to Ticketmaster that
18  they would comply with the Terms of Use for the website, and thus that they would
19  not, among other things, use bots or other automated devices, abuse the website, or
20  exceed per-customer ticket limits.

21    99.    Each and every such representation was false. Ticketmaster is
22  informed and believes, and based thereon alleges, that every time these defendants
23  accessed and used the website, and every time they clicked the Accept and
24  Continue button, they intended to, and did, violate the Terms of Use as described
25  above and that each such instance by these defendants was also done on behalf of
26  each other.

27    100.    Moreover, Ticketmaster is informed and believes, and based
28  thereon alleges, that every time each of these defendants accessed and used

1  Ticketmaster's website, they concealed from Ticketmaster their true intent to
2  violate the Terms of Use.

3      101.   Ticketmaster is informed and believes, and based thereon alleges,
4  that in an attempt to disguise the fact of so many purchases originating from the
5  same source, these defendants misrepresented their identities when interacting with
6  the Ticketmaster website and making many of the ticket purchases at issue.

7      102.   Ticketmaster relied on each such representation and omission by
8  providing the information and services available on the website to all of these
9  defendants, including the sale to these defendants of substantial quantities of
10  tickets.

11      103.   Ticketmaster's reliance was reasonable. These defendants received
12  ample notice of the Terms of Use every time they accessed and used the website,
13  and it has been necessary for them to click the Accept and Continue button both
14  when setting up online accounts and when completing a ticket purchase.

15      104.   As a result of these defendants' fraudulent representations and
16  omissions, Ticketmaster sold them tickets that Ticketmaster otherwise could have
17  sold to legitimate users of the site but was unable to due to defendants' misconduct.

18      105.   Moreover, Does 7-8, through their fraudulent representations and
19  omissions, obtained information about the workings and architecture of
20  Ticketmaster's website to assist in their design of prohibited automated devices.
21  They also used Ticketmaster's website to test their devices, which in turn have been
22  used by others to defraud Ticketmaster.

23      106.   As a proximate result of this fraudulent misconduct, Ticketmaster
24  has been damaged in an amount to be proved at trial.

25      107.   Ticketmaster is informed and believes that the conduct of Shalom,
26  the Additional Purchasers, and Does 7-8 was undertaken with the intent to injure
27  Ticketmaster, or with a willful and conscious disregard of Ticketmaster's rights,
28  and constitutes clear and convincing evidence of oppression, fraud and malice

1     under California Civil Code § 3294. As a result, Ticketmaster is entitled to an

2     award of punitive damages against these defendants in an amount sufficient to deter

3     them from future misconduct.

4

5                         **SEVENTH CLAIM FOR RELIEF**
                          **Aiding and Abetting Fraud**

6      **(Against the Additional Purchasers (as defined in ¶ 5) and Does 7-8)**

7          108. Ticketmaster alleges and incorporates by reference all of the

8     preceding paragraphs.

9          109. Insofar as the Additional Purchasers did not use bots and automated

10    devices to access Ticketmaster's website but instead lent their accounts, identities,

11    and/or credit and debit cards to Shalom and others with actual knowledge that

12    Shalom and others would use them to help carry out their own fraudulent conduct

13    toward Ticketmaster, the Additional Purchasers aided and abetted this fraud by

14    Shalom and others.

15          110. Does 7-8, in turn, aided and abetted all of the fraudulent

16    misconduct alleged above, in that they had actual knowledge that their customers

17    were acquiring their products and services for the purpose of defrauding

18    Ticketmaster, and they provided substantial assistance to those customers,

19    including Shalom, for this purpose by providing their products and services and

20    counseling their customers how to exploit the Ticketmaster system.

21          111. Thus, the Additional Purchasers and Does 7-8 are liable for all of

22    the damages and harm that Ticketmaster has incurred by reason of the fraudulent

23    misconduct of Shalom and others.

24          112. Ticketmaster is informed and believes that the conduct of the

25    Additional Purchasers and Does 7-8 was undertaken with the intent to injure

26    Ticketmaster, or with a willful and conscious disregard of Ticketmaster's rights,

27    and constitutes clear and convincing evidence of oppression, fraud and malice

28    under California Civil Code § 3294. As a result, Ticketmaster is entitled to an

1  award of punitive damages against these defendants in an amount sufficient to deter
2  them from future misconduct.

3

### EIGHTH CLAIM FOR RELIEF
#### Inducing Breach of Contract
4
5  (Against Does 7-10)

6      113.   Ticketmaster alleges and incorporates by reference all of the
7  preceding paragraphs.

8      114.   At all relevant times, the home page and most other pages on
9  ticketmaster.com have informed users that their use of the website is subject to
10  express terms and conditions set forth in the Terms of Use, and that by continuing
11  past the page in question, they expressly and/or impliedly agree to be bound by
12  those terms. Users have a reasonable opportunity to review the Terms of Use upon
13  first entering the website, and they also have a reasonable opportunity to review the
14  Terms of Use during their use of the site. The link to the Terms of Use is displayed
15  in such a manner as to provide consumers with notice of their existence.

16      115.   Ticketmaster is informed and believes, and based thereon alleges,
17  that Does 7-10 expressly assented to the Terms of Use when setting up accounts on
18  ticketmaster.com and when submitting a request to purchase tickets. Thus,
19  Ticketmaster is informed and believes that Does 7-10 have repeatedly provided
20  their express assent to the Terms of Use.

21      116.   The Terms of Use prohibit, *inter alia*, the use of bots and other
22  automated devices, abusive use of the website, and exceeding per-customer ticket
23  limits. These Terms of Use are fair and reasonable.

24      117.   Ticketmaster has performed all conditions, covenants and promises
25  required to be performed by it in accordance with the Terms of Use.

26      118.   Shalom and the Additional Purchasers have repeatedly and
27  systematically breached the Terms of Use by using, individually or collectively,
28  bots and other automated devices to access the website and buy tickets, and by

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

307930656.6                                    30        35              COMPLAINT

1   buying tickets in quantities that exceed per customer ticket limits. Ticketmaster is
2   informed and believes that, as part of this misuse of Ticketmaster's website,
3   Shalom and the Additional Purchasers repeatedly and systematically requested
4   more than 1000 pages of Ticketmaster's website in applicable 24-hour periods,
5   made more than 800 reserve requests in applicable 24-hour periods, and accessed,
6   reloaded or refreshed transactional events or ticketing pages and made other
7   requests to transactional servers more than once during applicable 3-second
8   intervals.

9       119.    Does 7-8 knew of the Terms of Use and that those Terms of Use
10  constitute an agreement between Ticketmaster and customers of Does 7-8,
11  including Shalom and the Additional Purchasers. Moreover, Does 7-8 intended to
12  cause their customers, including Shalom and the Additional Purchasers, to breach
13  those agreements, or acted in reckless disregard of whether they were causing those
14  customers to breach their agreements with Ticketmaster.

15      120.    The conduct of Does 7-8 caused their customers, including Shalom
16  and the Additional Purchasers, to breach their contracts with Ticketmaster. In fact,
17  the automated devices provided by Does 7-8 were the means by which Shalom and
18  the Additional Purchasers did in fact breach their contracts with Ticketmaster.

19      121.    Does 9-10 also knew of the Terms of Use and that those Terms of
20  Use constitute an agreement between Ticketmaster and Shalom and the Additional
21  Purchasers. Does 9-10 intended to cause Shalom and the Additional Purchasers to
22  breach those agreements by offering to purchase tickets from Shalom and the
23  Additional Purchasers while knowing or recklessly disregarding that Shalom and
24  the Additional Purchasers would procure those tickets from Ticketmaster in a
25  manner that would violate the Terms of Use.

26      122.    The conduct of Does 9-10 caused Shalom and the Additional
27  Purchasers to breach their contracts with Ticketmaster.

28

1    123.   Ticketmaster has been harmed as a result, and the conduct of Does
2    7-10 was a substantial factor in causing such harm.  The Terms of Use contain a
3    liquidated damages provision described in detail above.

4    124.   Ticketmaster is entitled to liquidated damages from Does 7-10 in
5    accordance with that provision, in an amount to proven at trial when the full extent
6    of the requests for pages on Ticketmaster's website by Shalom and the Additional
7    Purchasers is ascertained.  In addition, Ticketmaster is entitled to compensatory
8    damages, in an amount to be proven at trial, for breaches of the Terms of Use
9    should the liquidated damages provision be unenforceable for any reason.

10    125.   Ticketmaster is informed and believes that the conduct of Does 7-
11    10 was undertaken with the intent to injure Ticketmaster, or with a willful and
12    conscious disregard of Ticketmaster's rights, and constitutes clear and convincing
13    evidence of oppression, fraud and malice under California Civil Code Section 3294.
14    As a result, Ticketmaster is entitled to an award of punitive damages against each of
15    Does 7-10 in an amount sufficient to deter them from future misconduct.

16

17
18                              **NINTH CLAIM FOR RELIEF**
                    **Intentional Interference with Contractual Relations**
                                   **(Against Does 7-10)**

19    126.   Ticketmaster alleges and incorporates by reference all of the
20    preceding paragraphs.

21    127.   As alleged above, Shalom and the Additional Purchasers were
22    bound by the Terms of Use on Ticketmaster's website and at all relevant times
23    Does 7-10 were aware that Shalom and the Additional Purchasers were bound by
24    the Terms of Use.  Moreover, at all relevant times, Does 7-10 were aware of the
25    content of the Terms of Use.

26    128.   The Terms of Use prohibit, *inter alia*, the use of bots and other
27    automated devices, abusive use of the website, and exceeding per-customer ticket
28    limits.  These Terms of Use are fair and reasonable.

129.   Ticketmaster has performed all conditions, covenants and promises required to be performed by it in accordance with the Terms of Use.

130.   By marketing and selling automated devices to circumvent Ticketmaster's security devices and providing tools and assistance to their customers to enable them to inundate Ticketmaster's website with requests and excess ticket purchases, Does 7-8 intended to disrupt the performance of the contracts between Ticketmaster and Shalom and the Additional Purchasers, or acted in reckless disregard of whether they would disrupt the performance of those contracts.

131.   By offering to purchase tickets from Shalom and the Additional Purchasers that Does 9-10 knew Shalom and the Additional Purchasers would procure from Ticketmaster in a manner that would violate the Terms of Use, Does 9-10 intended to disrupt the performance of the contracts between Ticketmaster and Shalom and the Additional Purchasers, or acted in reckless disregard of whether they would disrupt the performance of those contracts.

132.   Shalom and the Additional Purchasers have repeatedly and systematically breached the Terms of Use by using, or cooperating in the use of, bots and other automated devices to access the website and buy tickets, and by purchasing tickets in quantities that exceed per customer ticket limits. Ticketmaster is informed and believes, and on that basis alleges, that as part of this misuse of Ticketmaster's website, Shalom and the Additional Purchasers repeatedly and systematically requested more than 1000 pages of Ticketmaster's website in applicable 24-hour periods, made more than 800 reserve requests in applicable 24-hour periods, and accessed, reloaded or refreshed transactional events or ticketing pages and made other requests to transactional servers more than once during applicable 3-second intervals.

133.   The conduct of Does 7-10 made it substantially more difficult and expensive for Ticketmaster to perform under those contracts.  As alleged in more

detail in Paragraphs 56-61 above, these violations have damaged Ticketmaster by, among other things, diminishing the inventory of tickets available through Ticketmaster to legitimate consumers, causing artificially high levels of tickets to be placed on reserve and thereby interfering with the transmission of real time sales information to Ticketmaster's clients, bypassing required website entry and exit points, which directly and indirectly reduces integral revenue opportunities, altering website security features through manipulation of request limit monitoring, requiring Ticketmaster to undertake extraordinary actions to monitor and enhance website infrastructure, and significantly increasing costs of data storage, computer processing, troubleshooting and system maintenance.   Thus, the conduct of Does 7-10 was a substantial factor in causing harm to Ticketmaster.

134.   The Terms of Use contain a liquidated damages provision described in detail above.  Ticketmaster is entitled to liquidated damages from Does 7-10 in accordance with that provision, in an amount to proven at trial when the full extent of the requests for pages on Ticketmaster's website by Shalom and the Additional Purchasers is ascertained.   In addition, Ticketmaster is entitled to compensatory damages, in an amount to be proven at trial, for breaches of the Terms of Use should the liquidated damages provision be unenforceable for any reason.

135.   Ticketmaster is informed and believes that the conduct of Does 7-10 was undertaken with the intent to injure Ticketmaster, or with a willful and conscious disregard of Ticketmaster's rights, and constitutes clear and convincing evidence of oppression, fraud and malice under California Civil Code Section 3294. As a result, Ticketmaster is entitled to an award of punitive damages against each of Does 7-10 in an amount sufficient to deter them from future misconduct.

WHEREFORE, Ticketmaster respectfully requests that the Court:

1.   Enjoin all Defendants from:

1          a.      infringing or assisting any other person in infringing

2    Ticketmaster's rights in its copyrighted ticketmaster.com website works as set forth

3    herein by copying pages from that website in excess of the scope of the license

4    granted by the ticketmaster.com Terms of Use;

5          b.      manufacturing,      adapting,      modifying,      exchanging,

6    distributing, creating, importing, trafficking in, or using any bots, programs or other

7    technology, products, services, devices, components, or parts thereof to circumvent

8    the technological measures by which Ticketmaster controls access to its website;

9          c.      accessing, visiting, purchasing tickets on, facilitating the

10   purchase of tickets on, or otherwise using ticketmaster.com for any purpose that is

11   in excess of the agreement formed by the Terms of Use by which users are

12   permitted to visit that website;

13         d.      using, or causing, urging or assisting any other person to

14   use, automated means such as bots to access Ticketmaster's website;

15         e.      using, or causing, urging or assisting any other person to

16   use, any program that is designed to circumvent security measures such as

17   CAPTCHA to attempt to access Ticketmaster's website;

18         f.      designing, selling or marketing any program or device

19   that is designed to provide an automated means of accessing Ticketmaster's website

20   or that is designed to circumvent security measures such as CAPTCHA on

21   Ticketmaster's website;

22         g.      soliciting the design, purchase, sale or use of any program

23   or device that is designed to provide an automated means of accessing

24   Ticketmaster's website or that is designed to circumvent security measures such as

25   CAPTCHA on Ticketmaster's website;

26         h.      purchasing, selling, transferring or acquiring any program

27   or device that is designed to provide an automated means of accessing

28

1   Ticketmaster's website or that is designed to circumvent security measures such as

2   CAPTCHA on Ticketmaster's website;

3            i.    abusing Ticketmaster's website in any way, such as

4   exceeding limits in the Terms of Use for requesting web pages and making requests

5   to transactional servers more than once during any three-second interval;

6            j.    purchasing tickets in excess of per customer ticket limits;

7   and

8            k.    reselling any tickets obtained through Ticketmaster that

9   were not obtained legitimately in accordance with the Terms of Use;

10       2.    Order that Defendants be required to:

11            a.    account for, hold in constructive trust, pay over to

12   Ticketmaster, and otherwise disgorge all profits derived by Defendants from their

13   individual and collective misconduct as alleged herein; and

14            b.    pay to Ticketmaster the costs of this action, together with

15   reasonable attorneys' fees and disbursements, in accordance with federal and

16   California law, including but not limited to 17 U.S.C. Sections 505 and 1203;

17       3.    Award to Ticketmaster liquidated, compensatory, statutory and

18   punitive damages; and

19       4.    Award to Ticketmaster all further relief, as the Court deems just

20   and equitable.

21

22   Dated:  April 30, 2013               MANATT, PHELPS & PHILLIPS, LLP

23                                  ROBERT H. PLATT
                               MARK S. LEE

24                                  DONALD R. BROWN

25

26                  By: _____
                           Robert H. Platt

27                              Attorneys for *Plaintiff*
                           TICKETMASTER L.L.C.

28

1

## **JURY DEMAND**

2      Ticketmaster demands a jury trial in this action.

3

4    Dated:  April 30, 2013              MANATT, PHELPS & PHILLIPS, LLP

5                                         ROBERT H. PLATT
MARK S. LEE

6                                         DONALD R. BROWN

7

8                           By: _____

9                               Robert H. Platt
Attorneys for *Plaintiff*
TICKETMASTER L.L.C.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# EXHIBIT A

43



# ticketmaster

Put awesome on your radar.

Download App   For iPhone & Android

**ticketmaster**

Los Angeles & Surrounding Areas

Q Enter Artist Team or Venue   SEARCH

Welcome

🛒 My Cart (0)

| Home | Music | Sports | Arts & Theater | Family | Merchandise | Ticket Deals |

**Shipping, Delivery and Returns**
Print Your Tickets
View Shipping Options
Refund Policy
Canceled and Rescheduled Events
Lost or Destroyed Tickets

**Using Your Account**
Sign In or Create Account
View Your Order History
Forgot Your Password?
Edit Profile
Edit Preferences
Edit Billing Info

**Buying Tickets**
Order Online
Order by Phone
Ticketmaster Retail Outlets
Ticket Tips
Accessible Seating

**We're Here To Help**
Read All FAQs
Correct Your Order
Closing Your Account
Contact Us
Live Chat

**Policies and Security**
Terms of Use
Purchase Policy
Privacy Policy
Fan Ratings and Reviews Policy

**Who We Are**
About Ticketmaster
Our Fan Guarantee
Ticketmaster Blog
Across the Globe
Careers
Ticketmaster Logos

**Be A Part of It**
Ticket Your Event

Terms of Use                                   Last Updated: November 1, 2012

Welcome! The following are the terms of use ("Terms") that govern your use of the Ticketmaster sites and applications where this appears (collectively, the "Site") Our Privacy Policy, Purchase Policy, and any other policies, rules or guidelines that may be applicable to particular offers or features on the Site are also incorporated into these Terms. By visiting or using the Site, you expressly agree to these Terms, as updated from time to time.

We may make changes to these Terms at any time. Any changes we make will be effective immediately when we post a revised version of these Terms on the Site. The "Last Updated" date above will tell you when these Terms were last revised. By continuing to use this Site after that date, you agree to the changes.

The Site is not intended for children under the age of 13 and no person under the age of 13 may use the Site. We strongly encourage all parents and guardians to monitor the Internet use by their children. If you use the Site, you affirm you are at least 13 years old.

**Account Registration**
You may browse the Site without registering for an account. You will be required to register for an account to use certain features of the Site, such as purchasing a ticket. Your account username may not include the name of another person with the intent to impersonate that person or be offensive, vulgar or obscene. Your account username and password are personal to you. You will be responsible for the confidentiality and use of your username and password, and for all activities (including purchases) that are conducted through your account. You may not transfer or sell access to your account. We will not be liable for any harm related to disclosure of your username or password or the use by anyone else of your username or password. You may not use another user's account without that user's permission. You will immediately notify us in writing if you discover any unauthorized use of your account or other account-related security breach. We may require you to change your username and/or password if we believe your account is no longer secure or if we receive a complaint that your username violates someone else's rights. You will have no ownership in your account or your username. We may refuse registration, cancel an account or deny access to the Site for any reason.

**Code of Conduct**
You agree that you will comply with all applicable laws, rules and regulations, and that you will not:

- Restrict or inhibit any other person from using the Site;
- Use the Site for any unlawful purpose;
- Express or imply that any statements you make are endorsed by us, without our prior written consent;
- Impersonate any person or entity, whether actual or fictitious, including any employee or representative of our company;
- Submit (a) any content or information that is unlawful, fraudulent, libelous, defamatory, or otherwise objectionable, or infringes our or any third party's intellectual property or other rights (b) any non-public information about companies without authorization, or (c) any advertisements, solicitations, chain letters, pyramid schemes, surveys, contests, investment opportunities or other unsolicited commercial communication;
- Submit or provide links to any postings containing material that could be considered harmful, obscene, pornographic, sexually explicit, indecent, lewd, violent, abusive, profane, insulting, threatening, harassing, hateful or otherwise objectionable, include the image or likeness of individuals under 18 years of age, encourages or otherwise depicts or glamorizes drug use (including alcohol and cigarettes), characterizes violence as acceptable, glamorous or desirable, or contains any personal contact information or other personal information identifying any third party;
- Submit or provide links to, any postings containing material that harasses, victimizes, degrades or intimidates an individual or group of individuals on the basis of religion, race, ethnicity, sexual orientation, gender, age or disability;
- Engage in spamming or flooding;
- Harvest or collect information about Site users;
- Order a number of tickets for an event that exceeds the stated limit for that event;
- Use any password or code to participate in a presale or other offer on the Site if you did not receive the password or code from us or if you violate the terms of the presale or offer; or
- Use any area of the Site for commercial purposes, such as to conduct sales of tickets, products or services

**Ownership of Content and Grant of Conditional License**
The Site and all data, text, designs, pages, print screens, images, artwork, photographs, audio and video clips, and HTML code, source code, or software that resides or is viewable or otherwise discoverable on the Site (collectively, the "Content") is owned by us or our licensors. We own a copyright in the Site and Content. We may change the Content and features of the Site at any time.

We grant you a limited, conditional, no-cost, non-exclusive, non-transferable, non-sub-licensable license to view this Site and its Content to purchase tickets as permitted by these Terms for non-commercial purposes only if, as a condition precedent, you agree that you will not:

- Submit any software or other materials that contain any viruses, worms, Trojan horses, defects, date bombs, time bombs or other items of a destructive nature;
- Manipulate identifiers, including by forging headers, in order to disguise the origin of any posting that you submit;
- Link to any portion of the Site other than the URL assigned to the home page of our site;
- 'Frame' or 'mirror' any part of the Site;
- Modify, adapt, sub-license, translate, sell, reverse engineer, decompile or disassemble any portion of the Site or otherwise attempt to derive any source code or underlying ideas or algorithms of any part of the Site;
- Remove any copyright, trademark or other proprietary rights notices contained on the Site;
- Use any robot, spider, offline reader, site search/retrieval application or other manual or automatic device, tool, or process to retrieve, index, data mine or in any way reproduce or circumvent the navigational structure or presentation of the Site or its contents, including with respect to any CAPTCHA displayed on the Site. Operators of public search engines may use spiders to copy materials from the Site for the sole purpose of and solely to the extent necessary for creating publicly available searchable indices of the materials, but not caches or archives of such materials. We may revoke this exception at any time;
- Use any automated software or computer system to search for, reserve, buy or otherwise obtain tickets, tm ticket cash™, promotional codes, vouchers, gift cards or any other items available on the Site, including sending information from your computer to another computer where such software or systems is active;
- Take any action that imposes or may impose (in our sole discretion) an unreasonable or disproportionately large load on our infrastructure;
- Access, reload or refresh transactional event or ticketing pages, or make any other request to transactional servers, more than once during any three-second interval;
- Request more than 1,000 pages of the Site in any 24-hour period, whether alone or with a group of individuals;
- Make more than 800 reserve requests on the Site in any 24-hour period, whether alone or with a group of individuals;
- Reproduce, modify, display, publicly perform, distribute or create derivative works of the Site or the Content;
- Use the Site or the Content in an attempt to, or in conjunction with, any device, program or service designed to circumvent any technological measure that effectively controls access to, or the rights in, the Site and/or Content in any way including, without limitation, by manual or automatic device or process, for any purpose

This license is expressly conditioned on your pre-existing agreement to comply with, and your actual compliance with, each of the provisions described in this Ownership of Content and Grant of Conditional License section. This license exists only so long as you strictly comply with each of the provisions described in this section. Any use of the Site or Content by you or anyone acting on your behalf that does not strictly comply with each and every provision in this section exceeds the scope of the license granted to you herein, constitutes unauthorized reproduction, display, or creation of unauthorized derivative versions of the Site and Content, and infringes our copyrights and other rights in the Site and Content. You will not acquire any ownership rights by using the Site or the Content.

The registered and unregistered trademarks, logos and service marks displayed on the Site are owned by us or our licensors. You may not use our trademarks, logos and service marks in any way without our prior written permission. You may inquire about obtaining permission by writing

Live Nation Entertainment, Inc.
9348 Civic Center Drive
Beverly Hills, CA 90210
Attn. Trademark Department, Legal
copyrightofficer@livenation.com

44                        38

**Making Purchases**

Please review our Purchase Policy, which will govern your purchase of any tickets or other products through the Site, including any refunds or exchanges. We may impose conditions on your use of any coupon, promotional code or gift card. You will pay all charges incurred by you or any users of your account and credit card or other applicable payment mechanism at the price(s) in effect when such charges are incurred, including any applicable taxes. You may only use credit or debit cards, gift cards or vouchers that belong to you or to people who expressly authorize you to use such payment methods. You may also use [illegible] in accordance with the [illegible] Terms of Use found at [illegible]. You may not attempt to conceal your identity by using multiple Internet Protocol addresses or email addresses to conduct transactions on the Site. You will not hold us liable if you do not comply with laws related to your transactions. We may provide law enforcement with information you provide to us related to your transactions to assist in any investigation or prosecution of you. If we are unable to verify or authenticate any information or tickets you provide during any registration, ordering, purchase, ticket posting, sale, authentication, delivery, payment or remittance process, or any other process, or if we are no longer able to verify or authorize your credit card or bank account information, your tickets may be cancelled, we may refuse to honor all pending and future ticket purchases made with those credit card or bank accounts and/or via any online accounts associated with those credit card or bank accounts. We may also prevent you from using the Site.

**Forums and User Content**

We may host fan reviews, message boards, blog feeds, social media feeds and chat forums found on the Site (collectively, "Forums"), and you may be able to submit suggestions, reviews, concepts, audio and video recordings, photographs, artwork or other materials to the Forums or other areas of the Site ("User Content").

By submitting User Content, you certify that you are at least 18 years old, or you are at least 13 years old and have obtained your parent's or legal guardian's express consent to submit User Content.

You own all rights to your User Content. If you submit User Content to the Site, you grant us a worldwide, royalty-free, transferable, sublicensable, royalty-free right and license to use, reproduce, modify, create derivative works of, distribute, publicly perform, display, archive and commercialize your User Content in our sole discretion, in all formats and in all media channels now known or hereinafter discovered, without any compensation or acknowledgment to you or anyone else. This license will not affect your ownership in your User Content, including the right to grant additional licenses to your User Content, except if it conflicts with these Terms. We are not obligated to post, display or otherwise use any User Content, or to attribute your User Content to you. You will not make or authorize any claim against us that our use of your User Content infringes any of your rights.

Statements, opinions and reviews posted by participants in a Forum may be inaccurate, offensive, obscene, threatening or harassing. We do not endorse and are not responsible for these postings. We will not be liable for any loss or harm caused by the posting or your reliance on information obtained through the postings.

You will be responsible for your User Content and the consequences of posting it. By submitting User Content, you represent to us that (i) you own, or have the necessary permission to submit the User Content and to grant the licenses to us under this section, and (ii) you have the written permission of every identifiable person in the User Content to use that person's name and likeness in the manner contemplated by the Site and these Terms or, if the person is a minor, the written permission of the minor's parent or legal guardian.

We will have the right (but not the obligation) to monitor the Site, the Forums and the User Content, and to disclose any User Content and the circumstances surrounding its submission in order to operate the Site properly, or to protect ourselves, our sponsors and our users, or to comply with legal obligations or governmental requests.

If we are notified that your User Content does not comply with these Terms, we may investigate the allegation and may decide to remove your User Content and cancel your account.

**Claims of Copyright Infringement On The Site**

Under the Digital Millennium Copyright Act of 1998 (the "DMCA"), if you believe in good faith that any Content on the Site infringes your copyright, you may send us a notice requesting that the content be removed. The notice must include: (a) your (or your agent's) physical or electronic signature; (b) identification of the copyrighted work on our Site that is claimed to have been infringed (or a representative list if multiple copyrighted works are included in one notification); (c) identification of the content that is claimed to be infringing or the subject of infringing activity, including information reasonably sufficient to allow us to locate the content on the Site; (d) your name, address, telephone number and email address (if available); (e) a statement that you have a good faith belief that use of the content in the manner complained of is not authorized by you or your agent or the law; and (f) a statement that the information in the notification is accurate and, under penalty of perjury, that you or your agent is authorized to act on behalf of the copyright owner. If you believe in good faith that a notice of copyright infringement has been wrongly filed against you, you may send us a counter-notice. You may read more information about the DMCA at http://www.loc.gov/copyright.

Notices and counter-notices should be sent to Copyright Officer, Live Nation Entertainment, Inc., 9348 Civic Center Drive, Beverly Hills, CA 90210, copyrightofficer@livenation.com. There can be penalties for false claims under the DMCA. We suggest that you consult your legal advisor before filing a notice or counter-notice.

**Links**

The Site contains links to other websites that may not be owned or operated by us. The fact that we may link to those websites does not indicate any approval or endorsement of those websites. We have no control over those websites. We are not responsible for the content of those websites, or the privacy practices of those websites. We strongly encourage you to become familiar with the terms of use and practices of any linked website. Your use of other websites is at your own risk and is subject to the terms of those websites. It is up to you to take precautions to ensure that whatever links you select or software you download (whether from the Site or other sites) is free of viruses, worms, Trojan horses, defects, date bombs, time bombs and other items of a destructive nature.

**Parental Controls**

We cannot prohibit minors from visiting our Site, and must rely on parents and guardians to decide what materials are appropriate for children to view and purchase. There are parental control protections (such as computer hardware, software or filtering services) available that may assist you in limiting access to material that is harmful to minors. You can find information about parental controls at http://[illegible].gov and http://[illegible].org. We do not endorse the products or services listed at these websites.

**Access from Outside the United States**

The Site is directed to people residing in the United States. We do not represent that Content available on or through the Site is appropriate or available in other locations. We may limit the availability of the Site or any service or product described on the Site to any person or geographic area at any time. If you choose to access the Site from outside the United States, you do so at your own risk.

**Rules for Sweepstakes, Contests and Games**

In addition to these Terms, sweepstakes, contests, games or other promotions (collectively, "Promotions") made available through the Site may have specific rules that are different from these Terms. By participating in a Promotion, you will become subject to those rules. We urge you to review the rules before you participate in a Promotion. Promotion rules will control over any conflict with these Terms.

**Mobile Messaging**

We offer browsing and mobile messaging services which may include alerts, sweepstakes and offers for products. Mobile messaging is provided by Mozes, Inc. You may choose to receive mobile alerts by signing up or participating in a Promotion. If you do, you will also be subject to the Mozes terms of service located at http://www.mozes.com/product/terms-of-service. You may receive up to [illegible] messages per month.

Message and data rates may apply. According to your rate plan provided by your wireless carrier. We will not be responsible for any text messaging or other wireless charges incurred by you or by a person who has access to your wireless device or telephone number. You may not receive our alerts if your carrier does not permit text alerts. Your carrier may not allow you to use pre-paid phones or calling plans to receive alerts. We may send you a bounce back message for every message you send to us. Service may not be compatible with all wireless carriers or devices.

You may opt out of any alerts by replying with the text message "STOP" or by sending the text message "STOP" to the shortcode provided. You may also opt out of receiving text messages from us by sending the text message "STOP" to 542538. If you opt out by sending us a text message, we will send you a text to confirm your request. If you do not want to receive a confirmation text message, you may opt out by email or phone at the address or phone number listed at the end of this paragraph. It may take us up to 10 days to remove your mobile device number from our database. For additional help, text "HELP" to 542538, email [illegible]@mozes.com or call 888-[illegible].

We are not responsible for the accuracy of any information displayed in our mobile messaging, for any misdelivery or untimely delivery of any mobile messaging, or your deletion or failure to store any mobile messaging from us.

**Mobile Device Application**

If you install or use our mobile application, software and services, including any accompanying documentation (collectively, "App"), we grant you a limited right to install and use the App on a single authorized device located in the United States and its territories or in another country where we may offer the App. You may use the App for your personal, non-commercial and entertainment purposes only. You agree to also comply with Apple's App Store Terms of Service, which you can find at http://www.apple.com/legal/itunes/us/terms.html#SERVICE. We do not grant you any rights to any related documentation, support, upgrades, maintenance or other enhancements to the App. We will not provide you with any device, internet access or wireless connection to use the App. We are not responsible for any interaction between you and another App user, or information you transmit through the App (including your location).

**Violation of these Terms**

We may investigate any violation of these Terms, including unauthorized use of the Site. We may take legal action that we feel is appropriate. You agree that monetary damages may not provide us a sufficient remedy and that we may pursue injunctive or other relief for your violation of these Terms. If we determine that you have violated these Terms or the law, or for any other reason or for no reason, we may cancel your account, delete all your User Content and prevent you from accessing the Site at any time without notice to you. If that happens, you may no longer use the Site or any Content. You will still be bound by your obligations under these Terms. You agree that we will not be liable to you or any third party for termination of your access to the Site or to your account or any related information, and we will not be required to make the Site or your account or any related information available to you. We may also cancel any ticket or merchandise order, and tickets or merchandise acquired through your order. We may refuse to honor pending and future purchases made from all accounts we believe may be associated with you, or cancel a ticket or ticket order associated with any person we believe to be acting with you, or cancel your ticket postings, or exercise any other remedy available to us.

You agree that your abusive use of the Site may cause damage and harm to us, including impaired goodwill, lost sales and increased expenses. You also agree that monetary damages for your abusive use of the Site are difficult to determine and that if you, or others acting with you, request more than 1,000 pages of the Site or make more than 800 reserve requests on the Site in any 24-hour period, you, and those acting with you, will be jointly and severally liable for liquidated damages in the amount of twenty-five cents ($0.25) for each page request or reserve request made during that 24-hour period which exceeds those limits.

45 57

**Disclaimer of Warranties**

[illegible]

**Limitation of Liability**

[illegible]

**Indemnification**

[illegible]

**Disputes, including Mandatory Arbitration and Class Action Waiver**

[illegible]

- [illegible]
- [illegible]
- [illegible]

[illegible]

[illegible]

[illegible]

[illegible]

**No Reliance and Forward Looking Statements**

[illegible]

[illegible]

**Questions**

[illegible]

[illegible]

[illegible]

© 2012 [illegible] All rights reserved.

FOLLOW US
Facebook
Twitter
Google Plus

DOWNLOAD APP
iPhone & Android

ABOUT US
Who We Are
Our Fan Guarantee
Ticketmaster Blog
Across the Globe
Careers

WE'RE HERE TO HELP
Your Account
Print Tickets
Refund Policy
Shipping Options
Help

OUR NETWORK
Live Nation
House of Blues
TicketWeb

BE A PART OF IT
Tickets Your Event
Custom Tickets

ticketmaster

BY CONTINUING PAST THIS PAGE, YOU AGREE TO OUR TERMS OF USE

[illegible]

40

# EXHIBIT B

47

*ticketmaster*

Note: The timer at bottom right shows how long you have to complete this page before we release your tickets for others to buy.

Create Account

Already have a Ticketmaster Account?   Log In

* = Required Text

First Name*

E-mail Address*

Retype E-mail Address*

Type Password*                          Type Password 5-12 characters

Retype Password*

Country of Residence*    United States Of America  ▾

Zip Code *

By completing this registration form, you indicate that you consent to Ticketmaster using and disclosing the information you submit, as described in the Ticketmaster Privacy Policy. Use of your information collected in connection with a ticket purchase or auction and will also be disclosed to you at the time of purchase or bid per Ticketmaster privacy policies relevant to the country where the event takes place.

If you are under 13 years old, you must not fill in this form or provide any information about yourself.

As a user of this web site, you agree that you are subject to this web site's Terms of Use.

Accept and Continue

**Time left to complete page**
**07:34**

BY CONTINUING PAST THIS PAGE, YOU AGREE TO OUR TERMS OF USE.

Privacy Policy © 1999-2010 Ticketmaster. All rights reserved.

TRUSTe

# EXHIBIT C

49

# ticketmaster

| REVIEW | DELIVERY | SIGN IN | PAYMENT » |

Note: The timer at bottom right shows how long you have to complete this page before we release your tickets for others to buy. Your transaction is not initiated until you click the "Submit Order" button.



**Los Angeles Kings vs.**
**Columbus Blue Jackets**
STAPLES Center, Los Angeles, CA
Fri, Feb 15, 2013 07:30 PM

Section  322
Row  7
Seats  4
Description  Price Level 16
UPPER CONCOURSE 300'S
Seating Chart

Type  Full Price Adult
Ticket Price  US $45.00 x 1
Convenience Charge  US $7.50 x 1

**SUBTOTAL  US $52.50**

**Tickets/Items**  US $52.50
**Order Processing Fee**  US $5.65
Delivery via: **TicketFast Delivery**  US $2.50

**TOTAL CHARGES  US $60.65**

### Select Payment Method

**Gift Card  Redeem Now**
You can redeem up to 5 Gift Cards per order.

| Select Payment Method | Payment Details | | | |
|---|---|---|---|---|
| • Credit Card | Select Credit Card | Credit Card Number | Expiration Date | Security Code |
| VISA | Select Card Type ▾ | | Month ▾ Year ▾ | |

**Redeem Membership Rewards Points from American Express®**

YES, I would like to redeem Membership Rewards points for this order.
You will be prompted to enter the 4-digit American Express security code located on the front of your card to check and redeem your Membership Rewards Points

To Qualify: You must use an American Express® Card enrolled in the U.S. Membership Rewards program for this purchase. Corporate Cards are ineligible. Initially, your American Express Card will be charged US $60.65 for this purchase. Once your Membership Rewards account has been verified you will be able to choose the number of points to redeem and American Express will credit your Card accordingly. If the minimum points are not available, the Card will remain charged and you will not receive a credit from American Express. By selecting this payment option, you agree to these additional terms and conditions.

**Time left to complete page**
**09:41**

42

**Enter Billing Address**

Your order may be cancelled without notice if you do not use the exact billing address of your credit card.

\* = Required Text

Enter the Card Holder first and last name exactly as it appears on your credit card statement.

Card Holder First Name

Card Holder Last Name

Address\*                                                    Unit #            (Optional)

Address Line 2

City \*                                          Military Address? Enter APO or FPO.

State\*          -- Select State --            ▾

Zip Code\*

Country \*       United States Of America        Address in a different country?
                                                 Choose a delivery method for your area.

Phone\*                          e.g 310-555-1212

Mobile Phone

☑ Store my credit card and billing information in our secure system to make future purchases faster and easier. You will have the opportunity later in the process to manage your account settings. Privacy Policy

51

43

**Protect Your Ticket Purchase - Allianz Global Assistance**

### Get Event Ticket Insurance from Allianz Global Assistance for an additional $7.00/ticket

If you can't attend this event for any number of covered reasons, including illness, airline delays, traffic accidents and more, you'll be reimbursed for this purchase.

Why is this needed? Event ticket insurance insures your financial investment of the event tickets including taxes and shipping costs (up to the amount of your policy limits) should you not be able to attend the event for a covered reason. Event Ticket Protector insurance does not offer coverage for cancellation due to a personal change of plans.

Coverage also includes parking and other event related items that have been added to your order. Limitations apply. See full Coverage Details. This charge is in addition to the order total displayed above and will be billed separately by Allianz Global Assistance. You may cancel your Event Ticket Insurance within 10 days of the purchase date and receive a full refund of insurance fees paid.

Insurance coverage is underwritten by BCS Insurance Company (OH, Administrative Office: Oakwood Terrace, IL.), rated "A-" (Excellent) by A.M. Best Co., under BCS Form No. 52.201 or 52.401 series, or Jefferson Insurance Company (NY, Administrative Office: Richmond, VA), rated "A" (Excellent) by A.M. Best Co., under Jefferson Form No. 102-C or 102-P series, or Jefferson Form No. 105-C series or 105-P series, depending on the insured's state of residence. Allianz Global Assistance is a brand of AGA Service Company. AGA Service Company is the producer and administrator of this plan and an affiliate of Jefferson Insurance Company. The insured shall not receive any special benefit or advantage because of the affiliation between AGA Service Company and Jefferson Insurance Company.

By clicking yes, you authorize Ticketmaster to send your name, address, and credit card information to Allianz Global Assistance, who will charge your card on the terms described above.

○  **YES, Protect my Ticket Purchase to Los Angeles Kings (Recommended)**

○   No.

Product available to residents of all states except WA.

**Submit Order**

By clicking the "Submit Order" button, you are agreeing to the Ticketmaster Purchase Policy and Privacy Policy. All orders are subject to credit card approval and billing address verification. Please contact customer service if you have any questions regarding your order.

**Submit Order**

Your credit card will be charged

Cancel Order

BY CONTINUING PAST THIS PAGE, YOU AGREE TO OUR TERMS OF USE

Privacy Policy | © 1999-2013 Ticketmaster. All rights reserved.



52

44

# EXHIBIT B

1   MANATT, PHELPS & PHILLIPS, LLP
    ROBERT H. PLATT (Bar No. CA 108533)
2   rplatt@manatt.com
    MARK S. LEE (Bar No. CA 094103)
3   mlee@manatt.com
    DONALD R. BROWN (Bar No. CA 156548)
4   dbrown@manatt.com
    11355 West Olympic Boulevard
5   Los Angeles, CA 90064-1614
    Telephone: (310) 312-4000
6   Facsimile: (310) 312-4224

7   Attorneys for *Plaintiff*
    TICKETMASTER L.L.C.

8

9                    UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12  TICKETMASTER L.L.C., a Virginia          Case No. CV 07-2531 ABC (JCx)
    limited liability company,
13                                           Hon. Audrey B. Collins
                  Plaintiff,                 Courtroom 680
14
          vs.                                FIRST AMENDED COMPLAINT
15                                           FOR:
    GARY CHARLES BONNER (aka
16  CHARLES GARY BONNER), an                 (1) BREACH OF CONTRACT;
    individual; ANN BONNER, an               (2) COPYRIGHT INFRINGEMENT
17  individual; LARISSA L. BONNER (aka           (17 U.S.C. § 101, *et seq.*)
    LEA BONNER, LARISSA L. GREEN,            (3) VIOLATION OF DIGITAL
18  LARISSA GREEN BONNER, LAURA                  MILLENNIUM COPYRIGHT
    LEA), an individual; JAMES BARR, an          ACT (17 U.S.C. § 1201);
19  individual; LARRY HAMAKER, an            (4) VIOLATION OF COMPUTER
    individual; KENDRA JENNINGS, an              FRAUD AND ABUSE ACT (18
20  individual; DYLAN JOSEPH, an                 U.S.C. § 1030);
    individual; CAHLEB MOSER, an            (5) VIOLATION OF CALIFORNIA
21  individual; NICOLE MUESBORN, an             PENAL CODE § 502; and
    individual; JAVIER RODRIGUEZ, an        (6) FRAUD
22  individual; CHRISTOPHER GRAHAM
    BONNER, an individual formerly sued      Complaint Filed: April 17, 2007
23  as DOE No. 1; MARCUS STERN, an
    individual formerly sued as DOE No.
24  2; MC TICKETS, INC., a Texas
    corporation formerly sued as DOE No.
25  3; and TICKET ATTRACTIONS OF
    HOUSTON INC. a Texas corporation
26  formerly sued as DOE No. 4, inclusive,

27                Defendants.

28

MANATT, PHELPS &
PHILLIPS, LLP      41125363.2
ATTORNEYS AT LAW
LOS ANGELES

53

EXHIBIT
B

1    Plaintiff Ticketmaster L.L.C. ("Ticketmaster") alleges the following

2  against defendants Gary Charles Bonner (aka Charles Gary Bonner), Ann Bonner,

3  Larissa L. Bonner (aka Lea Bonner, Larissa L. Green, Larissa Green Bonner, Laura

4  Lea), James Barr, Larry Hamaker, Kendra Jennings, Dylan Joseph, Cahleb Moser,

5  Nicole Muesborn, Javier Rodriguez, Christopher Graham Bonner, Marcus Stern,

6  MC Tickets, Inc. and Ticket Attractions of Houston Inc. (collectively,

7  "Defendants"):

8

9                       **JURISDICTION AND VENUE**

10    1.    This Court has subject matter jurisdiction over the federal claims

11  in this Complaint pursuant to 28 U.S.C. Sections 1331 and 1338(a), and has

12  jurisdiction over the other claims in this Complaint under California law pursuant to

13  28 U.S.C. Section 1367(a).

14    2.    This Court also has subject matter jurisdiction over this action

15  pursuant to 28 U.S.C. Section 1332. The amount in controversy, exclusive of

16  interest and costs, exceeds $75,000.

17    3.    Venue is proper in this Court pursuant to 28 U.S.C. Sections

18  1391(b) and 1400 in that a substantial part of the events giving rise to the claims

19  occurred in this judicial district and Ticketmaster's principal place of business is

20  within this judicial district. In addition, the Terms of Use which govern the

21  relationship between the parties provides for venue in state or federal court in Los

22  Angeles County for disputes relating to the purchase of tickets.

23

24                              **SUMMARY**

25    4.    Ticketmaster sells tickets for entertainment and sports events on

26  behalf of its clients to the general public through a variety of means, including

27  Ticketmaster's website, ticketmaster.com. The Terms of Use for Ticketmaster's

28  website prohibit, among other things, use of the website for commercial purposes,

ANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2                                    2

use of automated devices such as bots and spiders to search for and purchase tickets, excessive requests for web pages and other abusive uses of the site, and purchasing quantities of tickets that exceed stated per customer ticket limits. To maintain the integrity of its website and prevent abuse, Ticketmaster employs a variety of security features on its website, including a feature commonly known as CAPTCHA, which is designed to detect automated devices and prevent them from purchasing tickets.

5.     Since at least as early as 2003, Defendants have repeatedly and systematically employed automated devices to enter into and navigate through Ticketmaster's website and improperly procure thousands of tickets for the purpose of reselling them at a profit. Defendants have placed at least 12,000 orders through ticketmaster.com, resulting in the purchase of more than 41,000 tickets, and have surreptitiously attempted to conceal their identity by using a variety of credit cards and addresses.

6.     These deceptive and improper actions have harmed, and continue to harm, Ticketmaster as well as consumers who seek to lawfully purchase tickets through Ticketmaster's website. By using automated devices, which can navigate a website and complete transactions more quickly than human users can, Defendants deprive legitimate consumers of the opportunity to purchase tickets, a problem which Defendants compound by purchasing quantities of tickets far in excess of the contractual per customer ticket limits. As part of their misuse and abuse of Ticketmaster's website, Defendants improperly copy pages from the website and circumvent Ticketmaster's technological copy protection systems. Moreover, this misuse and abuse alters data on Ticketmaster's website, interferes with the operation of the website, deprives Ticketmaster of various revenue streams, and increases Ticketmaster's operational costs.

7.     Ticketmaster therefore asserts claims against Defendants for breach of contract, copyright infringement, violations of the federal Digital

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2

3

FIRST AMENDED COMPLAINT

1  Millennium Copyright Act, the federal Computer Fraud and Abuse Act, and the
2  California Penal Code Section 502, and fraud.  As relief, Ticketmaster seeks an
3  injunction, compensatory damages, punitive damages, disgorgement of Defendants'
4  ill-gotten gains, imposition of a constructive trust, and recovery of attorneys' fees
5  and costs incurred by Ticketmaster to prosecute this lawsuit.

6
7                                 **THE PARTIES**

8        8.     Plaintiff Ticketmaster L.L.C. is a Virginia limited liability
9  company with its principal place of business in the City of West Hollywood, Los
10  Angeles County, California.

11       9.     Ticketmaster is informed and believes, and based thereon
12  alleges, that defendant Gary Charles Bonner (aka Charles Gary Bonner) is an
13  individual who resides at 21 South High Oaks Circle, Woodlands, Texas 77380.

14       10.    Ticketmaster is informed and believes, and based thereon
15  alleges, that defendant Ann Bonner is an individual who resides at 403 Hickory
16  Street, Springhill, Louisiana 71075.

17       11.    Ticketmaster is informed and believes, and based thereon
18  alleges, that defendant Larissa L. Bonner (aka Lea Bonner, Larissa L. Green,
19  Larissa Green Bonner, Laura Lea) is an individual who resides at 3434 Hickory
20  Hollow, The Woodlands, Texas 77380.

21       12.    Ticketmaster is informed and believes, and based thereon
22  alleges, that defendant James Barr is an individual who resides at 3864 Laura Leigh
23  Drive, Friendswood, Texas 77546.

24       13.    Ticketmaster is informed and believes, and based thereon
25  alleges, that defendant Larry Hamaker is an individual who resides at 21 South
26  High Oaks Circle, Woodlands, Texas 77380.

27
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2                          4

FIRST AMENDED COMPLAINT

14. Ticketmaster is informed and believes, and based thereon alleges, that defendant Kendra Jennings is an individual who resides at 5508 Shadywood Lane, De Walt, Texas 77479.

15. Ticketmaster is informed and believes, and based thereon alleges, that defendant Dylan Joseph is an individual who resides at 21 South High Oaks Circle, Woodlands, Texas 77380.

16. Ticketmaster is informed and believes, and based thereon alleges, that defendant Cahleb Moser is an individual who resides at 21 South High Oaks Circle, Woodlands, Texas 77380.

17. Ticketmaster is informed and believes, and based thereon alleges, that defendant Nicole Meusborn is an individual who resides at 21 South High Oaks Circle, Woodlands, Texas 77380.

18. Ticketmaster is informed and believes, and based thereon alleges, that defendant Javier Rodriguez is an individual who resides at 12739 Tammarack Drive, Houston, Texas 77013.

19. Ticketmaster is informed and believes, and based thereon alleges, that defendant Christopher Graham Bonner, who was sued in the original Complaint as DOE No. 1, is an individual who resides in Woodlands, Texas.

20. Ticketmaster is informed and believes, and based thereon alleges, that defendant Marcus Stern, who was sued in the original Complaint as DOE No. 2, is an individual who resides in Houston, Texas.

21. Defendant MC Tickets, Inc. ("MC Tickets"), which was sued in the original Complaint as DOE No. 3, is a Texas corporation with its principal place of business in Houston, Texas. Ticketmaster is informed and believes, and based thereon alleges, that MC Tickets is owned by defendants Christopher Graham Bonner and Marcus Stern and that MC Tickets sells tickets to events through a variety of websites, including www.anytickets.com.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2

5

FIRST AMENDED COMPLAINT

57

22. Defendant Ticket Attractions of Houston Inc. ("Ticket Attractions"), which was sued in the original Complaint as DOE No. 4, is a Texas corporation with its principal place of business in Houston, Texas. Ticketmaster is informed and believes, and based thereon alleges, that Ticket Attractions is owned in whole or in part by defendant James Barr, and that Ticket Attractions sells tickets to events through its website, www.tatickets.com.

23. Ticketmaster is informed and believes that at all times mentioned herein, each Defendant was and is an agent and employee of each other Defendant, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment and with the knowledge, consent and approval of every other Defendant.

24. Ticketmaster is informed and believes that at all times mentioned herein, each Defendant conspired with, acted in concert and active participation with, and aided and abetted every other Defendant in committing the wrongful acts alleged in this Complaint. Ticketmaster is further informed and believes that each of the Defendants knew, or consciously avoided knowing, that the other Defendants were engaged or intended to engage in conduct that violated Ticketmaster's rights and also violated federal and California law.

## FACTS

A. **Ticketmaster Attempts To Make Its Ticketing System As Fair And Equitable As Possible For Consumers.**

25. Ticketmaster distributes tickets for live entertainment events to the general public on behalf of Ticketmaster's clients, who are venues, promoters, entertainers and sports franchises. Ticketmaster sells tickets via retail ticket outlets, telephone call centers, and Ticketmaster's website, www.ticketmaster.com. Ticketmaster spends substantial time, energy and resources attempting to ensure

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2

6

FIRST AMENDED COMPLAINT

58

1    that its website is current, accurate and easily understood for the benefit of its
2    clients and the public.

3          26.   Demand for tickets sold through Ticketmaster, including via
4    ticketmaster.com, often exceeds the supply of tickets available for purchase. This
5    can inspire intense competition among consumers to purchase tickets to the same
6    event when the tickets become available for sale on ticketmaster.com.

7          27.   Recognizing this competitive reality, Ticketmaster has
8    undertaken various measures to make the ticket buying process as fair and equitable
9    as possible for consumers. For example, Ticketmaster attempts to regulate the
10   speed with which users may copy the web pages necessary to purchase tickets on
11   ticketmaster.com. Ticketmaster also limits the number of tickets that may be
12   purchased in any single transaction.

13         28.   In addition, Ticketmaster has undertaken measures intended to
14   prevent the use of computer programs or other automated devices—sometimes
15   called software robots or "bots"—which can give users of such devices an unfair
16   advantage over human consumers in the ticket purchasing process. One of those
17   measures is a security computer program, commonly known as CAPTCHA
18   ("Completely Automated Public Turing test to tell Computers and Humans Apart"),
19   that is designed to distinguish between human users and automated devices. When
20   a user submits a ticket request, a box appears on the screen with random characters
21   partially obscured behind hash marks, which the user is instructed to retype in order
22   to proceed with the ticket request. Most automated devices cannot decipher and
23   retype the random characters, and thus cannot proceed past that screen to complete
24   a ticket transaction.

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2

7

FIRST AMENDED COMPLAINT

59

**B.   Use Of Ticketmaster's Website Is Subject To Copyright Protections And Contractual Terms Of Use.**

29.   Ticketmaster's website is a work of authorship protected by copyright law.   Ticketmaster (or its predecessors) has registered versions of its website or portions thereof, with the Copyright Office, as described below:

| Title | Registration No. | Date of Registration |
|---|---|---|
| HTML code for Ticketmaster.com | TX-4-465-209 | February 5, 1997 |
| Ticketmaster.com Website II | TX-4-905-957 | June 18, 1999 |
| Ticketmaster.com Website III | TX-4-905-956 | June 18, 1999 |
| Ticketmaster.com | TX-5-072-126 | March 17, 2000 |
| Ticketmaster.com: Online Order Search | TX-5-067-039 | May 30, 2000 |
| Ticketmaster.com: Order Information | TX-5-067-040 | May 30, 2000 |
| Ticketmaster.com | TX-5-455-574 | December 29, 2000 |
| Ticketmaster.com Website Homepage, Event Ticket Order Pages | TXu-1-348-580 | May 22, 2007 |
| Event Ticket Order Validation Code | TXu-1-348-581 | May 22, 2007 |
| Event Ticket Order Limiting Code | TXu-1-348-582 | May 22, 2007 |

30.   Use of ticketmaster.com by any member of the public is governed by Terms of Use that are set forth on the website.  In all relevant respects, except for the inclusion of a liquidated damages provision in 2006, these Terms of Use have been the same from at least as early as 2003 to the present.  (A copy of Ticketmaster's current Terms of Use is attached hereto as Exhibit "A.")

31.   At all relevant times, the home page for ticketmaster.com has contained the following warning:

1

Use of this website is subject to express <u>terms of use</u>
which prohibit commercial use of this site. By continuing
past this page, you agree to abide by these terms.

2

3 The underlined phrase "<u>terms of use</u>" on the home page is a readily visible

4 hypertext link that, when clicked, causes the full Terms of Use to appear on the

5 user's screen. The same message and related hyperlink to Ticketmaster's Terms of

6 Use appear on almost every webpage on the website. Thus, a user is repeatedly

7 reminded that use of the site is governed by the Terms of Use, and that continuing

8 to use the site with that knowledge constitutes acceptance of those Terms of Use.

9      32.    To purchase tickets through ticketmaster.com, a user must set up

10 an account with Ticketmaster, and in doing so the user is instructed to review the

11 Terms of Use for the website. Since 2003, it has been necessary as part of the

12 account set-up procedure for the user to expressly consent to the Terms of Use by

13 clicking a button labeled "Accept and Continue." (A copy of the webpage with the

14 "Accept and Continue" button as part of the account set-up procedure is attached

15 hereto as Exhibit "B.")

16      33.    Users of ticketmaster.com also are referred to the Terms of Use

17 when completing a ticket purchase. Users see a web page which states, "As a user

18 of this website, you agree that you are subject to this website's Terms of Use," and

19 embedded in this statement is a hyperlink that, when clicked, causes the Terms of

20 Use to appear on the user's screen. During 2006, Ticketmaster added an "Accept

21 and Continue" button at the point of purchase, which requires a user, before

22 completing a ticket purchase, to expressly assent to the Terms of Use by clicking a

23 button labeled "Accept and Continue." (A copy of the webpage with the "Accept

24 and Continue" button as part of the ticket purchase procedure is attached hereto as

25 Exhibit "C.")

26      34.    Consumers   who   wish   to   purchase   tickets   through

27 ticketmaster.com must navigate through a series of pages on the website by clicking

28 on designated hypertext links on those pages. Viewing Ticketmaster's homepage

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2

9

FIRST AMENDED COMPLAINT

6l

1    and clicking on the hyperlinks to reach the various other pages that must be viewed

2    to purchase tickets from the website causes copies of each of those pages to be

3    created and to appear on a customer's computer.  Ticketmaster's Terms of Use act

4    as a license agreement that describes, *inter alia*, when and in what circumstances a

5    user is permitted to copy pages of the website, especially those pages that must be

6    viewed to purchase tickets.

7            35.   At all relevant times the Terms of Use have permitted only

8    personal use of the Ticketmaster.com website by consumers, as follows:

9               **Permitted Use:**  You agree that you are only authorized
10              to visit, view and retain a copy of pages of this site for
                your own personal use. . . unless otherwise specifically
11              authorized by Ticketmaster to do so.

12           36.   At all relevant times the Terms of Use have included a variety of

13   provisions that prohibit misuse of the website.  For example, the Terms of Use have

14   always prohibited commercial use of Ticketmaster's website, providing in pertinent

15   part as follows:

16              **Commercial Use:** No. . . areas of this site may be used
                by our visitors for any commercial purposes. . .  Without
17              limiting the foregoing, you may not use this site to resell
                tickets of any kind [except as permitted on the site
18              itself]. . .We reserve the right to block access to this Site
                or Ticketmaster's other services, or cancel a ticket order or
19              ticket with respect to any person believed to be, or
                believed to be acting in concert with any person who is
20              believed to be, violating the law or these Terms or
                Ticketmaster's rights, or utilizing automated means to
21              process or place ticket orders, or who has ordered a
                number of tickets that exceeds the stated limit.  Violating
22              any limitations or terms on the Site will be deemed to be a
                violation of these Terms.
23

24           37.   At all relevant times, the Terms of Use have expressly

25   prohibited the use of bots and other automated means to access ticketmaster.com.

26   In that regard, the Terms of Use provide in pertinent part as follows:

27              **Access and Interference:**  You agree that you will not
                use any robot, spider or other automatic device, process or
28              means to access the Site. . . .  You agree that you will not

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2

10

FIRST AMENDED COMPLAINT

access, reload or "refresh" transactional event or ticketing pages, or make any other request to transactional servers, more than once during any three second interval.

38. Similarly, at all relevant times, the Terms of Use have prohibited the unauthorized use of the site, providing in pertinent part as follows:

**Unauthorized Use of the Site:** Any Illegal or unauthorized use of the Site shall constitute a violation of these Terms of Use. You do not have permission to access the Site in any way that violates, or in the course of violating, these Terms of Use. Illegal or unauthorized use of the Site includes, but is not limited to, using the site to facilitate illegal ticket sales, unauthorized framing of or linking to the Site, or unauthorized use of any robot, spider or other automated process on the Site. It shall also be a violation of these Terms of Use: (a) for any individual (or group of individuals acting in concert) to request, more than 1000 pages of the Site in any twenty-four hour period (hereafter referred to as "Abusive Use") .
. . .

39. Furthermore, the Terms of Use limit the number of tickets that a consumer may purchase in a single transaction. At all relevant times, the Terms of Use have contained a hyperlink to, and have expressly incorporated, Ticketmaster's Purchase Policy. The hyperlink to Ticketmaster's Purchase Policy is easily visible and readily accessible under a heading in the Terms of Use which states "Ticket Purchase Policy." Immediately below this heading in the Terms of Use is the following statement: "Please review the Purchase Policy, which will govern your order or purchase of any tickets through the Site." Clicking on the "Purchase Policy" hyperlink causes the full Purchase Policy to appear on the user's screen.

40. At all relevant times, the Purchase Policy on Ticketmaster's website has stated as follows:

**Amount of Tickets Per Customer or Ticket Limits.** When purchasing tickets on Ticketmaster.com, you are limited to a specified number of tickets for each event (also known as a "ticket limit"). This amount is included on the unique event page and is verified with every transaction. This policy is in effect to discourage unfair ticket buying practices.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2

1   41.   In sum, at all relevant times, the Terms of Use, including the
2   Purchase Policy, have prohibited users from, among other things, using the
3   Ticketmaster website for commercial purposes, using bots and other automated
4   devices to access and navigate the site and conduct transactions, abusing the
5   Ticketmaster system with excessive requests for web pages, and purchasing tickets
6   in excess of the per customer ticket limit.

7   **C.   Defendants Have Been Systematically Misusing And Abusing
8   Ticketmaster's Website Since At Least As Early As 2003.**

9   42.   Ticketmaster is informed and believes that, since at least as early
10   as 2003, Defendants have been using automated devices to navigate through
11   ticketmaster.com and purchase large quantities of tickets.   During this time,
12   Defendants have placed at least 12,887 orders for tickets through Ticketmaster's
13   website, resulting in the purchase of at least 41,149 tickets.   Ticketmaster is
14   informed and believes that many of these purchases involved quantities in excess of
15   stated per customer ticket limits.   Ticketmaster is further informed and believes that
16   most if not all of these tickets were purchased for the commercial purpose of
17   reselling them for a profit through a variety of means, including websites such as
18   anytickets.com that are operated by MC Tickets.

19   43.   In the course of using these automated devices, Defendants
20   repeatedly and systematically requested more than 1000 pages of the website in
21   applicable twenty-four hour periods, and Defendants accessed, reloaded or
22   refreshed transactional events or ticketing pages and made other requests to
23   transactional servers more than once during applicable three-second intervals.   As
24   just one recent example, on May 21, 2007, Defendants made more than 425,451
25   ticket requests to ticketmaster.com in a single day.

26   44.   Defendants had ample opportunity to review Ticketmaster's
27   Terms of Use, and they repeatedly assented to those terms, expressly as well as
28   impliedly.   Ticketmaster is informed and believes that Defendants not only

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2
12
FIRST AMENDED COMPLAINT

1  expressly assented to the Terms of Use when setting up various online accounts, but
2  that collectively they visited the website at least 12,887 times since 2003, and
3  during each visit they have been reminded of the Terms of Use and have been
4  invited to review them. Moreover, since mid-2006, Defendants have expressly
5  reaffirmed their assent to the Terms of Use when completing purchases of tickets.

6      45.    Although most automated devices cannot decipher and retype
7  the random characters generated by the CAPTCHA security program on
8  ticketmaster.com, and thus cannot proceed past that screen to complete a ticket
9  transaction, some automated devices are designed to circumvent CAPTCHA, and
10  Ticketmaster is informed and believes that Defendants have been using such
11  devices since at least as early as 2003.

12      46.    The Ticketmaster system sometimes can detect the presence of
13  an automated device. When that occurs, the system generates a message to the user
14  explaining that the use of automated devices is prohibited. Ticketmaster is
15  informed and believes that its system has generated such messages in response to
16  automated devices used by Defendants, but that Defendants have ignored the
17  messages and continued to use automated devices to navigate through the
18  Ticketmaster website and wrongfully acquire tickets.

19      47.    The Ticketmaster system also can temporarily disable an
20  automated device when such a device is detected. Ticketmaster is informed and
21  believes that its system has from time to time temporarily disabled automated
22  devices used by Defendants. However, Ticketmaster is informed and believes that
23  in each such occurrence, Defendants deployed a new automated device from a
24  different IP address (Internet Protocol address) and continued with their
25  unauthorized use of the Ticketmaster system.

26      48.    Ticketmaster diligently tries to identify users of bots and other
27  prohibited automated devices, but some users of these devices go to great lengths to
28  hide their tracks. Ticketmaster is informed and believes that, since 2003,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2                    13

FIRST AMENDED COMPLAINT

1   Defendants have used at least 35 different credit cards and 34 different email
2   addresses to purchase tickets from Ticketmaster.   In addition, Ticketmaster is
3   informed and believes that Defendants systematically removed data from the
4   computers they use to access ticketmaster.com, such as by cleaning out the
5   "cookies" on the computers, in a further attempt to elude identification by
6   Ticketmaster as repeat visitors to the site.

7       49.   Thus, it was not until quite recently that Ticketmaster was able
8   to assemble the information necessary to link Defendants with all of these ticket
9   purchases and the related use of prohibited automated devices.

10

11  **D.   The Misuse And Abuse Has Harmed Ticketmaster's Website And Operations.**

12      50.   Ticketmaster has been harmed by the use of automated devices
13  by Defendants and others.   To meet the demands of consumers and Ticketmaster's
14  own clients, Ticketmaster must provide an equitable ticket distribution system that
15  gives all consumers a fair opportunity to acquire the best available tickets for
16  events.   The use of automated devices undermines this effort, because automated
17  devices can navigate through Ticketmaster's website and purchase tickets at a speed
18  that legitimate consumers who do not use such devices cannot match.   As a result,
19  the inventory of tickets available to consumers who do not use such devices is
20  substantially diminished, which has led some consumers to question Ticketmaster's
21  ability to ensure a level playing field for the purchase of tickets.

22      51.   This harm is compounded by the fact that Defendants and other
23  users of automated devices inundate the Ticketmaster system with thousands of
24  requests for tickets, and each request causes tickets to be placed temporarily on
25  reserve, even if they are not ultimately purchased.   While a ticket is on reserve, it is
26  unavailable to any other user of the site.   Not only does this further diminish the
27  inventory of tickets for legitimate consumers, but it impedes Ticketmaster's ability
28  to provide an important service to its clients.   Clients use the Ticketmaster system

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2

14

FIRST AMENDED COMPLAINT

66

1  to monitor ticket sales activity to make a variety of decisions, including whether to
2  open more seats or move the seats to other distribution channels.  The artificially
3  high volume of seats revolving in and out of reserve status due to the use of
4  automated devices makes it difficult to gauge how well tickets for the event are
5  actually selling, which in turn interferes with the clients' ability to make the
6  ongoing decisions that are based on sales activity.

7       52.    Users of automated devices, including Defendants, also block
8  access to the Ticketmaster system by legitimate consumers in a variety of other
9  ways.  For example, Ticketmaster's website allocates traffic to various servers
10  through a load balancing program that is designed to ensure consumer requests are
11  processed equitably and that no consumer receives slower service merely because
12  his or her request was directed to one server rather than another.  However, users of
13  automated devices bypass the load balancing program and target specific servers
14  directly with thousands of requests, thus interfering with the website's traffic
15  allocation feature and putting some consumers whose requests were allocated to the
16  same server that was targeted by the automated device at risk of slower service.

17       53.    In addition, users of automated devices such as Defendants
18  deprive Ticketmaster of revenue and revenue opportunities in a variety of ways.
19  Ticketmaster's website is part of a carefully crafted business model that integrates
20  other services and features into the ticket purchasing process.  The website is
21  designed so that users will follow certain steps and will see certain pages in the
22  process of requesting and purchasing tickets.  Based on this expected flow of
23  traffic, clients, advertisers and Ticketmaster itself offer particular services or
24  opportunities on particular pages, ranging from parking at the event to signing up
25  for client newsletters.  However, automated devices, which do not use traditional
26  browsers, bypass the HTML code for these features, so the users of those devices
27  never even see these offers.  These same offenders further exacerbate the problem
28  by purchasing enormous quantities of tickets, which diminishes the ticket inventory

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2                                    15
                        FIRST AMENDED COMPLAINT

1   for legitimate consumers and reduces the number of legitimate consumers who will
2   reach the pages that provide these up-sell opportunities.

3         54.    Furthermore, by accessing the Ticketmaster system at targeted
4   points, automated devices alter the security features of the website itself. Normally,
5   users receive automatic and temporary permission—in effect, a token—to make
6   requests on the system. That token is automatically revoked if the pace of requests
7   exceeds a certain limit. However, by systematically deleting cookies on the user's
8   system, automated devices enable the user to constantly assume a new identity and
9   acquire new tokens even though that same user is far exceeding the request limit.

10        55.    All of these problems involve, in one way or another, alteration
11   of the Ticketmaster system and deletion, destruction and alteration of data on the
12   system.

13        56.    The use of automated devices diverts resources from the service
14   of legitimate consumers. Ticketmaster must take extraordinary actions to enhance
15   the website infrastructure so it can support all of the activity on its website,
16   including all of the artificial and inflated activity generated by the automated
17   devices, and otherwise ensure the ongoing integrity of the website in the face of this
18   onslaught of devices.    The use of these prohibited devices also significantly
19   increases the costs of data storage, troubleshooting and system maintenance.

20

21                     **FIRST CLAIM FOR RELIEF**
22                     **Breach Of Contract**
23                **(Against All Defendants)**

24        57.    Ticketmaster alleges and incorporates by reference all of the
25   preceding paragraphs.

26        58.    At all relevant times, the home page and most other pages on
27   ticketmaster.com have informed users that their use of the website is subject to
28   express terms and conditions set forth in the Terms of Use, and that by continuing

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2        16

FIRST AMENDED COMPLAINT
68

1    past the page in question, the user expressly and/or impliedly agrees to be bound by
2    those terms. Users have a reasonable opportunity to review the Terms of Use upon
3    first entering the website, and they also have a reasonable opportunity to review the
4    Terms of Use during their use of the site. The link to the Terms of Use is displayed
5    in such a manner as to provide consumers with clear notice of their existence.

6         59.    Ticketmaster is informed and believes that Defendants, acting
7    for themselves, for each other, and for MC Tickets and Ticket Attractions,
8    expressly assented to the Terms of Use when setting up accounts on
9    ticketmaster.com. Moreover, since the middle of 2006, Defendants have been
10   required to expressly assent to the Terms of Use each time they submit a request to
11   purchase tickets. Thus, Defendants, acting for themselves, for each other, and for
12   MC Tickets and Ticket Attractions, have repeatedly provided their express assent to
13   the Terms of Use.

14        60.    The Terms of Use prohibit, among other things, commercial use
15   of the site, the use of bots and other automated devices, abusive use of the website,
16   and exceeding per-customer ticket limits. These Terms of Use are fair and
17   reasonable.

18        61.    Ticketmaster has performed all conditions, covenants and
19   promises required to be performed by it in accordance with the Terms of Use.

20        62.    Since at least as early as 2003, Defendants have repeatedly and
21   systematically breached the Terms of Use by using bots and other automated
22   devices to access the website and buy tickets, by using the website for a commercial
23   purpose, and by buying tickets in quantities that exceed per customer ticket limits.
24   As part of this misuse of Ticketmaster's website, Defendants repeatedly and
25   systematically requested more than 1000 pages of the website in applicable twenty-
26   four hour periods, and accessed, reloaded or refreshed transactional events or
27   ticketing pages and made other requests to transactional servers more than once
28   during applicable three-second intervals.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2                              17

FIRST AMENDED COMPLAINT

69

63.   It can be impracticable and extremely difficult to ascertain the damages from abusive use of Ticketmaster's website.   Therefore, Ticketmaster made a reasonable attempt at a formula for calculating the damages caused by abusive use of its website, and in early 2006 Ticketmaster added a liquidated damages provision to the Terms of Use that includes this formula.  The liquidated damages provision states in pertinent part as follows:

> You agree that Abusive Use of the Site, as defined above, causes damage and harm to Ticketmaster in the form of, among other things, impaired goodwill, lost sales, and increased expenses associated with responding to Abusive Use of the Site. You further agree that monetary damages for Abusive Use of the Site are difficult to ascertain and that proof of monetary damages for Abusive Use would be costly and inconvenient to calculate. Accordingly you agree that liquidated damages are warranted for Abusive Use. Therefore, you agree that if you, or others acting in concert with you, alone or collectively request more than 1000 pages of the Site in any twenty-four hour period, you, and those acting in concert with you, will be jointly and severally liable for liquidated damages in the amount of ten dollars ($10.00) per page request each time that a page request is made after that first 1000 during that twenty-four hour period.

64.   Ticketmaster is entitled to liquidated damages in accordance with the foregoing provision, in an amount to proven at trial when the full extent of Defendants' requests for pages on Ticketmaster's website is ascertained.   In addition, Ticketmaster is entitled to compensatory damages, in an amount to be proven at trial, for breaches of the Terms of Use that occurred before the liquidated damages provision was added to the Terms of Use, and as an alternative to liquidated damages should the liquidated damages provision be unenforceable for any reason.

65.   The Terms of Use also provide that Ticketmaster is entitled to injunctive relief to enjoin violations of the Terms of Use.  At all relevant times the Terms of Use have provided in pertinent part as follows: "You agree that monetary damages may not provide a sufficient remedy to Ticketmaster for violations of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2

18

FIRST AMENDED COMPLAINT

70

1    these Terms and you consent to injunctive or other equitable relief for such

2    violations."

3          66.    Defendants' conduct has significantly and irreparably damaged

4    Ticketmaster and will continue to do so unless restrained by this Court.  Thus, in

5    addition to liquidated damages and other damages for abusive use of its website,

6    Ticketmaster is entitled to the preliminary and permanent injunctive relief prayed

7    for in this Complaint.

8

9    <div align="center">**SECOND CLAIM FOR RELIEF**</div>

10   <div align="center">**Copyright Infringement**</div>

11   <div align="center">**(Against All Defendants)**</div>

12         67.    Ticketmaster alleges and incorporates by reference all of the

13   preceding paragraphs.

14         68.    Ticketmaster owns valid U.S. Copyright registrations in its

15   website and specific portions thereof.

16         69.    In using bots, programs, or other automatic devices on the

17   ticketmaster.com website to acquire tickets for the commercial purpose of reselling

18   them, Defendants have acted in excess of the terms of the license agreement created

19   by Ticketmaster's Terms of Use, and thereby copied or caused to be copied without

20   authorization pages from the ticketmaster.com site and other original elements of

21   Ticketmaster's copyrighted website.

22         70.    As a proximate result of Defendants' copyright infringement,

23   Ticketmaster suffered significant damage in an amount not presently known with

24   certainty, but which will be proven at trial.  Further, Ticketmaster is suffering

25   irreparable harm because of Defendants' infringing activity.

26         71.    Ticketmaster is entitled to the range of relief provided by

27   17 U.S.C. Sections 502-505, including injunctive relief, an order for the

28   impounding and destruction of all copies of all bots, programs, or other automatic

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2

19

FIRST AMENDED COMPLAINT

7l

1  devices used by Defendants to violate Ticketmaster's rights, compensatory
2  damages in an amount to be determined, statutory and punitive damages, and its
3  costs and attorneys' fees.

## THIRD CLAIM FOR RELIEF

### Violation Of Digital Millennium Copyright Act, 17 U.S.C. § 1201

### (Against All Defendants)

72.    Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

73.    Ticketmaster is informed and believes that Defendants are using bots, programs, or other technology, products, services, devices, components, or parts thereof, that are primarily designed and produced to circumvent the technological measures by which Ticketmaster effectively controls access to its copyrighted website.

74.    Ticketmaster is informed and believes that these bots, programs, or other technical devices have no commercially significant purpose or use other than to circumvent the technological measures that Ticketmaster uses to control access to its website, and that Defendants are using those devices with knowledge of that improper purpose.

75.    Ticketmaster has suffered significant damages in an amount not presently known with certainty, but which will be proven at trial, as a proximate result of Defendants' above-referenced misconduct.

76.    Ticketmaster is entitled to the range of relief provided by 17 U.S.C. Sections 1201-1203, including injunctive relief, compensatory or statutory damages, and its costs and attorneys' fees in an amount to be proven at trial.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2

20

FIRST AMENDED COMPLAINT

## FOURTH CLAIM FOR RELIEF

### Violation Of Computer Fraud And Abuse Act, 18 U.S.C. § 1030

#### (Against All Defendants)

77.     Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

78.     Ticketmaster's computers are involved in interstate and foreign communication.

79.     Defendants intentionally accessed Ticketmaster's computers without authorization or in excess of authorized access, and, through interstate or foreign communication, obtained information from those computers, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C).  As a result of this conduct, Ticketmaster sustained economic damages of at least $5,000 over a one-year period.

80.     Furthermore, Defendants knowingly, and with intent to defraud, accessed Ticketmaster's computers without authorization or in excess of authorized access, and by means of such conduct furthered their intended fraud and obtained items of value greater than $5,000 over a one-year period, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

81.     As alleged in more detail in Paragraphs 50-56 above, these violations have damaged Ticketmaster by, among other things, diminishing the inventory of tickets available through Ticketmaster to legitimate consumers, causing artificially high levels of tickets to be placed on reserve and thereby interfering with the transmission of real time sales information to Ticketmaster's clients, interfering with and disrupting Ticketmaster's load balancing program and thereby denying service to legitimate consumers, bypassing required website entry and exit points, which directly and indirectly reduces integral revenue opportunities, altering website security features through manipulation of request limit monitoring, requiring Ticketmaster to undertake extraordinary actions to

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2                                    21

FIRST AMENDED COMPLAINT

73

1    monitor and enhance website infrastructure, and significantly increasing costs of
2    data storage, troubleshooting and system maintenance.

3              82.    Under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g),
4    Ticketmaster is entitled to an injunction, damages, and other legal and equitable
5    relief as prayed for in this Complaint.

6

7                         **FIFTH CLAIM FOR RELIEF**
8                  **Violation Of California Penal Code § 502**
9                         **(Against All Defendants)**

10             83.    Ticketmaster alleges and incorporates by reference all of the
11   preceding paragraphs.

12             84.    On a repeated and systematic basis, Defendants have knowingly
13   accessed Ticketmaster's website in violation of the Terms of Use and thus without
14   permission, in violation of California Penal Code Section 502(c)(7).

15             85.    Furthermore, Defendants have knowingly used, or caused to be
16   used, Ticketmaster's computer services without permission, in violation of
17   California Penal Code Section 502(c)(3).

18             86.    Furthermore, Ticketmaster is informed and believes that
19   Defendants have knowingly and without Ticketmaster's permission provided, or
20   assisted in providing, a means of accessing Ticketmaster's website, in violation of
21   California Penal Code Section 502(c)(6).

22             87.    Furthermore, Defendants have without permission taken data
23   from Ticketmaster's computer system and computer service and have used the data
24   on that system to wrongfully obtain tickets, in violation of California Penal Code
25   Sections 502(c)(1) and (2).

26             88.    Furthermore, through their repeated and systematic use of bots
27   and other automated devices in violation of the Terms of Use, Defendants have
28   knowingly and without permission disrupted Ticketmaster's computer services and

ANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2

1    have caused the denial of those services to authorized users of the computer system,

2    in violation of California Penal Code Section 502(c)(5).

3          89.    As alleged in more detail in Paragraphs 50-56 above, these

4    violations have damaged Ticketmaster by, among other things, diminishing the

5    inventory of tickets available through Ticketmaster to legitimate consumers,

6    causing artificially high levels of tickets to be placed on reserve and thereby

7    interfering with the transmission of real time sales information to Ticketmaster's

8    clients, interfering with and disrupting Ticketmaster's load balancing program and

9    thereby denying service to legitimate consumers, bypassing required website entry

10   and exit points, which directly and indirectly reduces integral revenue

11   opportunities, altering website security features through manipulation of request

12   limit monitoring, requiring Ticketmaster to undertake extraordinary actions to

13   monitor and enhance website infrastructure, and significantly increasing costs of

14   data storage, troubleshooting and system maintenance.

15         90.    Pursuant to California Penal Code Section 502(e), Ticketmaster

16   is entitled to an injunction, compensatory and punitive damages, attorneys' fees,

17   and other legal and equitable relief as prayed for in this Complaint.

18         91.    Defendants have acted with oppression, fraud and malice toward

19   Ticketmaster, entitling Ticketmaster to an award of punitive damages in an amount

20   sufficient to deter them from future misconduct.

21

22                      **SIXTH CLAIM FOR RELIEF**

23                              **Fraud**

24                      **(Against All Defendants)**

25         92.    Ticketmaster alleges and incorporates by reference all of the

26   preceding paragraphs.

27         93.    Defendants have repeatedly accessed Ticketmaster's website,

28   and in proceeding to use the website, represented to Ticketmaster that they would

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

411253363.2

23

1  comply with the Terms of Use, and thus that they would not, among other things,
2  use the site for commercial purposes, use bots or other automated devices, abuse the
3  website, or exceed per-customer ticket limits.

4       94.    Ticketmaster is informed and believes that Defendants, acting
5  for themselves, for each other, and for MC Tickets and Ticket Attractions, clicked
6  the "Accept and Continue" button on Ticketmaster's website when setting up online
7  accounts, thereby expressly representing to Ticketmaster that they would comply
8  with the Terms of Use for the website, and thus that they would not, among other
9  things, use the site for commercial purposes, use bots or other automated devices,
10  abuse the website, or exceed per-customer ticket limits.

11      95.    In addition, since 2006, Defendants, acting for themselves, for
12  each other, and for MC Tickets and Ticket Attractions, have been required to click
13  the "Accept and Continue" button on Ticketmaster's website when completing
14  purchases of tickets, thereby expressly representing to Ticketmaster that they would
15  comply with the Terms of Use for the website, and thus that they would not, among
16  other things, use the site for commercial purposes, use bots or other automated
17  devices, abuse the website, or exceed per-customer ticket limits.

18      96.    Each and every such representation was false. Ticketmaster is
19  informed and believes that every time Defendants accessed and used the website,
20  and every time Defendants clicked the Accept and Continue button, they intended
21  to, and did, violate the Terms of Use as described above, individually, for each
22  other, and on behalf of MC Tickets and Ticket Attractions. Moreover, Ticketmaster
23  is informed and believes that every time Defendants accessed and used
24  Ticketmaster's website, they concealed from Ticketmaster their true intent to
25  violate the Terms of Use. In addition, in an attempt to disguise the fact of so many
26  purchases originating from the same source, Defendants misrepresented their
27  identities when interacting with the Ticketmaster website and making many of the
28  ticket purchases at issue.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2                                    24

                                    FIRST AMENDED COMPLAINT

1    97.    Ticketmaster relied on each such representation and omission by
2    providing the information and services available on the website to Defendants,
3    including the sale to Defendants of substantial quantities of tickets.

4    98.    Ticketmaster's reliance was reasonable. Defendants, acting for
5    themselves, for each other, and for MC Tickets and Ticket Attractions, received
6    ample notice of the Terms of Use every time they accessed and used the website,
7    and it has been necessary for them to click the Accept and Continue button both
8    when setting up online accounts and when completing a ticket purchase.

9    99.    As a result of Defendants' fraudulent representations and
10   omissions, Ticketmaster sold tickets to Defendants that Ticketmaster otherwise
11   could have sold to legitimate users of the site but was unable to due to Defendants'
12   misconduct.

13   100.   As a proximate result of this fraudulent misconduct,
14   Ticketmaster has been damaged in an amount to be proved at trial.

15   101.   Ticketmaster is informed and believes that Defendants' conduct
16   was undertaken with the intent to injure Ticketmaster, or with a willful and
17   conscious disregard of Ticketmaster's rights, and constitutes clear and convincing
18   evidence of oppression, fraud and malice under California Civil Code Section 3294.
19   As a result, Ticketmaster is entitled to an award of punitive damages against
20   Defendants in an amount sufficient to deter them from future misconduct.

21
22   WHEREFORE, Ticketmaster respectfully requests that the Court:

23   1.    Enjoin all Defendants from:

24   a. infringing or assisting any other person in infringing
25   Ticketmaster's rights in its copyrighted ticketmaster.com website works as set forth
26   herein by copying pages from that website in excess of the scope of the license
27   granted by the ticketmaster.com Terms of Use;

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2

25

FIRST AMENDED COMPLAINT

1          b. trafficking in or using any bots, programs or other

2   technology, products, services, devices, components, or parts thereof to circumvent

3   the technological measures by which Ticketmaster controls access to its website;

4          c. accessing, visiting, purchasing tickets on, facilitating the

5   purchase of tickets on, or otherwise using ticketmaster.com for any purpose that is

6   in excess of the agreement formed by the Terms of Use by which users are

7   permitted to visit that website;

8          d. using, or causing, urging or assisting any other person to use,

9   automated means such as bots to access Ticketmaster's website;

10          e. using, or causing, urging or assisting any other person to use,

11   any program that is designed to circumvent security measures such as CAPTCHA

12   to attempt to access Ticketmaster's website;

13          f. soliciting the design, purchase, sale or use of any program or

14   device that is designed to provide an automated means of accessing Ticketmaster's

15   website or that is designed to circumvent security measures such as CAPTCHA on

16   Ticketmaster's website;

17          g. purchasing, selling, transferring or acquiring any program or

18   device that is designed to provide an automated means of accessing Ticketmaster's

19   website or that is designed to circumvent security measures such as CAPTCHA on

20   Ticketmaster's website;

21          h. accessing or using Ticketmaster's website for any

22   commercial purpose whatsoever;

23          i. abusing Ticketmaster's website in any way, such as

24   exceeding limits in the Terms of Use for requesting web pages and making requests

25   to transactional servers more than once during any three-second interval;

26          j. purchasing tickets in excess of per customer ticket limits; and

27          k. reselling any tickets obtained through Ticketmaster that were

28   not obtained legitimately in accordance with the Terms of Use;

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2

26

FIRST AMENDED COMPLAINT

78

1   2. Order that Defendants be required to:

2    a. account for, hold in constructive trust, pay over to

3 Ticketmaster, and otherwise disgorge all profits derived by Defendants from their

4 individual and collective misconduct as alleged herein; and

5    b. pay to Ticketmaster the costs of this action, together with

6 reasonable attorneys' fees and disbursements, in accordance with federal and

7 California law, including but not limited to 17 U.S.C. Sections 505 and 1203, and

8 California Penal Code Section 502(e)(2);

9   3. Award to Ticketmaster liquidated, compensatory, statutory and

10 punitive damages; and

11   4. Award to Ticketmaster all further relief, as the Court deems just

12 and equitable.

13

14 Dated: June 11, 2007    MANATT, PHELPS & PHILLIPS, LLP
             ROBERT H. PLATT

15            MARK S. LEE
             DONALD R. BROWN

16

17

18          By: _Robert H. Platt_ (signature)

19          Robert H. Platt
          Attorneys for *Plaintiff*

20          TICKETMASTER L.L.C.

21

22

23

24

25

26

27

28

ANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2

27

FIRST AMENDED COMPLAINT

1

## JURY DEMAND

2        Ticketmaster demands a jury trial in this action.

3    Dated:  June 11, 2007           MANATT, PHELPS & PHILLIPS, LLP

4                                         ROBERT H. PLATT

                                           MARK S. LEE

5                                        DONALD R. BROWN

6

7                        By: _____

                                 Robert H. Platt

8                                 Attorneys for *Plaintiff*

                                TICKETMASTER L.L.C.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

.NATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41125363.2                            28

FIRST AMENDED COMPLAINT

80

EXHIBIT A

81

Terms of Use

Welcome to Ticketmaster. The following are the Terms of Use (these "Terms") that govern use of the
Ticketmaster.com and Ticketmaster.ca web sites (collectively, the "Site"). When we say the "Site" we are
also referring to the TicketExchange sections of the Site where you can buy and resell tickets. By using or
visiting the Site, you expressly agree to be bound by these Terms and to follow these Terms and all
applicable laws and regulations governing the Site. Ticketmaster, Ticketmaster Canada Ltd. and each of
their respective subsidiaries (collectively "Ticketmaster" or "we") reserve the right to change these Terms at
any time, effective immediately upon posting on the Site. Please check this page of the Site periodically. If
you violate these Terms, Ticketmaster may terminate your use of the Site, bar you from future use of the
Site, cancel tickets you receive through the site, cancel your ticket order, and/or take appropriate legal
action against you.

Permitted Use
You agree that you are only authorized to visit, view and to retain a copy of pages of this Site for your own
personal use, and that you shall not duplicate, download, publish, modify or otherwise distribute the material
on this Site for any purpose other than to review event and promotional information, for personal use, or to
purchase tickets or merchandise, unless otherwise specifically authorized by Ticketmaster to do so. You
also agree not to deep-link to the site for any purpose, unless specifically authorized by Ticketmaster to do
so or unless deep-linking to TicketExchange pages where you have posted tickets for sale. The content and
software on this Site is the property of Ticketmaster and/or its suppliers and is protected by U.S., Canadian
and international copyright laws. We post a legal notice and various credits on pages of the Site, which may
not be removed. Please do not remove this notice or these credits, or any additional information contained
along with the notices and credits.

Ticket Purchase Policy
Please review the Purchase Policy, which will govern your order or purchase of any tickets through the Site.

TicketExchange Selling Policy
Please review the TicketExchange Selling Policy, which will govern your sale, or attempted sale, of any
tickets using the TicketExchange portions of the Site.

Truthfulness and Accuracy of the Information You Provide; Complying with Laws; Verifications and
Authorizations
The sale or purchase of tickets to entertainment events is regulated by certain states, counties and cities.
You may be asked to provide information during processes you engage in on the Site. You represent and
warrant that all information you provide will be true, complete and correct, and that you will update all
information as it changes. You also acknowledge that complying with laws is your responsibility, AND YOU
AGREE NOT TO HOLD US LIABLE FOR YOUR FAILURE TO COMPLY WITH ANY LAW OR OUR
FAILURE TO NOTIFY YOU OF, OR PROPERLY APPLY, ANY LAW. WE WILL COMPLY WITH LAW
ENFORCEMENT AND MAY PROVIDE THEM WITH ALL INFORMATION YOU SUBMIT TO US TO
ASSIST IN ANY INVESTIGATION OR PROSECUTION THEY MAY CONDUCT. If we are unable to verify or
authenticate any information or tickets you provide during any registration, ordering, purchase, ticket
posting, sale, authentication, delivery, payment or remittance process, or any other process, or if we are no
longer able to verify or authorize your credit card or bank account information, you may be prohibited from
using the Site.

User Contributions to the Site
From time to time, the Site may provide you with opportunities to contribute to the Site, which may include,
but not be limited to, uploading your user profile, participating in chats and using bulletin boards. Anything
that is contributed to the Site by you or other Site users will be referred to in these Terms as "User Content".
Ticketmaster is not liable or responsible for any User Content. The contributions of third parties do not
necessarily represent the view or opinions of Ticketmaster. Ticketmaster cannot preview User Content
before it appears. Users can be held liable for any illegal or prohibited User Content they provide to the Site,
including among other things, infringing, defamatory or offensive materials. If you discover this kind of
material on the Site, please notify us at legal@ticketmaster.com if the material is on Ticketmaster.com and
legal@ticketmaster.ca if the material is on Ticketmaster.ca. We will investigate your claim and may then
take the actions deemed appropriate.

Links and Search Results
The Site may automatically produce search results that reference or link to third party sites throughout the
World Wide Web. Ticketmaster has no control over these sites or the content within them. Ticketmaster
cannot guarantee, represent or warrant that the content contained in the sites is accurate, legal and/or
inoffensive. Ticketmaster does not endorse the content of any third party site, nor do we warrant that they
will not contain viruses or otherwise impact your computer. By using the Site to search for or link to another
site, you agree and understand that you may not make any claim against Ticketmaster for any damages or
losses, whatsoever, resulting from your use of the Site to obtain search results or to link to another site. If
you have a problem with a link from the Site, please notify us at legal@ticketmaster.com if the link is on
Ticketmaster.com and legal@ticketmaster.ca if the link is on Ticketmaster.ca, and we will investigate your
claim and take any actions we deem appropriate in our sole discretion.

Policies and Se

82

**Prohibited Content**
The following is a partial list of the kind of User Content which is illegal or prohibited on the Site. It includes User Content that:

- Is patently offensive to the online community, such as User Content that promotes racism, bigotry, hatred or physical harm of any kind against any group or individual; could be harmful to minors;
- Harasses or advocates harassment of another person;
- Involves the transmission of "junk mail", "chain letters", or unsolicited mass mailing or "spamming";
- Promotes information that you know is false, misleading or promotes illegal activities or conduct that is abusive, threatening, obscene, defamatory or libelous;
- Promotes an illegal or unauthorized copy of another person's copyrighted work, such as providing pirated computer programs or links to them, providing information to circumvent manufacture-installed copy-protect devices, or providing pirated music or links to pirated music files;
- Contains restricted or password only access pages, or hidden pages or images (those not linked to or from another accessible page);
- Displays pornographic or sexually explicit material of any kind;
- Provides material that exploits people under the age of 18 in a sexual or violent manner, or solicits personal information from anyone under 18;
- Provides instructional information about illegal activities such as making or buying illegal weapons, violating someone's privacy, or providing or creating computer viruses;
- Solicits passwords or personal identifying information for commercial or unlawful purposes from other users; and
- Engages in commercial activities without our prior written consent such as contests, sweepstakes, barter, advertising, and pyramid schemes.

**Offline Conduct**
Although Ticketmaster cannot monitor the conduct of users off the Site, it is also a violation of these rules to use any information obtained from this Site in order to harass, abuse, or harm another person, or in order to contact, advertise to, solicit or sell any Site user without their prior explicit consent.

**Commercial Use**
No bulletin board, chat or other areas of this Site may be used by our visitors for any commercial purposes such as to conduct sales of tickets, merchandise or services of any kind, except that TicketExchange can be used to resell tickets to the extent compliant with law. You must obtain our prior written consent to make commercial offers of any kind, whether by advertising, solicitations, links, or any other form of communication, except you may post tickets for resale through TicketExchange to the extent you are doing so in accordance with law. Without limiting the foregoing, you may not use the Site to resell or link to other sites for the purpose of selling tickets of any kind, except you may resell tickets through TicketExchange to the extent you are doing so in accordance with law. We will investigate and take appropriate legal action against anyone who violates this provision, including without limitation, removing the offending communication from the Site and barring such violators from use of the Site. We reserve the right to block access to this Site or Ticketmaster's other services, or cancel a ticket order or ticket with respect to any person believed to be, or believed to be acting in concert with any person who is believed to be, violating the law or these Terms or Ticketmaster's rights, or utilizing automated means to process or place ticket orders, or who has ordered a number of tickets that exceeds the stated limit. Violating any limitations or terms on the Site will be deemed to be a violation of these Terms. Please note that Ticketmaster has entered into agreements with certain sport teams for whom Ticketmaster hosts web sites that are designed to allow such sports teams' season ticket holders to sell individual game tickets from their season ticket packages through such web sites ("Season Ticket Sale Sites"). Some of these Season Ticket Sale Sites can be found through this Site. Nothing in this paragraph shall prohibit the sale or purchase of tickets through the Season Ticket Sale Sites or through TicketExchange, as long as such sales and purchases are conducted pursuant to the terms that apply to the Season Ticket Sale Sites or TicketExchange (as the case may be) and comply with law.

**Access and Interference**
You agree that you will not use any robot, spider or other automatic device, process or means to access the Site. Nor shall you use any manual process to monitor or copy our web pages or the content contained thereon or for any other unauthorized purpose without our prior expressed written permission. You agree that you will not use any device, software or routine that interferes with the proper working of the Site nor shall you attempt to interfere with the proper working of the Site. You agree that you will not take any action that imposes an unreasonable or disproportionately large load on our infrastructure. You agree that you will not access, reload or "refresh" transactional event or ticketing pages, or make any other request to transactional servers, more than once during any three second interval. You agree that you will not copy, reproduce, alter, modify, create derivative works, or publicly display any content (except for your own personal, non-commercial use) from the Site without the prior expressed written permission of Ticketmaster.

**Unauthorized Use of the Site**
Any illegal or unauthorized use of the Site shall constitute a violation of these Terms of Use. You do not

have permission to access the Site in any way that violates, or in the course of violating, these Terms of Use. Illegal or unauthorized use of the Site includes, but is not limited to, using the site to facilitate illegal ticket sales, unauthorized framing of or linking to the Site, or unauthorized use of any robot, spider or other automated process on the Site. It shall also be a violation of these Terms of Use: (a) for any individual (or group of individuals acting in concert) to request, more than 1000 pages of the Site in any twenty-four hour period (hereafter referred to as "Abusive Use"); or (b) to use any passcode or password, regardless of whether or not such password or passcode is unique, to participate in a pre-sale or other offer on the Site if you are not the original recipient of such passcode or password (i.e., if you did not receive the passcode or password from Ticketmaster, or from the fan club or other organization with whom Ticketmaster is working to enable such pre-sale or offer) or if your participation in such pre-sale or other offer is inconsistent with such pre-sale's or offer's terms.

Suspected Violation of these Terms of Use or Law; Injunctive, Equitable Relief, and Liquidated Damages

Violations of these Terms of Use, including Unauthorized Use of the Site, may be investigated and appropriate legal action may be taken, including without limitation civil, criminal and injunctive redress. You understand and agree that in Ticketmaster's sole discretion, and without prior notice, Ticketmaster may terminate your access to the Site, cancel your ticket order or tickets acquired through your ticket order, cancel your ticket postings, remove any unauthorized User Content or exercise any other remedy available, if Ticketmaster believes that your conduct or the conduct of any person with whom Ticketmaster believes you act in concert, or the User Content you provide, or any resale of such tickets purchased through Ticketmaster, violates or is inconsistent with these Terms or the law, or violates the rights of Ticketmaster, a client of Ticketmaster or another user of the Site. You agree that monetary damages may not provide a sufficient remedy to Ticketmaster for violations of these Terms and you consent to injunctive or other equitable relief for such violations.

You agree that Abusive Use of the Site, as defined above, causes damage and harm to Ticketmaster in the form of, among other things, impaired goodwill, lost sales, and increased expenses associated with responding to Abusive Use of the Site. You further agree that monetary damages for Abusive Use of the Site are difficult to ascertain and that proof of monetary damages for Abusive Use would be costly and inconvenient to calculate. Accordingly you agree that liquidated damages are warranted for Abusive Use. Therefore, you agree that if you, or others acting in concert with you, alone or collectively request more than 1000 pages of the Site in any twenty-four hour period, you, and those acting in concert with you, will be jointly and severally liable for liquidated damages in the amount of ten dollars ($10.00) per page request each time that a page request is made after that first 1000 during that twenty-four hour period. You also agree that this will be the measure of damages for any Abusive Use that occurred prior to this provision of these Terms of Use being in effect.

Ticketmaster is not required to provide any refund to you if it exercises any of its rights or remedies because you have violated these Terms or any of Ticketmaster's rights. For more information about how we handle copyright infringements on the Site, please see our Copyright Policy. Additionally, we reserve the right, in our sole discretion, to modify, suspend or discontinue any part of this Site at any time, with or without notice to you. We also reserve the right, in our sole discretion, to impose limits on certain features and services and to restrict access to any part or to all of the Site without notice to you. We shall not be liable to you or any third party for any claim or cause of action arising out of our exercise of the foregoing rights.

Privacy

We believe that your privacy and the privacy of all our users is important. These Terms are subject to the Privacy Policy, which is hereby incorporated by reference. Ticketmaster will not be responsible or otherwise liable for any use or disclosure of your contact information, or financial information, by a third party to whom Ticketmaster is allowed to disclose your contact information under the Privacy Policy. If you post any User Content to the Site, by electronic mail or otherwise, we will treat it as non-confidential and non-proprietary to you. When we say in these Terms "post" we mean the provision of information (including, but not limited to, "User Content") to the Site through features of the Site that are used to make information available to other members of the public (e.g., user reviews, bulletin boards, chat rooms, etc.). Information that is posted to the Site shall not be subject to the Privacy Policy and may be publicly displayed and disclosed and otherwise used by Ticketmaster or any third party in any way. By posting User Content to the Site, you authorize us to use or allow others to distribute, reproduce or otherwise use such User Content. You should not post information about yourself on the Site that can be used to identify or contact you, including, but not limited to, your name, home or work address, phone numbers, pagers, email address or other such information. If you post such information, Ticketmaster cannot prevent it from being used in a manner that violates these Terms, the law, or your personal privacy and safety. By posting such information on the Site, you violate these Terms, and you assume the risks and sole liability for the results of such posting. You understand that if you post tickets on TicketExchange through the posting process applicable to licensed resellers, under certain circumstances some of your contact information may be displayed to the public.

Ticketmaster is not liable for any lost data resulting from the operation of the Site or the enforcement of the Terms. We urge all users to maintain their own back up versions of any User Content or other information they submit to the Site.

U.S. Export Controls



This Site and software derived from this Site is further subject to United States export controls. No software from this site may be downloaded or otherwise exported or re-exported: (i) into (or to a national or resident of) Cuba, Iraq, Libya, North Korea, Iran, Syria, or any other Country to which the U.S. has embargoed goods; or (ii) to anyone on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Commerce Department's Table of Deny Orders. By downloading or using the Site or any software derived there from, you represent and warrant that you are not located in, under the control of, or a national or resident of any such country or on any such list.

## Copyright Policy

We will terminate the privileges of any user who uses this Site to unlawfully transmit copyrighted material without a license express consent, valid defence or fair use exemption to do so. In particular, users who submit User Content to this Site, whether articles, images, stories, software or other copyrightable material must ensure that the User Content they upload does not infringe the copyrights or other rights of third parties (including, but not limited, to trademark, trade secret, privacy or publicity rights). After proper notification by the copyright holder or it agent to us, and confirmation through court order or admission by the user that they have used this Site as an instrument of unlawful infringement, we will terminate the infringing users' rights to use and/or access to this Site. We may, also in our sole discretion, decide to terminate a user's rights to use or access to the Site prior to that time if we believe that an alleged infringement has occurred.

## Disclaimers

TICKETMASTER DOES NOT PROMISE THAT THE SITE WILL BE ERROR-FREE, UNINTERRUPTED, OR THAT IT WILL PROVIDE SPECIFIC RESULTS FROM USE OF THE SITE OR ANY CONTENT, SEARCH OR LINK ON IT. THE SITE AND ITS CONTENT ARE DELIVERED ON AN "AS-IS" AND "AS-AVAILABLE" BASIS. TICKETMASTER CANNOT ENSURE THAT FILES YOU DOWNLOAD FROM THE SITE WILL BE FREE OF VIRUSES OR CONTAMINATION OR DESTRUCTIVE FEATURES. TICKETMASTER DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ALSO ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. TICKETMASTER WILL NOT BE LIABLE FOR ANY DAMAGES OF ANY KIND ARISING FROM THE USE OF THIS SITE, INCLUDING WITHOUT LIMITATION, DIRECT, INDIRECT, INCIDENTAL, AND PUNITIVE AND CONSEQUENTIAL DAMAGES. TICKETMASTER MAKES NO GUARANTEE OF ANY SPECIFIC RESULT FROM USE OF THIS SITE OR USE OF THE TICKETMASTER SERVICE.

TICKETMASTER DISCLAIMS ANY AND ALL LIABILITY FOR THE ACTS, OMISSIONS AND CONDUCT OF ANY THIRD PARTY USERS, TICKETMASTER USERS, ADVERTISERS AND/OR SPONSORS ON THE SITE, IN CONNECTION WITH THE TICKETMASTER SERVICE OR OTHERWISE RELATED TO YOUR USE OF THE SITE AND/OR THE TICKETMASTER SERVICE. TICKETMASTER IS NOT RESPONSIBLE FOR THE PRODUCTS, SERVICES, ACTIONS OR FAILURE TO ACT OF ANY VENUE, PERFORMER, PROMOTER OR OTHER THIRD PARTY IN CONNECTION WITH OR REFERENCED ON THE SITE.

Without limiting the foregoing, you may report the misconduct of users and/or third party advertisers, service and/or product providers referenced on or included in the Site to Ticketmaster at legal@ticketmaster.com if on Ticketmaster.com or at legal@ticketmaster.ca if on Ticketmaster.ca. Ticketmaster may investigate the claim and take appropriate action, in its sole discretion.

## Limitation on Liability

IN NO EVENT WILL TICKETMASTER BE LIABLE TO YOU FOR ANY INDIRECT, CONSEQUENTIAL, EXEMPLARY, INCIDENTAL, SPECIAL OR PUNITIVE DAMAGES, OR FOR LOST PROFITS, REVNUES OR BUSINESS OPPORTUNITIES, EVEN IF TICKETMASTER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

## Disputes

If you have a dispute and your dispute involves an event (or a ticket for an event) that is located in the United States, then the dispute will be governed by the laws of the State of California without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in state and federal courts located in Los Angeles County, California. If you have a dispute and your dispute involves an event (or a ticket for an event) that is located in Canada, then the dispute will be governed by the laws of the Province of Ontario without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in courts located in Toronto, Ontario. If you have a dispute regarding the Site but not regarding an event (and not regarding a ticket for an event), then: (a) if you are accessing the Site from the United States or any country other than Canada, then the dispute will be governed by the laws of the State of California without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in state and federal courts located in Los Angeles County, California; and (b) if you are accessing the Site from Canada, then the dispute will be governed by the laws of the Province of Ontario without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in courts located in Toronto, Ontario. If you are purchasing or selling through TicketExchange tickets to an event that is located in the State of Illinois, then this paragraph shall not apply to your purchase or sale, and instead the paragraph that will apply is the paragraph below entitled "Additional Provisions Applicable to Persons Using TicketExchange to Buy or Sell Tickets to any Event Located in the State of Illinois."



**Indemnity**
You agree to indemnify and hold Ticketmaster and its affiliates, and each of Ticketmaster's and its affiliates' respective officers, agents, employees, contractors and principals, harmless from any loss, liability, claim or demand, including reasonable attorneys' fees, made by any third party due to or arising out of your use of the Site, including also your use of the Site to provide a link to another site or to upload content or other information to the Site.

**Trademarks**
Ticketmaster and Ticketmaster.com and design are registered trademarks of Ticketmaster. All rights reserved.

**Additional Provisions Applicable to Persons Using TicketExchange to Buy or Sell Tickets to any Event Located in the State of Illinois**
If, and only if, you are using TicketExchange to purchase or sell a ticket to an event that is located in the State of Illinois, then you understand, agree and acknowledge the following:

- This website is operated by Ticketmaster L.L.C. Ticketmaster's address in the State of Illinois is: 550 W. Van Buren Street, 13th Floor, Chicago, Illinois 60607.
- If you have a complaint or inquiry regarding ticket resales made through TicketExchange for any event located in the State of Illinois, please email us at ticketexchange@ticketmaster.com or call us at (877) 446-9450.
- These Terms shall be governed by and construed in accordance with the laws of the State of Illinois. In the event of a dispute, you, Ticketmaster, and all buyers and sellers of tickets through TicketExchange each agree to submit to the exclusive jurisdiction and venue of the state and federal courts located in Chicago, Illinois, and the parties consent to the exclusive and personal jurisdiction and venue of these courts, subject to the following: If you are a reseller of one or more tickets through TicketExchange and you have a dispute with any person or business who buys any of those tickets from you, or you are a buyer of one or more resold tickets resold through TicketExchange and you have a dispute with the person or business that sold any of those tickets to you, you hereby agree that that dispute will be solely and finally settled in Illinois by binding arbitration in accordance with the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association, and the non-prevailing party in the arbitration shall pay the fees and expenses of the arbitrator(s) and the costs of arbitration and the enforcement of any award rendered therein, including the attorneys' fees and expenses of the prevailing party. In order to commence such a proceeding, please send a letter describing the dispute to Ticketmaster Legal Department, 8800 Sunset Blvd., West Hollywood, CA 90069.

Use of this site is subject to express terms of use, which prohibit commercial use of this site. By continuing past this page, you agree to abid

© 2007 Ticketmaster. All rights reserved.

Partner Sites: Admission Condo Direct Cottonblend Domania Expedia GetSmart HomeConnections Home Loan Center Hotels H iNest IOS Catalog LendingTree LendingTree Loans LiveDaily RealEstate ReserveAmerica ServiceMagic Shoes Smith + Noble TicketWeb



EXHIBIT B

# ticketmaster

**O** You have 1:30 minutes to complete this page.
After 1:30 minutes these tickets will be released.

Create account

Already have a Ticketmaster Account? <u>Sign In</u>

| | |
|---|---|
| First name | |
| Email address | |
| Retype Email address | |
| Zip/Postal code | |
| Type password | 5-12 characters |
| Retype password | |

As a Ticketmaster user, by purchasing a ticket to an event or completing a registration form in order to be able to purchase a ticket to an event, you agree that Ticketmaster may share your information with the venues, promoters, artists, teams, leagues and other third parties associated with that event. These parties may use your information to contact you or may use or disclose your information in other ways. Please contact them directly to learn about their policies. Ticketmaster may also contact you and use and disclose the information you submit, as described in the Ticketmaster <u>Privacy Policy.</u>

As a registered user of Ticketmaster.com, you are subject to the <u>terms of use</u> which, among other things, prohibits commercial use of this site.

**Accept and Continue**

Already have an account? <u>Sign In</u>

© 2005 Ticketmaster ™ rights reserved.

EXHIBIT C

89

*icketmaster*

omplete this page within 1:00 minute.
) minute, the tickets we're holding will be released for others to buy.

**eate Account**

Already have a Ticketmaster Account?   **Log In**

irst name

mail address

etype Email address

ip/Postal code

ype password                                  5-12 characters

etype password

/ purchasing a ticket to an event, or completing this registration form in order to be able to purchase a ticket to an event or to bid in an auction, you
icate that you consent to Ticketmaster sharing your email address and other information with those involved in the event (e.g., venues, teams, artists'
presentatives and fan clubs, promoters and leagues), and that you consent to those involved in the event using your information to contact you by email
other means to send you marketing or other messages or using or disclosing your information in other ways. Please contact them directly to learn about
air policies. By completing this registration form, you also indicate that you consent to Ticketmaster contacting you by email or other means to send you
arketing or other messages and using and disclosing the information you submit, as described in the Ticketmaster Privacy Policy.

you are under 13 years old, you must not fill in this form or provide any information about yourself.

⊢    egistered user of Ticketmaster.com, you are subject to the terms of use which, among other things, prohibits commercial use of this site.

**Accept and Continue**

© 2006 Ticketmaster. All rights reserved.

1

## PROOF OF SERVICE

2

I, Linda Allen, declare:

3

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11355 West Olympic Boulevard, Los Angeles, California 90064-1614. On June 11, 2007, I served a copy of the within document(s):

4

5

6

## FIRST AMENDED COMPLAINT

7

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

8

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

9

10

☐    by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Golden State Overnight agent for delivery.

11

12

13

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

14

☐    by sending an electronic message with attached PDF.

15

16

## SEE ATTACHED SERVICE LIST

17

18

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

19

20

21

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

22

23

Executed on June 11, 2007, at Los Angeles, California.

24

25

_Linda Allen_

Linda Allen

26

27

28

1

## SERVICE LIST

2

Ticketmaster LLC v Gary Charles Bonner, et al.
USDC No. CV 07-2531 ABC (JCx)

3

4 **Attorneys for Defendants Javier Rodriguez
and Ann Bonner**

5

John A. Case, Jr., Esq.
6 Law Offices of John A. Case, Jr.
1880 Century Park East, Suite 516
7 Los Angeles, CA 90067
Tel. No. (310) 203-3911
8 Fax No. (310) 203-3915
Email: jcase@CaseWebLaw.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

CONFORMED COPY

FILED

MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT (Bar No. CA 108533)
rplatt@manatt.com
MARK S. LEE (Bar No. CA 094103)
mlee@manatt.com
DONALD R. BROWN (Bar No. CA 156548)
dbrown@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

2007 JUN 25 PM 4: 50

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

Attorneys for *Plaintiff*
TICKETMASTER L.L.C.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TICKETMASTER L.L.C., a Virginia limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>CRAIG RAKOWSKY dba ACE TICKET SERVICE, an individual,<br><br>Defendant. | Case No. CV-07-2533 ABC (JCx)<br><br>Hon. Audrey B. Collins<br>Courtroom 680<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>(1) BREACH OF CONTRACT;<br>(2) COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, *et seq.*);<br>(3) VIOLATION OF DIGITAL MILLENNIUM COPYRIGHT ACT (17 U.S.C. § 1201);<br>(4) VIOLATION OF COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030);<br>(5) VIOLATION OF CALIFORNIA PENAL CODE § 502; and<br>(6) FRAUD |

Plaintiff Ticketmaster L.L.C. ("Ticketmaster") alleges the following against defendant Craig Rakowsky ("Rakowsky"), doing business as Ace Ticket Service:

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

411130062.2



EXHIBIT
$\underline{C}$

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over the federal claims in this Complaint pursuant to 28 U.S.C. Sections 1331 and 1338(a), and has jurisdiction over the other claims in this Complaint under California law pursuant to 28 U.S.C. Section 1367(a).

2.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332.   The amount in controversy, exclusive of interest and costs, exceeds $75,000.

3.     Venue is proper in this Court pursuant to 28 U.S.C. Sections 1391(b) and 1400 in that a substantial part of the events giving rise to the claims occurred in this judicial district and Ticketmaster's principal place of business is within this judicial district.   In addition, the Terms of Use which govern the relationship between the parties provides for venue in state or federal court in Los Angeles County for disputes relating to the purchase of tickets.

## SUMMARY

4.     Ticketmaster sells tickets for entertainment and sports events on behalf of its clients to the general public through a variety of means, including Ticketmaster's website, ticketmaster.com.   The Terms of Use for Ticketmaster's website prohibit, among other things, use of the website for commercial purposes, use of automated devices such as bots and spiders to search for and purchase tickets, excessive requests for web pages and other abusive uses of the site, and purchasing quantities of tickets that exceed stated per customer ticket limits.   To maintain the integrity of its website and prevent abuse, Ticketmaster employs a variety of security features on its website, including a feature commonly known as CAPTCHA, which is designed to detect automated devices and prevent them from purchasing tickets.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2                                    2

FIRST AMENDED COMPLAINT

5.     Since at least as early as 2002, Rakowsky has repeatedly and systematically employed automated devices to enter into and navigate through Ticketmaster's website and improperly procure thousands of tickets for the purpose of reselling them at a profit. Rakowsky has placed at least 11,000 orders through ticketmaster.com, resulting in the purchase of more than 31,000 tickets, and has surreptitiously attempted to conceal his identity by using a variety of credit cards and addresses.

6.     These deceptive and improper actions have harmed, and continue to harm, Ticketmaster as well as consumers who seek to lawfully purchase tickets through Ticketmaster's website. By using automated devices, which can navigate a website and complete transactions more quickly than human users can, Rakowsky deprives legitimate consumers of the opportunity to purchase tickets, a problem which Rakowsky compounds by purchasing quantities of tickets far in excess of the contractual per customer ticket limits. As part of his misuse and abuse of Ticketmaster's website, Rakowsky improperly copies pages from the website and circumvents Ticketmaster's technological copy protection systems. Moreover, this misuse and abuse alters data on Ticketmaster's website, interferes with the operation of the website, deprives Ticketmaster of various revenue streams, and increases Ticketmaster's operational costs.

7.     Ticketmaster therefore asserts claims against Rakowsky for breach of contract, copyright infringement, violations of the federal Digital Millennium Copyright Act, the federal Computer Fraud and Abuse Act, and the California Penal Code Section 502, and fraud. As relief, Ticketmaster seeks an injunction, compensatory damages, punitive damages, disgorgement of Rakowsky's ill-gotten gains, imposition of a constructive trust, and recovery of attorneys' fees and costs incurred by Ticketmaster to prosecute this lawsuit.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2                                    3

FIRST AMENDED COMPLAINT

95

## THE PARTIES

8.     Plaintiff Ticketmaster L.L.C. is a Virginia limited liability company with its principal place of business in the City of West Hollywood, Los Angeles County, California.

9.     Ticketmaster is informed and believes, and based thereon alleges, that defendant Craig Rakowsky is an individual who resides at 1532 Springview Court, Apartment D1, Wheeling, Illinois 60090.   In addition, Ticketmaster is informed and believes, based on the following factors, that Rakowsky is doing business as "Ace Ticket Service":

(a)     Rakowsky has previously satisfied a court judgment against himself dba "Ace Ticket Service." *See American Ambassador v. Craig Rakowsky dba Ace Ticket Service*, Cook County Municipal Court, Il., Case No. 98M 1 0166842 (filed October 19, 2000).

(b)     According to the Illinois Department of Corporations, Ace Ticket Service is not registered to do business in Illinois.

(c)     The Ace Ticket Service website contains no information indicating that Ace is an independent company or entity of any kind.

(d)     The Ace Ticket Service website does not provide a business address.

Accordingly, Ticketmaster is informed and believes, and on that basis alleges, that Rakowsky operates the www.aceticketservice.com website and sells the tickets he obtains from Ticketmaster through that website, among other means.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2                                                       4

FIRST AMENDED COMPLAINT

96

# FACTS

**A. Ticketmaster Attempts To Make Its Ticketing System As Fair And Equitable As Possible For Consumers.**

10. Ticketmaster distributes tickets for live entertainment events to the general public on behalf of Ticketmaster's clients, who are venues, promoters, entertainers and sports franchises. Ticketmaster sells tickets via retail ticket outlets, telephone call centers, and Ticketmaster's website, www.ticketmaster.com. Ticketmaster spends substantial time, energy and resources attempting to ensure that its website is current, accurate and easily understood for the benefit of its clients and the public.

11. Demand for tickets sold through Ticketmaster, including via ticketmaster.com, often exceeds the supply of tickets available for purchase. This can inspire intense competition among consumers to purchase tickets to the same event when the tickets become available for sale on ticketmaster.com.

12. Recognizing this competitive reality, Ticketmaster has undertaken various measures to make the ticket buying process as fair and equitable as possible for consumers. For example, Ticketmaster attempts to regulate the speed with which users may copy the web pages necessary to purchase tickets on ticketmaster.com. Ticketmaster also limits the number of tickets that may be purchased in any single transaction.

13. In addition, Ticketmaster has undertaken measures intended to prevent the use of computer programs or other automated devices—sometimes called software robots or "bots"—which can give users of such devices an unfair advantage over human consumers in the ticket purchasing process. One of those measures is a security computer program, commonly known as CAPTCHA ("Completely Automated Public Turing test to tell Computers and Humans Apart"), that is designed to distinguish between human users and automated devices. When a user submits a ticket request, a box appears on the screen with random characters

partially obscured behind hash marks, which the user is instructed to retype in order to proceed with the ticket request. Most automated devices cannot decipher and retype the random characters, and thus cannot proceed past that screen to complete a ticket transaction.

**B.** **Use Of Ticketmaster's Website Is Subject To Copyright Protections And Contractual Terms Of Use.**

14. Ticketmaster's website is a work of authorship protected by copyright law. Ticketmaster (or its predecessors) has registered versions of its website or portions thereof, with the Copyright Office, as described below:

| Title | Registration No. | Date of Registration |
|---|---|---|
| HTML code for Ticketmaster.com | TX-4-465-209 | February 5, 1997 |
| Ticketmaster.com Website II | TX-4-905-957 | June 18, 1999 |
| Ticketmaster.com Website III | TX-4-905-956 | June 18, 1999 |
| Ticketmaster.com | TX-5-072-126 | March 17, 2000 |
| Ticketmaster.com: Online Order Search | TX-5-067-039 | May 30, 2000 |
| Ticketmaster.com: Order Information | TX-5-067-040 | May 30, 2000 |
| Ticketmaster.com | TX-5-455-574 | December 29, 2000 |
| Ticketmaster.com Website Homepage, Event Ticket Order Pages | TXu-1-348-580 | May 22, 2007 |
| Event Ticket Order Validation Code | TXu-1-348-581 | May 22, 2007 |
| Event Ticket Order Limiting Code | TXu-1-348-582 | May 22, 2007 |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2

6

98

15. Use of ticketmaster.com by any member of the public is governed by Terms of Use that are set forth on the website. In all relevant respects, except for the inclusion of a liquidated damages provision in 2006, these Terms of Use have been the same from at least as early as 2003 to the present. (A copy of Ticketmaster's current Terms of Use is attached hereto as Exhibit "A.")

16. At all relevant times, the home page for ticketmaster.com has contained the following warning:

> Use of this website is subject to express terms of use which prohibit commercial use of this site. By continuing past this page, you agree to abide by these terms.

The underlined phrase "terms of use" on the home page is a readily visible hypertext link that, when clicked, causes the full Terms of Use to appear on the user's screen. The same message and related hyperlink to Ticketmaster's Terms of Use appear on almost every webpage on the website. Thus, a user is repeatedly reminded that use of the site is governed by the Terms of Use, and that continuing to use the site with that knowledge constitutes acceptance of those Terms of Use.

17. To purchase tickets through ticketmaster.com, a user must set up an account with Ticketmaster, and in doing so the user is instructed to review the Terms of Use for the website. Since 2003, it has been necessary as part of the account set-up procedure for the user to expressly consent to the Terms of Use by clicking a button labeled "Accept and Continue." (A copy of the webpage with the "Accept and Continue" button as part of the account set-up procedure is attached hereto as Exhibit "B.")

18. Users of ticketmaster.com also are referred to the Terms of Use when completing a ticket purchase. Users see a web page which states, "As a user of this website, you agree that you are subject to this website's Terms of Use," and embedded in this statement is a hyperlink that, when clicked, causes the Terms of Use to appear on the user's screen. During 2006, Ticketmaster added an "Accept

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2

7

FIRST AMENDED COMPLAINT

99

1 and Continue" button at the point of purchase, which requires a user, before

2 completing a ticket purchase, to expressly assent to the Terms of Use by clicking a

3 button labeled "Accept and Continue." (A copy of the webpage with the "Accept

4 and Continue" button as part of the ticket purchase procedure is attached hereto as

5 Exhibit "C.")

6         19.   Consumers who wish to purchase tickets through

7 ticketmaster.com must navigate through a series of pages on the website by clicking

8 on designated hypertext links on those pages. Viewing Ticketmaster's homepage

9 and clicking on the hyperlinks to reach the various other pages that must be viewed

10 to purchase tickets from the website causes copies of each of those pages to be

11 created and to appear on a customer's computer. Ticketmaster's Terms of Use act

12 as a license agreement that describes, *inter alia*, when and in what circumstances a

13 user is permitted to copy pages of the website, especially those pages that must be

14 viewed to purchase tickets.

15         20.   At all relevant times the Terms of Use have permitted only

16 personal use of the Ticketmaster.com website by consumers, as follows:

17         **Permitted Use:** You agree that you are only authorized
to visit, view and retain a copy of pages of this site for

18         your own personal use... unless otherwise specifically
authorized by Ticketmaster to do so.

19

20         21.   At all relevant times the Terms of Use have included a variety of

21 provisions that prohibit misuse of the website. For example, the Terms of Use have

22 always prohibited commercial use of Ticketmaster's website, providing in pertinent

23 part as follows:

24         **Commercial Use:** No... areas of this site may be used
by our visitors for any commercial purposes... Without

25         limiting the foregoing, you may not use this site to resell
tickets of any kind [except as permitted on the site

26         itself]...We reserve the right to block access to this Site
or Ticketmaster's other services, or cancel a ticket order or

27         ticket with respect to any person believed to be, or
believed to be acting in concert with any person who is

28         believed to be, violating the law or these Terms or

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2

8

1  Ticketmaster's rights, or utilizing automated means to
   process or place ticket orders, or who has ordered a
2  number of tickets that exceeds the stated limit. Violating
   any limitations or terms on the Site will be deemed to be a
3  violation of these Terms.

4      22.   At all relevant times, the Terms of Use have expressly

5  prohibited the use of bots and other automated means to access ticketmaster.com.

6  In that regard, the Terms of Use provide in pertinent part as follows:

7      **Access and Interference:**   You agree that you will not
       use any robot, spider or other automatic device, process or
8      means to access the Site. . . . You agree that you will not
       access, reload or "refresh" transactional event or ticketing
9      pages, or make any other request to transactional servers,
       more than once during any three second interval.

10     23.   Similarly, at all relevant times, the Terms of Use have

11
   prohibited the unauthorized use of the site, providing in pertinent part as follows:
12
       **Unauthorized Use of the Site:**   Any Illegal or
13     unauthorized use of the Site shall constitute a violation of
       these Terms of Use.   You do not have permission to
14     access the Site in any way that violates, or in the course of
       violating, these Terms of Use. Illegal or unauthorized use
15     of the Site includes, but is not limited to, using the site to
       facilitate illegal ticket sales, unauthorized framing of or
16     linking to the Site, or unauthorized use of any robot,
       spider or other automated process on the Site. It shall also
17     be a violation of these Terms of Use: (a) for any
       individual (or group of individuals acting in concert) to
18     request, more than 1000 pages of the Site in any twenty-
       four hour period (hereafter referred to as "Abusive Use") .
19     . . .

20     24.   Furthermore, the Terms of Use limit the number of tickets that a

21  consumer may purchase in a single transaction. At all relevant times, the Terms of

22  Use have contained a hyperlink to, and have expressly incorporated, Ticketmaster's

23  Purchase Policy. The hyperlink to Ticketmaster's Purchase Policy is easily visible

24  and readily accessible under a heading in the Terms of Use which states "Ticket

25  Purchase Policy."  Immediately below this heading in the Terms of Use is the

26  following statement: "Please review the Purchase Policy, which will govern your

27  order or purchase of any tickets through the Site."  Clicking on the "Purchase

28  Policy" hyperlink causes the full Purchase Policy to appear on the user's screen.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2                                9

FIRST AMENDED COMPLAINT

25. At all relevant times, the Purchase Policy on Ticketmaster's website has stated as follows:

> **Amount of Tickets Per Customer or Ticket Limits.** When purchasing tickets on Ticketmaster.com, you are limited to a specified number of tickets for each event (also known as a "ticket limit"). This amount is included on the unique event page and is verified with every transaction. This policy is in effect to discourage unfair ticket buying practices.

26. In sum, at all relevant times, the Terms of Use, including the Purchase Policy, have prohibited users from, among other things, using the Ticketmaster website for commercial purposes, using bots and other automated devices to access and navigate the site and conduct transactions, abusing the Ticketmaster system with excessive requests for web pages, and purchasing tickets in excess of the per customer ticket limit.

**C. Rakowsky Has Been Systematically Misusing And Abusing Ticketmaster's Website Since At Least As Early As 2002.**

27. Ticketmaster is informed and believes, and based thereon alleges, that since at least as early as 2002, Rakowsky has been using automated devices to navigate through ticketmaster.com and purchase large quantities of tickets. During this time, Rakowsky has placed at least 11,887 orders for tickets through Ticketmaster's website, resulting in the purchase of at least 31,217 tickets. Ticketmaster is informed and believes, and based thereon alleges, that many of these purchases involved quantities in excess of stated per customer ticket limits. Ticketmaster is further informed and believes, and based thereon alleges, that most if not all of these tickets were purchased for the commercial purpose of reselling them for a profit through a variety of means, including websites such as www.aceticketservice.com that are operated by Rakowsky.

28. In the course of using these automated devices, Rakoswky repeatedly and systematically requested more than 1000 pages of the website in applicable twenty-four hour periods, and Rakowsky accessed, reloaded or refreshed

1    transactional events or ticketing pages and made other requests to transactional
2    servers more than once during applicable three-second intervals. As just one recent
3    example, on June 15, 2007—after this lawsuit had been commenced and after
4    Rakowsky had been served with the original Complaint—Rakowsky made more
5    than 114,590 ticket requests to ticketmaster.com in a single day.

6           29.    Rakowsky had ample opportunity to review Ticketmaster's
7    Terms of Use, and he repeatedly assented to those terms, expressly as well as
8    impliedly. Ticketmaster is informed and believes, and based thereon alleges, that
9    Rakowsky not only expressly assented to the Terms of Use when setting up various
10   online accounts, but that he visited the website at least 11,887 times since 2002, and
11   during each visit he has been reminded of the Terms of Use and has been invited to
12   review them. Moreover, since mid-2006, Rakowsky has expressly reaffirmed his
13   assent to the Terms of Use when completing purchases of tickets.

14          30.    Although most automated devices cannot decipher and retype
15   the random characters generated by the CAPTCHA security program on
16   ticketmaster.com, and thus cannot proceed past that screen to complete a ticket
17   transaction, some automated devices are designed to circumvent CAPTCHA, and
18   Ticketmaster is informed and believes, and based thereon alleges, that Rakowsky
19   has been using such devices since at least as early as 2002.

20          31.    The Ticketmaster system sometimes can detect the presence of
21   an automated device. When that occurs, the system generates a message to the user
22   explaining that the use of automated devices is prohibited. Ticketmaster is
23   informed and believes, and based thereon alleges, that its system has generated such
24   messages in response to automated devices used by Rakowsky, but that Rakowsky
25   has ignored the messages and continued to use automated devices to navigate
26   through the Ticketmaster website and wrongfully acquire tickets.

27          32.    The Ticketmaster system also can temporarily disable an
28   automated device when such a device is detected. Ticketmaster is informed and

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2                                    11

1   believes, and based thereon alleges, that its system has from time to time
2   temporarily disabled automated devices used by Rakowsky. However,
3   Ticketmaster is informed and believes that in each such occurrence, Rakowsky
4   deployed a new automated device from a different IP address (Internet Protocol
5   address) and continued with his unauthorized use of the Ticketmaster system.

6        33.    Ticketmaster diligently tries to identify users of bots and other
7   prohibited automated devices, but some users of these devices go to great lengths to
8   hide their tracks. Ticketmaster is informed and believes, and based thereon alleges,
9   that since 2002, Rakowsky has used at least 169 different credit cards and 103
10  different email addresses to purchase tickets from Ticketmaster. In addition,
11  Ticketmaster is informed and believes, and based thereon alleges, that Rakowsky
12  systematically removed data from the computers he uses to access
13  ticketmaster.com, such as by cleaning out the "cookies" on the computers, in a
14  further attempt to elude identification by Ticketmaster as a repeat visitor to the site.

15       34.    Thus, it was not until quite recently that Ticketmaster was able
16  to assemble the information necessary to link Rakowsky with all of these ticket
17  purchases and the related use of prohibited automated devices.

18
19  **D.**    **The Misuse And Abuse Has Harmed Ticketmaster's Website And Operations.**

20       35.    Ticketmaster has been harmed by the use of automated devices
21  by Rakowsky and others. To meet the demands of consumers and Ticketmaster's
22  own clients, Ticketmaster must provide an equitable ticket distribution system that
23  gives all consumers a fair opportunity to acquire the best available tickets for
24  events. The use of automated devices undermines this effort, because automated
25  devices can navigate through Ticketmaster's website and purchase tickets at a speed
26  that legitimate consumers who do not use such devices cannot match. As a result,
27  the inventory of tickets available to consumers who do not use such devices is

28

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

411130062.2

12

FIRST AMENDED COMPLAINT

104

1    substantially diminished, which has led some consumers to question Ticketmaster's

2    ability to ensure a level playing field for the purchase of tickets.

3          36.    This harm is compounded by the fact that Rakowsky and other

4    users of automated devices inundate the Ticketmaster system with thousands of

5    requests for tickets, and each request causes tickets to be placed temporarily on

6    reserve, even if they are not ultimately purchased. While a ticket is on reserve, it is

7    unavailable to any other user of the site. Not only does this further diminish the

8    inventory of tickets for legitimate consumers, but it impedes Ticketmaster's ability

9    to provide an important service to its clients. Clients use the Ticketmaster system

10    to monitor ticket sales activity to make a variety of decisions, including whether to

11    open more seats or move the seats to other distribution channels. The artificially

12    high volume of seats revolving in and out of reserve status due to the use of

13    automated devices makes it difficult to gauge how well tickets for the event are

14    actually selling, which in turn interferes with the clients' ability to make the

15    ongoing decisions that are based on sales activity.

16          37.    Users of automated devices, including Rakowsky, also block

17    access to the Ticketmaster system by legitimate consumers in a variety of other

18    ways. For example, Ticketmaster's website allocates traffic to various servers

19    through a load balancing program that is designed to ensure consumer requests are

20    processed equitably and that no consumer receives slower service merely because

21    his or her request was directed to one server rather than another. However, users of

22    automated devices bypass the load balancing program and target specific servers

23    directly with thousands of requests, thus interfering with the website's traffic

24    allocation feature and putting some consumers whose requests were allocated to the

25    same server that was targeted by the automated device at risk of slower service.

26          38.    In addition, users of automated devices such as Rakowsky

27    deprive Ticketmaster of revenue and revenue opportunities in a variety of ways.

28    Ticketmaster's website is part of a carefully crafted business model that integrates

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2                 13

1    other services and features into the ticket purchasing process. The website is
2    designed so that users will follow certain steps and will see certain pages in the
3    process of requesting and purchasing tickets. Based on this expected flow of
4    traffic, clients, advertisers and Ticketmaster itself offer particular services or
5    opportunities on particular pages, ranging from parking at the event to signing up
6    for client newsletters. However, automated devices, which do not use traditional
7    browsers, bypass the HTML code for these features, so the users of those devices
8    never even see these offers. These same offenders further exacerbate the problem
9    by purchasing enormous quantities of tickets, which diminishes the ticket inventory
10   for legitimate consumers and reduces the number of legitimate consumers who will
11   reach the pages that provide these up-sell opportunities.

12            39.    Furthermore, by accessing the Ticketmaster system at targeted
13   points, automated devices alter the security features of the website itself. Normally,
14   users receive automatic and temporary permission—in effect, a token—to make
15   requests on the system. That token is automatically revoked if the pace of requests
16   exceeds a certain limit. However, by systematically deleting cookies on the user's
17   system, automated devices enable the user to constantly assume a new identity and
18   acquire new tokens even though that same user is far exceeding the request limit.

19            40.    All of these problems involve, in one way or another, alteration
20   of the Ticketmaster system and deletion, destruction and alteration of data on the
21   system.

22            41.    The use of automated devices also diverts resources from the
23   service of legitimate consumers. Ticketmaster must take extraordinary actions to
24   enhance the website infrastructure so it can support all of the activity on its website,
25   including all of the artificial and inflated activity generated by the automated
26   devices, and otherwise ensure the ongoing integrity of the website in the face of this
27   onslaught of devices. The use of these prohibited devices also significantly
28   increases the costs of data storage, troubleshooting and system maintenance.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2                                    14

                        FIRST AMENDED COMPLAINT
                                    104

1

2          **FIRST CLAIM FOR RELIEF**

3             **Breach Of Contract**

4          42.    Ticketmaster alleges and incorporates by reference all of the

5     preceding paragraphs.

6          43.    At all relevant times, the home page and most other pages on

7     ticketmaster.com have informed users that their use of the website is subject to

8     express terms and conditions set forth in the Terms of Use, and that by continuing

9     past the page in question, the user expressly and/or impliedly agrees to be bound by

10    those terms. Users have a reasonable opportunity to review the Terms of Use upon

11    first entering the website, and they also have a reasonable opportunity to review the

12    Terms of Use during their use of the site. The link to the Terms of Use is displayed

13    in such a manner as to provide consumers with clear notice of their existence.

14         44.    Ticketmaster is informed and believes that Rakowsky expressly

15    assented to the Terms of Use when setting up accounts on ticketmaster.com.

16    Moreover, since the middle of 2006, Rakowsky has been required to expressly

17    assent to the Terms of Use each time he submits a request to purchase tickets.

18    Thus, Rakowsky has repeatedly provided his express assent to the Terms of Use.

19         45.    The Terms of Use prohibit, among other things, commercial use

20    of the site, the use of bots and other automated devices, abusive use of the website,

21    and exceeding per-customer ticket limits.    These Terms of Use are fair and

22    reasonable.

23         46.    Ticketmaster has performed all conditions, covenants and

24    promises required to be performed by it in accordance with the Terms of Use.

25         47.    Since at least as early as 2002, Rakowsky has repeatedly and

26    systematically breached the Terms of Use by using bots and other automated

27    devices to access the website and buy tickets, by using the website for a commercial

28    purpose, and by buying tickets in quantities that exceed per customer ticket limits.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2                                        15

FIRST AMENDED COMPLAINT

1    As part of this misuse of Ticketmaster's website, Rakowsky repeatedly and
2    systematically requested more than 1000 pages of the website in applicable twenty-
3    four hour periods, and accessed, reloaded or refreshed transactional events or
4    ticketing pages and made other requests to transactional servers more than once
5    during applicable three-second intervals.

6        48.    It can be impracticable and extremely difficult to ascertain the
7    damages from abusive use of Ticketmaster's website.   Therefore, Ticketmaster
8    made a reasonable attempt at a formula for calculating the damages caused by
9    abusive use of its website, and in early 2006 Ticketmaster added a liquidated
10    damages provision to the Terms of Use that includes this formula. The liquidated
11    damages provision states in pertinent part as follows:

12       You agree that Abusive Use of the Site, as defined above,
        causes damage and harm to Ticketmaster in the form of,
13       among other things, impaired goodwill, lost sales, and
        increased expenses associated with responding to Abusive
14       Use of the Site. You further agree that monetary damages
        for Abusive Use of the Site are difficult to ascertain and
15       that proof of monetary damages for Abusive Use would
        be costly and inconvenient to calculate. Accordingly you
16       agree that liquidated damages are warranted for Abusive
        Use. Therefore, you agree that if you, or others acting in
17       concert with you, alone or collectively request more than
        1000 pages of the Site in any twenty-four hour period,
18       you, and those acting in concert with you, will be jointly
        and severally liable for liquidated damages in the amount
19       of ten dollars ($10.00) per page request each time that a
        page request is made after that first 1000 during that
20       twenty-four hour period.

21        49.    Ticketmaster is entitled to liquidated damages in accordance
22    with the foregoing provision, in an amount to proven at trial when the full extent of
23    Rakowsky's requests for pages on Ticketmaster's website is ascertained.    In
24    addition, Ticketmaster is entitled to compensatory damages, in an amount to be
25    proven at trial, for breaches of the Terms of Use that occurred before the liquidated
26    damages provision was added to the Terms of Use, and as an alternative to
27    liquidated damages should the liquidated damages provision be unenforceable for
28    any reason.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2

16

FIRST AMENDED COMPLAINT

50.     The Terms of Use also provide that Ticketmaster is entitled to injunctive relief to enjoin violations of the Terms of Use.  At all relevant times the Terms of Use have provided in pertinent part as follows: "You agree that monetary damages may not provide a sufficient remedy to Ticketmaster for violations of these Terms and you consent to injunctive or other equitable relief for such violations."

51.     Rakowsky's conduct has significantly and irreparably damaged Ticketmaster and will continue to do so unless restrained by this Court.  Thus, in addition to liquidated damages and other damages for abusive use of its website, Ticketmaster is entitled to the preliminary and permanent injunctive relief prayed for in this Complaint.

## SECOND CLAIM FOR RELIEF
### Copyright Infringement

52.     Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

53.     Ticketmaster owns valid U.S. Copyright registrations in its website and specific portions thereof.

54.     In using bots, programs, or other automatic devices on the ticketmaster.com website to acquire tickets for the commercial purpose of reselling them, Rakowsky has acted in excess of the terms of the license agreement created by Ticketmaster's Terms of Use, and thereby copied or caused to be copied without authorization pages from the ticketmaster.com site and other original elements of Ticketmaster's copyrighted website.

55.     As a proximate result of Rakowsky's copyright infringement, Ticketmaster suffered significant damage in an amount not presently known with certainty, but which will be proven at trial.  Further, Ticketmaster is suffering irreparable harm because of Rakowsky's infringing activity.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2

17

FIRST AMENDED COMPLAINT

109

1       56.   Ticketmaster is entitled to the range of relief provided by

2  17 U.S.C. Sections 502-505, including injunctive relief, an order for the

3  impounding and destruction of all copies of all bots, programs, or other automatic

4  devices used by Rakowsky to violate Ticketmaster's rights, compensatory damages

5  in an amount to be determined, statutory and punitive damages, and its costs and

6  attorneys' fees.

7

8                        **THIRD CLAIM FOR RELIEF**

9      **Violation Of Digital Millennium Copyright Act, 17 U.S.C. § 1201**

10       57.   Ticketmaster alleges and incorporates by reference all of the

11  preceding paragraphs.

12       58.   Ticketmaster is informed and believes that Rakowsky is using

13  bots, programs, or other technology, products, services, devices, components, or

14  parts thereof, that are primarily designed and produced to circumvent the

15  technological measures by which Ticketmaster effectively controls access to its

16  copyrighted website.

17       59.   Ticketmaster is informed and believes that these bots, programs,

18  or other technical devices have no commercially significant purpose or use other

19  than to circumvent the technological measures that Ticketmaster uses to control

20  access to its website, and that Rakowsky is using those devices with knowledge of

21  that improper purpose.

22       60.   Ticketmaster has suffered significant damages in an amount not

23  presently known with certainty, but which will be proven at trial, as a proximate

24  result of Rakowsky's above-referenced misconduct.

25       61.   Ticketmaster is entitled to the range of relief provided by

26  17 U.S.C. Sections 1201-1203, including injunctive relief, compensatory or

27  statutory damages, and its costs and attorneys' fees in an amount to be proven at

28  trial.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2          18

FIRST AMENDED COMPLAINT

110

## FOURTH CLAIM FOR RELIEF

### Violation Of Computer Fraud And Abuse Act, 18 U.S.C. § 1030

62. Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

63. Ticketmaster's computers are involved in interstate and foreign communication.

64. Rakowsky intentionally accessed Ticketmaster's computers without authorization or in excess of authorized access, and, through interstate or foreign communication, obtained information from those computers, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C). As a result of this conduct, Ticketmaster sustained economic damages of at least $5,000 over a one-year period.

65. Furthermore, Rakowsky knowingly, and with intent to defraud, accessed Ticketmaster's computers without authorization or in excess of authorized access, and by means of such conduct furthered his intended fraud and obtained items of value greater than $5,000 over a one-year period, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

66. As alleged in more detail in Paragraphs 35-41 above, these violations have damaged Ticketmaster by, among other things, diminishing the inventory of tickets available through Ticketmaster to legitimate consumers, causing artificially high levels of tickets to be placed on reserve and thereby interfering with the transmission of real time sales information to Ticketmaster's clients, interfering with and disrupting Ticketmaster's load balancing program and thereby denying service to legitimate consumers, bypassing required website entry and exit points, which directly and indirectly reduces integral revenue opportunities, altering website security features through manipulation of request limit monitoring, requiring Ticketmaster to undertake extraordinary actions to

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2

19

FIRST AMENDED COMPLAINT

|1|

1   monitor and enhance website infrastructure, and significantly increasing costs of

2   data storage, troubleshooting and system maintenance.

3          67.     Under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g),

4   Ticketmaster is entitled to an injunction, damages, and other legal and equitable

5   relief as prayed for in this Complaint.

6

7                        **FIFTH CLAIM FOR RELIEF**

8                **Violation Of California Penal Code § 502**

9          68.     Ticketmaster alleges and incorporates by reference all of the

10   preceding paragraphs.

11          69.     On a repeated and systematic basis, Rakowsky has knowingly

12   accessed Ticketmaster's website in violation of the Terms of Use and thus without

13   permission, in violation of California Penal Code Section 502(c)(7).

14          70.     Furthermore, Rakowsky has knowingly used, or caused to be

15   used, Ticketmaster's computer services without permission, in violation of

16   California Penal Code Section 502(c)(3).

17          71.     Furthermore, Ticketmaster is informed and believes, and based

18   thereon alleges, that Rakowsky has knowingly and without Ticketmaster's

19   permission provided, or assisted in providing, a means of accessing Ticketmaster's

20   website, in violation of California Penal Code Section 502(c)(6).

21          72.     Furthermore, Rakowsky has without permission taken data from

22   Ticketmaster's computer system and computer service and has used the data on that

23   system to wrongfully obtain tickets, in violation of California Penal Code Sections

24   502(c)(1) and (2).

25          73.     Furthermore, through his repeated and systematic use of bots

26   and other automated devices in violation of the Terms of Use, Rakowsky has

27   knowingly and without permission disrupted Ticketmaster's computer services and

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2                              20

112

1  has caused the denial of those services to authorized users of the computer system,
2  in violation of California Penal Code Section 502(c)(5).

3         74.  As alleged in more detail in Paragraphs 35-41 above, these
4  violations have damaged Ticketmaster by, among other things, diminishing the
5  inventory of tickets available through Ticketmaster to legitimate consumers,
6  causing artificially high levels of tickets to be placed on reserve and thereby
7  interfering with the transmission of real time sales information to Ticketmaster's
8  clients, interfering with and disrupting Ticketmaster's load balancing program and
9  thereby denying service to legitimate consumers, bypassing required website entry
10  and exit points, which directly and indirectly reduces integral revenue
11  opportunities, altering website security features through manipulation of request
12  limit monitoring, requiring Ticketmaster to undertake extraordinary actions to
13  monitor and enhance website infrastructure, and significantly increasing costs of
14  data storage, troubleshooting and system maintenance.

15         75.  Pursuant to California Penal Code Section 502(e), Ticketmaster
16  is entitled to an injunction, compensatory and punitive damages, attorneys' fees,
17  and other legal and equitable relief as prayed for in this Complaint.

18         76.  Rakowsky has acted with oppression, fraud and malice toward
19  Ticketmaster, entitling Ticketmaster to an award of punitive damages in an amount
20  sufficient to deter him from future misconduct.

21

22                 **SIXTH CLAIM FOR RELIEF**

23                      **Fraud**

24         77.  Ticketmaster alleges and incorporates by reference all of the
25  preceding paragraphs.

26         78.  Rakowsky has repeatedly accessed Ticketmaster's website, and
27  in proceeding to use the website, represented to Ticketmaster that he would comply
28  with the Terms of Use, and thus that he would not, among other things, use the site

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2       21

FIRST AMENDED COMPLAINT

113

1  for commercial purposes, use bots or other automated devices, abuse the website, or
2  exceed per-customer ticket limits.

3         79.    Ticketmaster is informed and believes, and based thereon
4  alleges, that Rakowsky clicked the "Accept and Continue" button on Ticketmaster's
5  website when setting up online accounts, thereby expressly representing to
6  Ticketmaster that he would comply with the Terms of Use for the website, and thus
7  that he would not, among other things, use the site for commercial purposes, use
8  bots or other automated devices, abuse the website, or exceed per-customer ticket
9  limits.

10         80.    In addition, since 2006, Rakowsky has been required to click the
11  "Accept and Continue" button on Ticketmaster's website when completing
12  purchases of tickets, thereby expressly representing to Ticketmaster that he would
13  comply with the Terms of Use for the website, and thus that he would not, among
14  other things, use the site for commercial purposes, use bots or other automated
15  devices, abuse the website, or exceed per-customer ticket limits.

16         81.    Each and every such representation was false. Ticketmaster is
17  informed and believes that every time Rakowsky accessed and used the website,
18  and every time Rakowsky clicked the Accept and Continue button, he intended to,
19  and did, violate the Terms of Use as described above. Moreover, Ticketmaster is
20  informed and believes, and based thereon alleges, that every time Rakowsky
21  accessed and used Ticketmaster's website, he concealed from Ticketmaster his true
22  intent to violate the Terms of Use. In addition, in an attempt to disguise the fact of
23  so many purchases originating from the same source, Rakowsky misrepresented his
24  identity when interacting with the Ticketmaster website and making many of the
25  ticket purchases at issue.

26         82.    Ticketmaster relied on each such representation and omission by
27  providing the information and services available on the website to Rakowsky,
28  including the sale to Rakowsky of substantial quantities of tickets.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2         22

FIRST AMENDED COMPLAINT

119

1        83.   Ticketmaster's reliance was reasonable. Rakowsky received

2    ample notice of the Terms of Use every time he accessed and used the website, and

3    it has been necessary for him to click the Accept and Continue button both when

4    setting up online accounts and when completing a ticket purchase.

5        84.   As a result of Rakowsky's fraudulent representations and

6    omissions, Ticketmaster sold tickets to Rakowsky that Ticketmaster otherwise

7    could have sold to legitimate users of the site but was unable to due to Rakowsky's

8    misconduct.

9        85.   As a proximate result of this fraudulent misconduct,

10    Ticketmaster has been damaged in an amount to be proved at trial.

11        86.   Ticketmaster is informed and believes, and based thereon

12    alleges, that Rakowsky's conduct was undertaken with the intent to injure

13    Ticketmaster, or with a willful and conscious disregard of Ticketmaster's rights,

14    and constitutes clear and convincing evidence of oppression, fraud and malice

15    under California Civil Code Section 3294. As a result, Ticketmaster is entitled to

16    an award of punitive damages against Rakowsky in an amount sufficient to deter

17    him from future misconduct.

18

19        WHEREFORE, Ticketmaster respectfully requests that the Court:

20        1.   Enjoin Rakowsky from:

21        a. infringing or assisting any other person in infringing

22    Ticketmaster's rights in its copyrighted ticketmaster.com website works as set forth

23    herein by copying pages from that website in excess of the scope of the license

24    granted by the ticketmaster.com Terms of Use;

25        b. trafficking in or using any bots, programs or other

26    technology, products, services, devices, components, or parts thereof to circumvent

27    the technological measures by which Ticketmaster controls access to its website;

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2                  23

FIRST AMENDED COMPLAINT

115

1              c.  accessing,  visiting,  purchasing  tickets  on,  facilitating  the

2    purchase of tickets on, or otherwise using ticketmaster.com for any purpose that is

3    in  excess  of  the  agreement  formed  by  the  Terms  of  Use  by  which  users  are

4    permitted to visit that website;

5              d.  using, or causing, urging or assisting any other person to use,

6    automated means such as bots to access Ticketmaster's website;

7              e.  using, or causing, urging or assisting any other person to use,

8    any program that is designed to circumvent security measures such as CAPTCHA

9    to attempt to access Ticketmaster's website;

10             f.  soliciting the design, purchase, sale or use of any program or

11   device that is designed to provide an automated means of accessing Ticketmaster's

12   website or that is designed to circumvent security measures such as CAPTCHA on

13   Ticketmaster's website;

14             g.  purchasing, selling, transferring or acquiring any program or

15   device that is designed to provide an automated means of accessing Ticketmaster's

16   website or that is designed to circumvent security measures such as CAPTCHA on

17   Ticketmaster's website;

18             h.  accessing   or   using   Ticketmaster's   website   for   any

19   commercial purpose whatsoever;

20             i.  abusing  Ticketmaster's  website  in  any  way,  such  as

21   exceeding limits in the Terms of Use for requesting web pages and making requests

22   to transactional servers more than once during any three-second interval;

23             j.  purchasing tickets in excess of per customer ticket limits; and

24             k.  reselling any tickets obtained through Ticketmaster that were

25   not obtained legitimately in accordance with the Terms of Use;

26         2.  Order that Rakowsky be required to:

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2

24

116

1                  a. account for, hold in constructive trust, pay over to

2  Ticketmaster, and otherwise disgorge all profits derived by Rakowsky from his

3  misconduct as alleged herein; and

4                  b. pay to Ticketmaster the costs of this action, together with

5  reasonable attorneys' fees and disbursements, in accordance with federal and

6  California law, including but not limited to 17 U.S.C. Sections 505 and 1203, and

7  California Penal Code Section 502(e)(2);

8          3.     Award to Ticketmaster liquidated, compensatory, statutory and

9  punitive damages; and

10         4.    Award to Ticketmaster all further relief, as the Court deems just

11  and equitable.

12  Dated: June 25, 2007           MANATT, PHELPS & PHILLIPS, LLP
                                  ROBERT H. PLATT

13                                MARK S. LEE
                                  DONALD R. BROWN

14

15

16                            By:

17                              Robert H. Platt
                              Attorneys for *Plaintiff*
                              TICKETMASTER L.L.C.

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2                     25

1

## JURY DEMAND

2       Ticketmaster demands a jury trial in this action.

3   Dated: June 25, 2007                    MANATT, PHELPS & PHILLIPS, LLP
                                            ROBERT H. PLATT
4                                           MARK S. LEE
                                            DONALD R. BROWN
5

6                                    By:    Robert H. Platt /bcs

7                                           Robert H. Platt
                                            Attorneys for *Plaintiff*
8                                           TICKETMASTER L.L.C.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41130062.2                         26

FIRST AMENDED COMPLAINT

118

**EXHIBIT A**

119

## Terms of Use

Welcome to Ticketmaster. The following are the Terms of Use (these "Terms") that govern use of the Ticketmaster.com and Ticketmaster.ca web sites (collectively, the "Site"). When we say the "Site" we are also referring to the TicketExchange sections of the Site where you can buy and resell tickets. By using or visiting the Site, you expressly agree to be bound by these Terms and to follow these Terms and any applicable laws and regulations governing the Site. Ticketmaster, Ticketmaster Canada Ltd. and each of their respective subsidiaries (collectively "Ticketmaster" or "we") reserve the right to change these Terms at any time, effective immediately upon posting on the Site. Please check this page of the Site periodically. If you violate these Terms, Ticketmaster may terminate your use of the Site, bar you from future use of the Site, cancel tickets you receive through the site, cancel your ticket order, and/or take appropriate legal action against you.

### Permitted Use

You agree that you are only authorized to visit, view and to retain a copy of pages of this Site for your own personal use, and that you shall not duplicate, download, publish, modify or otherwise distribute the material on this Site for any purpose other than to review event and promotional information, for personal use, or to purchase tickets or merchandise, unless otherwise specifically authorized by Ticketmaster to do so. You also agree not to deep-link to the site for any purpose, unless specifically authorized by Ticketmaster to do so or unless deep-linking to TicketExchange pages where you have posted tickets for sale. The content and software on this Site is the property of Ticketmaster and/or its suppliers and is protected by U.S., Canadian and international copyright laws. We post a legal notice and various credits on pages of the Site, which may not be removed. Please do not remove this notice or these credits, or any additional information contained along with the notices and credits.

### Ticket Purchase Policy

Please review the <u>Purchase Policy</u>, which will govern your order or purchase of any tickets through the Site.

### TicketExchange Selling Policy

Please review the TicketExchange <u>Selling Policy</u>, which will govern your sale, or attempted sale, of any tickets using the TicketExchange portions of the Site.

### Truthfulness and Accuracy of the Information You Provide; Complying with Laws; Verifications and Authorizations

The sale or purchase of tickets to entertainment events is regulated by certain states, counties and cities. You may be asked to provide information during processes you engage in on the Site. You represent and warrant that all information you provide will be true, complete and correct, and that you will update all information as it changes. You also acknowledge that complying with laws is your responsibility, AND YOU AGREE NOT TO HOLD US LIABLE FOR YOUR FAILURE TO COMPLY WITH ANY LAW OR OUR FAILURE TO NOTIFY YOU OF, OR PROPERLY APPLY, ANY LAW. WE WILL COMPLY WITH LAW ENFORCEMENT AND MAY PROVIDE THEM WITH ALL INFORMATION YOU SUBMIT TO US TO ASSIST IN ANY INVESTIGATION OR PROSECUTION THEY MAY CONDUCT. If we are unable to verify or authenticate any information or tickets you provide during any registration, ordering, purchase, ticket posting, sale, authentication, delivery, payment or remittance process, or any other process, or if we are no longer able to verify or authorize your credit card or bank account information, you may be prohibited from using the Site.

### User Contributions to the Site

From time to time, the Site may provide you with opportunities to contribute to the Site, which may include, but not be limited to, uploading your user profile, participating in chats and using bulletin boards. Anything that is contributed to the Site by you or other Site users will be referred to in these Terms as "User Content". Ticketmaster is not liable or responsible for any User Content. The contributions of third parties do not necessarily represent the view or opinions of Ticketmaster. Ticketmaster cannot preview User Content before it appears. Users can be held liable for any illegal or prohibited User Content they provide to the Site, including among other things, infringing, defamatory or offensive materials. If you discover this kind of material on the Site, please notify us at legal@ticketmaster.com if the material is on Ticketmaster.com and legal@ticketmaster.ca if the material is on Ticketmaster.ca. We will investigate your claim and may then take the actions deemed appropriate.

### Links and Search Results

The Site may automatically produce search results that reference or link to third party sites throughout the World Wide Web. Ticketmaster has no control over these sites or the content within them. Ticketmaster cannot guarantee, represent or warrant that the content contained in the sites is accurate, legal and/or inoffensive. Ticketmaster does not endorse the content of any third party site, nor do we warrant that they will not contain viruses or otherwise impact your computer. By using the Site to search for or link to another site, you agree and understand that you may not make any claim against Ticketmaster for any damages or losses, whatsoever, resulting from your use of the Site to obtain search results or to link to another site. If you have a problem with a link from the Site, please notify us at legal@ticketmaster.com if the link is on Ticketmaster.com and legal@ticketmaster.ca if the link is on Ticketmaster.ca, and we will investigate your claim and take any actions we deem appropriate in our sole discretion.

Policies and Se

## Prohibited Content

The following is a partial list of the kind of User Content which is illegal or prohibited on the Site. It includes User Content that:

- Is patently offensive to the online community, such as User Content that promotes racism, bigotry, hatred or physical harm of any kind against any group or individual; could be harmful to minors;
- Harasses or advocates harassment of another person;
- Involves the transmission of "junk mail", "chain letters", or unsolicited mass mailing or "spamming";
- Promotes information that you know is false, misleading or promotes illegal activities or conduct that is abusive, threatening, obscene, defamatory or libelous;
- Promotes an illegal or unauthorized copy of another person's copyrighted work, such as providing pirated computer programs or links to them, providing information to circumvent manufacture-installed copy-protect devices, or providing pirated music or links to pirated music files;
- Contains restricted or password only access pages, or hidden pages or images (those not linked to or from another accessible page);
- Displays pornographic or sexually explicit material of any kind;
- Provides material that exploits people under the age of 18 in a sexual or violent manner, or solicits personal information from anyone under 18;
- Provides instructional information about illegal activities such as making or buying illegal weapons, violating someone's privacy, or providing or creating computer viruses;
- Solicits passwords or personal identifying information for commercial or unlawful purposes from other users; and
- Engages in commercial activities without our prior written consent such as contests, sweepstakes, barter, advertising, and pyramid schemes.

## Offline Conduct

Although Ticketmaster cannot monitor the conduct of users off the Site, it is also a violation of these rules to use any information obtained from this Site in order to harass, abuse, or harm another person, or in order to contact, advertise to, solicit or sell to any Site user without their prior explicit consent.

## Commercial Use

No bulletin board, chat or other areas of this Site may be used by our visitors for any commercial purposes such as to conduct sales of tickets, merchandise or services of any kind, except that TicketExchange can be used to resell tickets to the extent compliant with law. You must obtain our prior written consent to make commercial offers of any kind, whether by advertising, solicitations, links, or any other form of communication, except you may post tickets for resale through TicketExchange to the extent you are doing so in accordance with law. Without limiting the foregoing, you may not use the Site to resell or link to other sites for the purpose of selling tickets of any kind, except you may resell tickets through TicketExchange to the extent you are doing so in accordance with law. We will investigate and take appropriate legal action against anyone who violates this provision, including without limitation, removing the offending communication from the Site and barring such violators from use of the Site. We reserve the right to block access to this Site or Ticketmaster's other services, or cancel a ticket order or ticket with respect to any person believed to be, or believed to be acting in concert with any person who is believed to be, violating the law or these Terms or Ticketmaster's rights, or utilizing automated means to process or place ticket orders, or who has ordered a number of tickets that exceeds the stated limit. Violating any limitations or terms on the Site will be deemed to be a violation of these Terms. Please note that Ticketmaster has entered into agreements with certain sport teams for whom Ticketmaster hosts web sites that are designed to allow such sports teams' season ticket holders to sell individual game tickets from their season ticket packages through such web sites ("Season Ticket Sale Sites"). Some of these Season Ticket Sale Sites can be found through this Site. Nothing in this paragraph shall prohibit the sale or purchase of tickets through the Season Ticket Sale Sites or through TicketExchange, as long as such sales and purchases are conducted pursuant to the terms that apply to the Season Ticket Sale Sites or TicketExchange (as the case may be) and comply with law.

## Access and Interference

You agree that you will not use any robot, spider or other automatic device, process or means to access the Site. Nor shall you use any manual process to monitor or copy our web pages or the content contained thereon or for any other unauthorized purpose without our prior expressed written permission. You agree that you will not use any device, software or routine that interferes with the proper working of the Site nor shall you attempt to interfere with the proper working of the Site. You agree that you will not take any action that imposes an unreasonable or disproportionately large load on our infrastructure. You agree that you will not access, reload or "refresh" transactional event or ticketing pages, or make any other request to transactional servers, more than once during any three second interval. You agree that you will not copy, reproduce, alter, modify, create derivative works, or publicly display any content (except for your own personal, non-commercial use) from the Site without the prior expressed written permission of Ticketmaster.

## Unauthorized Use of the Site

Any illegal or unauthorized use of the Site shall constitute a violation of these Terms of Use. You do not

12-1

have permission to access the Site in          .y that violates, or in the course of violating, these Terms
Use. Illegal or unauthorized use of the Site includes, but is not limited to, using the site to facilitate illeg...
ticket sales, unauthorized framing of or linking to the Site, or unauthorized use of any robot, spider or other
automated process on the Site. It shall also be a violation of these Terms of Use: (a) for any individual (or
group of individuals acting in concert) to request, more than 1000 pages of the Site in any twenty-four hour
period (hereafter referred to as "Abusive Use"); or (b) to use any passcode or password, regardless of
whether or not such password or passcode is unique, to participate in a pre-sale or other offer on the Site if
you are not the original recipient of such passcode or password (i.e., if you did not receive the passcode or
password from Ticketmaster, or from the fan club or other organization with whom Ticketmaster is working
to enable such pre-sale or offer) or if your participation in such pre-sale or other offer is inconsistent with
such pre-sale's or offer's terms.

Suspected Violation of these Terms of Use or Law; Injunctive, Equitable Relief, and Liquidated
Damages

Violations of these Terms of Use, including Unauthorized Use of the Site, may be investigated and
appropriate legal action may be taken, including without limitation civil, criminal and injunctive redress. You
understand and agree that in Ticketmaster's sole discretion, and without prior notice, Ticketmaster may
terminate your access to the Site, cancel your ticket order or tickets acquired through your ticket order,
cancel your ticket postings, remove any unauthorized User Content or exercise any other remedy available,
if Ticketmaster believes that your conduct or the conduct of any person with whom Ticketmaster believes
you act in concert, or the User Content you provide, or any resale of such tickets purchased through
Ticketmaster, violates or is inconsistent with these Terms or the law, or violates the rights of Ticketmaster, a
client of Ticketmaster or another user of the Site. You agree that monetary damages may not provide a
sufficient remedy to Ticketmaster for violations of these Terms and you consent to injunctive or other
equitable relief for such violations.

You agree that Abusive Use of the Site, as defined above, causes damage and harm to Ticketmaster in the
form of, among other things, impaired goodwill, lost sales, and increased expenses associated with
responding to Abusive Use of the Site. You further agree that monetary damages for Abusive Use of the
Site are difficult to ascertain and that proof of monetary damages for Abusive Use would be costly and
inconvenient to calculate. Accordingly you agree that liquidated damages are warranted for Abusive Use.
Therefore, you agree that if you, or others acting in concert with you, alone or collectively request more than
1000 pages of the Site in any twenty-four hour period, you, and those acting in concert with you, will be
jointly and severally liable for liquidated damages in the amount of ten dollars ($10.00) per page request
each time that a page request is made after that first 1000 during that twenty-four hour period. You also
agree that this will be the measure of damages for any Abusive Use that occurred prior to this provision of
these Terms of Use being in effect.

Ticketmaster is not required to provide any refund to you if it exercises any of its rights or remedies because
you have violated these Terms or any of Ticketmaster's rights. For more information about how we handle
copyright infringements on the Site, please see our Copyright Policy. Additionally, we reserve the right, in
our sole discretion, to modify, suspend or discontinue any part of this Site at any time, with or without notice
to you. We also reserve the right, in our sole discretion, to impose limits on certain features and services
and to restrict access to any part or to all of the Site without notice to you. We shall not be liable to you or
any third party for any claim or cause of action arising out of our exercise of the foregoing rights.

Privacy
We believe that your privacy and the privacy of all our users is important. These Terms are subject to the
Privacy Policy, which is hereby incorporated by reference. Ticketmaster will not be responsible or otherwise
liable for any use or disclosure of your contact information, or financial information, by a third party to whom
Ticketmaster is allowed to disclose your contact information under the Privacy Policy. If you post any User
Content to the Site, by electronic mail or otherwise, we will treat it as non-confidential and non-proprietary to
you. When we say in these Terms "post" we mean the provision of information (including, but not limited to,
"User Content") to the Site through features of the Site that are used to make information available to other
members of the public (e.g., user reviews, bulletin boards, chat rooms, etc.). Information that is posted to
the Site shall not be subject to the Privacy Policy and may be publicly displayed and disclosed and
otherwise used by Ticketmaster or any third party in any way. By posting User Content to the Site, you
authorize us to use or allow others to distribute, reproduce or otherwise use such User Content. You should
not post information about yourself on the Site that can be used to identify or contact you, including, but not
limited to, your name, home or work address, phone numbers, pagers, email address or other such
information. If you post such information, Ticketmaster cannot prevent it from being used in a manner that
violates these Terms, the law, or your personal privacy and safety. By posting such information on the Site,
you violate these Terms, and you assume the risks and sole liability for the results of such posting. You
understand that if you post tickets on TicketExchange through the posting process applicable to licensed
resellers, under certain circumstances some of your contact information may be displayed to the public.

Ticketmaster is not liable for any lost data resulting from the operation of the Site or the enforcement of the
Terms. We urge all users to maintain their own back up versions of any User Content or other information
they submit to the Site.

U.S. Export Controls

This Site and software derived from this ... is further subject to United States export controls. No son from this site may be downloaded or otherwise exported or re-exported: (i) into (or to a national or resident of) Cuba, Iraq, Libya, North Korea, Iran, Syria, or any other Country to which the U.S. has embargoed goods; or (ii) to anyone on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Commerce Department's Table of Deny Orders. By downloading or using the Site or any software derived there from, you represent and warrant that you are not located in, under the control of, or a national or resident of any such country or on any such list.

## Copyright Policy

We will terminate the privileges of any user who uses this Site to unlawfully transmit copyrighted material without a license express consent, valid defence or fair use exemption to do so. In particular, users who submit User Content to this Site, whether articles, images, stories, software or other copyrightable material must ensure that the User Content they upload does not infringe the copyrights or other rights of third parties (including, but not limited, to trademark, trade secret, privacy or publicity rights). After proper notification by the copyright holder or it agent to us, and confirmation through court order or admission by the user that they have used this Site as an instrument of unlawful infringement, we will terminate the infringing users' rights to use and/or access to this Site. We may, also in our sole discretion, decide to terminate a user's rights to use or access to the Site prior to that time if we believe that an alleged infringement has occurred.

## Disclaimers

TICKETMASTER DOES NOT PROMISE THAT THE SITE WILL BE ERROR-FREE, UNINTERRUPTED, OR THAT IT WILL PROVIDE SPECIFIC RESULTS FROM USE OF THE SITE OR ANY CONTENT, SEARCH OR LINK ON IT. THE SITE AND ITS CONTENT ARE DELIVERED ON AN "AS-IS" AND "AS-AVAILABLE" BASIS. TICKETMASTER CANNOT ENSURE THAT FILES YOU DOWNLOAD FROM THE SITE WILL BE FREE OF VIRUSES OR CONTAMINATION OR DESTRUCTIVE FEATURES. TICKETMASTER DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ALSO ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. TICKETMASTER WILL NOT BE LIABLE FOR ANY DAMAGES OF ANY KIND ARISING FROM THE USE OF THIS SITE, INCLUDING WITHOUT LIMITATION, DIRECT, INDIRECT, INCIDENTAL, AND PUNITIVE AND CONSEQUENTIAL DAMAGES. TICKETMASTER MAKES NO GUARANTEE OF ANY SPECIFIC RESULT FROM USE OF THIS SITE OR USE OF THE TICKETMASTER SERVICE.

TICKETMASTER DISCLAIMS ANY AND ALL LIABILITY FOR THE ACTS, OMISSIONS AND CONDUCT OF ANY THIRD PARTY USERS, TICKETMASTER USERS, ADVERTISERS AND/OR SPONSORS ON THE SITE, IN CONNECTION WITH THE TICKETMASTER SERVICE OR OTHERWISE RELATED TO YOUR USE OF THE SITE AND/OR THE TICKETMASTER SERVICE. TICKETMASTER IS NOT RESPONSIBLE FOR THE PRODUCTS, SERVICES, ACTIONS OR FAILURE TO ACT OF ANY VENUE, PERFORMER, PROMOTER OR OTHER THIRD PARTY IN CONNECTION WITH OR REFERENCED ON THE SITE.

Without limiting the foregoing, you may report the misconduct of users and/or third party advertisers, service and/or product providers referenced on or included in the Site to Ticketmaster at legal@ticketmaster.com if on Ticketmaster.com or at legal@ticketmaster.ca if on Ticketmaster.ca. Ticketmaster may investigate the claim and take appropriate action, in its sole discretion.

## Limitation on Liability

IN NO EVENT WILL TICKETMASTER BE LIABLE TO YOU FOR ANY INDIRECT, CONSEQUENTIAL, EXEMPLARY, INCIDENTAL, SPECIAL OR PUNITIVE DAMAGES, OR FOR LOST PROFITS, REVNUES OR BUSINESS OPPORTUNITIES, EVEN IF TICKETMASTER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

## Disputes

If you have a dispute and your dispute involves an event (or a ticket for an event) that is located in the United States, then the dispute will be governed by the laws of the State of California without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in state and federal courts located in Los Angeles County, California. If you have a dispute and your dispute involves an event (or a ticket for an event) that is located in Canada, then the dispute will be governed by the laws of the Province of Ontario without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in courts located in Toronto, Ontario. If you have a dispute regarding the Site but not regarding an event (and not regarding a ticket for an event), then: (a) if you are accessing the Site from the United States or any country other than Canada, then the dispute will be governed by the laws of the State of California without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in state and federal courts located in Los Angeles County, California; and (b) if you are accessing the Site from Canada, then the dispute will be governed by the laws of the Province of Ontario without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in courts located in Toronto, Ontario. If you are purchasing or selling through TicketExchange tickets to an event that is located in the State of Illinois, then this paragraph shall not apply to your purchase or sale, and instead the paragraph that will apply is the paragraph below entitled "Additional Provisions Applicable to Persons Using TicketExchagne to Buy or Sell Tickets to any Event Located in the State of Illinois."

Indemnity

You agree to indemnify and hold Ticketmaster and its affiliates, and each of Ticketmaster's and its affiliates' respective officers, agents, employees, contractors and principals, harmless from any loss, liability, claim or demand, including reasonable attorneys' fees, made by any third party due to or arising out of your use of the Site, including also your use of the Site to provide a link to another site or to upload content or other information to the Site.

Trademarks

Ticketmaster and Ticketmaster.com and design are registered trademarks of Ticketmaster. All rights reserved.

Additional Provisions Applicable to Persons Using TicketExchange to Buy or Sell Tickets to any Event Located in the State of Illinois

If, and only if, you are using TicketExchange to purchase or sell a ticket to an event that is located in the State of Illinois, then you understand, agree and acknowledge the following:

- This website is operated by Ticketmaster L.L.C. Ticketmaster's address in the State of Illinois is: 550 W. Van Buren Street, 13th Floor, Chicago, Illinois 60607.
- If you have a complaint or inquiry regarding ticket resales made through TicketExchange for any event located in the State of Illinois, please email us at licketexchange@ticketmaster.com or call us at (877) 446-9450.
- These Terms shall be governed by and construed in accordance with the laws of the State of Illinois. In the event of a dispute, you, Ticketmaster, and all buyers and sellers of tickets through TicketExchange each agree to submit to the exclusive jurisdiction and venue of the state and federal courts located in Chicago, Illinois, and the parties consent to the exclusive and personal jurisdiction and venue of these courts, subject to the following: If you are a reseller of one or more tickets through TicketExchange and you have a dispute with any person or business who buys any of those tickets from you, or you are a buyer of one or more resold tickets resold through TicketExchange and you have a dispute with the person or business that sold any of those tickets to you, you hereby agree that that dispute will be solely and finally settled in Illinois by binding arbitration in accordance with the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association, and the non-prevailing party in the arbitration shall pay the fees and expenses of the arbitrator(s) and the costs of arbitration and the enforcement of any award rendered therein, including the attorneys' fees and expenses of the prevailing party. In order to commence such a proceeding, please send a letter describing the dispute to Ticketmaster Legal Department, 8800 Sunset Blvd., West Hollywood, CA 90069.

---

Home   Music   Sports   Arts & Theater   Family   Gift Cards

Site Map  |  About Ticketmaster  |  Our Policies  |  Privacy Policy  |  Sell Tickets With Us  |  International  |  Care

Use of this site is subject to express terms of use, which prohibit commercial use of this site. By continuing past this page, you agree to abid

© 2007  Ticketmaster. All rights reserved.

Partner Sites: Admission  Condo Direct  Cottonblend  Domania  Expedia  GetSmart  HomeConnections  Home Loan Center  Hotels  H iNest  IOS Catalog  LendingTree  LendingTree Loans  LiveDaily  RealEstate  ReserveAmerica  ServiceMagic  Shoes  Smith + Noble
TicketWeb



**EXHIBIT B**

125

# ticketmaster

**O** You have 1:30 minutes to complete this page.
After 1:30 minutes these tickets will be released.

create account

Already have a Ticketmaster Account? Sign In

First name

Email address

Retype Email
address

Zip/Postal code

Type password                    5-12 characters

Retype password

As a Ticketmaster user, by purchasing a ticket to an event or completing a registration form in order to be able to purchase a ticket to an event, you agree that Ticketmaster may share your information with the venues, promoters, artists, teams, leagues and other third parties associated with that event. These parties may use your information to contact you or may use or disclose your information in other ways. Please contact them directly to learn about their policies. Ticketmaster may also contact you and use and disclose the information you submit, as described in the Ticketmaster Privacy Policy.

As a registered user of Ticketmaster.com, you are subject to the terms of use which, among other things, prohibits commercial use of this site.

Accept and Continue

Already have an account? Sign In

© 2003 Ticketmaster. All rights reserved.

**EXHIBIT C**

127

*ketmaster*

complete this page within 1:00 minute.
:00 minute, the tickets we're holding will be released for others to buy.

**te Account**

Already have a Ticketmaster Account? **Log In**

name

: address

pe Email address

ostal code

: password                              5-12 characters

pe password

irchasing a ticket to an event, or completing this registration form in order to be able to purchase a ticket to an event or to bid in an auction, you
ite that you consent to Ticketmaster sharing your email address and other information with those involved in the event (e.g., venues, teams, artists'
sentatives and fan clubs, promoters and leagues), and that you consent to those involved in the event using your information to contact you by email
ier means to send you marketing or other messages or using or disclosing your information in other ways. Please contact them directly to learn about
policies. By completing this registration form, you also indicate that you consent to Ticketmaster contacting you by email or other means to send you
ting or other messages and using and disclosing the information you submit, as described in the Ticketmaster Privacy Policy.

i are under 13 years old, you must not fill in this form or provide any information about yourself.

registered user of Ticketmaster.com, you are subject to the terms of use which, among other things, prohibits commercial use of this site.

**Accept and Continue**

© 2006 Ticketmaster. All rights reserved.

## PROOF OF SERVICE

I, Rebecca Blake, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11355 West Olympic Boulevard, Los Angeles, California 90064-1614. On June 6, 2007, I served a copy of the within document(s):

### FIRST AMENDED COMPLAINT

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐    by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Golden State Overnight agent for delivery.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒    by sending an electronic message with attached PDF.

Caryn Brottman Sanders, Esq.
Law Offices of Caryn Sanders
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
Tel: (661) 362-0788
Fax: (661) 362-0789
Email: caryn@sanders-law.com

Joseph S. Provanzano, J.D.
Law Offices of Joseph S. Provanzano
16 Bourbon Street, Suite C
Peabody, Massachusetts 01960-1338
Tel: (978) 535-8222
Fax: (978) 535-8228
Email: JoePro12@aol.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 6, 2007, at Los Angeles, California.

_Rebecca Blake_
Rebecca Blake

41120062.1

34

129

## PROOF OF SERVICE

I, Rebecca Blake, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11355 West Olympic Boulevard, Los Angeles, California 90064-1614. On June 25, 2007, I served a copy of the within document(s):

FIRST AMENDED COMPLAINT FOR:  (1) BREACH OF CONTRACT; (2) COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, *et seq.*); (3) VIOLATION OF DIGITAL MILLENNIUM COPYRIGHT ACT (17 U.S.C. § 1201); (4) VIOLATION OF COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030); (5) VIOLATION OF CALIFORNIA PENAL CODE § 502; and (6) FRAUD

☐   by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☒   by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Golden State Overnight agent for delivery.

☐   by causing the document(s) listed above to be personally delivered to the person(s) at the address(es) set forth below.

☒   by sending an electronic message with attached PDF.

Caryn Brottman Sanders, Esq.
Law Offices of Caryn Sanders
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
Tel: (661) 362-0788
Fax: (661) 362-0789
caryn@sanders-law.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

130

1    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

2    Executed on June 25, 2007, at Los Angeles, California.

3

4

5                                                    Rebecca Blake

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

131

# EXHIBIT D

1 | MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT (Bar No. CA 108533)
2 | rplatt@manatt.com
MARK S. LEE (Bar No. CA 094103)
3 | mlee@manatt.com
DONALD R. BROWN (Bar No. CA 156548)
4 | dbrown@manatt.com
11355 West Olympic Boulevard
5 | Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
6 | Facsimile: (310) 312-4224

7 | Attorneys for *Plaintiff*
TICKETMASTER L.L.C.

8

9 | UNITED STATES DISTRICT COURT

10 | FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12 | TICKETMASTER L.L.C., a Virginia
limited liability company,

13 |       Plaintiff,

14 | vs.

15 | THOMAS J. PRIOR, an individual,
and USA ENTERTAINMENT, an
16 | unknown business entity formerly
sued as DOE No. 1,
17

18 |       Defendants.

19

20

21

Case No. CV 07-2535 ABC (JCx)

FIRST AMENDED COMPLAINT FOR:

(1) BREACH OF CONTRACT;
(2) COPYRIGHT INFRINGEMENT
(17 U.S.C. § 101, *et seq.*)
(3) VIOLATION OF DIGITAL
MILLENNIUM COPYRIGHT ACT
(17 U.S.C. § 1201);
(4) VIOLATION OF COMPUTER
FRAUD AND ABUSE ACT (18
U.S.C. § 1030);
(5) VIOLATION OF CALIFORNIA
PENAL CODE § 502; and
(6) FRAUD

Complaint Filed: April 17, 2007

22

23

24 |       Plaintiff Ticketmaster L.L.C. ("Ticketmaster") alleges the following

25 | against defendants Thomas J. Prior ("Prior") and USA Entertainment (collectively,

26 | "Defendants"):

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4

FIRST AMENDED COMPLAINT

132

EXHIBIT
D

**JURISDICTION AND VENUE**

1.     This Court has subject matter jurisdiction over the federal claims in this Complaint pursuant to 28 U.S.C. Sections 1331 and 1338(a), and has jurisdiction over the other claims in this Complaint under California law pursuant to 28 U.S.C. Section 1367(a).

2.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332.  The amount in controversy, exclusive of interest and costs, exceeds $75,000.

3.     Venue is proper in this Court pursuant to 28 U.S.C. Sections 1391(b) and 1400 in that a substantial part of the events giving rise to the claims occurred in this judicial district and Ticketmaster's principal place of business is within this judicial district.  In addition, the Terms of Use which govern the relationship between the parties provides for venue in state or federal court in Los Angeles County for disputes relating to the purchase of tickets.

**SUMMARY**

4.     Ticketmaster sells tickets for entertainment and sports events on behalf of its clients to the general public through a variety of means, including Ticketmaster's website, ticketmaster.com.  The Terms of Use for Ticketmaster's website prohibit, among other things, use of the website for commercial purposes, use of automated devices such as bots and spiders to search for and purchase tickets, excessive requests for web pages and other abusive uses of the site, and purchasing quantities of tickets that exceed stated per customer ticket limits.  To maintain the integrity of its website and prevent abuse, Ticketmaster employs a variety of security features on its website, including a feature commonly known as CAPTCHA, which is designed to detect automated devices and prevent them from purchasing tickets.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4

1          5.     Since at least as early as 2003, Prior, for the benefit of himself
2  and his company, USA Entertainment, has repeatedly and systematically employed
3  automated devices to enter into and navigate through Ticketmaster's website and
4  improperly procure tickets for the purpose of reselling them at a profit.  Prior has
5  placed more than 21,000 orders through ticketmaster.com, resulting in the purchase
6  of more than 45,000 tickets, and has surreptitiously attempted to conceal his
7  identity by using a variety of names, credit cards and addresses.

8          6.     These deceptive and improper actions have harmed, and
9  continue to harm, Ticketmaster as well as consumers who seek to lawfully purchase
10  tickets through Ticketmaster's website.  By using automated devices, which can
11  navigate a website and complete transactions more quickly than human users can,
12  Prior deprives legitimate consumers of the opportunity to purchase tickets, a
13  problem which Prior compounds by purchasing quantities of tickets far in excess of
14  the contractual per customer ticket limits.  As part of his misuse and abuse of
15  Ticketmaster's website, Prior improperly copies pages from the website and
16  circumvents Ticketmaster's technological copy protection systems.  Moreover, this
17  misuse and abuse alters data on Ticketmaster's website, interferes with the
18  operation of the website, deprives Ticketmaster of various revenue streams, and
19  increases Ticketmaster's operational costs.

20          7.     Ticketmaster therefore asserts claims against Defendants for
21  breach of contract, copyright infringement, violations of the federal Digital
22  Millennium Copyright Act, the federal Computer Fraud and Abuse Act, California
23  Penal Code Section 502, and fraud.  As relief, Ticketmaster seeks an injunction,
24  compensatory damages, punitive damages, disgorgement of Defendants' ill-gotten
25  gains, imposition of a constructive trust, and recovery of attorneys' fees and costs
26  incurred by Ticketmaster to prosecute this lawsuit.

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

411200311.4

3

FIRST AMENDED COMPLAINT

134

**THE PARTIES**

8.      Plaintiff Ticketmaster L.L.C. ("Ticketmaster") is a Virginia limited liability company with its principal place of business in the City of West Hollywood, Los Angeles County, California.

9.      Ticketmaster is informed and believes, and based thereon alleges, that defendant Thomas J. Prior ("Prior") is an individual who resides in Massachusetts.

10.     Ticketmaster is informed and believes, and based thereon alleges, that defendant USA Entertainment is a business entity owned by Prior that is located at 13 Parker Street, Wilmington, Massachusetts, and is used by Prior to resell the tickets that are improperly procured through Ticketmaster. The precise structure and legal status of USA Entertainment, which was sued in the original Complaint as DOE No. 1, is unknown to Ticketmaster.

11.     Ticketmaster is informed and believes that at all times mentioned herein, Prior and USA Entertainment conspired with, acted in concert and active participation with, and aided and abetted each other in committing the wrongful acts alleged in this Complaint. Ticketmaster is informed and believes that each defendant knew, or consciously avoided knowing, that the other defendant was engaged or intended to engage in conduct that violated Ticketmaster's rights and also violated federal and California law.

**FACTS**

**A.      Ticketmaster Attempts To Make Its Ticketing System As Fair And Equitable As Possible For Consumers.**

12.     Ticketmaster distributes tickets for live entertainment events to the general public on behalf of Ticketmaster's clients, who are venues, promoters, entertainers and sports franchises. Ticketmaster sells tickets via retail ticket outlets, telephone call centers, and Ticketmaster's website, www.ticketmaster.com.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4                                            4
FIRST AMENDED COMPLAINT
135

1  Ticketmaster spends substantial time, energy and resources attempting to ensure
2  that its website is current, accurate and easily understood for the benefit of its
3  clients and the public.

4      13.   Demand for tickets sold through Ticketmaster, including via
5  ticketmaster.com, often exceeds the supply of tickets available for purchase. This
6  can inspire intense competition among consumers to purchase tickets to the same
7  event when the tickets become available for sale on ticketmaster.com.

8      14.   Recognizing this competitive reality, Ticketmaster has
9  undertaken various measures to make the ticket buying process as fair and equitable
10  as possible for consumers. For example, Ticketmaster attempts to regulate the
11  speed with which users may copy the web pages necessary to purchase tickets on
12  ticketmaster.com. Ticketmaster also limits the number of tickets that may be
13  purchased in any single transaction.

14      15.   In addition, Ticketmaster has undertaken measures intended to
15  prevent the use of computer programs or other automated devices—sometimes
16  called software robots or "bots"—which can give users of such devices an unfair
17  advantage over human consumers in the ticket purchasing process. One of those
18  measures is a security computer program, commonly known as CAPTCHA
19  ("Completely Automated Public Turing test to tell Computers and Humans Apart"),
20  that is designed to distinguish between human users and automated devices. When
21  a user submits a ticket request, a box appears on the screen with random characters
22  partially obscured behind hash marks, which the user is instructed to retype in order
23  to proceed with the ticket request. Most automated devices cannot decipher and
24  retype the random characters, and thus cannot proceed past that screen to complete
25  a ticket transaction.

26
27
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4

5

FIRST AMENDED COMPLAINT

136

**B.    Use Of Ticketmaster's Website Is Subject To Copyright Protections And Contractual Terms Of Use.**

16.    Ticketmaster's website is a work of authorship protected by copyright law.   Ticketmaster (or its predecessors) has registered versions of its website or portions thereof, with the Copyright Office, as described below:

| Title | Registration No. | Date of Registration |
|---|---|---|
| HTML code for Ticketmaster.com | TX-4-465-209 | February 5, 1997 |
| Ticketmaster.com Website II | TX-4-905-957 | June 18, 1999 |
| Ticketmaster.com Website III | TX-4-905-956 | June 18, 1999 |
| Ticketmaster.com | TX-5-072-126 | March 17, 2000 |
| Ticketmaster.com: Online Order Search | TX-5-067-039 | May 30, 2000 |
| Ticketmaster.com: Order Information | TX-5-067-040 | May 30, 2000 |
| Ticketmaster.com | TX-5-455-574 | December 29, 2000 |
| Ticketmaster.com Website Homepage, Event Ticket Order Pages | TXu-1-348-580 | May 22, 2007 |
| Event Ticket Order Validation Code | TXu-1-348-581 | May 22, 2007 |
| Event Ticket Order Limiting Code | TXu-1-348-582 | May 22, 2007 |

17.    Use of ticketmaster.com by any member of the public is governed by Terms of Use that are set forth on the website.   In all relevant respects, except for the inclusion of a liquidated damages provision in 2006, these Terms of Use have been the same from at least as early as 2003 to the present.   (A copy of Ticketmaster's current Terms of Use is attached hereto as Exhibit "A.")

18.    At all relevant times, the home page for ticketmaster.com has contained the following warning:

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4                                        6

FIRST AMENDED COMPLAINT

137

1
2

> Use of this website is subject to express terms of use which prohibit commercial use of this site. By continuing past this page, you agree to abide by these terms.

3  The underlined phrase "terms of use" on the home page is a readily visible

4  hypertext link that, when clicked, causes the full Terms of Use to appear on the

5  user's screen. The same message and related hyperlink to Ticketmaster's Terms of

6  Use appear on almost every webpage on the website. Thus, a user is repeatedly

7  reminded that use of the site is governed by the Terms of Use, and that continuing

8  to use the site with that knowledge constitutes acceptance of those Terms of Use.

9        19.    To purchase tickets through ticketmaster.com, a user must set up

10  an account with Ticketmaster, and in doing so the user is instructed to review the

11  Terms of Use for the website. Since 2003, it has been necessary as part of the

12  account set-up procedure for the user to expressly consent to the Terms of Use by

13  clicking a button labeled "Accept and Continue." (A copy of the webpage with the

14  "Accept and Continue" button as part of the account set-up procedure is attached

15  hereto as Exhibit "B.")

16        20.    Users of ticketmaster.com also are referred to the Terms of Use

17  when completing a ticket purchase. Users see a webpage which states, "As a user

18  of this website, you agree that you are subject to this website's Terms of Use," and

19  embedded in this statement is a hyperlink that, when clicked, causes the Terms of

20  Use to appear on the user's screen. During 2006, Ticketmaster added an "Accept

21  and Continue" button at the point of purchase, which requires a user, before

22  completing a ticket purchase, to expressly assent to the Terms of Use by clicking a

23  button labeled "Accept and Continue." (A copy of the webpage with the "Accept

24  and Continue" button as part of the ticket purchase procedure is attached hereto as

25  Exhibit "C.")

26        21.    Consumers   who   wish   to   purchase   tickets   through

27  ticketmaster.com must navigate through a series of pages on the website by clicking

28  on designated hypertext links on those pages. Viewing Ticketmaster's homepage

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4

7

138

1  and clicking on the hyperlinks to reach the various other pages that must be viewed

2  to purchase tickets from the website causes copies of each of those pages to be

3  created and to appear on a customer's computer. Ticketmaster's Terms of Use act

4  as a license agreement that describes, *inter alia*, when and in what circumstances a

5  user is permitted to copy pages of the website, especially those pages that must be

6  viewed to purchase tickets.

7        22.   At all relevant times the Terms of Use have permitted only

8  personal use of the Ticketmaster.com website by consumers, as follows:

> **Permitted Use:** You agree that you are only authorized
> to visit, view and retain a copy of pages of this site for
> your own personal use... unless otherwise specifically
> authorized by Ticketmaster to do so.

12        23.   At all relevant times the Terms of Use have included a variety of

13  provisions that prohibit misuse of the website. For example, the Terms of Use have

14  always prohibited commercial use of Ticketmaster's website, providing in pertinent

15  part as follows:

> **Commercial Use:** No... areas of this site may be used
> by our visitors for any commercial purposes... Without
> limiting the foregoing, you may not use this site to resell
> tickets of any kind [except as permitted on the site
> itself]...We reserve the right to block access to this Site
> or Ticketmaster's other services, or cancel a ticket order or
> ticket with respect to any person believed to be, or
> believed to be acting in concert with any person who is
> believed to be, violating the law or these Terms or
> Ticketmaster's rights, or utilizing automated means to
> process or place ticket orders, or who has ordered a
> number of tickets that exceeds the stated limit. Violating
> any limitations or terms on the Site will be deemed to be a
> violation of these Terms.

24        24.   At all relevant times, the Terms of Use have expressly

25  prohibited the use of bots and other automated means to access ticketmaster.com.

26  In that regard, the Terms of Use provide in pertinent part as follows:

> **Access and Interference:** You agree that you will not
> use any robot, spider or other automatic device, process or
> means to access the Site.... You agree that you will not

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4

8

FIRST AMENDED COMPLAINT

*139*

1

2

access, reload or "refresh" transactional event or ticketing pages, or make any other request to transactional servers, more than once during any three second interval.

3

4

25.   Similarly, at all relevant times, the Terms of Use have prohibited the unauthorized use of the site, providing in pertinent part as follows:

5

6

7

8

9

10

11

12

**Unauthorized Use of the Site:**   Any Illegal or unauthorized use of the Site shall constitute a violation of these Terms of Use.   You do not have permission to access the Site in any way that violates, or in the course of violating, these Terms of Use. Illegal or unauthorized use of the Site includes, but is not limited to, using the site to facilitate illegal ticket sales, unauthorized framing of or linking to the Site, or unauthorized use of any robot, spider or other automated process on the Site. It shall also be a violation of these Terms of Use: (a) for any individual (or group of individuals acting in concert) to request, more than 1000 pages of the Site in any twenty-four hour period (hereafter referred to as "Abusive Use") .
. . .

13

14

15

16

17

18

19

20

21

26.   Furthermore, the Terms of Use limit the number of tickets that a consumer may purchase in a single transaction. At all relevant times, the Terms of Use have contained a hyperlink to, and have expressly incorporated, Ticketmaster's Purchase Policy. The hyperlink to Ticketmaster's Purchase Policy is easily visible and readily accessible under a heading in the Terms of Use which states "Ticket Purchase Policy." Immediately below this heading in the Terms of Use is the following statement: "Please review the Purchase Policy, which will govern your order or purchase of any tickets through the Site." Clicking on the "Purchase Policy" hyperlink causes the full Purchase Policy to appear on the user's screen.

22

23

27.   At all relevant times, the Purchase Policy on Ticketmaster's website has stated as follows:

24

25

26

27

**Amount of Tickets Per Customer or Ticket Limits.** When purchasing tickets on Ticketmaster.com, you are limited to a specified number of tickets for each event (also known as a "ticket limit"). This amount is included on the unique event page and is verified with every transaction.   This policy is in effect to discourage unfair ticket buying practices.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4                                              9

FIRST AMENDED COMPLAINT

/40

1           28.    In sum, at all relevant times, the Terms of Use, including the

2  Purchase Policy, have prohibited users from, among other things, using the

3  Ticketmaster website for commercial purposes, using bots and other automated

4  devices to access and navigate the site and conduct transactions, abusing the

5  Ticketmaster system with excessive requests for web pages, and purchasing tickets

6  in excess of the per customer ticket limit.

7

8  **C.   Defendants Have Been Systematically Misusing And Abusing**
          **Ticketmaster's Website Since At Least As Early As 2003.**

9           29.    Ticketmaster is informed and believes that, since at least as early

10  as 2003, Defendants have been using automated devices to navigate through

11  ticketmaster.com and purchase large quantities of tickets. During this time, Prior,

12  acting for himself and USA Entertainment, has placed at least 21,730 orders for

13  tickets through Ticketmaster's website, resulting in the purchase of at least 45,308

14  tickets.   Ticketmaster is informed and believes that many of these purchases

15  involved quantities in excess of stated per customer ticket limits, and that most if

16  not all of these tickets were purchased for the commercial purpose of reselling them

17  for a profit.

18           30.    In the course of using these automated devices, Prior, acting for

19  himself and USA Entertainment, repeatedly and systematically requested more than

20  1000 pages of the website in applicable twenty-four hour periods. In addition,

21  Prior, acting for himself and USA Entertainment, accessed, reloaded or refreshed

22  transactional events or ticketing pages and made other requests to transactional

23  servers more than once during applicable three-second intervals. As just one recent

24  example, on May 26, 2007, Prior made more than 600,000 ticket requests to

25  ticketmaster.com, which accounted for more than 1¼ percent of all requests made

26  on that day and was double the amount of traffic originating from AOL.

27           31.    Prior had ample opportunity to review Ticketmaster's Terms of

28  Use, and he repeatedly assented to those terms, expressly as well as impliedly.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4          10

/4/

1    Ticketmaster is informed and believes that Prior not only expressly assented to the
2    Terms of Use when setting up his various online accounts, but that he has visited
3    the website at least 21,730 times since 2003, and during each visit he has been
4    reminded of the Terms of Use and has been invited to review them. Moreover,
5    since mid-2006, Prior has expressly reaffirmed his assent to the Terms of Use when
6    completing purchases of tickets.

7        32.    Although most automated devices cannot decipher and retype
8    the random characters generated by the CAPTCHA security program on
9    ticketmaster.com, and thus cannot proceed past that screen to complete a ticket
10   transaction, some automated devices are designed to circumvent CAPTCHA, and
11   Ticketmaster is informed and believes that Defendants have been using such
12   devices since at least as early as 2003.

13       33.    The Ticketmaster system sometimes can detect the presence of
14   an automated device. When that occurs, the system generates a message to the user
15   explaining that the use of automated devices is prohibited. Ticketmaster is
16   informed and believes that its system has generated such messages in response to
17   automated devices used by Defendants, but that Defendants have ignored the
18   messages and continued to use automated devices to navigate through the
19   Ticketmaster website and wrongfully acquire tickets.

20       34.    The Ticketmaster system also can temporarily disable an
21   automated device when such a device is detected. Ticketmaster is informed and
22   believes that its system has from time to time temporarily disabled automated
23   devices used by Defendants. However, Ticketmaster is informed and believes that
24   in each such occurrence, Defendants deployed a new automated device from a
25   different IP address (Internet Protocol address) and continued with their
26   unauthorized use of the Ticketmaster system.

27       35.    Ticketmaster diligently tries to identify users of bots and other
28   prohibited automated devices, but some users of these devices go to great lengths to

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4

11

142

1   hide their tracks. Ticketmaster is informed and believes that, since 2003, Prior, on
2   behalf of himself and USA Entertainment, has used at least 11 different credit
3   cards, at least five different email addresses and at least five different names—
4   including the names of his ex-wife and children—to purchase tickets from
5   Ticketmaster. In addition, Ticketmaster is informed and believes that Prior has
6   systematically removed data from the computers he uses to access
7   ticketmaster.com, such as by cleaning out the "cookies" on the computers, in a
8   further attempt to elude identification by Ticketmaster as repeat visitors to the site.

9           36.    Thus, it was not until quite recently that Ticketmaster was able
10  to assemble the information necessary to link Defendants with all of these ticket
11  purchases and the related use of prohibited automated devices.

### D.  The Misuse And Abuse Has Harmed Ticketmaster's Website And Operations.

14          37.    Ticketmaster has been harmed by the use of automated devices
15  by Defendants and others. To meet the demands of consumers and Ticketmaster's
16  own clients, Ticketmaster must provide an equitable ticket distribution system that
17  gives all consumers a fair opportunity to acquire the best available tickets for
18  events. The use of automated devices undermines this effort, because automated
19  devices can navigate through Ticketmaster's website and purchase tickets at a speed
20  that legitimate consumers who do not use such devices cannot match. As a result,
21  the inventory of tickets available to consumers who do not use such devices is
22  substantially diminished, which has led some consumers to question Ticketmaster's
23  ability to ensure a level playing field for the purchase of tickets.

24          38.    This harm is compounded by the fact that Defendants and other
25  users of automated devices inundate the Ticketmaster system with thousands of
26  requests for tickets, and each request causes tickets to be placed temporarily on
27  reserve, even if they are not ultimately purchased. While a ticket is on reserve, it is
28  unavailable to any other user of the site. Not only does this further diminish the

411200031.4

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

12

FIRST AMENDED COMPLAINT

143

1   inventory of tickets for legitimate consumers, but it impedes Ticketmaster's ability
2   to provide an important service to its clients. Clients use the Ticketmaster system
3   to monitor ticket sales activity to make a variety of decisions, including whether to
4   open more seats or move the seats to other distribution channels. The artificially
5   high volume of seats revolving in and out of reserve status due to the use of
6   automated devices makes it difficult to gauge how well tickets for the event are
7   actually selling, which in turn interferes with the clients' ability to make the
8   ongoing decisions that are based on sales activity.

9           39.    Users of automated devices, including Defendants, also block
10  access to the Ticketmaster system by legitimate consumers in a variety of other
11  ways.   For example, Ticketmaster's website allocates traffic to various servers
12  through a load balancing program that is designed to ensure consumer requests are
13  processed equitably and that no consumer receives slower service merely because
14  his or her request was directed to one server rather than another. However, users of
15  automated devices bypass the load balancing program and target specific servers
16  directly with thousands of requests, thus interfering with the website's traffic
17  allocation feature and putting some consumers whose requests were allocated to the
18  same server that was targeted by the automated device at risk of slower service.

19          40.    In addition, users of automated devices such as Defendants
20  deprive Ticketmaster of revenue and revenue opportunities in a variety of ways.
21  Ticketmaster's website is part of a carefully crafted business model that integrates
22  other services and features into the ticket purchasing process. The website is
23  designed so that users will follow certain steps and will see certain pages in the
24  process of requesting and purchasing tickets. Based on this expected flow of
25  traffic, clients, advertisers and Ticketmaster itself offer particular services or
26  opportunities on particular pages, ranging from parking at the event to signing up
27  for client newsletters. However, automated devices, which do not use traditional
28  browsers, bypass the HTML code for these features, so the users of those devices

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4                              13
                    FIRST AMENDED COMPLAINT
                            144

1  never even see these offers.  These same offenders further exacerbate the problem
2  by purchasing enormous quantities of tickets, which diminishes the ticket inventory
3  for legitimate consumers and reduces the number of legitimate consumers who will
4  reach the pages that provide these up-sales opportunities.

5       41.    Furthermore, by accessing the Ticketmaster system at targeted
6  points, automated devices alter the security features of the website itself.  Normally,
7  users receive automatic and temporary permission—in effect, a token—to make
8  requests on the system.  That token is automatically revoked if the pace of requests
9  exceeds a certain limit.  However, by systematically deleting cookies on the user's
10  system, automated devices enable the user to constantly assume a new identity and
11  acquire new tokens even though that same user is far exceeding the request limit.

12       42.    All of these problems involve, in one way or another, alteration
13  of the Ticketmaster system and deletion, destruction and alteration of data on the
14  system.

15       43.    Finally, the use of automated devices diverts resources from the
16  service of legitimate consumers. Ticketmaster must take extraordinary actions to
17  enhance the website infrastructure so it can support all of the activity on its website,
18  including all of the artificial and inflated activity generated by the automated
19  devices, and otherwise ensure the ongoing integrity of the website in the face of this
20  onslaught of devices.   The use of these prohibited devices also significantly
21  increases the costs of data storage, troubleshooting and system maintenance.

22

23                          **FIRST CLAIM FOR RELIEF**

24                            **Breach Of Contract**

25                          **(Against Both Defendants)**

26       44.    Ticketmaster alleges and incorporates by reference all of the
27  preceding paragraphs.

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

41120031.4                                14

FIRST AMENDED COMPLAINT

145

45.    At all relevant times, the home page and most other pages on ticketmaster.com have informed users that their use of the website is subject to express terms and conditions set forth in the Terms of Use, and that by continuing past the page in question, the user expressly and/or impliedly agrees to be bound by those terms. Users have a reasonable opportunity to review the Terms of Use upon first entering the website, and they also have a reasonable opportunity to review the Terms of Use during their use of the site. The link to the Terms of Use is displayed in such a manner as to provide consumers with clear notice of their existence.

46.    Ticketmaster is informed and believes that Prior, acting for himself and USA Entertainment, expressly assented to the Terms of Use when setting up his accounts on ticketmaster.com. Moreover, since the middle of 2006, Prior has been required to expressly assent to the Terms of Use each time he submits a request to purchase tickets. Thus, Prior, acting for himself and USA Entertainment, has repeatedly provided his express assent to the Terms of Use.

47.    The Terms of Use prohibit, among other things, commercial use of the site, the use of bots and other automated devices, abusive use of the website, and exceeding per-customer ticket limits.    These Terms of Use are fair and reasonable.

48.    Ticketmaster has performed all conditions, covenants and promises required to be performed by it in accordance with the Terms of Use.

49.    Since at least as early as 2003, Defendants have repeatedly and systematically breached the Terms of Use by using bots and other automated devices to access the website and buy tickets, by using the website for a commercial purpose, and by buying tickets in quantities that exceed per customer ticket limits. As part of this misuse of Ticketmaster's website, Defendants repeatedly and systematically requested more than 1000 pages of the website in applicable twenty-four hour periods, and accessed, reloaded or refreshed transactional events or

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4

15

FIRST AMENDED COMPLAINT

146

1 ticketing pages and made other requests to transactional servers more than once
2 during applicable three-second intervals.

3      50. It can be impracticable and extremely difficult to ascertain the
4 damages from abusive use of Ticketmaster's website. Therefore, Ticketmaster
5 made a reasonable attempt at a formula for calculating the damages caused by
6 abusive use of its website, and in early 2006 Ticketmaster added a liquidated
7 damages provision to the Terms of Use that includes this formula. The liquidated
8 damages provision states in pertinent part as follows:

9         You agree that Abusive Use of the Site, as defined above,
        causes damage and harm to Ticketmaster in the form of,
10         among other things, impaired goodwill, lost sales, and
        increased expenses associated with responding to Abusive
11         Use of the Site. You further agree that monetary damages
        for Abusive Use of the Site are difficult to ascertain and
12         that proof of monetary damages for Abusive Use would
        be costly and inconvenient to calculate. Accordingly you
13         agree that liquidated damages are warranted for Abusive
        Use. Therefore, you agree that if you, or others acting in
14         concert with you, alone or collectively request more than
        1000 pages of the Site in any twenty-four hour period,
15         you, and those acting in concert with you, will be jointly
        and severally liable for liquidated damages in the amount
16         of ten dollars ($10.00) per page request each time that a
        page request is made after that first 1000 during that
17         twenty-four hour period.

18      51. Ticketmaster is entitled to liquidated damages in accordance
19 with the foregoing provision, in an amount to proven at trial when the full extent of
20 Defendants' requests for pages on Ticketmaster's website is ascertained. In
21 addition, Ticketmaster is entitled to compensatory damages, in an amount to be
22 proven at trial, for breaches of the Terms of Use that occurred before the liquidated
23 damages provision was added to the Terms of Use, and as an alternative to
24 liquidated damages should the liquidated damages provision be unenforceable for
25 any reason.

26      52. The Terms of Use also provide that Ticketmaster is entitled to
27 injunctive relief to enjoin violations of the Terms of Use. At all relevant times the
28 Terms of Use have provided in pertinent part as follows: "You agree that monetary

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4

16

1  damages may not provide a sufficient remedy to Ticketmaster for violations of
2  these Terms and you consent to injunctive or other equitable relief for such
3  violations."

4      53.    Defendants' conduct has significantly and irreparably damaged
5  Ticketmaster and will continue to do so unless restrained by this Court. Thus, in
6  addition to liquidated damages and other damages for abusive use of its website,
7  Ticketmaster is entitled to the preliminary and permanent injunctive relief prayed
8  for in this Complaint.

10         **SECOND CLAIM FOR RELIEF**
11         **Copyright Infringement**
12         **(Against Both Defendants)**

13      54.    Ticketmaster alleges and incorporates by reference all of the
14  preceding paragraphs.

15      55.    Ticketmaster owns valid U.S. Copyright registrations in its
16  website and specific portions thereof.

17      56.    In using bots, programs, or other automatic devices on the
18  ticketmaster.com website to acquire tickets for the commercial purpose of reselling
19  them, Defendants have acted in excess of the terms of the license agreement created
20  by Ticketmaster's Terms of Use, and thereby copied or caused to be copied without
21  authorization pages from the ticketmaster.com site and other original elements of
22  Ticketmaster's copyrighted website.

23      57.    As a proximate result of Defendants' copyright infringement,
24  Ticketmaster suffered significant damage in an amount not presently known with
25  certainty, but which will be proven at trial. Further, Ticketmaster is suffering
26  irreparable harm because of Defendants' infringing activity.

27      58.    Ticketmaster is entitled to the range of relief provided by
28  17 U.S.C. Sections 502-505, including injunctive relief, an order for the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4                         17

1  impounding and destruction of all copies of all bots, programs, or other automatic
2  devices used by Defendants to violate Ticketmaster's rights, compensatory
3  damages in an amount to be determined, statutory and punitive damages, and its
4  costs and attorneys' fees.

## THIRD CLAIM FOR RELIEF

### Violation Of Digital Millennium Copyright Act, 17 U.S.C. § 1201

### (Against Both Defendants)

9        59.  Ticketmaster alleges and incorporates by reference all of the
10  preceding paragraphs.

11        60.  Ticketmaster is informed and believes that Defendants are using
12  bots, programs, or other technology, products, services, devices, components, or
13  parts thereof, that are primarily designed and produced to circumvent the
14  technological measures by which Ticketmaster effectively controls access to its
15  copyrighted website.

16        61.  Ticketmaster is informed and believes that these bots, programs,
17  or other technical devices have no commercially significant purpose or use other
18  than to circumvent the technological measures that Ticketmaster uses to control
19  access to its website, and that Defendants are using those devices with knowledge
20  of that improper purpose.

21        62.  Ticketmaster has suffered significant damages in an amount not
22  presently known with certainty, but which will be proven at trial, as a proximate
23  result of Defendants' above-referenced misconduct.

24        63.  Ticketmaster is entitled to the range of relief provided by
25  17 U.S.C. Sections 1201-1203, including injunctive relief, compensatory or
26  statutory damages, and its costs and attorneys' fees in an amount to be proven at
27  trial.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4

18

149

## FOURTH CLAIM FOR RELIEF

### Violation Of Computer Fraud And Abuse Act, 18 U.S.C. § 1030

### (Against Both Defendants)

64.   Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

65.   Ticketmaster's computers are involved in interstate and foreign communication.

66.   Defendants intentionally accessed Ticketmaster's computers without authorization or in excess of authorized access, and, through interstate or foreign communication, obtained information from those computers, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C). As a result of this conduct, Ticketmaster sustained economic damages of at least $5,000 over a one-year period.

67.   Furthermore, Defendants knowingly, and with intent to defraud, accessed Ticketmaster's computers without authorization or in excess of authorized access, and by means of such conduct furthered their intended fraud and obtained items of value greater than $5,000 over a one-year period, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

68.   As alleged in more detail in Paragraphs 37-43 above, these violations have damaged Ticketmaster by, among other things, diminishing the inventory of tickets available through Ticketmaster to legitimate consumers, causing artificially high levels of tickets to be placed on reserve and thereby interfering with the transmission of real time sales information to Ticketmaster's clients, interfering with and disrupting Ticketmaster's load balancing program and thereby denying service to legitimate consumers, bypassing required website entry and exit points, which directly and indirectly reduces integral revenue opportunities, altering website security features through manipulation of request limit monitoring, requiring Ticketmaster to undertake extraordinary actions to

41120031.4

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

19

1    monitor and enhance website infrastructure, and significantly increasing costs of
2    data storage, troubleshooting and system maintenance.

3        69.    Under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g),
4    Ticketmaster is entitled to an injunction, damages, and other legal and equitable
5    relief as prayed for in this Complaint.

6

7                    **FIFTH CLAIM FOR RELIEF**
8              **Violation Of California Penal Code § 502**
9                    **(Against Both Defendants)**

10       70.   · Ticketmaster alleges and incorporates by reference all of the
11   preceding paragraphs.

12       71.   On a repeated and systematic basis, Defendants have knowingly
13   accessed Ticketmaster's website in violation of the Terms of Use and thus without
14   permission, in violation of California Penal Code Section 502(c)(7).

15       · 72.   Furthermore, Defendants have knowingly used, or caused to be
16   used, Ticketmaster's computer services without permission, in violation of
17   California Penal Code Section 502(c)(3).

18       73.   Furthermore, Ticketmaster is informed and believes that
19   Defendants have knowingly and without Ticketmaster's permission provided, or
20   assisted in providing, a means of accessing Ticketmaster's website, in violation of
21   California Penal Code Section 502(c)(6).

22       74.   Furthermore, Defendants have without permission taken data
23   from Ticketmaster's computer system and computer service and have used the data
24   on that system to wrongfully obtain tickets, in violation of California Penal Code
25   Sections 502(c)(1) and (2).

26       75.   Furthermore, through their repeated and systematic use of bots
27   and other automated devices in violation of the Terms of Use, Defendants have
28   knowingly and without permission disrupted Ticketmaster's computer services and

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4                                          20
────────────────────────────────────────────
                    FIRST AMENDED COMPLAINT
                          /5/

1   have caused the denial of those services to authorized users of the computer system,
2   in violation of California Penal Code Section 502(c)(5).

3         76.  As alleged in more detail in Paragraphs 37-43 above, these
4   violations have damaged Ticketmaster by, among other things, diminishing the
5   inventory of tickets available through Ticketmaster to legitimate consumers,
6   causing artificially high levels of tickets to be placed on reserve and thereby
7   interfering with the transmission of real time sales information to Ticketmaster's
8   clients, interfering with and disrupting Ticketmaster's load balancing program and
9   thereby denying service to legitimate consumers, bypassing required website entry
10  and exit points, which directly and indirectly reduces integral revenue
11  opportunities, altering website security features through manipulation of request
12  limit monitoring, requiring Ticketmaster to undertake extraordinary actions to
13  monitor and enhance website infrastructure, and significantly increasing costs of
14  data storage, troubleshooting and system maintenance.

15        77.  Pursuant to California Penal Code Section 502(e), Ticketmaster
16  is entitled to an injunction, compensatory and punitive damages, attorneys' fees,
17  and other legal and equitable relief as prayed for in this Complaint.

18        78.  Defendants have acted with oppression, fraud and malice toward
19  Ticketmaster, entitling Ticketmaster to an award of punitive damages in an amount
20  sufficient to deter them from future misconduct.

21

22                 **SIXTH CLAIM FOR RELIEF**

23                      **Fraud**

24             **(Against Both Defendants)**

25        79.  Ticketmaster alleges and incorporates by reference all of the
26  preceding paragraphs.

27        80.  Defendants have repeatedly accessed Ticketmaster's website,
28  and in proceeding to use the website, represented to Ticketmaster that they would

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

411200031.4             21

FIRST AMENDED COMPLAINT

152

1   comply with the Terms of Use, and thus that they would not, among other things,
2   use the site for commercial purposes, use bots or other automated devices, abuse the
3   website, or exceed per-customer ticket limits.

4          81.    Ticketmaster is informed and believes that Prior, acting for
5   himself and USA Entertainment, clicked the "Accept and Continue" button on
6   Ticketmaster's website when setting up his online accounts, thereby expressly
7   representing to Ticketmaster that he would comply with the Terms of Use for the
8   website, and thus that he would not, among other things, use the site for
9   commercial purposes, use bots or other automated devices, abuse the website, or
10  exceed per-customer ticket limits.

11         82.    In addition, since 2006, Prior, acting for himself and USA
12  Entertainment, has been required to click the "Accept and Continue" button on
13  Ticketmaster's website when completing purchases of tickets, thereby expressly
14  representing to Ticketmaster that he would comply with the Terms of Use for the
15  website, and thus that he would not, among other things, use the site for
16  commercial purposes, use bots or other automated devices, abuse the website, or
17  exceed per-customer ticket limits.

18         83.    Each and every such representation was false. Ticketmaster is
19  informed and believes that every time Prior accessed and used the website, and
20  every time Prior clicked the Accept and Continue button, he intended to, and did,
21  violate the Terms of Use as described above, both individually and on behalf of
22  USA Entertainment. Moreover, Ticketmaster is informed and believes that every
23  time Prior accessed and used Ticketmaster's website, he concealed from
24  Ticketmaster his true intent to violate the Terms of Use. In addition, in an attempt
25  to disguise the fact of so many purchases originating from the same source, Prior
26  misrepresented his identity when interacting with the Ticketmaster website and
27  making many of the ticket purchases at issue, by posing as relatives of Prior even

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4                          22
                        FIRST AMENDED COMPLAINT
                              /5-3

1   though those relatives were not involved in the ticket purchases and had no
2   knowledge of it.

3          84.   Ticketmaster relied on each such representation and omission by
4   providing the information and services available on the website to Prior, including
5   the sale to Prior of substantial quantities of tickets.

6          85.   Ticketmaster's reliance was reasonable. Prior, acting for himself
7   and USA Entertainment, received ample notice of the Terms of Use every time he
8   accessed and used the website, and it has been necessary for Prior to click the
9   Accept and Continue button both when setting up his online accounts and when
10   completing a ticket purchase.

11          86.   As a result of Prior's fraudulent representations and omissions,
12   Ticketmaster sold tickets to Prior that Ticketmaster otherwise could have sold to
13   legitimate users of the site but was unable to due to Prior's misconduct.

14          87.   As a proximate result of this fraudulent misconduct,
15   Ticketmaster has been damaged in an amount to be proved at trial.

16          88.   Ticketmaster is informed and believes that Defendants' conduct
17   was undertaken with the intent to injure Ticketmaster, or with a willful and
18   conscious disregard of Ticketmaster's rights, and constitutes clear and convincing
19   evidence of oppression, fraud and malice under California Civil Code Section 3294.
20   As a result, Ticketmaster is entitled to an award of punitive damages against
21   Defendants in an amount sufficient to deter them from future misconduct.

22

23        WHEREFORE, Ticketmaster respectfully requests that the Court:

24        1.   Enjoin Prior and USA Entertainment from:

25        a. infringing or assisting any other person in infringing
26   Ticketmaster's rights in its copyrighted ticketmaster.com website works as set forth
27   herein by copying pages from that website in excess of the scope of the license
28   granted by the ticketmaster.com Terms of Use;

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4            23

FIRST AMENDED COMPLAINT

154

1     b. trafficking in or using any bots, programs or other
2   technology, products, services, devices, components, or parts thereof to circumvent
3   the technological measures by which Ticketmaster controls access to its website;

4     c. accessing, visiting, purchasing tickets on, facilitating the
5   purchase of tickets on, or otherwise using ticketmaster.com for any purpose that is
6   in excess of the agreement formed by the Terms of Use by which users are
7   permitted to visit that website;

8     d. using, or causing, urging or assisting any other person to use,
9   automated means such as bots to access Ticketmaster's website;

10    e. using, or causing, urging or assisting any other person to use,
11  any program that is designed to circumvent security measures such as CAPTCHA
12  to attempt to access Ticketmaster's website;

13    f. soliciting the design, purchase, sale or use of any program or
14  device that is designed to provide an automated means of accessing Ticketmaster's
15  website or that is designed to circumvent security measures such as CAPTCHA on
16  Ticketmaster's website;

17    g. purchasing, selling, transferring or acquiring any program or
18  device that is designed to provide an automated means of accessing Ticketmaster's
19  website or that is designed to circumvent security measures such as CAPTCHA on
20  Ticketmaster's website;

21    h. accessing or using Ticketmaster's website for any
22  commercial purpose whatsoever;

23    i. abusing Ticketmaster's website in any way, such as
24  exceeding limits in the Terms of Use for requesting web pages and making requests
25  to transactional servers more than once during any three-second interval;

26    j. purchasing tickets in excess of per customer ticket limits; and

27    k. reselling any tickets obtained through Ticketmaster that were
28  not obtained legitimately in accordance with the Terms of Use;

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4                    24

FIRST AMENDED COMPLAINT

155

2. Order that Defendants be required to:

a. account for, hold in constructive trust, pay over to Ticketmaster, and otherwise disgorge all profits derived by Defendants from their individual and collective misconduct as alleged herein; and

b. pay to Ticketmaster the costs of this action, together with reasonable attorneys' fees and disbursements, in accordance with federal and California law, including but not limited to 17 U.S.C. Sections 505 and 1203, and California Penal Code Section 502(e)(2);

3. Award to Ticketmaster liquidated, compensatory, statutory and punitive damages; and

4. Award to Ticketmaster all further relief, as the Court deems just and equitable.

Dated: June 6, 2007

MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT
MARK S. LEE
DONALD R. BROWN

By: Robert H. Platt /srb

Robert H. Platt
Attorneys for *Plaintiff*
TICKETMASTER L.L.C.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120031.4

25

FIRST AMENDED COMPLAINT

156

## JURY DEMAND

Ticketmaster demands a jury trial in this action.

Dated:  June 6, 2007

MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT
MARK S. LEE
DONALD R. BROWN


By: _Robert H. Platt / drb_
Robert H. Platt
Attorneys for *Plaintiff*
TICKETMASTER L.L.C.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

41120031.4

26

**EXHIBIT A**

158

## Terms of Use

Welcome to Ticketmaster. The following are the Terms of Use (these "Terms") that govern use of the Ticketmaster.com and Ticketmaster.ca web sites (collectively, the "Site"). When we say the "Site" we are also referring to the TicketExchange sections of the Site where you can buy and resell tickets. By using or visiting the Site, you expressly agree to be bound by these Terms and to follow these Terms and all applicable laws and regulations governing the Site. Ticketmaster, Ticketmaster Canada Ltd. and each of their respective subsidiaries (collectively "Ticketmaster" or "we") reserve the right to change these Terms at any time, effective immediately upon posting on the Site. Please check this page of the Site periodically. If you violate these Terms, Ticketmaster may terminate your use of the Site, bar you from future use of the Site, cancel tickets you receive through the site, cancel your ticket order, and/or take appropriate legal action against you.

### Permitted Use

You agree that you are only authorized to visit, view and to retain a copy of pages of this Site for your own personal use, and that you shall not duplicate, download, publish, modify or otherwise distribute the material on this Site for any purpose other than to review event and promotional information, for personal use, or to purchase tickets or merchandise, unless otherwise specifically authorized by Ticketmaster to do so. You also agree not to deep-link to the site for any purpose, unless specifically authorized by Ticketmaster to do so or unless deep-linking to TicketExchange pages where you have posted tickets for sale. The content and software on this Site is the property of Ticketmaster and/or its suppliers and is protected by U.S., Canadian and International copyright laws. We post a legal notice and various credits on pages of the Site, which may not be removed. Please do not remove this notice or these credits, or any additional information contained along with the notices and credits.

### Ticket Purchase Policy

Please review the <u>Purchase Policy</u>, which will govern your order or purchase of any tickets through the Site.

### TicketExchange Selling Policy

Please review the TicketExchange <u>Selling Policy</u>, which will govern your sale, or attempted sale, of any tickets using the TicketExchange portions of the Site.

### Truthfulness and Accuracy of the Information You Provide; Complying with Laws; Verifications and Authorizations

The sale or purchase of tickets to entertainment events is regulated by certain states, counties and cities. You may be asked to provide information during processes you engage in on the Site. You represent and warrant that all information you provide will be true, complete and correct, and that you will update all information as it changes. You also acknowledge that complying with laws is your responsibility, AND YOU AGREE NOT TO HOLD US LIABLE FOR YOUR FAILURE TO COMPLY WITH ANY LAW OR OUR FAILURE TO NOTIFY YOU OF, OR PROPERLY APPLY, ANY LAW. WE WILL COMPLY WITH LAW ENFORCEMENT AND MAY PROVIDE THEM WITH ALL INFORMATION YOU SUBMIT TO US TO ASSIST IN ANY INVESTIGATION OR PROSECUTION THEY MAY CONDUCT. If we are unable to verify or authenticate any information or tickets you provide during any registration, ordering, purchase, ticket posting, sale, authentication, delivery, payment or remittance process, or any other process, or if we are no longer able to verify or authorize your credit card or bank account information, you may be prohibited from using the Site.

### User Contributions to the Site

From time to time, the Site may provide you with opportunities to contribute to the Site, which may include, but not be limited to, uploading your user profile, participating in chats and using bulletin boards. Anything that is contributed to the Site by you or other Site users will be referred to in these Terms as "User Content". Ticketmaster is not liable or responsible for any User Content. The contributions of third parties do not necessarily represent the view or opinions of Ticketmaster. Ticketmaster cannot preview User Content before it appears. Users can be held liable for any illegal or prohibited User Content they provide to the Site, including among other things, infringing, defamatory or offensive materials. If you discover this kind of material on the Site, please notify us at <u>legal@ticketmaster.com</u> if the material is on Ticketmaster.com and <u>legal@ticketmaster.ca</u> if the material is on Ticketmaster.ca. We will investigate your claim and may then take the actions deemed appropriate.

### Links and Search Results

The Site may automatically produce search results that reference or link to third party sites throughout the World Wide Web. Ticketmaster has no control over these sites or the content within them. Ticketmaster cannot guarantee, represent or warrant that the content contained in the sites is accurate, legal and/or inoffensive. Ticketmaster does not endorse the content of any third party site, nor do we warrant that they will not contain viruses or otherwise impact your computer. By using the Site to search for or link to another site, you agree and understand that you may not make any claim against Ticketmaster for any damages or losses, whatsoever, resulting from your use of the Site to obtain search results or to link to another site. If you have a problem with a link from the Site, please notify us at <u>legal@ticketmaster.com</u> if the link is on Ticketmaster.com and <u>legal@ticketmaster.ca</u> if the link is on Ticketmaster.ca, and we will investigate your claim and take any actions we deem appropriate in our sole discretion.

Policies and Se

**Prohibited Content**

The following is a partial list of the kind of User Content which is illegal or prohibited on the Site. It includes User Content that:

- Is patently offensive to the online community, such as User Content that promotes racism, bigotry, hatred or physical harm of any kind against any group or individual; could be harmful to minors;
- Harasses or advocates harassment of another person;
- Involves the transmission of "junk mail", "chain letters", or unsolicited mass mailing or "spamming";
- Promotes information that you know is false, misleading or promotes illegal activities or conduct that is abusive, threatening, obscene, defamatory or libelous;
- Promotes an illegal or unauthorized copy of another person's copyrighted work, such as providing pirated computer programs or links to them, providing information to circumvent manufacture-installed copy-protect devices, or providing pirated music or links to pirated music files;
- Contains restricted or password only access pages, or hidden pages or images (those not linked to or from another accessible page);
- Displays pornographic or sexually explicit material of any kind;
- Provides material that exploits people under the age of 18 in a sexual or violent manner, or solicits personal information from anyone under 18;
- Provides instructional information about illegal activities such as making or buying illegal weapons, violating someone's privacy, or providing or creating computer viruses;
- Solicits passwords or personal identifying information for commercial or unlawful purposes from other users; and
- Engages in commercial activities without our prior written consent such as contests, sweepstakes, barter, advertising, and pyramid schemes.

**Offline Conduct**

Although Ticketmaster cannot monitor the conduct of users off the Site, it is also a violation of these rules to use any information obtained from this Site in order to harass, abuse, or harm another person, or in order to contact, advertise to, solicit or sell to any Site user without their prior explicit consent.

**Commercial Use**

No bulletin board, chat or other areas of this Site may be used by our visitors for any commercial purposes such as to conduct sales of tickets, merchandise or services of any kind, except that TicketExchange can be used to resell tickets to the extent compliant with law. You must obtain our prior written consent to make commercial offers of any kind, whether by advertising, solicitations, links, or any other form of communication, except you may post tickets for resale through TicketExchange to the extent you are doing so in accordance with law. Without limiting the foregoing, you may not use the Site to resell or link to other sites for the purpose of selling tickets of any kind, except you may resell tickets through TicketExchange to the extent you are doing so in accordance with law. We will investigate and take appropriate legal action against anyone who violates this provision, including without limitation, removing the offending communication from the Site and barring such violators from use of the Site. We reserve the right to block access to this Site or Ticketmaster's other services, or cancel a ticket order or ticket with respect to any person believed to be, or believed to be acting in concert with any person who is believed to be, violating the law or these Terms or Ticketmaster's rights, or utilizing automated means to process or place ticket orders, or who has ordered a number of tickets that exceeds the stated limit. Violating any limitations or terms on the Site will be deemed to be a violation of these Terms. Please note that Ticketmaster has entered into agreements with certain sport teams for whom Ticketmaster hosts web sites that are designed to allow such sports teams' season ticket holders to sell individual game tickets from their season ticket packages through such web sites ("Season Ticket Sale Sites"). Some of these Season Ticket Sale Sites can be found through this Site. Nothing in this paragraph shall prohibit the sale or purchase of tickets through the Season Ticket Sale Sites or through TicketExchange, as long as such sales and purchases are conducted pursuant to the terms that apply to the Season Ticket Sale Sites or TicketExchange (as the case may be) and comply with law.

**Access and Interference**

You agree that you will not use any robot, spider or other automatic device, process or means to access the Site. Nor shall you use any manual process to monitor or copy our web pages or the content contained thereon or for any other unauthorized purpose without our prior expressed written permission. You agree that you will not use any device, software or routine that interferes with the proper working of the Site nor shall you attempt to interfere with the proper working of the Site. You agree that you will not take any action that imposes an unreasonable or disproportionately large load on our infrastructure. You agree that you will not access, reload or "refresh" transactional event or ticketing pages, or make any other request to transactional servers, more than once during any three second interval. You agree that you will not copy, reproduce, alter, modify, create derivative works, or publicly display any content (except for your own personal, non-commercial use) from the Site without the prior expressed written permission of Ticketmaster.

**Unauthorized Use of the Site**

Any illegal or unauthorized use of the Site shall constitute a violation of these Terms of Use. You do not

have permission to access the Site in any way that violates, or in the course of violating, these Terms of Use. Illegal or unauthorized use of the Site includes, but is not limited to, using the site to facilitate illegal ticket sales, unauthorized framing of or linking to the Site, or unauthorized use of any robot, spider or other automated process on the Site. It shall also be a violation of these Terms of Use: (a) for any individual (or group of individuals acting in concert) to request, more than 1000 pages of the Site in any twenty-four hour period (hereafter referred to as "Abusive Use"); or (b) to use any passcode or password, regardless of whether or not such password or passcode is unique, to participate in a pre-sale or other offer on the Site if you are not the original recipient of such passcode or password (i.e., if you did not receive the passcode or password from Ticketmaster, or from the fan club or other organization with whom Ticketmaster is working to enable such pre-sale or offer) or if your participation in such pre-sale or other offer is inconsistent with such pre-sale's or offer's terms.

**Suspected Violation of these Terms of Use or Law; Injunctive, Equitable Relief, and Liquidated Damages**

Violations of these Terms of Use, including Unauthorized Use of the Site, may be investigated and appropriate legal action may be taken, including without limitation civil, criminal and injunctive redress. You understand and agree that in Ticketmaster's sole discretion, and without prior notice, Ticketmaster may terminate your access to the Site, cancel your ticket order or tickets acquired through your ticket order, cancel your ticket postings, remove any unauthorized User Content or exercise any other remedy available, if Ticketmaster believes that your conduct or the conduct of any person with whom Ticketmaster believes you act in concert, or the User Content you provide, or any resale of such tickets purchased through Ticketmaster, violates or is inconsistent with these Terms or the law, or violates the rights of Ticketmaster, a client of Ticketmaster or another user of the Site. You agree that monetary damages may not provide a sufficient remedy to Ticketmaster for violations of these Terms and you consent to injunctive or other equitable relief for such violations.

You agree that Abusive Use of the Site, as defined above, causes damage and harm to Ticketmaster in the form of, among other things, impaired goodwill, lost sales, and increased expenses associated with responding to Abusive Use of the Site. You further agree that monetary damages for Abusive Use of the Site are difficult to ascertain and that proof of monetary damages for Abusive Use would be costly and inconvenient to calculate. Accordingly you agree that liquidated damages are warranted for Abusive Use. Therefore, you agree that if you, or others acting in concert with you, alone or collectively request more than 1000 pages of the Site in any twenty-four hour period, you, and those acting in concert with you, will be jointly and severally liable for liquidated damages in the amount of ten dollars ($10.00) per page request each time that a page request is made after that first 1000 during that twenty-four hour period. You also agree that this will be the measure of damages for any Abusive Use that occurred prior to this provision of these Terms of Use being in effect.

Ticketmaster is not required to provide any refund to you if it exercises any of its rights or remedies because you have violated these Terms or any of Ticketmaster's rights. For more information about how we handle copyright infringements on the Site, please see our Copyright Policy. Additionally, we reserve the right, in our sole discretion, to modify, suspend or discontinue any part of this Site at any time, with or without notice to you. We also reserve the right, in our sole discretion, to impose limits on certain features and services and to restrict access to any part or to all of the Site without notice to you. We shall not be liable to you or any third party for any claim or cause of action arising out of our exercise of the foregoing rights.

**Privacy**

We believe that your privacy and the privacy of all our users is important. These Terms are subject to the Privacy Policy, which is hereby incorporated by reference. Ticketmaster will not be responsible or otherwise liable for any use or disclosure of your contact information, or financial information, by a third party to whom Ticketmaster is allowed to disclose your contact information under the Privacy Policy. If you post any User Content to the Site, by electronic mail or otherwise, we will treat it as non-confidential and non-proprietary to you. When we say in these Terms "post" we mean the provision of information (including, but not limited to, "User Content") to the Site through features of the Site that are used to make information available to other members of the public (e.g., user reviews, bulletin boards, chat rooms, etc.). Information that is posted to the Site shall not be subject to the Privacy Policy and may be publicly displayed and disclosed and otherwise used by Ticketmaster or any third party in any way. By posting User Content to the Site, you authorize us to use or allow others to distribute, reproduce or otherwise use such User Content. You should not post information about yourself on the Site that can be used to identify or contact you, including, but not limited to, your name, home or work address, phone numbers, pagers, email address or other such information. If you post such information, Ticketmaster cannot prevent it from being used in a manner that violates these Terms, the law, or your personal privacy and safety. By posting such information on the Site, you violate these Terms, and you assume the risks and sole liability for the results of such posting. You understand that if you post tickets on TicketExchange through the posting process applicable to licensed resellers, under certain circumstances some of your contact information may be displayed to the public.

Ticketmaster is not liable for any lost data resulting from the operation of the Site or the enforcement of the Terms. We urge all users to maintain their own back up versions of any User Content or other information they submit to the Site.

**U.S. Export Controls**

This Site and software derived from this Site is further subject to United States export controls. No software from this site may be downloaded or otherwise exported or re-exported: (i) into (or to a national or resident of) Cuba, Iraq, Libya, North Korea, Iran, Syria, or any other Country to which the U.S. has embargoed goods; or (ii) to anyone on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Commerce Department's Table of Deny Orders. By downloading or using the Site or any software derived there from, you represent and warrant that you are not located in, under the control of, or a national or resident of any such country or on any such list.

Copyright Policy
We will terminate the privileges of any user who uses this Site to unlawfully transmit copyrighted material without a license express consent, valid defence or fair use exemption to do so. In particular, users who submit User Content to this Site, whether articles, images, stories, software or other copyrightable material must ensure that the User Content they upload does not infringe the copyrights or other rights of third parties (including, but not limited, to trademark, trade secret, privacy or publicity rights). After proper notification by the copyright holder or it agent to us, and confirmation through court order or admission by the user that they have used this Site as an instrument of unlawful infringement, we will terminate the infringing users' rights to use and/or access to this Site. We may, also in our sole discretion, decide to terminate a user's rights to use or access to the Site prior to that time if we believe that an alleged infringement has occurred.

Disclaimers
TICKETMASTER DOES NOT PROMISE THAT THE SITE WILL BE ERROR-FREE, UNINTERRUPTED, OR THAT IT WILL PROVIDE SPECIFIC RESULTS FROM USE OF THE SITE OR ANY CONTENT, SEARCH OR LINK ON IT. THE SITE AND ITS CONTENT ARE DELIVERED ON AN "AS-IS" AND "AS-AVAILABLE" BASIS. TICKETMASTER CANNOT ENSURE THAT FILES YOU DOWNLOAD FROM THE SITE WILL BE FREE OF VIRUSES OR CONTAMINATION OR DESTRUCTIVE FEATURES. TICKETMASTER DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ALSO ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. TICKETMASTER WILL NOT BE LIABLE FOR ANY DAMAGES OF ANY KIND ARISING FROM THE USE OF THIS SITE, INCLUDING WITHOUT LIMITATION, DIRECT, INDIRECT, INCIDENTAL, AND PUNITIVE AND CONSEQUENTIAL DAMAGES. TICKETMASTER MAKES NO GUARANTEE OF ANY SPECIFIC RESULT FROM USE OF THIS SITE OR USE OF THE TICKETMASTER SERVICE.

TICKETMASTER DISCLAIMS ANY AND ALL LIABILITY FOR THE ACTS, OMISSIONS AND CONDUCT OF ANY THIRD PARTY USERS, TICKETMASTER USERS, ADVERTISERS AND/OR SPONSORS ON THE SITE, IN CONNECTION WITH THE TICKETMASTER SERVICE OR OTHERWISE RELATED TO YOUR USE OF THE SITE AND/OR THE TICKETMASTER SERVICE. TICKETMASTER IS NOT RESPONSIBLE FOR THE PRODUCTS, SERVICES, ACTIONS OR FAILURE TO ACT OF ANY VENUE, PERFORMER, PROMOTER OR OTHER THIRD PARTY IN CONNECTION WITH OR REFERENCED ON THE SITE.

Without limiting the foregoing, you may report the misconduct of users and/or third party advertisers, service and/or product providers referenced on or included in the Site to Ticketmaster at legal@ticketmaster.com if on Ticketmaster.com or at legal@ticketmaster.ca if on Ticketmaster.ca. Ticketmaster may investigate the claim and take appropriate action, in its sole discretion.

Limitation on Liability
IN NO EVENT WILL TICKETMASTER BE LIABLE TO YOU FOR ANY INDIRECT, CONSEQUENTIAL, EXEMPLARY, INCIDENTAL, SPECIAL OR PUNITIVE DAMAGES, OR FOR LOST PROFITS, REVNUES OR BUSINESS OPPORTUNITIES, EVEN IF TICKETMASTER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

Disputes
If you have a dispute and your dispute involves an event (or a ticket for an event) that is located in the United States, then the dispute will be governed by the laws of the State of California without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in state and federal courts located in Los Angeles County, California. If you have a dispute and your dispute involves an event (or a ticket for an event) that is located in Canada, then the dispute will be governed by the laws of the Province of Ontario without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in courts located in Toronto, Ontario. If you have a dispute regarding the Site but not regarding an event (and not regarding a ticket for an event), then: (a) if you are accessing the Site from the United States or any country other than Canada, then the dispute will be governed by the laws of the State of California without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in state and federal courts located in Los Angeles County, California; and (b) if you are accessing the Site from Canada, then the dispute will be governed by the laws of the Province of Ontario without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in courts located in Toronto, Ontario. If you are purchasing or selling through TicketExchange tickets to an event that is located in the State of Illinois, then this paragraph shall not apply to your purchase or sale, and instead the paragraph that will apply is the paragraph below entitled "Additional Provisions Applicable to Persons Using TicketExchange to Buy or Sell Tickets to any Event Located in the State of Illinois."

### Indemnity

You agree to indemnify and hold Ticketmaster and its affiliates, and each of Ticketmaster's and its affiliates' respective officers, agents, employees, contractors and principals, harmless from any loss, liability, claim or demand, including reasonable attorneys' fees, made by any third party due to or arising out of your use of the Site, including also your use of the Site to provide a link to another site or to upload content or other information to the Site.

### Trademarks

Ticketmaster and Ticketmaster.com and design are registered trademarks of Ticketmaster. All rights reserved.

### Additional Provisions Applicable to Persons Using TicketExchange to Buy or Sell Tickets to any Event Located in the State of Illinois

If, and only if, you are using TicketExchange to purchase or sell a ticket to an event that is located in the State of Illinois, then you understand, agree and acknowledge the following:

- This website is operated by Ticketmaster L.L.C. Ticketmaster's address in the State of Illinois is: 550 W. Van Buren Street, 13th Floor, Chicago, Illinois 60607.
- If you have a complaint or inquiry regarding ticket resales made through TicketExchange for any event located in the State of Illinois, please email us at ticketexchange@ticketmaster.com or call us at (877) 446-9450.
- These Terms shall be governed by and construed in accordance with the laws of the State of Illinois. In the event of a dispute, you, Ticketmaster, and all buyers and sellers of tickets through TicketExchange each agree to submit to the exclusive jurisdiction and venue of the state and federal courts located in Chicago, Illinois, and the parties consent to the exclusive and personal jurisdiction and venue of these courts, subject to the following: If you are a reseller of one or more tickets through TicketExchange and you have a dispute with any person or business who buys any of those tickets from you, or you are a buyer of one or more resold tickets resold through TicketExchange and you have a dispute with the person or business that sold any of those tickets to you, you hereby agree that that dispute will be solely and finally settled in Illinois by binding arbitration in accordance with the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association, and the non-prevailing party in the arbitration shall pay the fees and expenses of the arbitrator(s) and the costs of arbitration and the enforcement of any award rendered therein, including the attorneys' fees and expenses of the prevailing party. In order to commence such a proceeding, please send a letter describing the dispute to Ticketmaster Legal Department, 8800 Sunset Blvd., West Hollywood, CA 90069.

---

Home    Music    Sports    Arts & Theater    Family    Gift Cards

Site Map  |  About Ticketmaster  |  Our Policies  |  Privacy Policy  |  Sell Tickets With Us  |  International  |  Care

Use of this site is subject to express terms of use, which prohibit commercial use of this site. By continuing past this page, you agree to abid

© 2007 Ticketmaster. All rights reserved.

Partner Sites: Admission  Condo Direct  Cottonblend  Domania  Expedia  GetSmart  HomeConnections  Home Loan Center  Hotels  H
iNest  IOS Catalog  LendingTree  LendingTree Loans  LiveDaily  RealEstate  ReserveAmerica  ServiceMagic  Shoes  Smith + Noble
TicketWeb



**EXHIBIT  B**

164

# ticketmaster

**◑** You have 1:30 minutes to complete this page.
After 1:30 minutes these tickets will be released.

### Create account

Already have a Ticketmaster Account? <u>Sign In</u>

First name

Email address

Retype Email
address

Zip/Postal code

Type password                    5-12 characters

Retype password

As a Ticketmaster user, by purchasing a ticket to an event or completing a registration form in order to be able to purchase a ticket to an event, you agree that Ticketmaster may share your information with the venues, promoters, artists, teams, leagues and other third parties associated with that event. These parties may use your information to contact you or may use or disclose your information in other ways. Please contact them directly to learn about their policies. Ticketmaster may also contact you and use and disclose the information you submit, as described in the Ticketmaster <u>Privacy Policy</u>.

As a registered user of Ticketmaster.com, you are subject to the <u>terms of use</u> which, among other things, prohibits commercial use of this site.



Already have an account? <u>Sign In</u>

© 2003 Ticketmaster. All rights reserved.

**EXHIBIT C**

$16 \mathcal{C}$

# ketmaster

complete this page within 1:00 minute.
:00 minute, the tickets we're holding will be released for others to buy.

**te Account**

Already have a Ticketmaster Account? **Log In**

name

address

oe Email address

ostal code

:password                                      5-12 characters

pe password

irchasing a ticket to an event, or completing this registration form in order to be able to purchase a ticket to an event or to bid in an auction, you
ite that you consent to Ticketmaster sharing your email address and other information with those involved in the event (e.g., venues, teams, artists'
sentatives and fan clubs, promoters and leagues), and that you consent to those involved in the event using your information to contact you by email
ier means to send you marketing or other messages or using or disclosing your information in other ways. Please contact them directly to learn about
policies. By completing this registration form, you also indicate that you consent to Ticketmaster contacting you by email or other means to send you
iting or other messages and using and disclosing the information you submit, as described in the Ticketmaster Privacy Policy.

i are under 13 years old, you must not fill in this form or provide any information about yourself.

registered user of Ticketmaster.com, you are subject to the terms of use which, among other things, prohibits commercial use of this site.

**Accept and Continue**

© 2006 Ticketmaster. All rights reserved.

1

## PROOF OF SERVICE

2          I, Rebecca Blake, declare:

3          I am a citizen of the United States and employed in Los Angeles County, California. I am
over the age of eighteen years and not a party to the within-entitled action. My business address
4   is 11355 West Olympic Boulevard, Los Angeles, California 90064-1614. On June 6, 2007, I
served a copy of the within document(s):

5
### FIRST AMENDED COMPLAINT
6

7          ☐   by transmitting via facsimile the document(s) listed above to the fax number(s) set
forth below on this date before 5:00 p.m.

8          ☒   by placing the document(s) listed above in a sealed envelope with postage thereon
fully prepaid, in the United States mail at Los Angeles, California addressed as set
9          forth below.

10         ☐   by placing the document(s) listed above in a sealed envelope and affixing a pre-
paid air bill, and causing the envelope to be delivered to a Golden State Overnight
11         agent for delivery.

12         ☐   by personally delivering the document(s) listed above to the person(s) at the
address(es) set forth below.

13         ☒   by sending an electronic message with attached PDF.

14

15   Caryn Brottman Sanders, Esq.              Joseph S. Provanzano, J.D.
Law Offices of Caryn Sanders             Law Offices of Joseph S. Provanzano
16   27240 Turnberry Lane, Suite 200          16 Bourbon Street, Suite C
Valencia, CA 91355                       Peabody, Massachusetts 01960-1338
17   Tel: (661) 362-0788                      Tel: (978) 535-8222
Fax: (661) 362-0789                      Fax: (978) 535-8228
18   Email: caryn@sanders-law.com             Email: JoePro12@aol.com

19

20         I am readily familiar with the firm's practice of collection and processing correspondence
for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same
21   day with postage thereon fully prepaid in the ordinary course of business. I am aware that on
motion of the party served, service is presumed invalid if postal cancellation date or postage
22   meter date is more than one day after date of deposit for mailing in affidavit.

23         I declare that I am employed in the office of a member of the bar of this court at whose
direction the service was made.
24

25         Executed on June 6, 2007, at Los Angeles, California.

26

27                                    _____
Rebecca Blake
28

MANATT, PHELPS &
PHILLIPS, LLP      41120062.1
ATTORNEYS AT LAW
LOS ANGELES

168

# EXHIBIT E

**CONFORMED COPY**

FILED

1 | MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT (Bar No. CA 108533)
2 | rplatt@manatt.com
MARK S. LEE (Bar No. CA 094103)          2007 JUN 25  PM 4: 49
3 | mlee@manatt.com
DONALD R. BROWN (Bar No. CA 156548)     CLERK U.S. DISTRICT COURT
4 | dbrown@manatt.com                     CENTRAL DIST. OF CALIF.
11355 West Olympic Boulevard                   LOS ANGELES
5 | Los Angeles, CA  90064-1614
Telephone:  (310) 312-4000             BY _____
6 | Facsimile:  (310) 312-4224

7 | Attorneys for *Plaintiff*
TICKETMASTER L.L.C.

8 |

 | UNITED STATES DISTRICT COURT

9 |

 | FOR THE CENTRAL DISTRICT OF CALIFORNIA

10 |

11 |

12 | TICKETMASTER L.L.C., a Virginia | Case No. CV 07-2534-ABC (JCx)
limited liability company,
13 |                                  | FIRST AMENDED COMPLAINT FOR:
         Plaintiff,
14 |                                  | (1)  COPYRIGHT INFRINGEMENT
     vs.                             |      (17 USC § 101, *ET SEQ.*);
15 |                                  | (2)  VIOLATION OF DIGITAL
RMG TECHNOLOGIES, INC., a          |      MILLENIUM COPYRIGHT ACT
16 | Delaware corporation, and DOES 1  |      (17 USC § 1201);
through 10, inclusive,             | (3)  VIOLATION OF COMPUTER
17 |                                  |      FRAUD AND ABUSE ACT (18
         Defendants.                |      U.S.C. § 1030);
18 |                                  | (4)  VIOLATION OF CALIFORNIA
                                    |      PENAL CODE § 502;
19 |                                  | (5)  VIOLATION OF RICO (18 U.S.C.
                                    |      § 1962(c));
20 |                                  | (6)  VIOLATION OF RICO (18 U.S.C.
                                    |      § 1962(d));
21 |                                  | (7)  BREACH OF CONTRACT;
                                    | (8)  INDUCING BREACH OF
22 |                                  |      CONTRACT;
                                    | (9)  INTENTIONAL INTERFERENCE
23 |                                  |      WITH CONTRACTUAL
                                    |      RELATIONS;
24 |                                  | (10) FRAUD; and
                                    | (11) AIDING AND ABETTING
25 |                                  |      FRAUD
                                    |
26 |                                  | Complaint Filed:  April 17, 2007

27 |

 | **EXHIBIT**

E

28 |

41117842.2                    169                FIRST AMENDED COMPLAINT

1             Plaintiff Ticketmaster L.L.C. ("Ticketmaster") alleges the following

2   against defendants RMG Technologies, Inc. ("RMG") and DOES 1-10

3   (collectively, "Defendants"):

4

5                           **JURISDICTION AND VENUE**

6            1.    This Court has subject matter jurisdiction over the federal claims

7   in this Complaint pursuant to 28 U.S.C. Sections 1331 and 1338(a) and 18 U.S.C.

8   Section 1964(c), and has jurisdiction over the other claims in this Complaint under

9   California law pursuant to 28 U.S.C. Section 1367(a).

10           2.    Venue is proper in this Court pursuant to 28 U.S.C. Sections

11   1391(b) and 1400 and 18 U.S.C. Section 1965, in that a substantial part of the

12   events giving rise to the claims occurred in this judicial district, Ticketmaster's

13   principal place of business is within this judicial district, and RMG transacts

14   business in this judicial district. In addition, insofar as the Terms of Use govern the

15   relationship between the parties, those Terms provide for venue in state or federal

16   court in Los Angeles County for disputes relating to the purchase of tickets.

17

18                               **SUMMARY**

19           3.    Ticketmaster sells tickets for entertainment and sports events on

20   behalf of its clients to the general public through a variety of means, including

21   Ticketmaster's website, ticketmaster.com. The Terms of Use for Ticketmaster's

22   website prohibit, among other things, use of the website for commercial purposes,

23   use of automated devices such as bots and spiders to search for and purchase

24   tickets, excessive requests for web pages and other abusive uses of the site, and

25   purchasing quantities of tickets that exceed stated per customer ticket limits. To

26   maintain the integrity of its website and prevent abuse, Ticketmaster employs a

27   variety of security features on its website, including a feature commonly known as

28

1    CAPTCHA, which is designed to detect automated devices and prevent them from
2    purchasing tickets.

3           4.     Since at least as early as 2004, Defendants have marketed and
4    sold an application that enables RMG's customers to conspire with RMG to use
5    automated devices to unlawfully enter into and navigate through Ticketmaster's
6    website and improperly procure large quantities of tickets for the purpose of
7    reselling them at a profit. Defendants also conspire with RMG's customers to assist
8    those customers in circumventing Ticketmaster's security measures. Aware that
9    their activities violate federal and state law and are causing substantial damage to
10    Ticketmaster, Defendants have systematically attempted to conceal their
11    misconduct from Ticketmaster by, among other means, carefully screening RMG's
12    customers to ensure that none of them has any affiliation with or loyalty to
13    Ticketmaster.

14           5.     These deceptive and improper actions have harmed, and
15    continue to harm, Ticketmaster as well as consumers who seek to lawfully purchase
16    tickets through Ticketmaster's website. By using automated devices provided by
17    RMG, which can navigate a website and complete transactions more quickly than
18    human users can, RMG's customers deprive legitimate consumers of the
19    opportunity to purchase tickets, a problem which is compounded by RMG enabling
20    its customers to purchase quantities of tickets far in excess of the contractual per
21    customer ticket limits. This misuse and abuse alters data on Ticketmaster's
22    website, interferes with the operation of the website, deprives Ticketmaster of
23    various revenue streams, and increases Ticketmaster's operational costs. Moreover,
24    the use of RMG's prohibited automated devices involves the improper copying of
25    pages from Ticketmaster's website and the circumvention of Ticketmaster's
26    technological copy protection systems.

27           6.     Ticketmaster therefore asserts claims against Defendants for
28    copyright infringement and for violations of the federal Digital Millennium

1  Copyright Act, the federal Computer Fraud and Abuse Act, California Penal Code
2  Section 502, and the federal Racketeer Influenced and Corrupt Organizations Act
3  ("RICO"). Ticketmaster also asserts claims for breach of contract, inducing breach
4  of contract, intentional interference with contractual relations, fraud, and aiding and
5  abetting fraud. As relief, Ticketmaster seeks an injunction, compensatory damages,
6  treble damages, punitive damages, disgorgement of Defendants' ill-gotten gains,
7  imposition of a constructive trust, and recovery of attorneys' fees and costs incurred
8  by Ticketmaster to prosecute this lawsuit.

9

10                                    **THE PARTIES**

11          7.     Plaintiff Ticketmaster L.L.C. is a Virginia limited liability
12  company with its principal place of business in the City of West Hollywood, Los
13  Angeles County, California.

14          8.     Defendant RMG Technologies, Inc. is a Delaware corporation
15  with its principal place of business in Steubenville, Ohio. RMG does business as,
16  among other things, ticketbrokertools.com. Ticketmaster is informed and believes,
17  and based thereon alleges, that RMG conspired to effect the misconduct alleged
18  herein through its President, C.J. Garibay, and other employees, including without
19  limitation Ed Garibay, Shaun McKeegan, Jay Hasman, and Nathan Mitchell.

20          9.     The true names, residences and capacities, whether individual,
21  corporate or otherwise, of defendants Does 1 through 10 (collectively, the "Does")
22  are unknown to Ticketmaster. Ticketmaster therefore sues those defendants under
23  such fictitious names.    Ticketmaster is informed and believes that the Does are
24  brokers who used RMG's automated devices to access Ticketmaster's website, as
25  well as agents and employees of RMG, and in doing the things hereinafter alleged,
26  each of the Does was acting within the course and scope of such agency and
27  employment and with the knowledge, consent and approval of RMG and each
28  other. Ticketmaster is informed and believes that each of the Does is responsible in

41117842.2                                   4                   FIRST AMENDED COMPLAINT

1  some manner for the acts alleged herein and for the damages that Ticketmaster has

2  sustained. Ticketmaster will amend this Complaint to show the true names and

3  capacities of the Does when they are ascertained.

4            10.    Ticketmaster is informed and believes, and based thereon

5  alleges, that at all times mentioned herein, each Defendant conspired with, acted in

6  concert and active participation with, and aided and abetted every other Defendant

7  in committing the wrongful acts alleged in this Complaint. Ticketmaster is further

8  informed and believes, and based thereon alleges, that each of the Defendants

9  knew, or consciously avoided knowing, that the other Defendants were engaged or

10  intended to engage in conduct that violated Ticketmaster's rights and also violated

11  federal and California law.

12

13                             **FACTS**

14

15  **A.**   **Ticketmaster Attempts To Make Its Ticketing System As Fair And Equitable As Possible For Consumers.**

16            11.    Ticketmaster distributes tickets for live entertainment events to

17  the general public on behalf of Ticketmaster's clients, who are venues, promoters,

18  entertainers and sports franchises. Ticketmaster sells tickets via retail ticket outlets,

19  telephone call centers, and Ticketmaster's website, www.ticketmaster.com.

20  Ticketmaster spends substantial time, energy and resources attempting to ensure

21  that its website is current, accurate and easily understood for the benefit of its

22  clients and the public.

23            12.    Demand for tickets sold through Ticketmaster, including via

24  ticketmaster.com, often exceeds the supply of tickets available for purchase. This

25  can inspire intense competition among consumers to purchase tickets to the same

26  event when the tickets become available for sale on ticketmaster.com.

27            13.    Recognizing this competitive reality, Ticketmaster has

28  undertaken various measures to make the ticket buying process as fair and equitable

1  as possible for consumers. For example, Ticketmaster attempts to regulate the
2  speed with which users may copy the web pages necessary to purchase tickets on
3  ticketmaster.com. Ticketmaster also limits the number of tickets that may be
4  purchased in any single transaction.

5  14. In addition, Ticketmaster has undertaken measures intended to
6  prevent the use of computer programs or other automated devices—sometimes
7  called software robots or "bots"—which can give users of such devices an unfair
8  advantage over human consumers in the ticket purchasing process. One of those
9  measures is a security computer program, commonly known as CAPTCHA
10  ("Completely Automated Public Turing test to tell Computers and Humans Apart"),
11  that is designed to distinguish between human users and automated devices. When
12  a user submits a ticket request, a box appears on the screen with random characters
13  partially obscured behind hash marks, which the user is instructed to retype in order
14  to proceed with the ticket request. Most automated devices cannot decipher and
15  retype the random characters, and thus cannot proceed past that screen to complete
16  a ticket transaction.

17
18  **B.  Use Of Ticketmaster's Website Is Subject To Copyright Protections And Contractual Terms Of Use.**

19  15. Ticketmaster's website is a work of authorship protected by
20  copyright law. Ticketmaster (or its predecessors) has registered versions of its
21  website or portions thereof, with the Copyright Office, as described below:

| Title | Registration No. | Date of Registration |
|---|---|---|
| HTML code for Ticketmaster.com | TX-4-465-209 | February 5, 1997 |
| Ticketmaster.com Website II | TX-4-905-957 | June 18, 1999 |
| Ticketmaster.com Website III | TX-4-905-956 | June 18, 1999 |
| Ticketmaster.com | TX-5-072-126 | March 17, 2000 |

| Title | Registration No. | Date of Registration |
|---|---|---|
| Ticketmaster.com: Online Order Search | TX-5-067-039 | May 30, 2000 |
| Ticketmaster.com: Order Information | TX-5-067-040 | May 30, 2000 |
| Ticketmaster.com | TX-5-455-574 | December 29, 2000 |
| Ticketmaster.com Website Homepage, Event Ticket Order Pages | TXu-1-348-580 | May 22, 2007 |
| Event Ticket Order Validation Code | TXu-1-348-581 | May 22, 2007 |
| Event Ticket Order Limiting Code | TXu-1-348-582 | May 22, 2007 |

16. Use of ticketmaster.com by any member of the public is governed by Terms of Use that are set forth on the website. In all relevant respects, except for the inclusion of a liquidated damages provision in 2006, these Terms of Use have been the same from at least as early as 2003 to the present. (A copy of Ticketmaster's current Terms of Use is attached hereto as Exhibit "A.")

17. At all relevant times, the home page for ticketmaster.com has contained the following warning:

> Use of this website is subject to express terms of use which prohibit commercial use of this site. By continuing past this page, you agree to abide by these terms.

The underlined phrase "terms of use" on the home page is a readily visible hypertext link that, when clicked, causes the full Terms of Use to appear on the user's screen. The same message and related hyperlink to Ticketmaster's Terms of Use appear on almost every webpage on the website. Thus, a user is repeatedly reminded that use of the site is governed by the Terms of Use, and that continuing to use the site with that knowledge constitutes acceptance of those Terms of Use.

18. To purchase tickets through ticketmaster.com, a user must set up an account with Ticketmaster, and in doing so the user is instructed to review the Terms of Use for the website. Since 2003, it has been necessary as part of the account set-up procedure for the user to expressly consent to the Terms of Use by clicking a button labeled "Accept and Continue." (A copy of the webpage with the "Accept and Continue" button as part of the account set-up procedure is attached hereto as Exhibit "B.")

19. Users of ticketmaster.com also are referred to the Terms of Use when completing a ticket purchase. Users see a web page which states, "As a user of this website, you agree that you are subject to this website's Terms of Use," and embedded in this statement is a hyperlink that, when clicked, causes the Terms of Use to appear on the user's screen. During 2006, Ticketmaster added an "Accept and Continue" button at the point of purchase, which requires a user, before completing a ticket purchase, to expressly assent to the Terms of Use by clicking a button labeled "Accept and Continue." (A copy of the webpage with the "Accept and Continue" button as part of the ticket purchase procedure is attached hereto as Exhibit "C.")

20. Consumers who wish to purchase tickets through ticketmaster.com must navigate through a series of pages on the website by clicking on designated hypertext links on those pages. Viewing Ticketmaster's homepage and clicking on the hyperlinks to reach the various other pages that must be viewed to purchase tickets from the website causes copies of each of those pages to be created and to appear on a customer's computer. Ticketmaster's Terms of Use act as a license agreement that describes, *inter alia*, when and in what circumstances a user is permitted to copy pages of the website, especially those pages that must be viewed to purchase tickets.

21. At all relevant times the Terms of Use have permitted only personal use of the Ticketmaster.com website by consumers, as follows:

1

2

3

> **Permitted Use:**  You agree that you are only authorized
> to visit, view and retain a copy of pages of this site for
> your own personal use. . . unless otherwise specifically
> authorized by Ticketmaster to do so.

4    22.    At all relevant times the Terms of Use have included a variety of

5  provisions that prohibit misuse of the website.  For example, the Terms of Use have

6  always prohibited commercial use of Ticketmaster's website, providing in pertinent

7  part as follows:

8

9

10

11

12

13

14

15

> **Commercial Use:**  No. . . areas of this site may be used
> by our visitors for any commercial purposes. . .  Without
> limiting the foregoing, you may not use this site to resell
> tickets of any kind [except as permitted on the site
> itself]. . .We reserve the right to block access to this Site
> or Ticketmaster's other services, or cancel a ticket order or
> ticket with respect to any person believed to be, or
> believed to be acting in concert with any person who is
> believed to be, violating the law or these Terms or
> Ticketmaster's rights, or utilizing automated means to
> process or place ticket orders, or who has ordered a
> number of tickets that exceeds the stated limit.  Violating
> any limitations or terms on the Site will be deemed to be a
> violation of these Terms.

16    23.    At all relevant times, the Terms of Use have expressly

17  prohibited the use of bots and other automated means to access ticketmaster.com.

18  In that regard, the Terms of Use provide in pertinent part as follows:

19

20

21

> **Access and Interference:**  You agree that you will not
> use any robot, spider or other automatic device, process or
> means to access the Site. . . . You agree that you will not
> access, reload or "refresh" transactional event or ticketing
> pages, or make any other request to transactional servers,
> more than once during any three second interval.

22    24.    Similarly, at all relevant times, the Terms of Use have

23  prohibited the unauthorized use of the site, providing in pertinent part as follows:

24

25

26

27

28

> **Unauthorized Use of the Site:**    Any Illegal or
> unauthorized use of the Site shall constitute a violation of
> these Terms of Use.    You do not have permission to
> access the Site in any way that violates, or in the course of
> violating, these Terms of Use. Illegal or unauthorized use
> of the Site includes, but is not limited to, using the site to
> facilitate illegal ticket sales, unauthorized framing of or
> linking to the Site, or unauthorized use of any robot,

1
2
3
4

> spider or other automated process on the Site. It shall also be a violation of these Terms of Use: (a) for any individual (or group of individuals acting in concert) to request, more than 1000 pages of the Site in any twenty-four hour period (hereafter referred to as "Abusive Use") .
> . . .

5      25.     Furthermore, the Terms of Use limit the number of tickets that a

6   consumer may purchase in a single transaction. At all relevant times, the Terms of

7   Use have contained a hyperlink to, and have expressly incorporated, Ticketmaster's

8   Purchase Policy. The hyperlink to Ticketmaster's Purchase Policy is easily visible

9   and readily accessible under a heading in the Terms of Use which states "Ticket

10  Purchase Policy." Immediately below this heading in the Terms of Use is the

11  following statement: "Please review the Purchase Policy, which will govern your

12  order or purchase of any tickets through the Site." Clicking on the "Purchase

13  Policy" hyperlink causes the full Purchase Policy to appear on the user's screen.

14      26.     At all relevant times, the Purchase Policy on Ticketmaster's

15  website has stated as follows:

16      **Amount of Tickets Per Customer or Ticket Limits.**
        When purchasing tickets on Ticketmaster.com, you are
17      limited to a specified number of tickets for each event
        (also known as a "ticket limit"). This amount is included
18      on the unique event page and is verified with every
        transaction. This policy is in effect to discourage unfair
19      ticket buying practices.

20      27.     In sum, at all relevant times, the Terms of Use, including the

21  Purchase Policy, have prohibited users from, among other things, using the

22  Ticketmaster website for commercial purposes, using bots and other automated

23  devices to access and navigate the site and conduct transactions, abusing the

24  Ticketmaster system with excessive requests for web pages, and purchasing tickets

25  in excess of the per customer ticket limit. .

26
27
28

C.   **Defendants Have Misused And Abused Ticketmaster's Website Directly And By Assisting RMG's Customers To Do So.**

28.   Since at least as early as 2004, Defendants have been developing, marketing and selling a software application that enables RMG's customers, who are primarily ticket brokers, to employ automated devices to unlawfully and improperly access Ticketmaster's website and quickly purchase large quantities of tickets in violation of the Terms of Use of ticketmaster.com. These automated devices, which include "auto-workers" and "super-proxy-workers," are designed to, and do, circumvent CAPTCHA and other security measures on Ticketmaster's website.

29.   Ticketmaster is informed and believes, and based thereon alleges, that RMG's customers do not acquire physical possession of or download RMG's devices.   Rather, RMG's customers log onto RMG's website, ticketbrokertools.com, by entering a secret user name and password, and then use a suite of devices and products on that website, including auto-workers and super-proxy-workers, to improperly access Ticketmaster's website.   Thus, each and every illegal ticket purchase from Ticketmaster by any customer of RMG is executed jointly with RMG.

30.   RMG provides a variety of online software schemes to maximize the ability of these bots to unlawfully circumvent Ticketmaster's security measures and to accelerate the purchase of numerous tickets.   Depending on the level of service and features a customer is purchasing from RMG, a customer can use multiple bots—sometimes hundreds of them—simultaneously to flood the Ticketmaster website with requests for tickets.   If a customer encounters any obstacle in securing tickets or circumventing Ticketmaster's security measures, the customer may immediately consult with an RMG representative to receive information concerning how to maintain improper access to the Ticketmaster system.

31. Defendants also provide consultation to RMG's customers in setting up hardware, telecommunications equipment, and other tools to further expand their illegal invasion of Ticketmaster's website. Ticketmaster is informed and believes, and based thereon alleges, that Defendants have consulted with customers throughout the United States, including in California, to lend assistance in establishing or expanding the customers' illegal ticket-buying operations.

32. Defendants carefully screen potential customers of RMG to ensure that they have no affiliation with or loyalty to Ticketmaster. Indeed, Defendants warn RMG's customers not to publicize the existence of RMG's ticket-buying services, out of concern that Defendants' illegal activities might be discovered by Ticketmaster. Rather, if an existing customer wishes to recommend RMG's services to another broker, the existing customer is instructed to provide the name of the potential customer to RMG, so that Defendants may first screen the potential customer before deciding whether to initiate contact with the potential RMG customer.

33. Defendants have reviewed and consented to Ticketmaster's Terms of Use by accessing www.ticketmaster.com. To design automated devices that can circumvent Ticketmaster's security measures and exploit the Ticketmaster system, it is necessary for Defendants to regularly visit Ticketmaster's website. Like any other visitor to the site, Defendants would see repeated reminders of the Terms of Use and would be instructed to review them. Moreover, Ticketmaster is informed and believes, and based thereon alleges, that Defendants have purchased tickets on Ticketmaster's website through their automated devices, as part of their ongoing testing of devices, and that Defendants have been required to click the Accept and Continue button, thereby expressly confirming their assent to the Terms of Use, when making such ticket purchases.

34. Ticketmaster is informed and believes, and based thereon alleges, that in the course of using RMG's automated devices, Defendants, as well

1  as RMG's customers, have repeatedly and systematically requested more than 1000
2  pages of the website in applicable twenty-four hour periods, and have accessed,
3  reloaded or refreshed transactional events or ticketing pages and made other
4  requests to transactional servers more than once during applicable three-second
5  intervals.   Moreover, Ticketmaster is informed and believes, and based thereon
6  alleges, that users of these devices have routinely bought quantities of tickets
7  through Ticketmaster in excess of per-customer ticket limits, and that all or
8  substantially all of these purchases are made for a commercial purpose.

9          35.    The Ticketmaster system sometimes can detect the presence of
10 an automated device. When that occurs, the system generates a message to the user
11 explaining that the use of automated devices is prohibited.   Ticketmaster is
12 informed and believes, and based thereon alleges, that its system has generated such
13 messages in response to automated devices used by RMG customers, and that the
14 message is intercepted by and visible to RMG because the access to Ticketmaster's
15 website is occurring through RMG's applications.   Nonetheless, Defendants have
16 ignored the warnings and have continued to facilitate the use of automated devices
17 to unlawfully navigate through the Ticketmaster website and wrongfully acquire
18 tickets.

19         36.    When the Ticketmaster system detects the presence of an
20 automated device, the system, in addition to generating the message described
21 above, temporarily disables the automated device.   Ticketmaster is informed and
22 believes, and based thereon alleges, that its system has temporarily disabled
23 automated devices used by customers of RMG, but when that occurs, Defendants
24 provide technical assistance to their customers to regain access to the Ticketmaster
25 system, such as helping the customer to deploy the automated device from a
26 different IP address (Internet Protocol address) and enable their customers to
27 continue with their unauthorized use of the Ticketmaster system.

28

37.     Ticketmaster diligently tries to identify users of bots and other prohibited automated devices, but some users of these devices go to great lengths to hide their tracks. Ticketmaster is informed and believes, and based thereon alleges, that Defendants have assisted RMG's customers in evading detection by, among other means, helping customers obtain new IP addresses from their Internet Service Providers, and advising the customers to remove data and clean out "cookies" from the computers they use when accessing ticketmaster.com, thereby eluding identification by Ticketmaster as repeat visitors to the site.

38.     Thus, it was not until quite recently that Ticketmaster was able to assemble the evidence necessary to link Defendants with, among other things, unlawful access to www.ticketmaster.com and Defendants' related use of prohibited automated devices.

**D.     The Wrongful Conduct Has Harmed Ticketmaster's Website And Operations.**

39.     Ticketmaster has been harmed by the use of RMG's automated devices. To meet the demands of consumers and Ticketmaster's own clients, Ticketmaster must provide an equitable ticket distribution system that gives all consumers a fair opportunity to acquire the best available tickets for events. The use of automated devices undermines this effort, because automated devices can navigate through Ticketmaster's website and purchase tickets at a speed that legitimate consumers who do not use such devices cannot match. As a result, the inventory of tickets available to consumers who do not use such devices is substantially diminished, which has led some consumers to question Ticketmaster's ability to ensure a level playing field for the purchase of tickets.

40.     This harm is compounded by the fact that users of automated devices inundate the Ticketmaster system with thousands of requests for tickets, and each request causes tickets to be placed temporarily on reserve, even if they are not ultimately purchased. While a ticket is on reserve, it is unavailable to any other

1 user of the site. Not only does this further diminish the inventory of tickets for
2 legitimate consumers, but it impedes Ticketmaster's ability to provide an important
3 service to its clients. Clients use the Ticketmaster system to monitor ticket sales
4 activity to make a variety of decisions, including whether to open more seats or
5 move the seats to other distribution channels. The artificially high volume of seats
6 revolving in and out of reserve status due to the use of automated devices makes it
7 difficult to gauge how well tickets for the event are actually selling, which in turn
8 interferes with the clients' ability to make the ongoing decisions that are based on
9 sales activity.

10        41.   Users of automated devices also block access to the
11 Ticketmaster system by legitimate consumers in a variety of other ways. For
12 example, Ticketmaster's website allocates traffic to various servers through a load
13 balancing program that is designed to ensure consumer requests are processed
14 equitably and that no consumer receives slower service merely because his or her
15 request was directed to one server rather than another. However, users of
16 automated devices bypass the load balancing program and target specific servers
17 directly with thousands of requests, thus interfering with the website's traffic
18 allocation feature and putting some consumers whose requests were allocated to the
19 same server that was targeted by the automated device at risk of slower service.

20        42.   In addition, users of automated devices deprive Ticketmaster of
21 revenue and revenue opportunities in a variety of ways. Ticketmaster's website is
22 part of a carefully crafted business model that integrates other services and features
23 into the ticket purchasing process. The website is designed so that users will follow
24 certain steps and will see certain pages in the process of requesting and purchasing
25 tickets. Based on this expected flow of traffic, clients, advertisers and Ticketmaster
26 itself offer particular services or opportunities on particular pages, ranging from
27 parking at the event to signing up for client newsletters. However, automated
28 devices, which do not use traditional browsers, bypass the HTML code for these

1   features, so the users of those devices never even see these offers. These same
2   offenders further exacerbate the problem by purchasing enormous quantities of
3   tickets, which diminishes the ticket inventory for legitimate consumers and reduces
4   the number of legitimate consumers who will reach the pages that provide these up-
5   sell opportunities.

6        43.    Furthermore, by accessing the Ticketmaster system at targeted
7   points, automated devices alter the security features of the website itself. Normally,
8   users receive automatic and temporary permission—in effect, a token—to make
9   requests on the system. That token is automatically revoked if the pace of requests
10   exceeds a certain limit. However, by systematically deleting cookies on the user's
11   system, automated devices enable the user to constantly assume a new identity and
12   acquire new tokens even though that same user is far exceeding the request limit.

13        44.    All of these problems involve, in one way or another, alteration
14   of the Ticketmaster system and deletion, destruction and alteration of data on the
15   system.

16        45.    The use of automated devices also diverts resources from the
17   service of legitimate consumers. Ticketmaster must take extraordinary actions to
18   enhance the website infrastructure so it can support all of the activity on its website,
19   including all of the artificial and inflated activity generated by the automated
20   devices, and otherwise ensure the ongoing integrity of the website in the face of this
21   onslaught of devices. The use of these prohibited devices also significantly
22   increases the costs of data storage, troubleshooting and system maintenance.

23
24   **FIRST CLAIM FOR RELIEF**
25   **Copyright Infringement**
26   **(Against All Defendants)**

27        46.    Ticketmaster alleges and incorporates by reference all of the
28   preceding paragraphs.

1          47.   Ticketmaster owns valid U.S. Copyright registrations in its
2  website and specific portions thereof.

3          48.   In creating, causing the use of, and using bots, programs, or
4  other automatic devices on the ticketmaster.com website to acquire tickets for the
5  commercial purpose of reselling them, Defendants have acted in excess of the terms
6  of the license agreement created by Ticketmaster's Terms of Use, and thereby
7  copied or caused to be copied without authorization pages from the
8  ticketmaster.com site and other original elements of Ticketmaster's copyrighted
9  website. Defendants had the right and ability to supervise the infringing activities
10  of RMG, RMG's employees and RMG's customers, and induced or materially
11  contributed to the infringing activities of those employees and customers while
12  knowing of and directly benefiting from that infringing activity.

13          49.   As a proximate result of this direct, contributory and vicarious
14  copyright infringement, Ticketmaster suffered significant damage in an amount not
15  presently known with certainty, but which will be proven at trial. Further,
16  Ticketmaster is suffering irreparable harm because of Defendants' infringing
17  activity.

18          50.   Ticketmaster is entitled to the range of relief provided by
19  17 U.S.C. Sections 502-505, including injunctive relief, an order for the
20  impounding and destruction of all copies of all bots, programs, or other automatic
21  devices used by Defendants to violate Ticketmaster's rights, compensatory
22  damages in an amount to be determined, statutory and punitive damages, and its
23  costs and attorneys' fees.

24

25

26

27

28

## SECOND CLAIM FOR RELIEF

### Violation Of Digital Millennium Copyright Act, 17 U.S.C. § 1201

### (Against All Defendants)

51.     Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

52.     Ticketmaster is informed and believes, and based thereon alleges, that Defendants are manufacturing, importing, trafficking in and using bots, programs, or other technology, products, services, devices, components, or parts thereof, that are primarily designed and produced to circumvent the technological measures by which Ticketmaster effectively controls access to its copyrighted website.

53.     Ticketmaster is informed and believes, and based thereon alleges, that these bots, programs, or other technical devices have no commercially significant purpose or use other than to circumvent the technological measures that Ticketmaster uses to control access to its website, and that Defendants are creating, marketing, trafficking in and using those devices for that purpose.

54.     Ticketmaster has suffered significant damages in an amount not presently known with certainty, but which will be proven at trial, as a proximate result of Defendants' above-referenced misconduct.

55.     Ticketmaster is entitled to the range of relief provided by 17 U.S.C. Sections 1201-1203, including injunctive relief, compensatory or statutory damages, and its costs and attorneys' fees in an amount to be proven at trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### THIRD CLAIM FOR RELIEF

### Violation Of Computer Fraud And Abuse Act, 18 U.S.C. § 1030

### (Against All Defendants)

56.     Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

57.     Ticketmaster's computers are involved in interstate and foreign communication.

58.     Ticketmaster is informed and believes, and based thereon alleges, that Defendants have knowingly and with intent to defraud trafficked in passwords or other information that has been used to access Ticketmaster's website without authorization or in excess of authorized access, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(6)(A).

59.     Furthermore, Ticketmaster is informed and believes, and based thereon alleges, that Defendants have intentionally accessed Ticketmaster's computers without authorization or in excess of authorized access, and, through interstate or foreign communication, obtained information from those computers, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C). Ticketmaster is informed and believes, and based thereon alleges, that as a result of this conduct, Ticketmaster sustained economic damages of at least $5,000 over a one-year period.

60.     Furthermore, Ticketmaster is informed and believes, and based thereon alleges, that Defendants knowingly, and with intent to defraud, have accessed Ticketmaster's computers without authorization or in excess of authorized access, and by means of such conduct furthered their intended fraud and obtained items of value greater than $5,000 over a one-year period, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

61.     As alleged in more detail in Paragraphs 39-45 above, these violations have damaged Ticketmaster by, among other things, diminishing the

1   inventory of tickets available through Ticketmaster to legitimate consumers,
2   causing artificially high levels of tickets to be placed on reserve and thereby
3   interfering with the transmission of real time sales information to Ticketmaster's
4   clients, interfering with and disrupting Ticketmaster's load balancing program and
5   thereby denying service to legitimate consumers, bypassing required website entry
6   and exit points, which directly and indirectly reduces integral revenue
7   opportunities, altering website security features through manipulation of request
8   limit monitoring, requiring Ticketmaster to undertake extraordinary actions to
9   monitor and enhance website infrastructure, and significantly increasing costs of
10  data storage, troubleshooting and system maintenance.

11          62.    Under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g),
12  Ticketmaster is entitled to an injunction, damages, and other legal and equitable
13  relief as prayed for in this Complaint.

14
15                      **FOURTH CLAIM FOR RELIEF**
16                   **Violation Of California Penal Code § 502**
17                         **(Against All Defendants)**

18          63.    Ticketmaster alleges and incorporates by reference all of the
19  preceding paragraphs.

20          64.    Defendants have knowingly used and caused to be used
21  Ticketmaster's computer services without permission, in violation of California
22  Penal Code Section 502(c)(3).

23          65.    Furthermore, Defendants have knowingly and without
24  Ticketmaster's permission provided, or assisted in providing, a means of accessing
25  Ticketmaster's website, in violation of California Penal Code Section 502(c)(6).

26          66.    Furthermore, Ticketmaster is informed and believes, and based
27  thereon alleges, that through their use of bots and other automated devices in
28  violation of the Terms of Use, Defendants have knowingly and without permission

1   disrupted Ticketmaster's computer services and have caused the denial of those
2   services to authorized users of the computer system, in violation of California Penal
3   Code Section 502(c)(5).

4       67.   Furthermore, Ticketmaster is informed and believes, and based
5   thereon alleges, that Defendants have knowingly accessed Ticketmaster's website
6   in violation of the Terms of Use and thus without permission, in violation of
7   California Penal Code Section 502(c)(7).

8       68.   Furthermore, Ticketmaster is informed and believes, and based
9   thereon alleges, that Defendants have without permission taken data from
10  Ticketmaster's computer system and computer service and have used the data on
11  that system to wrongfully obtain tickets, in violation of California Penal Code
12  Sections 502(c)(1) and (2).

13      69.   As alleged in more detail in Paragraphs 39-45 above, these
14  violations have damaged Ticketmaster by, among other things, diminishing the
15  inventory of tickets available through Ticketmaster to legitimate consumers,
16  causing artificially high levels of tickets to be placed on reserve and thereby
17  interfering with the transmission of real time sales information to Ticketmaster's
18  clients, interfering with and disrupting Ticketmaster's load balancing program and
19  thereby denying service to legitimate consumers, bypassing required website entry
20  and exit points, which directly and indirectly reduces integral revenue
21  opportunities, altering website security features through manipulation of request
22  limit monitoring, requiring Ticketmaster to undertake extraordinary actions to
23  monitor and enhance website infrastructure, and significantly increasing costs of
24  data storage, troubleshooting and system maintenance.

25      70.   Pursuant to California Penal Code Section 502(e), Ticketmaster
26  is entitled to an injunction, compensatory and punitive damages, attorneys' fees,
27  and other legal and equitable relief as prayed for in this Complaint.

28

1         71.   Defendants have acted with oppression, fraud and malice toward

2  Ticketmaster, entitling Ticketmaster to an award of punitive damages in an amount

3  sufficient to deter them from future misconduct.

## FIFTH CLAIM FOR RELIEF

## Violation of RICO, 18 U.S.C. § 1962(c)

## (Against all Defendants)

8         72.   Ticketmaster alleges and incorporates by reference all of the

9  preceding paragraphs.

10        73.   Defendants have repeatedly and systematically engaged in

11  "racketeering activity" as defined in 18 U.S.C. Section 1961(1) through their

12  violations of 18 U.S.C. Section 1029, which prohibits fraud and related activity in

13  connection with access devices.  Defendants have provided devices, along with

14  technical assistance in exploiting such devices, to gain access to numerous

15  customer accounts on Ticketmaster's website without Ticketmaster's consent or

16  permission. Each instance of providing devices constitutes a separate offense under

17  18 U.S.C. Section 1029.

18        74.   As a separate and independent basis for RICO liability,

19  Defendants have engaged in racketeering activity through their violations of 18

20  U.S.C. Section 1343, which prohibits wire fraud. Defendants have repeatedly and

21  systematically communicated with RMG's customers via telephone and the Internet

22  and with Ticketmaster's website via the Internet for the purpose effectuating their

23  fraudulent scheme of providing a means for RMG's customers to unlawfully access

24  Ticketmaster's website by means of false representations and omissions and to

25  obtain tickets to which such individuals are not entitled. Each communication via

26  wire constitutes a separate offense under 18 U.S.C. Section 1343.

75.     RMG and its customers collectively comprise an "enterprise" as defined in 18 U.S.C. Section 1961(4), and Defendants are employed by or associated with that enterprise.

76.     Defendants conduct the affairs of the enterprise through "a pattern of racketeering activity" as defined in 18 U.S.C. Section 1961(5). As alleged above, Defendants have engaged in at least two acts of racketeering activity within the last ten years.

77.     Ticketmaster and the enterprise are both involved in interstate commerce.

78.     Accordingly, Defendants have violated, and continue to violate, 18 U.S.C. Section 1962(c), which makes it unlawful for any persons employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

79.     Ticketmaster has been injured in its business or property as a result of this violation of 18 U.S.C. Section 1962(c). Under 18 U.S.C. Section 1964, Defendants are jointly and severally liable to Ticketmaster for three times the damages that Ticketmaster has suffered as a result of Defendants' fraudulent actions, as well as an injunction as prayed for in this Complaint, and its attorneys' fees and costs in prosecuting this lawsuit.

## SIXTH CLAIM FOR RELIEF
### Violation of RICO, 18 U.S.C. § 1962(d)
### (Against all Defendants)

80.     Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

81.     All Defendants conspired with one another to violate 18 U.S.C. Section 1962(c), thereby violating 18 U.S.C. Section 1962(d).

1             82.     Ticketmaster has been injured in its business or property by

2 reason of this conspiratorial conduct.

3             83.     By reason of Defendants' violation of 18 U.S.C. Section

4 1962(d), Defendants are jointly and severally liable to Ticketmaster for three times

5 the damages that Ticketmaster has suffered as a result of Defendants' fraudulent

6 actions, as well as an injunction as prayed for in this Complaint, and its attorneys'

7 fees and costs in prosecuting this lawsuit.

8

9                           **SEVENTH CLAIM FOR RELIEF**

10                             **Breach Of Contract**

11                           **(Against All Defendants)**

12             84.     Ticketmaster alleges and incorporates by reference all of the

13 preceding paragraphs.

14             85.     At all relevant times, the home page and most other pages on

15 ticketmaster.com have informed users that their use of the website is subject to

16 express terms and conditions set forth in the Terms of Use, and that by continuing

17 past the page in question, the user expressly and/or impliedly agrees to be bound by

18 those terms. Users have a reasonable opportunity to review the Terms of Use upon

19 first entering the website, and they also have a reasonable opportunity to review the

20 Terms of Use during their use of the site. The link to the Terms of Use is displayed

21 in such a manner as to provide consumers with clear notice of their existence.

22             86.     Ticketmaster is informed and believes, and based thereon

23 alleges, that Defendants expressly assented to the Terms of Use when setting up

24 accounts on ticketmaster.com. Moreover, since the middle of 2006, it has been

25 necessary for users of ticketmaster.com to expressly assent to the Terms of Use

26 each time they submit a request to purchase tickets. Thus, Ticketmaster is informed

27 and believes that Defendants have repeatedly provided their express assent to the

28 Terms of Use.

1    87.  The Terms of Use prohibit, among other things, commercial use

2  of the site, the use of bots and other automated devices, abusive use of the website,

3  and exceeding per-customer ticket limits.  These Terms of Use are fair and

4  reasonable.

5    88.  Ticketmaster has performed all conditions, covenants and

6  promises required to be performed by it in accordance with the Terms of Use.

7    89.  Ticketmaster is informed and believes, and based thereon

8  alleges, that since at least as early as 2004, Defendants have repeatedly and

9  systematically breached the Terms of Use by using bots and other automated

10 devices to access the website and buy tickets, by using the website for a commercial

11 purpose, and by buying tickets in quantities that exceed per customer ticket limits.

12 Ticketmaster is informed and believes, and based thereon alleges, that as part of this

13 misuse of Ticketmaster's website, Defendants repeatedly and systematically

14 requested more than 1000 pages of the website in applicable twenty-four hour

15 periods, and accessed, reloaded or refreshed transactional events or ticketing pages

16 and made other requests to transactional servers more than once during applicable

17 three-second intervals.

18    90.  It can be impracticable and extremely difficult to ascertain the

19 damages from abusive use of Ticketmaster's website.  Therefore, Ticketmaster

20 made a reasonable attempt at a formula for calculating the damages caused by

21 abusive use of its website, and in early 2006 Ticketmaster added a liquidated

22 damages provision to the Terms of Use that includes this formula.  The liquidated

23 damages provision states in pertinent part as follows:

24         You agree that Abusive Use of the Site, as defined above,
           causes damage and harm to Ticketmaster in the form of,
25         among other things, impaired goodwill, lost sales, and
           increased expenses associated with responding to Abusive
26         Use of the Site. You further agree that monetary damages
           for Abusive Use of the Site are difficult to ascertain and
27         that proof of monetary damages for Abusive Use would
           be costly and inconvenient to calculate. Accordingly you
28         agree that liquidated damages are warranted for Abusive

1
2
3
4
5

> Use. Therefore, you agree that if you, or others acting in concert with you, alone or collectively request more than 1000 pages of the Site in any twenty-four hour period, you, and those acting in concert with you, will be jointly and severally liable for liquidated damages in the amount of ten dollars ($10.00) per page request each time that a page request is made after that first 1000 during that twenty-four hour period.

6   91.   Ticketmaster is entitled to liquidated damages in accordance
7   with the foregoing provision, in an amount to proven at trial when the full extent of
8   Defendants' requests for pages on Ticketmaster's website is ascertained.   In
9   addition, Ticketmaster is entitled to compensatory damages, in an amount to be
10  proven at trial, for breaches of the Terms of Use that occurred before the liquidated
11  damages provision was added to the Terms of Use, and as an alternative to
12  liquidated damages should the liquidated damages provision be unenforceable for
13  any reason.

14  92.   The Terms of Use also provide that Ticketmaster is entitled to
15  injunctive relief to enjoin violations of the Terms of Use. At all relevant times the
16  Terms of Use have provided in pertinent part as follows: "You agree that monetary
17  damages may not provide a sufficient remedy to Ticketmaster for violations of
18  these Terms and you consent to injunctive or other equitable relief for such
19  violations."

20  93.   Defendants' conduct has significantly and irreparably damaged
21  Ticketmaster and will continue to do so unless restrained by this Court. Thus, in
22  addition to liquidated damages and other damages for abusive use of its website,
23  Ticketmaster is entitled to the preliminary and permanent injunctive relief prayed
24  for in this Complaint.

25
26
27
28

## EIGHTH CLAIM FOR RELIEF

### Inducing Breach Of Contract

### (Against all Defendants)

94.     Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

95.     At all relevant times, the home page and most other pages on ticketmaster.com have informed users that their use of the website is subject to express terms and conditions set forth in the Terms of Use, and that by continuing past the page in question, they expressly and/or impliedly agree to be bound by those terms. Users have a reasonable opportunity to review the Terms of Use upon first entering the website, and they also have a reasonable opportunity to review the Terms of Use during their use of the site. The link to the Terms of Use is displayed in such a manner as to provide consumers with notice of their existence.

96.     Ticketmaster is informed and believes, and based thereon alleges, that Defendants expressly assented to the Terms of Use when setting up accounts on ticketmaster.com. Moreover, since the middle of 2006, it has been necessary for users of ticketmaster.com to expressly assent to the Terms of Use each time they submit a request to purchase tickets. Thus, Ticketmaster is informed and believes that Defendants have repeatedly provided their express assent to the Terms of Use.

97.     The Terms of Use prohibit, *inter alia*, commercial use of the site, the use of bots and other automated devices, abusive use of the website, and exceeding per-customer ticket limits. These Terms of Use are fair and reasonable.

98.     Ticketmaster has performed all conditions, covenants and promises required to be performed by it in accordance with the Terms of Use.

99.     Since at least as early as 2004, customers of RMG have repeatedly and systematically breached the Terms of Use by using bots and other automated devices to access the website and buy tickets, by using the website for a

195

1  commercial purpose, and by buying tickets in quantities that exceed per customer
2  ticket limits. Ticketmaster is informed and believes that, as part of this misuse of
3  Ticketmaster's website, these RMG customers repeatedly and systematically
4  requested more than 1000 pages of Ticketmaster's website in applicable twenty-
5  four hour periods, and accessed, reloaded or refreshed transactional events or
6  ticketing pages and made other requests to transactional servers more than once
7  during applicable three-second intervals.

8      100.   Defendants knew of the Terms of Use and that those Terms of
9  Use constitute an agreement between Ticketmaster and RMG's customers, and
10  Defendants intended to cause RMG's customers to breach those agreements.
11  Indeed, the entire business model of RMG is to enable its customers to breach
12  Ticketmaster's Terms of Use.

13      101.   Defendants' conduct caused RMG's customers to breach their
14  contracts with Ticketmaster. In fact, RMG's automated devices were the means by
15  which RMG's customers did in fact breach their contracts with Ticketmaster.

16      102.   Ticketmaster has been harmed as a result, and Defendants'
17  conduct was a substantial factor in causing such harm. At all relevant times, the
18  Terms of Use have contained a liquidated damages provision that provides in
19  pertinent part as follows:

20      You agree that Abusive Use of the Site, as defined above,
       causes damage and harm to Ticketmaster in the form of,
21      among other things, impaired goodwill, lost sales, and
       increased expenses associated with responding to Abusive
22      Use of the Site. You further agree that monetary damages
       for Abusive Use of the Site are difficult to ascertain and
23      that proof of monetary damages for Abusive Use would
       be costly and inconvenient to calculate. Accordingly you
24      agree that liquidated damages are warranted for Abusive
       Use. Therefore, you agree that if you, or others acting in
25      concert with you, alone or collectively request more than
       1000 pages of the Site in any twenty-four hour period,
26      you, and those acting in concert with you, will be jointly
       and severally liable for liquidated damages in the amount
27      of ten dollars ($10.00) per page request each time that a
       page request is made after that first 1000 during that
28      twenty-four hour period.

196

1      103.  Ticketmaster is entitled to liquidated damages in accordance
2  with the foregoing provision, in an amount to proven at trial when the full extent of
3  the requests for pages on Ticketmaster's website by RMG's customers is
4  ascertained.  In addition, Ticketmaster is entitled to compensatory damages, in an
5  amount to be proven at trial, for breaches of the Terms of Use that occurred before
6  the liquidated damages provision was added to the Terms of Use, and as an
7  alternative to liquidated damages should the liquidated damages provision be
8  unenforceable for any reason.

9      104.  Ticketmaster is informed and believes that Defendants' conduct
10  was undertaken with the intent to injure Ticketmaster, or with a willful and
11  conscious disregard of Ticketmaster's rights, and constitutes clear and convincing
12  evidence of oppression, fraud and malice under California Civil Code Section 3294.
13  As a result, Ticketmaster is entitled to an award of punitive damages against each
14  Defendant in an amount sufficient to deter them from future misconduct.

15
16                          **NINTH CLAIM FOR RELIEF**
17                **Intentional Interference with Contractual Relations**
18                              **(Against all Defendants)**

19      105.  Ticketmaster alleges and incorporates by reference all of the
20  preceding paragraphs.

21      106.  As alleged above, RMG's customers were bound by the Terms
22  of Use on Ticketmaster's website and at all relevant times Defendants were aware
23  that these RMG customers were bound by the Terms of Use.  Moreover, at all
24  relevant times, Defendants were aware of the content of the Terms of Use.

25      107.  The Terms of Use prohibit, *inter alia*, commercial use of the
26  site, the use of bots and other automated devices, abusive use of the website, and
27  exceeding per-customer ticket limits.  These Terms of Use are fair and reasonable.

28

1     108. Ticketmaster has performed all conditions, covenants and

2 promises required to be performed by it in accordance with the Terms of Use.

3     109. By marketing and selling automated devices to circumvent

4 Ticketmaster's security devices and providing tools and assistance to RMG's

5 customers to enable them to inundate Ticketmaster's website with requests and

6 excess ticket purchases, Defendants intended to disrupt the performance of the

7 contracts between Ticketmaster and RMG's customers.

8     110. Since at least as early as 2004, customers of RMG have

9 repeatedly and systematically used bots and other automated devices to access the

10 website and buy tickets, have used the website for a commercial purpose, and have

11 bought tickets in quantities that exceed per customer ticket limits.  Ticketmaster is

12 informed and believes, and based thereon alleges, that as part of this misuse of

13 Ticketmaster's website, these RMG customers repeatedly and systematically

14 requested more than 1000 pages of Ticketmaster's website in applicable twenty-

15 four hour periods, and accessed, reloaded or refreshed transactional events or

16 ticketing pages and made other requests to transactional servers more than once

17 during applicable three-second intervals.

18     111. Defendants' conduct made it substantially more difficult and

19 expensive for Ticketmaster to perform under those contracts.  As alleged in more

20 detail in Paragraphs 39-45 above, these violations have damaged Ticketmaster by,

21 among other things, diminishing the inventory of tickets available through

22 Ticketmaster to legitimate consumers, causing artificially high levels of tickets to

23 be placed on reserve and thereby interfering with the transmission of real time sales

24 information to Ticketmaster's clients, interfering with and disrupting

25 Ticketmaster's load balancing program and thereby denying service to legitimate

26 consumers, bypassing required website entry and exit points, which directly and

27 indirectly reduces integral revenue opportunities, altering website security features

28 through manipulation of request limit monitoring, requiring Ticketmaster to

1    undertake extraordinary actions to monitor and enhance website infrastructure, and
2    significantly increasing costs of data storage, troubleshooting and system
3    maintenance.  Thus, Defendants' conduct was a substantial factor in causing harm
4    to Ticketmaster.

5          112.  At all relevant times, the Terms of Use have contained a
6    liquidated damages provision that provides in pertinent part as follows:

> You agree that Abusive Use of the Site, as defined above,
> causes damage and harm to Ticketmaster in the form of,
> among other things, impaired goodwill, lost sales, and
> increased expenses associated with responding to Abusive
> Use of the Site. You further agree that monetary damages
> for Abusive Use of the Site are difficult to ascertain and
> that proof of monetary damages for Abusive Use would
> be costly and inconvenient to calculate. Accordingly you
> agree that liquidated damages are warranted for Abusive
> Use. Therefore, you agree that if you, or others acting in
> concert with you, alone or collectively request more than
> 1000 pages of the Site in any twenty-four hour period,
> you, and those acting in concert with you, will be jointly
> and severally liable for liquidated damages in the amount
> of ten dollars ($10.00) per page request each time that a
> page request is made after that first 1000 during that
> twenty-four hour period.

16          113.  Ticketmaster is entitled to liquidated damages in accordance
17    with the foregoing provision, in an amount to proven at trial when the full extent of
18    the requests for pages on Ticketmaster's website by RMG's customers is
19    ascertained.  In addition, Ticketmaster is entitled to compensatory damages, in an
20    amount to be proven at trial, for breaches of the Terms of Use that occurred before
21    the liquidated damages provision was added to the Terms of Use, and as an
22    alternative to liquidated damages should the liquidated damages provision be
23    unenforceable for any reason.

24          114.  Ticketmaster is informed and believes that Defendants' conduct
25    was undertaken with the intent to injure Ticketmaster, or with a willful and
26    conscious disregard of Ticketmaster's rights, and constitutes clear and convincing
27    evidence of oppression, fraud and malice under California Civil Code Section 3294.
28

1   As a result, Ticketmaster is entitled to an award of punitive damages against each

2   Defendant in an amount sufficient to deter them from future misconduct.

3

4                          **TENTH CLAIM FOR RELIEF**

5                                   **Fraud**

6                          **(Against all Defendants)**

7                   115.   Ticketmaster alleges and incorporates by reference all of the

8   preceding paragraphs.

9                   116.   Ticketmaster is informed and believes, and based thereon

10  alleges, that Defendants have repeatedly accessed Ticketmaster's website, and in

11  proceeding to use the website, represented to Ticketmaster that they would comply

12  with the Terms of Use, and thus that they would not, among other things, use the

13  site for commercial purposes, use bots or other automated devices, abuse the

14  website, or exceed per-customer ticket limits.

15                  117.   Ticketmaster is informed and believes, and based thereon

16  alleges, that Defendants clicked the "Accept and Continue" button on

17  Ticketmaster's website when setting up online accounts, thereby expressly

18  representing to Ticketmaster that they would comply with the Terms of Use for the

19  website, and thus that they would not, among other things, use the site for

20  commercial purposes, use bots or other automated devices, abuse the website, or

21  exceed per-customer ticket limits.

22                  118.   In addition, Ticketmaster is informed and believes, and based

23  thereon alleges, that since 2006, Defendants have been required to click the

24  "Accept and Continue" button on Ticketmaster's website when completing

25  purchases of tickets, thereby expressly representing to Ticketmaster that they would

26  comply with the Terms of Use for the website, and thus that they would not, among

27  other things, use the site for commercial purposes, use bots or other automated

28  devices, abuse the website, or exceed per-customer ticket limits.

1        119. Each and every such representation was false. Ticketmaster is
2   informed and believes, and based thereon alleges, that every time Defendants
3   accessed and used the website, and every time they clicked the Accept and
4   Continue button, they intended to, and did, violate the Terms of Use as described
5   above. Moreover, Ticketmaster is informed and believes that every time
6   Defendants accessed and used Ticketmaster's website, they concealed from
7   Ticketmaster their true intent to violate the Terms of Use.

8        120. Ticketmaster relied on each such representation and omission by
9   providing the information and services available on the website to Defendants.

10        121. Ticketmaster's reliance was reasonable. Defendants received
11   ample notice of the Terms of Use every time they accessed and used the website,
12   and it has been necessary for them to click the Accept and Continue button both
13   when setting up online accounts and when completing a ticket purchase.

14        122. As a result of Defendants' fraudulent representations and
15   omissions, Ticketmaster sold tickets to Defendants that Ticketmaster otherwise
16   could have sold to legitimate users of the site but was unable to due to the RMG
17   customers' misconduct. Moreover, Defendants obtained information about the
18   workings and architecture of Ticketmaster's website to assist in their design of
19   prohibited automated devices, and Defendants used Ticketmaster's website to test
20   their devices, which in turn have been used by others to defraud Ticketmaster.

21        123. As a proximate result of this fraudulent misconduct,
22   Ticketmaster has been damaged in an amount to be proved at trial.

23        124. Ticketmaster is informed and believes that Defendants' conduct
24   was undertaken with the intent to injure Ticketmaster, or with a willful and
25   conscious disregard of Ticketmaster's rights, and constitutes clear and convincing
26   evidence of oppression, fraud and malice under California Civil Code Section 3294.
27   As a result, Ticketmaster is entitled to an award of punitive damages against each
28   Defendant in an amount sufficient to deter them from future misconduct.

1

2 **ELEVENTH CLAIM FOR RELIEF**

3 **Aiding and Abetting Fraud**

4 **(Against all Defendants)**

5      125. Ticketmaster alleges and incorporates by reference all of the

6 preceding paragraphs.

7      126. RMG's customers have repeatedly accessed Ticketmaster's

8 website, and in proceeding to use the website, represented to Ticketmaster that they

9 would comply with the Terms of Use, and thus that they would not, among other

10 things, use the site for commercial purposes, use bots or other automated devices,

11 abuse the website, or exceed per-customer ticket limits.

12      127. These RMG customers clicked the "Accept and Continue"

13 button on Ticketmaster's website when setting up their online accounts, thereby

14 expressly representing to Ticketmaster that they would comply with the Terms of

15 Use for the website, and thus that they would not, among other things, use the site

16 for commercial purposes, use bots or other automated devices, abuse the website, or

17 exceed per-customer ticket limits.

18      128. In addition, since 2006, these RMG customers have repeatedly

19 clicked the "Accept and Continue" button on Ticketmaster's website when

20 completing purchases of tickets, thereby expressly representing to Ticketmaster that

21 they would comply with the Terms of Use for the website, and thus that they would

22 not, among other things, use the site for commercial purposes, use bots or other

23 automated devices, abuse the website, or exceed per-customer ticket limits.

24      129. Each and every such representation by these RMG customers

25 was false. Ticketmaster is informed and believes, and based thereon alleges, that

26 every time the RMG customers accessed and used the website, and every time they

27 clicked the Accept and Continue button, they intended to, and did, violate the

28 Terms of Use as described above. Moreover, Ticketmaster is informed and

1  believes, and based thereon alleges, that every time the RMG customers accessed
2  and used Ticketmaster's website, they concealed from Ticketmaster their true intent
3  to violate the Terms of Use.

4    130. Ticketmaster relied on each such representation and omission by
5  providing the information and services available on the website to RMG's
6  customers, including the sale to them of substantial quantities of tickets.

7    131. Ticketmaster's reliance was reasonable. RMG's customers
8  received ample notice of the Terms of Use every time they accessed and used the
9  website, and it has been necessary for them to click the Accept and Continue button
10  both when setting up their online accounts and when completing a ticket purchase.

11    132. As a result of the fraudulent representations and omissions of
12  RMG's customers, Ticketmaster sold tickets to them that Ticketmaster otherwise
13  could have sold to legitimate users of the site but was unable to due to the RMG
14  customers' misconduct.

15    133. As a proximate result of this fraudulent misconduct,
16  Ticketmaster has been damaged in an amount to be proved at trial.

17    134. Defendants have aided and abetted all of this fraudulent
18  misconduct. Defendants had actual knowledge that each of RMG's customers was
19  acquiring RMG's products and services for the purpose of defrauding Ticketmaster,
20  and Defendants provided substantial assistance to RMG's customers for this
21  purpose by providing RMG's products and services and counseling RMG's
22  customers how to exploit the Ticketmaster system. Thus, Defendants are liable for
23  all of the damages and harm that Ticketmaster has incurred by reason of the RMG
24  customers' fraudulent misconduct.

25    135. Ticketmaster is informed and believes that Defendants' conduct
26  was undertaken with the intent to injure Ticketmaster, or with a willful and
27  conscious disregard of Ticketmaster's rights, and constitutes clear and convincing
28  evidence of oppression, fraud and malice under California Civil Code Section 3294.

1   As a result, Ticketmaster is entitled to an award of punitive damages against each

2   Defendant in an amount sufficient to deter them from future misconduct.

3

4         WHEREFORE, Ticketmaster respectfully requests that the Court:

5         1.    Enjoin all Defendants from:

6           a. infringing or assisting any other person or entity in infringing

7   Ticketmaster's rights in its copyrighted ticketmaster.com website works as set forth

8   herein by copying pages from that website in excess of the scope of the license

9   granted by the ticketmaster.com Terms of Use;

10         b. manufacturing,    adapting,    modifying,    exchanging,

11   distributing, creating, importing, trafficking in, or using any bots, programs or other

12   technology, products, services, devices, components, or parts thereof to circumvent

13   the technological measures by which Ticketmaster controls access to its website;

14         c. accessing, visiting, purchasing tickets on, facilitating the

15   purchase of tickets on, or otherwise using ticketmaster.com for any purpose that is

16   in excess of the agreement formed by the Terms of Use by which users are

17   permitted to visit that website;

18         d. using, or causing, urging or assisting any other person to use,

19   automated means such as bots to access Ticketmaster's website;

20         e. using, or causing, urging or assisting any other person to use,

21   any program that is designed to circumvent security measures such as CAPTCHA

22   to attempt to access Ticketmaster's website;

23         f. designing, selling or marketing any program or device that is

24   designed to provide an automated means of accessing Ticketmaster's website or

25   that is designed to circumvent security measures such as CAPTCHA on

26   Ticketmaster's website;

27         g. soliciting the design, purchase, sale or use of any program or

28   device that is designed to provide an automated means of accessing Ticketmaster's

1  website or that is designed to circumvent security measures such as CAPTCHA on
2  Ticketmaster's website;

3          h.  purchasing, selling, transferring or acquiring any program or
4  device that is designed to provide an automated means of accessing Ticketmaster's
5  website or that is designed to circumvent security measures such as CAPTCHA on
6  Ticketmaster's website;

7          i.  accessing  or  using  Ticketmaster's  website  for  any
8  commercial purpose whatsoever;

9          j.  abusing  Ticketmaster's  website  in  any  way,  such  as
10  exceeding limits in the Terms of Use for requesting web pages and making requests
11  to transactional servers more than once during any three-second interval;

12          k.  purchasing tickets in excess of per customer ticket limits; and

13          l.  reselling any tickets obtained through Ticketmaster that were
14  not obtained legitimately in accordance with the Terms of Use;

15      2.  Order that Defendants be required to:

16          a.  account  for,  hold  in  constructive  trust,  pay  over  to
17  Ticketmaster, and otherwise disgorge all profits derived by Defendants from their
18  individual and collective misconduct as alleged herein; and

19          b.  pay to Ticketmaster the costs of this action, together with
20  reasonable attorneys' fees and disbursements, in accordance with federal and
21  California law, including but not limited to 17 U.S.C. Sections 505 and 1203, and
22  California Penal Code Section 502(e)(2);

23      3.  Award to Ticketmaster liquidated, compensatory, statutory,
24  treble and punitive damages; and

25  / / /

26  / / /

27

28

205

1            4.     Award to Ticketmaster all further relief, as the Court deems just

2  and equitable.

3

4  Dated:  June 25, 2007               MANATT, PHELPS & PHILLIPS, LLP

                                       ROBERT H. PLATT

5                                 MARK S. LEE

                                        DONALD R. BROWN

6

7                              By:

8                                 Robert H. Platt

                                 Attorneys for *Plaintiff*

9                               TICKETMASTER L.L.C.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>JURY DEMAND</u>

2         Ticketmaster demands a jury trial in this action.

3

4   Dated:  June 25, 2007                MANATT, PHELPS & PHILLIPS, LLP

5                                     ROBERT H. PLATT
                                    MARK S. LEE

6                                     DONALD R. BROWN

7

8                       By: _____
                            Robert H. Platt

9                             Attorneys for *Plaintiff*
                            TICKETMASTER L.L.C.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

207

# EXHIBIT A

208

Terms of Use

Welcome to Ticketmaster. The following are the Terms of Use (these "Terms") that govern use of the Ticketmaster.com and Ticketmaster.ca web sites (collectively, the "Site"). When we say the "Site" we are also referring to the TicketExchange sections of the Site where you can buy and resell tickets. By using or visiting the Site, you expressly agree to be bound by these Terms and to follow these Terms and all applicable laws and regulations governing the Site. Ticketmaster, Ticketmaster Canada Ltd. and each of their respective subsidiaries (collectively "Ticketmaster" or "we") reserve the right to change these Terms at any time, effective immediately upon posting on the Site. Please check this page of the Site periodically. If you violate these Terms, Ticketmaster may terminate your use of the Site, bar you from future use of the Site, cancel tickets you receive through the site, cancel your ticket order, and/or take appropriate legal action against you.

**Permitted Use**
You agree that you are only authorized to visit, view and to retain a copy of pages of this Site for your own personal use, and that you shall not duplicate, download, publish, modify or otherwise distribute the material on this Site for any purpose other than to review event and promotional information, for personal use, or to purchase tickets or merchandise, unless otherwise specifically authorized by Ticketmaster to do so. You also agree not to deep-link to the site for any purpose, unless specifically authorized by Ticketmaster to do so or unless deep-linking to TicketExchange pages where you have posted tickets for sale. The content and software on this Site is the property of Ticketmaster and/or its suppliers and is protected by U.S., Canadian and international copyright laws. We post a legal notice and various credits on pages of the Site, which may not be removed. Please do not remove this notice or these credits, or any additional information contained along with the notices and credits.

**Ticket Purchase Policy**
Please review the Purchase Policy, which will govern your order or purchase of any tickets through the Site.

**TicketExchange Selling Policy**
Please review the TicketExchange Selling Policy, which will govern your sale, or attempted sale, of any tickets using the TicketExchange portions of the Site.

**Truthfulness and Accuracy of the Information You Provide; Complying with Laws; Verifications and Authorizations**
The sale or purchase of tickets to entertainment events is regulated by certain states, counties and cities. You may be asked to provide information during processes you engage in on the Site. You represent and warrant that all information you provide will be true, complete and correct, and that you will update all information as it changes. You also acknowledge that complying with laws is your responsibility, AND YOU AGREE NOT TO HOLD US LIABLE FOR YOUR FAILURE TO COMPLY WITH ANY LAW OR OUR FAILURE TO NOTIFY YOU OF, OR PROPERLY APPLY, ANY LAW. WE WILL COMPLY WITH LAW ENFORCEMENT AND MAY PROVIDE THEM WITH ALL INFORMATION YOU SUBMIT TO US TO ASSIST IN ANY INVESTIGATION OR PROSECUTION THEY MAY CONDUCT. If we are unable to verify or authenticate any information or tickets you provide during any registration, ordering, purchase, ticket posting, sale, authentication, delivery, payment or remittance process, or any other process, or if we are no longer able to verify or authorize your credit card or bank account information, you may be prohibited from using the Site.

**User Contributions to the Site**
From time to time, the Site may provide you with opportunities to contribute to the Site, which may include, but not be limited to, uploading your user profile, participating in chats and using bulletin boards. Anything that is contributed to the Site by you or other Site users will be referred to in these Terms as "User Content". Ticketmaster is not liable or responsible for any User Content. The contributions of third parties do not necessarily represent the view or opinions of Ticketmaster. Ticketmaster cannot preview User Content before it appears. Users can be held liable for any illegal or prohibited User Content they provide to the Site, including among other things, infringing, defamatory or offensive materials. If you discover this kind of material on the Site, please notify us at legal@ticketmaster.com if the material is on Ticketmaster.com and legal@ticketmaster.ca if the material is on Ticketmaster.ca. We will investigate your claim and may then take the actions deemed appropriate.

**Links and Search Results**
The Site may automatically produce search results that reference or link to third party sites throughout the World Wide Web. Ticketmaster has no control over these sites or the content within them. Ticketmaster cannot guarantee, represent or warrant that the content contained in the sites is accurate, legal and/or inoffensive. Ticketmaster does not endorse the content of any third party site, nor do we warrant that they will not contain viruses or otherwise impact your computer. By using the Site to search for or link to another site, you agree and understand that you may not make any claim against Ticketmaster for any damages or losses, whatsoever, resulting from your use of the Site to obtain search results or to link to another site. If you have a problem with a link from the Site, please notify us at legal@ticketmaster.com if the link is on Ticketmaster.com and legal@ticketmaster.ca if the link is on Ticketmaster.ca, and we will investigate your claim and take any actions we deem appropriate in our sole discretion.

Policies and Se

**Prohibited Content**

The following is a partial list of the kind of User Content which is illegal or prohibited on the Site. It includes User Content that:

- Is patently offensive to the online community, such as User Content that promotes racism, bigotry, hatred or physical harm of any kind against any group or individual; could be harmful to minors;
- Harasses or advocates harassment of another person;
- Involves the transmission of "junk mail", "chain letters", or unsolicited mass mailing or "spamming";
- Promotes information that you know is false, misleading or promotes illegal activities or conduct that is abusive, threatening, obscene, defamatory or libelous;
- Promotes an illegal or unauthorized copy of another person's copyrighted work, such as providing pirated computer programs or links to them, providing information to circumvent manufacture-installed copy-protect devices, or providing pirated music or links to pirated music files;
- Contains restricted or password only access pages, or hidden pages or images (those not linked to or from another accessible page);
- Displays pornographic or sexually explicit material of any kind;
- Provides material that exploits people under the age of 18 in a sexual or violent manner, or solicits personal information from anyone under 18;
- Provides instructional information about illegal activities such as making or buying illegal weapons, violating someone's privacy, or providing or creating computer viruses;
- Solicits passwords or personal identifying information for commercial or unlawful purposes from other users; and
- Engages in commercial activities without our prior written consent such as contests, sweepstakes, barter, advertising, and pyramid schemes.

**Offline Conduct**

Although Ticketmaster cannot monitor the conduct of users off the Site, it is also a violation of these rules to use any information obtained from this Site in order to harass, abuse, or harm another person, or in order to contact, advertise to, solicit or sell to any Site user without their prior explicit consent.

**Commercial Use**

No bulletin board, chat or other areas of this Site may be used by our visitors for any commercial purposes such as to conduct sales of tickets, merchandise or services of any kind, except that TicketExchange can be used to resell tickets to the extent compliant with law. You must obtain our prior written consent to make commercial offers of any kind, whether by advertising, solicitations, links, or any other form of communication, except you may post tickets for resale through TicketExchange to the extent you are doing so in accordance with law. Without limiting the foregoing, you may not use the Site to resell or link to other sites for the purpose of selling tickets of any kind, except you may resell tickets through TicketExchange to the extent you are doing so in accordance with law. We will investigate and take appropriate legal action against anyone who violates this provision, including without limitation, removing the offending communication from the Site and barring such violators from use of the Site. We reserve the right to block access to this Site or Ticketmaster's other services, or cancel a ticket order or ticket with respect to any person believed to be, or believed to be acting in concert with any person who is believed to be, violating the law or these Terms or Ticketmaster's rights, or utilizing automated means to process or place ticket orders, or who has ordered a number of tickets that exceeds the stated limit. Violating any limitations or terms on the Site will be deemed to be a violation of these Terms. Please note that Ticketmaster has entered into agreements with certain sport teams for whom Ticketmaster hosts web sites that are designed to allow such sports teams' season ticket holders to sell individual game tickets from their season ticket packages through such web sites ("Season Ticket Sale Sites"). Some of these Season Ticket Sale Sites can be found through this Site. Nothing in this paragraph shall prohibit the sale or purchase of tickets through the Season Ticket Sale Sites or through TicketExchange, as long as such sales and purchases are conducted pursuant to the terms that apply to the Season Ticket Sale Sites or TicketExchange (as the case may be) and comply with law.

**Access and Interference**

You agree that you will not use any robot, spider or other automatic device, process or means to access the Site. Nor shall you use any manual process to monitor or copy our web pages or the content contained thereon or for any other unauthorized purpose without our prior expressed written permission. You agree that you will not use any device, software or routine that interferes with the proper working of the Site nor shall you attempt to interfere with the proper working of the Site. You agree that you will not take any action that imposes an unreasonable or disproportionately large load on our infrastructure. You agree that you will not access, reload or "refresh" transactional event or ticketing pages, or make any other request to transactional servers, more than once during any three second interval. You agree that you will not copy, reproduce, alter, modify, create derivative works, or publicly display any content (except for your own personal, non-commercial use) from the Site without the prior expressed written permission of Ticketmaster.

**Unauthorized Use of the Site**

Any illegal or unauthorized use of the Site shall constitute a violation of these Terms of Use. You do not

210

have permission to access the Site in a..,  ' violates, or in the course of violating, these Terms...
Use. Illegal or unauthorized use of the Site i...  ...s, but is not limited to, using the site to facilitate illegal
ticket sales, unauthorized framing of or linking to the Site, or unauthorized use of any robot, spider or other
automated process on the Site. It shall also be a violation of these Terms of Use: (a) for any individual (or
group of individuals acting in concert) to request, more than 1000 pages of the Site in any twenty-four hour
period (hereafter referred to as "Abusive Use"); or (b) to use any passcode or password, regardless of
whether or not such password or passcode is unique, to participate in a pre-sale or other offer on the Site if
you are not the original recipient of such passcode or password (i.e., if you did not receive the passcode or
password from Ticketmaster, or from the fan club or other organization with whom Ticketmaster is working
to enable such pre-sale or offer) or if your participation in such pre-sale or other offer is inconsistent with
such pre-sale's or offer's terms.

### Suspected Violation of these Terms of Use or Law; Injunctive, Equitable Relief, and Liquidated Damages

Violations of these Terms of Use, including Unauthorized Use of the Site, may be investigated and
appropriate legal action may be taken, including without limitation civil, criminal and injunctive redress. You
understand and agree that in Ticketmaster's sole discretion, and without prior notice, Ticketmaster may
terminate your access to the Site, cancel your ticket order or tickets acquired through your ticket order,
cancel your ticket postings, remove any unauthorized User Content or exercise any other remedy available,
if Ticketmaster believes that your conduct or the conduct of any person with whom Ticketmaster believes
you act in concert, or the User Content you provide, or any resale of such tickets purchased through
Ticketmaster, violates or is inconsistent with these Terms or the law, or violates the rights of Ticketmaster, a
client of Ticketmaster or another user of the Site. You agree that monetary damages may not provide a
sufficient remedy to Ticketmaster for violations of these Terms and you consent to injunctive or other
equitable relief for such violations.

You agree that Abusive Use of the Site, as defined above, causes damage and harm to Ticketmaster in the
form of, among other things, impaired goodwill, lost sales, and increased expenses associated with
responding to Abusive Use of the Site. You further agree that monetary damages for Abusive Use of the
Site are difficult to ascertain and that proof of monetary damages for Abusive Use would be costly and
inconvenient to calculate. Accordingly you agree that liquidated damages are warranted for Abusive Use.
Therefore, you agree that if you, or others acting in concert with you, alone or collectively request more than
1000 pages of the Site in any twenty-four hour period, you, and those acting in concert with you, will be
jointly and severally liable for liquidated damages in the amount of ten dollars ($10.00) per page request
each time that a page request is made after that first 1000 during that twenty-four hour period. You also
agree that this will be the measure of damages for any Abusive Use that occurred prior to this provision of
these Terms of Use being in effect.

Ticketmaster is not required to provide any refund to you if it exercises any of its rights or remedies because
you have violated these Terms or any of Ticketmaster's rights. For more information about how we handle
copyright infringements on the Site, please see our Copyright Policy. Additionally, we reserve the right, in
our sole discretion, to modify, suspend or discontinue any part of this Site at any time, with or without notice
to you. We also reserve the right, in our sole discretion, to impose limits on certain features and services
and to restrict access to any part or to all of the Site without notice to you. We shall not be liable to you or
any third party for any claim or cause of action arising out of our exercise of the foregoing rights.

### Privacy

We believe that your privacy and the privacy of all our users is important. These Terms are subject to the
Privacy Policy, which is hereby incorporated by reference. Ticketmaster will not be responsible or otherwise
liable for any use or disclosure of your contact information, or financial information, by a third party to whom
Ticketmaster is allowed to disclose your contact information under the Privacy Policy. If you post any User
Content to the Site, by electronic mail or otherwise, we will treat it as non-confidential and non-proprietary to
you. When we say in these Terms "post" we mean the provision of information (including, but not limited to,
"User Content") to the Site through features of the Site that are used to make information available to other
members of the public (e.g., user reviews, bulletin boards, chat rooms, etc.). Information that is posted to
the Site shall not be subject to the Privacy Policy and may be publicly displayed and disclosed and
otherwise used by Ticketmaster or any third party in any way. By posting User Content to the Site, you
authorize us to use or allow others to distribute, reproduce or otherwise use such User Content. You should
not post information about yourself on the Site that can be used to identify or contact you, including, but not
limited to, your name, home or work address, phone numbers, pagers, email address or other such
information. If you post such information, Ticketmaster cannot prevent it from being used in a manner that
violates these Terms, the law, or your personal privacy and safety. By posting such information on the Site,
you violate these Terms, and you assume the risks and sole liability for the results of such posting. You
understand that if you post tickets on TicketExchange through the posting process applicable to licensed
resellers, under certain circumstances some of your contact information may be displayed to the public.

Ticketmaster is not liable for any lost data resulting from the operation of the Site or the enforcement of the
Terms. We urge all users to maintain their own back up versions of any User Content or other information
they submit to the Site.

### U.S. Export Controls

This Site and software derived from this one is        subject to United States export controls. No software from this site may be downloaded or otherwise e.        .ed or re-exported: (i) into (or to a national or resident of) Cuba, Iraq, Libya, North Korea, Iran, Syria, or any other Country to which the U.S. has embargoed goods; or (ii) to anyone on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Commerce Department's Table of Deny Orders. By downloading or using the Site or any software derived there from, you represent and warrant that you are not located in, under the control of, or a national or resident of any such country or on any such list.

## Copyright Policy

We will terminate the privileges of any user who uses this Site to unlawfully transmit copyrighted material without a license express consent, valid defence or fair use exemption to do so. In particular, users who submit User Content to this Site, whether articles, images, stories, software or other copyrightable material must ensure that the User Content they upload does not infringe the copyrights or other rights of third parties (including, but not limited, to trademark, trade secret, privacy or publicity rights). After proper notification by the copyright holder or it agent to us, and confirmation through court order or admission by the user that they have used this Site as an instrument of unlawful infringement, we will terminate the infringing users' rights to use and/or access to this Site. We may, also in our sole discretion, decide to terminate a user's rights to use or access to the Site prior to that time if we believe that an alleged infringement has occurred.

## Disclaimers

TICKETMASTER DOES NOT PROMISE THAT THE SITE WILL BE ERROR-FREE, UNINTERRUPTED, OR THAT IT WILL PROVIDE SPECIFIC RESULTS FROM USE OF THE SITE OR ANY CONTENT, SEARCH OR LINK ON IT. THE SITE AND ITS CONTENT ARE DELIVERED ON AN "AS-IS" AND "AS-AVAILABLE" BASIS. TICKETMASTER CANNOT ENSURE THAT FILES YOU DOWNLOAD FROM THE SITE WILL BE FREE OF VIRUSES OR CONTAMINATION OR DESTRUCTIVE FEATURES. TICKETMASTER DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ALSO ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. TICKETMASTER WILL NOT BE LIABLE FOR ANY DAMAGES OF ANY KIND ARISING FROM THE USE OF THIS SITE, INCLUDING WITHOUT LIMITATION, DIRECT, INDIRECT, INCIDENTAL, AND PUNITIVE AND CONSEQUENTIAL DAMAGES. TICKETMASTER MAKES NO GUARANTEE OF ANY SPECIFIC RESULT FROM USE OF THIS SITE OR USE OF THE TICKETMASTER SERVICE.

TICKETMASTER DISCLAIMS ANY AND ALL LIABILITY FOR THE ACTS, OMISSIONS AND CONDUCT OF ANY THIRD PARTY USERS, TICKETMASTER USERS, ADVERTISERS AND/OR SPONSORS ON THE SITE, IN CONNECTION WITH THE TICKETMASTER SERVICE OR OTHERWISE RELATED TO YOUR USE OF THE SITE AND/OR THE TICKETMASTER SERVICE. TICKETMASTER IS NOT RESPONSIBLE FOR THE PRODUCTS, SERVICES, ACTIONS OR FAILURE TO ACT OF ANY VENUE, PERFORMER, PROMOTER OR OTHER THIRD PARTY IN CONNECTION WITH OR REFERENCED ON THE SITE.

Without limiting the foregoing, you may report the misconduct of users and/or third party advertisers, service and/or product providers referenced on or included in the Site to Ticketmaster at legal@ticketmaster.com if on Ticketmaster.com or at legal@ticketmaster.ca if on Ticketmaster.ca. Ticketmaster may investigate the claim and take appropriate action, in its sole discretion.

## Limitation on Liability

IN NO EVENT WILL TICKETMASTER BE LIABLE TO YOU FOR ANY INDIRECT, CONSEQUENTIAL, EXEMPLARY, INCIDENTAL, SPECIAL OR PUNITIVE DAMAGES, OR FOR LOST PROFITS, REVNUES OR BUSINESS OPPORTUNITIES, EVEN IF TICKETMASTER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

## Disputes

If you have a dispute and your dispute involves an event (or a ticket for an event) that is located in the United States, then the dispute will be governed by the laws of the State of California without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in state and federal courts located in Los Angeles County, California. If you have a dispute and your dispute involves an event (or a ticket for an event) that is located in Canada, then the dispute will be governed by the laws of the Province of Ontario without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in courts located in Toronto, Ontario. If you have a dispute regarding the Site but not regarding an event (and not regarding a ticket for an event), then: (a) if you are accessing the Site from the United States or any country other than Canada, then the dispute will be governed by the laws of the State of California without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in state and federal courts located in Los Angeles County, California; and (b) if you are accessing the Site from Canada, then the dispute will be governed by the laws of the Province of Ontario without regard to its conflict of law provisions and you consent to personal jurisdiction, and agree to bring all actions, exclusively in courts located in Toronto, Ontario. If you are purchasing or selling through TicketExchange tickets to an event that is located in the State of Illinois, then this paragraph shall not apply to your purchase or sale, and instead the paragraph that will apply is the paragraph below entitled "Additional Provisions Applicable to Persons Using TicketExchagne to Buy or Sell Tickets to any Event Located in the State of Illinois."

## Indemnity

You agree to indemnify and hold Ticketmaster and its affiliates, and each of Ticketmaster's and its affiliates' respective officers, agents, employees, contractors and principals, harmless from any loss, liability, claim or demand, including reasonable attorneys' fees, made by any third party due to or arising out of your use of the Site, including also your use of the Site to provide a link to another site or to upload content or other information to the Site.

## Trademarks

Ticketmaster and Ticketmaster.com and design are registered trademarks of Ticketmaster. All rights reserved.

## Additional Provisions Applicable to Persons Using TicketExchange to Buy or Sell Tickets to any Event Located in the State of Illinois

If, and only if, you are using TicketExchange to purchase or sell a ticket to an event that is located in the State of Illinois, then you understand, agree and acknowledge the following:

- This website is operated by Ticketmaster L.L.C. Ticketmaster's address in the State of Illinois is: 550 W. Van Buren Street, 13th Floor, Chicago, Illinois 60607.
- If you have a complaint or inquiry regarding ticket resales made through TicketExchange for any event located in the State of Illinois, please email us at ticketexchange@ticketmaster.com or call us at (877) 446-9450.
- These Terms shall be governed by and construed in accordance with the laws of the State of Illinois. In the event of a dispute, you, Ticketmaster, and all buyers and sellers of tickets through TicketExchange each agree to submit to the exclusive jurisdiction and venue of the state and federal courts located in Chicago, Illinois, and the parties consent to the exclusive and personal jurisdiction and venue of these courts, subject to the following: If you are a reseller of one or more tickets through TicketExchange and you have a dispute with any person or business who buys any of those tickets from you, or you are a buyer of one or more resold tickets resold through TicketExchange and you have a dispute with the person or business that sold any of those tickets to you, you hereby agree that that dispute will be solely and finally settled in Illinois by binding arbitration in accordance with the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association, and the non-prevailing party in the arbitration shall pay the fees and expenses of the arbitrator(s) and the costs of arbitration and the enforcement of any award rendered therein, including the attorneys' fees and expenses of the prevailing party. In order to commence such a proceeding, please send a letter describing the dispute to Ticketmaster Legal Department, 8800 Sunset Blvd., West Hollywood, CA 90069.

---

**Home   Music   Sports   Arts & Theater   Family   Gift Cards**

Site Map  |  About Ticketmaster  |  Our Policies  |  Privacy Policy  |  Sell Tickets With Us  |  International  |  Care

Use of this site is subject to express terms of use, which prohibit commercial use of this site. By continuing past this page, you agree to abid

© 2007 Ticketmaster. All rights reserved.

Partner Sites: Admission  Condo Direct  Cottonblend  Domania  Expedia  GetSmart  HomeConnections  Home Loan Center  Hotels  H
INest  IOS Catalog  LendingTree  LendingTree Loans  LiveDaily  RealEstate  ReserveAmerica  ServiceMagic  Shoes  Smith + Noble
TicketWeb



# EXHIBIT B

214

# ticketmaster

○ You have 1:30 minutes to complete this page.
After 1:30 minutes these tickets will be released.

**create account**

Already have a Ticketmaster Account? <u>Sign In</u>

First name

Email address

Retype Email
address

Zip/Postal code

Type password                        5-12 characters

Retype password

As a Ticketmaster user, by purchasing a ticket to an event or completing a registration form in order to be able to purchase a ticket to an event, you agree that Ticketmaster may share your information with the venues, promoters, artists, teams, leagues and other third parties associated with that event. These parties may use your information to contact you or may use or disclose your information in other ways. Please contact them directly to learn about their policies. Ticketmaster may also contact you and use and disclose the information you submit, as described in the Ticketmaster <u>Privacy Policy</u>.

As a registered user of Ticketmaster.com, you are subject to the <u>terms of use</u> which, among other things, prohibits commercial use of this site.



Already have an account? <u>Sign In</u>

© 2003 Ticketmaster. All rights reserved.

# EXHIBIT C

216

complete this page within 1:00 minute.
:00 minute, the tickets we're holding will be released for others to buy.

**te Account**

Already have a Ticketmaster Account? **Log In**

name

address

pe Email address

ostal code

password                                    5-12 characters

pe password

rchasing a ticket to an event, or completing this registration form in order to be able to purchase a ticket to an event or to bid in an auction, you
te that you consent to Ticketmaster sharing your email address and other information with those involved in the event (e.g., venues, teams, artists'
sentatives and fan clubs, promoters and leagues), and that you consent to those involved in the event using your information to contact you by email
er means to send you marketing or other messages or using or disclosing your information in other ways. Please contact them directly to learn about
policies. By completing this registration form, you also indicate that you consent to Ticketmaster contacting you by email or other means to send you
ting or other messages and using and disclosing the information you submit, as described in the Ticketmaster Privacy Policy.

are under 13 years old, you must not fill in this form or provide any information about yourself.

registered user of Ticketmaster.com, you are subject to the terms of use which, among other things, prohibits commercial use of this site.

**Accept and Continue**

© 2006 Ticketmaster. All rights reserved.

1

## PROOF OF SERVICE

2

I, Rebecca Blake, declare:

3

I am a citizen of the United States and employed in Los Angeles County, California. I am
over the age of eighteen years and not a party to the within-entitled action. My business address
is 11355 West Olympic Boulevard, Los Angeles, California 90064-1614. On June 6, 2007, I
served a copy of the within document(s):

4

5

6

## FIRST AMENDED COMPLAINT

7

☐   by transmitting via facsimile the document(s) listed above to the fax number(s) set
forth below on this date before 5:00 p.m.

8

9

☒   by placing the document(s) listed above in a sealed envelope with postage thereon
fully prepaid, in the United States mail at Los Angeles, California addressed as set
forth below.

10

11

☐   by placing the document(s) listed above in a sealed envelope and affixing a pre-
paid air bill, and causing the envelope to be delivered to a Golden State Overnight
agent for delivery.

12

☐   by personally delivering the document(s) listed above to the person(s) at the
address(es) set forth below.

13

14

☒   by sending an electronic message with attached PDF.

15

Caryn Brottman Sanders, Esq.
Law Offices of Caryn Sanders
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
Tel: (661) 362-0788
Fax: (661) 362-0789
Email: caryn@sanders-law.com

Joseph S. Provanzano, J.D.
Law Offices of Joseph S. Provanzano
16 Bourbon Street, Suite C
Peabody, Massachusetts 01960-1338
Tel: (978) 535-8222
Fax: (978) 535-8228
Email: JoePro12@aol.com

16

17

18

19

20

I am readily familiar with the firm's practice of collection and processing correspondence
for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same
day with postage thereon fully prepaid in the ordinary course of business. I am aware that on
motion of the party served, service is presumed invalid if postal cancellation date or postage
meter date is more than one day after date of deposit for mailing in affidavit.

21

22

23

I declare that I am employed in the office of a member of the bar of this court at whose
direction the service was made.

24

25

Executed on June 6, 2007, at Los Angeles, California.

26

27

Rebecca Blake

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41120062.1

208

1

## PROOF OF SERVICE

2

I, Rebecca Blake, declare:

3

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11355 West Olympic Boulevard, Los Angeles, California 90064-1614. On June 25, 2007, I served a copy of the within document(s):

4

5

6

FIRST AMENDED COMPLAINT FOR: (1)COPYRIGHT INFRINGEMENT (17 USC § 101, *ET SEQ.*); (2) VIOLATION OF DIGITAL MILLENIUM COPYRIGHT ACT (17 USC § 1201); (3) VIOLATION OF COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030); (4) VIOLATION OF CALIFORNIA PENAL CODE § 502; (5)VIOLATION OF RICO (18 U.S.C. § 1962(c)); (6) VIOLATION OF RICO (18 U.S.C. § 1962(d)); (7)BREACH OF CONTRACT; (8) INDUCING BREACH OF CONTRACT; (9) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS; (10) FRAUD; and (11) AIDING AND ABETTING FRAUD

7

8

9

10

☐     by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

11

12

☐     by placing the document(s) listed above in a sealed United States Postal Service Express Mail envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

13

14

☒     by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Golden State Overnight agent for delivery.

15

16

☐     by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

17

18

☒     by sending an electronic message with attached PDF.

19

David N. Tarlow, Esq.
Law Offices of Coggan & Tarlow
1925 Century Park East, Suite 2320
Los Angeles, California 90067-2343
Tel. No. (310) 407-0922
Fax No. (310) 407-0923
Email: dnt@cogganlaw.com

20

21

22

23

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

24

25

26

27

28

219

1       I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

2

3       Executed on June 25, 2007, at Los Angeles, California.

4

5                               Rebecca Blake

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

2

220

# EXHIBIT F

1   MANATT, PHELPS & PHILLIPS, LLP
    ROBERT H. PLATT (Bar No. CA 108533)

2   rplatt@manatt.com
    MARK S. LEE (Bar No. CA 094103)

3   mlee@manatt.com
    DONALD R. BROWN (Bar No. CA 156548)

4   dbrown@manatt.com
    11355 West Olympic Boulevard

5   Los Angeles, CA 90064-1614
    Telephone: (310) 312-4000

6   Facsimile: (310) 312-4224

**JS-6**

7   Attorneys for *Plaintiff*
    TICKETMASTER L.L.C.

8

9         UNITED STATES DISTRICT COURT

10     FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12   TICKETMASTER L.L.C., a Virginia limited liability company, | Case No. CV 07-2531 ABC (JCx) |
| 13 | Hon Audrey B. Collins |
| 14        Plaintiff, | **STIPULATION AND ORDER RE:** |
| 15    vs. | **PERMANENT INJUNCTION AND DISMISSAL WITH** |
| 16   GARY CHARLES BONNER (aka CHARLES GARY BONNER), an | **PREJUDICE OF ALL UNADJUDICATED CLAIMS AND** |
| 17   individual; ANN BONNER, an individual; LARISSA L. BONNER (aka | **ALL OTHER PARTIES** |
| 18   LEA BONNER, LARISSA L. GREEN, LARISSA GREEN BONNER, LAURA | |

12   TICKETMASTER L.L.C., a Virginia
    limited liability company,

13

14           Plaintiff,

15    vs.

16   GARY CHARLES BONNER (aka
    CHARLES GARY BONNER), an

17   individual; ANN BONNER, an
    individual; LARISSA L. BONNER (aka

18   LEA BONNER, LARISSA L. GREEN,
    LARISSA GREEN BONNER, LAURA

19   LEA), an individual; JAMES BARR, an
    individual; LARRY HAMAKER, an

20   individual; KENDRA JENNINGS, an
    individual; DYLAN JOSEPH, an

21   individual; CAHLEB MOSER, an
    individual; NICOLE MUESBORN, an

22   individual; JAVIER RODRIGUEZ, an
    individual; CHRISTOPHER GRAHAM

23   BONNER, an individual formerly sued
    as DOE No. 1; MARCUS STERN, an

24   individual formerly sued as DOE No. 2;
    MC TICKETS, INC., a Texas

25   corporation formerly sued as DOE No. 3;
    and TICKET ATTRACTIONS OF

26   HOUSTON INC. a Texas corporation
    formerly sued as DOE No. 4, inclusive,

27           Defendants.

28

41220624.1

STIPULATION AND ORDER RE: PERMANENT INJUNCTION AND DISMISSAL

**EXHIBIT**

*F*

221

1     WHEREAS, Plaintiff Ticketmaster L.L.C. and Defendants James Barr,

2     Christopher Graham Bonner, Marcus Stern, MC Tickets, Inc. and Ticket

3     Attractions of Houston Inc. have entered into a settlement agreement, including

4     terms providing for the release of claims between them.

5     WHEREAS, for settlement purposes only and without any admission

6     of liability, Defendants James Barr, Christopher Graham Bonner, Marcus Stern,

7     MC Tickets, Inc. and Ticket Attractions of Houston Inc. have consented to allow

8     the entry of a permanent injunction against them pursuant to the terms of the

9     settlement agreement.

10     NOW, THEREFORE, Plaintiff Ticketmaster L.L.C. and Defendants

11     James Barr, Christopher Graham Bonner, Marcus Stern, MC Tickets, Inc. and

12     Ticket Attractions of Houston Inc., through their respective counsel, hereby

13     stipulate to and respectfully request the Court to enter a permanent injunction and

14     dismiss all unadjudicated claims and all other parties with prejudice, as follows:

15     1.    The above-described defendants and all those under their

16     direction or control or acting in concert with them, including without limitation

17     officers, directors, shareholders, employees, successors and assigns of the above-

18     described defendants, may be permanently enjoined from:

19     a.    For the commercial purpose of reselling event tickets

20     obtained from www.ticketmaster.com (the "Website"), creating or using computer

21     programs or automated devices to look for or purchase tickets from the Website

22     faster than human beings can manually enter into the Website the information

23     needed to obtain information about or purchase tickets to an event from the

24     Website;

25     b.    For the commercial purpose of reselling event tickets

26     obtained from www.ticketmaster.com, creating or using computer programs or

27     automated devices to circumvent CAPTCHA or any successor software program

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41220624.1

2

1   integrated into the Website's customer interface to distinguish computer programs
2   or automated devices from human customers;

3               c.      Infringing any of Ticketmaster's copyrights in the course
4   of any conduct engaged in for the commercial purpose of reselling event tickets
5   obtained from www.ticketmaster.com; and

6               d.      Conspiring with anyone else to engage in any of the
7   above activities.

8        2..     Ticketmaster shall bear the burden of proof and the burden of
9   production of evidence in any action asserting a violation of this injunction.  No
10  party hereto shall be found in violation of this injunction solely because such party
11  purchased tickets from, sold tickets to, or otherwise conducted business with a third
12  party who Ticketmaster alleges has or is engaged in the above proscribed activities.

13       3.      Ticketmaster shall provide Defendants with notice and an
14  opportunity to cure before filing any motion or commencing any proceeding to
15  enforce this injunction.  Specifically, if Ticketmaster believes that a violation of this
16  injunction is occurring, Ticketmaster shall notify Defendants in writing through
17  their counsel of record, John A. Case, Jr., and Defendants shall have five business
18  days thereafter to respond in writing.  If Defendants respond with a statement under
19  penalty of perjury that the alleged violation is inadvertent or was occurring without
20  their knowledge, Defendants shall have five business days thereafter to halt the
21  conduct in question.  Ticketmaster may not seek any prospective relief unless and
22  until that period has ended without a cessation of the alleged conduct.   If
23  Defendants do not respond with the above-referenced statement within the specified
24  period, Ticketmaster may seek any and all relief from the Court.  Nothing in this
25  Section precludes Ticketmaster from seeking relief for any alleged violation of this
26  injunction that preceded written notice from Ticketmaster to Defendants, but
27  Ticketmaster shall not commence any legal proceeding or seek any relief regarding

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41220624.1

3

223

1   any such alleged violations without first meeting and conferring with Defendants
2   and attempting in good faith to resolve such claim informally.

3        4.    Except as adjudicated herein, all claims asserted by
4   Ticketmaster against the above-described Defendants shall hereby be dismissed
5   with prejudice. Such dismissal pertains to this action only, and has no effect on any
6   related action against other parties pending in this Court.

7        5.    All other claims and all other parties, comprising the entire
8   action except as adjudicated herein, shall hereby be dismissed with prejudice. Such
9   dismissal pertains to this action only, and has no effect on any related action against
10  other parties pending in this Court.

11       6.    Ticketmaster and the above-described Defendants shall all pay
12  their own legal fees and costs incurred in connection with this action.

13       7.    This Stipulation reflects the settlement of claims that are denied
14  and contested. Each of the parties understands and agrees that by providing the
15  consideration and by executing and/or delivering this Stipulation, neither the
16  parties, nor any of them, intends to, nor shall any of them be deemed to, admit any
17  liability, obligation, misconduct or wrongdoing of any kind or nature whatsoever,
18  and each denies any liability, obligation, misconduct or wrongdoing of any kind or
19  nature whatsoever in connection with the Action, or otherwise. The settlement
20  between and among the parties is made entirely as a compromise for the purpose of
21  settlement of the dispute referred to herein, to avoid the annoyance and expense of

22  //
23  //
24  //
25  //
26  //
27  //

28

224

1   disputation or litigation and to compromise, settle and extinguish all claims, acts,

2   damages, demands, rights of action and causes of action between them.

3          8.    This Court shall retain continuing jurisdiction over Ticketmaster

4   and the above-described Defendants to enforce this stipulation and order.

5   Dated: April 15, 2008                    MANATT, PHELPS & PHILLIPS, LLP
                                             ROBERT H. PLATT
6                                            MARK S. LEE
                                             DONALD R. BROWN
7

8                                            By: s/ Robert H. Platt
                                                 Robert H. Platt
9                                                *Attorneys for Plaintiff*
                                                 TICKETMASTER L.L.C.
10

11  Dated: April 14, 2008              LAW OFFICES OF JOHN A. CASE, JR.

12

13                                           By: s/ John A. Case, Jr.
                                                 John A. Case, Jr.
14                                               Attorneys for Defendants

15

16

17

18                                 O R D E R

19          IT IS SO ORDERED.

20

21  Dated: April 30, 2008

22

23                                   _____
                                     United States District Judge
24

25

26

27

28

225

# EXHIBIT G

Case 2:13-cv-03035-ABC-JC   Document 4   Filed 04/30/13   Page 233 of 322   Page ID #:235

Case 2:07-cv-02533-ABC-JC   Document 53   Filed 04/02/12   Page 29 of 34   Page ID #:160
Case 2:07-cv-02533-ABC-JC   Document 52   Filed 08/13/08   Page 1 of 5   Page ID #:127

1   ROBERT H. PLATT (Bar No. CA 108533)
    rplatt@manatt.com
2   MARK S. LEE (Bar No. CA 094103)            JS-6
    mlee@manatt.com
3   DONALD R. BROWN (Bar No. CA 156548)
    dbrown@manatt.com
4   MANATT, PHELPS & PHILLIPS, LLP
    11355 West Olympic Boulevard
5   Los Angeles, CA  90064-1614
    Telephone:  (310) 312-4000
6   Facsimile:  (310) 312-4224

7   CARYN BROTTMAN SANDERS (Bar No. CA 175378)
    LAW OFFICES OF CARYN SANDERS
8   27240 Turnberry Lane, Suite 200
    Valencia, California 91355
9   (661) 362-0788
    Fax (661) 362-0789

10

11                  UNITED STATES DISTRICT COURT

12              FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

14   TICKETMASTER L.L.C., a Virginia       Case No. CV 07-2533 ABC (JCx)
     limited liability company,,
15                                          Hon. Audrey B. Collins
              Plaintiff,
16                                          STIPULATION AND ORDER RE:
         vs.                                PERMANENT INJUNCTION AND
17                                          DISMISSAL WITH PREJUDICE OF
     CRAIG RAKOWSKY dba ACE                 ALL UNADJUDICATED CLAIMS
18   TICKET SERVICE,                        AND PARTIES

19            Defendant.

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
  PHILLIPS, LLP        41301650.1                      STIPULATION & ORDER - PERMANENT
 ATTORNEYS AT LAW                                          INJUNCTION & DISMISSAL
  LOS ANGELES

226

**EXHIBIT**

E

Case 2:13-cv-03035-ABC-JC   Document 4   Filed 04/30/13   Page 234 of 322   Page ID #:236

Case 2:07-cv-02533-ABC-JC   Document 53   Filed 04/02/12   Page 30 of 34   Page ID #:161
Case 2:07-cv-02533-ABC-JC   Document 52   Filed 08/13/08   Page 2 of 5   Page ID #:128

1   WHEREAS, plaintiff Ticketmaster L.L.C. ("Ticketmaster") and
2 defendant Craig Rakowsky dba Ace Ticket Service ("Rakowsky") have entered into
3 a settlement agreement, including terms providing for the release of claims between
4 them.

5   WHEREAS, for settlement purposes only and without any admission
6 of liability, Rakowsky consented to allow the entry of a permanent injunction
7 against him pursuant to the terms of the settlement agreement.

8   NOW, THEREFORE, Ticketmaster and Rakowsky, through their
9 respective counsel, hereby stipulate to and respectfully request the Court to enter a
10 permanent injunction and dismiss all unadjudicated claims and parties with
11 prejudice, as follows:

12   1. Rakowsky and all those under his direction or control or acting
13 in concert with him, including without limitation officers, directors, shareholders,
14 employees, agents, successors and assigns of Rakowsky and Ace Ticket Service,
15 may be permanently enjoined from:

16   a. Creating or using computer programs or automated
17 devices to look for or purchase tickets from www.ticketmaster.com (the "Website)
18 faster than human beings can manually enter into the Website the information
19 needed to obtain information about or purchase tickets to an event from the
20 Website;

21   b. Creating or using computer programs or automated
22 devices to circumvent CAPTCHA or any successor software program integrated
23 into the Website's customer interface to distinguish computer programs or
24 automated devices from human customers;

25   c. Infringing any of Ticketmaster's copyrights in the course
26 of any conduct engaged in for the commercial purpose of reselling event tickets
27 obtained from www.ticketmaster.com;

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41301650.1    2   STIPULATION & ORDER - PERMANENT
        INJUNCTION & DISMISSAL

Case 2:13-cv-03035-ABC-JC   Document 4   Filed 04/30/13   Page 235 of 322   Page ID #:237

Case 2:07-cv-02533-ABC-JC   Document 53   Filed 04/02/12   Page 31 of 34   Page ID #:162
Case 2:07-cv-02533-ABC-JC   Document 52   Filed 08/13/08   Page 3 of 5   Page ID #:129

1              d.    Exceeding web page request limits or per-event ticket

2    limits that are disclosed or otherwise posted on www.ticketmaster.com; and

3              e.    Conspiring with anyone else to engage in any of the

4    above activities.

5              2.    No one subject to this injunction shall be found in violation of

6    the injunction solely because they purchased tickets from, sold tickets to, or

7    otherwise conducted business with a third party who Ticketmaster alleges has or is

8    engaged in the above proscribed activities.

9              3.    Ticketmaster shall provide Rakowsky with notice and an

10   opportunity to cure before filing any motion or commencing any proceeding to

11   enforce this injunction. Specifically, if Ticketmaster believes that a violation of this

12   injunction is occurring or has occurred, Ticketmaster shall notify Rakowsky in

13   writing through his counsel of record, Caryn Brottman Sanders, and Rakowsky

14   shall have five (5) business days thereafter to respond in writing. If Rakowsky

15   responds with a statement under penalty of perjury that the alleged violation was

16   occurring without his knowledge, Rakowsky shall have three (3) business days

17   thereafter to halt the conduct in question.   Ticketmaster may not seek any

18   prospective relief unless and until that period has ended without a cessation of the

19   alleged conduct.   If Rakowsky does not respond with the above-referenced

20   statement within the specified period, Ticketmaster may immediately seek any and

21   all relief it deems necessary from the Court. Nothing in this injunction precludes

22   Ticketmaster from seeking relief for any alleged violation of this injunction that

23   preceded written notice from Ticketmaster to Rakowsky, but Ticketmaster shall not

24   commence any legal proceeding or seek any relief regarding any such alleged

25   violations without first attempting in good faith to resolve such claim informally

26   with Rakowsky.

27             4.    Except as adjudicated herein, all claims asserted by either party

28   against the other shall hereby be dismissed with prejudice. Such dismissal pertains

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41301650.1                              3           STIPULATION & ORDER - PERMANENT
                                                        INJUNCTION & DISMISSAL

Case 2:13-cv-03035-ABC-JC   Document 4   Filed 04/30/13   Page 236 of 322   Page ID #:238

Case 2:07-cv-02533-ABC-JC   Document 53   Filed 04/02/12   Page 32 of 34   Page ID #:163
Case 2:07-cv-02533-ABC-JC   Document 52   Filed 08/13/08   Page 4 of 5   Page ID #:130

1    to this action only, and has no effect on any related action by Ticketmaster against
2    any other party pending in this Court or elsewhere.

3         5.    Ticketmaster and Rakowsky shall all pay their own legal fees
4    and costs incurred in connection with this action.

5         6.    This Stipulation reflects the settlement of claims that are denied
6    and contested. Each of the parties understands and agrees that by providing the
7    consideration and by executing and/or delivering this Stipulation, neither the
8    parties, nor any of them, intends to, nor shall any of them be deemed to, admit any
9    liability, obligation, misconduct or wrongdoing of any kind or nature whatsoever,
10   and each denies any liability, obligation, misconduct or wrongdoing of any kind or
11   nature whatsoever in connection with the Action, or otherwise.  The settlement
12   between and among the parties is made entirely as a compromise for the purpose of
13   settlement of the dispute referred to herein, to avoid the annoyance and expense of
14   disputation or litigation and to compromise, settle and extinguish all claims, acts,
15   damages, demands, rights of action and causes of action between them.

16   ///
17   ///
18
19
20
21
22
23
24
25
26
27
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41301650.1                                    4          STIPULATION & ORDER - PERMANENT
                                                         INJUNCTION & DISMISSAL

229

Case 2:13-cv-03035-ABC-JC  Document 4  Filed 04/30/13  Page 237 of 322  Page ID #:239

Case 2:07-cv-02533-ABC-JC  Document 53  Filed 04/02/12  Page 33 of 34  Page ID #:164
Case 2:07-cv-02533-ABC-JC  Document 52  Filed 08/13/08  Page 5 of 5  Page ID #:131

1    7.    This Court shall retain continuing jurisdiction over Ticketmaster

2  and Rakowsky to enforce this Stipulation and Order.

3

4  Dated: August 1, 2008                    MANATT, PHELPS & PHILLIPS, LLP

5

6                                           By: /s/ Robert H. Platt

7                                               Robert H. Platt
                                               Attorneys for Plaintiff
8                                              TICKETMASTER L.L.C.

9  Dated: July 25, 2008                    LAW OFFICES OF CARYN SANDERS

10

11                                          By: /s/ Caryn Sanders
                                               Caryn Brottman Sanders
12                                             Attorneys for Defendant
                                               CRAIG RAKOWSKY

13

14  SO ORDERED:

15     DATED this 13 day of August, 2008.

16

17

18                                          DISTRICT COURT JUDGE

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41301650.1                    5        STIPULATION & ORDER- PERMANENT
                                        INJUNCTION & DISMISSAL

230

# EXHIBIT H

1  ROBERT H. PLATT (Bar No. CA 108533)
   rplatt@manatt.com
2  MARK S. LEE (Bar No. CA 094103)
   mlee@manatt.com
3  DONALD R. BROWN (Bar No. CA 156548) **JS-6**
   dbrown@manatt.com
4  MANATT, PHELPS & PHILLIPS, LLP
   11355 West Olympic Boulevard
5  Los Angeles, CA 90064-1614
   Telephone: (310) 312-4000
6  Facsimile: (310) 312-4224

7  CARYN BROTTMAN SANDERS (Bar No. CA 175378)
   LAW OFFICES OF CARYN SANDERS
8  27240 Turnberry Lane, Suite 200
   Valencia, California 91355
9  (661) 362-0788
   Fax (661) 362-0789
10

11              UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

14  TICKETMASTER L.L.C., a Virginia         Case No. CV 07-2535 ABC (JCx)
    limited liability company,,
15                                          Hon. Audrey B. Collins
              Plaintiff,
16                                          **STIPULATION AND ORDER RE:**
       vs.                                  **PERMANENT INJUNCTION AND**
17                                          **DISMISSAL WITH PREJUDICE OF**
    THOMAS J. PRIOR, an individual, and     **ALL UNADJUDICATED CLAIMS**
18  USA ENTERTAINMENT, an                   **AND PARTIES**
    unknown business entity formerly sued
19  as DOE No. 1,

20            Defendants.

21

22

23

24

25

26                                          ┌─────────────────┐
                                            │    **EXHIBIT**    │
27                                          │                  │
                                            │       _H_        │
28                                          └─────────────────┘

MANATT, PHELPS &
PHILLIPS, LLP      41297741.2                    231
ATTORNEYS AT LAW
LOS ANGELES

        STIPULATION AND ORDER RE: PERMANENT INJUNCTION AND DISMISSAL

1    WHEREAS, plaintiff Ticketmaster L.L.C. ("Ticketmaster") and

2  defendant Thomas J. Prior d/b/a USA Entertainment ("Prior") have entered into a

3  settlement agreement, including terms providing for the release of claims between

4  them.

5    WHEREAS, for settlement purposes only and without any admission

6  of liability, Prior consented to allow the entry of a permanent injunction against him

7  pursuant to the terms of the settlement agreement.

8    NOW, THEREFORE, Ticketmaster and Prior, through their respective

9  counsel, hereby stipulate to and respectfully request the Court to enter a permanent

10  injunction and dismiss all unadjudicated claims and parties with prejudice, as

11  follows:

12    1.    Prior and all those under his direction or control or acting in

13  concert with him, including without limitation officers, directors, shareholders,

14  employees, agents, successors and assigns of Prior and USA Entertainment, may be

15  permanently enjoined from:

16    a.    Creating or using computer programs or automated

17  devices to look for or purchase tickets from www.ticketmaster.com (the "Website")

18  faster than human beings can manually enter into the Website the information

19  needed to obtain information about or purchase tickets to an event from the

20  Website;

21    b.    Creating or using computer programs or automated

22  devices to circumvent CAPTCHA or any successor software program integrated

23  into the Website's customer interface to distinguish computer programs or

24  automated devices from human customers;

25    c.    Infringing any of Ticketmaster's copyrights in the course

26  of any conduct engaged in for the commercial purpose of reselling event tickets

27  obtained from www.ticketmaster.com;

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41297741.2                              2    232

STIPULATION AND ORDER RE:  PERMANENT INJUNCTION AND DISMISSAL

1                    d.      Exceeding web page request limits or per-event ticket
2       limits that are disclosed or otherwise posted on www.ticketmaster.com; and

3                    e.      Conspiring with anyone else to engage in any of the
4       above activities.

5              2.      No one subject to this injunction shall be found in violation of
6       the injunction solely because they purchased tickets from, sold tickets to, or
7       otherwise conducted business with a third party who Ticketmaster alleges has or is
8       engaged in the above proscribed activities.

9              3.      Ticketmaster shall provide Prior with notice and an opportunity
10      to cure before filing any motion or commencing any proceeding to enforce this
11      injunction.  Specifically, if Ticketmaster believes that a violation of this injunction
12      is occurring or has occurred, Ticketmaster shall notify Prior in writing through his
13      counsel of record, Caryn Brottman Sanders, and Prior shall have five (5) business
14      days thereafter to respond in writing.  If Prior responds with a statement under
15      penalty of perjury that the alleged violation was occurring without his knowledge,
16      Prior shall have three (3) business days thereafter to halt the conduct in question.
17      Ticketmaster may not seek any prospective relief unless and until that period has
18      ended without a cessation of the alleged conduct.  If Prior does not respond with the
19      above-referenced statement within the specified period, Ticketmaster may
20      immediately seek any and all relief it deems necessary from the Court.  Nothing in
21      this injunction precludes Ticketmaster from seeking relief for any alleged violation
22      of this injunction that preceded written notice from Ticketmaster to Prior, but
23      Ticketmaster shall not commence any legal proceeding or seek any relief regarding
24      any such alleged violations without first attempting in good faith to resolve such
25      claim informally with Prior.

26             4.      Except as adjudicated herein, all claims asserted by either party
27      against the other shall hereby be dismissed with prejudice.  Such dismissal pertains

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41297741.2                                    3     233

STIPULATION AND ORDER RE:  PERMANENT INJUNCTION AND DISMISSAL

1   to this action only, and has no effect on any related action by Ticketmaster against

2   any other party pending in this Court or elsewhere.

3        5.    Ticketmaster and Prior shall all pay their own legal fees and

4   costs incurred in connection with this action.

5        6.    This Stipulation reflects the settlement of claims that are denied

6   and contested. Each of the parties understands and agrees that by providing the

7   consideration and by executing and/or delivering this Stipulation, neither the

8   parties, nor any of them, intends to, nor shall any of them be deemed to, admit any

9   liability, obligation, misconduct or wrongdoing of any kind or nature whatsoever,

10   and each denies any liability, obligation, misconduct or wrongdoing of any kind or

11   nature whatsoever in connection with the Action, or otherwise.   The settlement

12   between and among the parties is made entirely as a compromise for the purpose of

13   settlement of the dispute referred to herein, to avoid the annoyance and expense of

14   disputation or litigation and to compromise, settle and extinguish all claims, acts,

15   damages, demands, rights of action and causes of action between them.

16   / / /

17   / / /

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41297741.2

4   234

**STIPULATION AND ORDER RE: PERMANENT INJUNCTION AND DISMISSAL**

1        7.    This Court shall retain continuing jurisdiction over Ticketmaster

2  and Prior to enforce this Stipulation and Order.

3

4  Dated:  August 1, 2008               MANATT, PHELPS & PHILLIPS, LLP

5

6                         By:  /s/ Robert H. Platt

7                             Robert H. Platt
*Attorneys for Plaintiff*

8                             TICKETMASTER L.L.C.

9  Dated:  July 25, 2008             **LAW OFFICES OF CARYN SANDERS**

10

11                      By:  /s/ Caryn Sanders
                           Caryn Brottman Sanders
*Attorneys for Defendant*

12                           THOMAS J. PRIOR

13

14  SO ORDERED:

15      DATED this 5th day of August, 2008.

16

17

18                       DISTRICT COURT JUDGE

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41297741.2                         5  235

**STIPULATION AND ORDER RE:  PERMANENT INJUNCTION AND DISMISSAL**

# EXHIBIT I

1   MANATT, PHELPS & PHILLIPS, LLP
    ROBERT H. PLATT (Bar No. CA 108533)
2       rplatt@manatt.com
    MARK S. LEE (Bar No. CA 094103)
3       mlee@manatt.com
    DONALD R. BROWN (Bar No. CA 156548)
4       dbrown@manatt.com
    RAAQIM A. S. KNIGHT (Bar No. CA 217630)
5       rknight@manatt.com
    11355 West Olympic Boulevard
6   Los Angeles, CA 90064-1614
    Telephone: (310) 312-4000
7   Facsimile: (310) 312-4224

8   Attorneys for *Plaintiff and Counter-Defendant*
    TICKETMASTER L.L.C. and *Counter-Defendant*
9   IAC/INTERACTIVECORP

**JS-6**

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13

14   TICKETMASTER L.L.C., a Virginia        No. CV 07-2534 ABC (JCx)
     limited liability company,
15                                          Hon. Audrey B. Collins
              Plaintiff,
16                                          **DEFAULT JUDGMENT AND**
         vs.                                **PERMANENT INJUNCTION**
17
     RMG TECHNOLOGIES, INC., a
18   Delaware corporation, and DOES 1
     through 10, inclusive,
19
              Defendants.
20
     RMG TECHNOLOGIES, INC., a
21   Delaware corporation,

22            Counterclaim-Plaintiff,

23       vs.

24   TICKETMASTER L.L.C., a Virginia
     limited liability company,
25   IAC/INTERACTIVE CORP., a
     Delaware corporation, and ROES 1
26   through 10, inclusive,

27            Counterclaim-Defendants.

28

EXHIBIT

I

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41284141.3

236

[PROPOSED] DEFAULT JUDGMENT AND
PERMANENT INJUNCTION

1          The Court having previously entered a default, having considered the

2    Application by Ticketmaster L.L.C. ("Ticketmaster") and IAC/InterActiveCorp

3    ("IAC") for Entry of Default Judgment and Permanent Injunction against RMG

4    Technologies, Inc. ("RMG"), and being fully advised in the premises, a judgment

5    and permanent injunction is entered as follows:

6    **I.    JUDGMENT.**

7          1.    Ticketmaster's application for a default judgment and permanent

8    injunction is granted.

9          2.    Default judgment is hereby entered against RMG and in favor of

10    Ticketmaster on all claims in Ticketmaster's First Amended Complaint, and against

11    RMG and in favor of Ticketmaster and IAC on all counterclaims in RMG's Second

12    Amended Counterclaims.

13          3.    RMG's Second Amended Counterclaims are dismissed with prejudice.

14          4.    Judgment is hereby entered in favor of Ticketmaster in the amount of

15    $18,237,200.00, pursuant to 17 U.S.C. Section 504 as disgorgement of the profits

16    that RMG has wrongfully earned through infringement of Ticketmaster's

17    copyrights, and based on Ticketmaster's claims for relief for inducement to breach

18    contract and intentional interference with contractual relations.

19    **II.    PERMANENT INJUNCTION.**

20          5.    RMG and its officers, directors, principals, agents, representatives,

21    shareholders, partners, employees, successors, assigns, licensees, contractual

22    privies, and all others acting in active concert or participation with them or

23    otherwise acting on RMG's behalf, are hereby PERMANENTLY ENJOINED

24    from:

25          (a) creating, trafficking in, facilitating the use of or using computer

26    programs or other automated devices to circumvent the technological copy

27    protection systems in Ticketmaster's website, http://www.ticketmaster.com;

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41284141.3

2

237

[PROPOSED] DEFAULT JUDGMENT AND
PERMANENT INJUNCTION

1      (b) using information gained from access of Ticketmaster's website to

2  create computer programs to circumvent Ticketmaster's copy protection and

3  website regulation systems;

4      (c) copying or facilitating the copying of Ticketmaster's website or

5  any portion thereof in excess of any license Ticketmaster has granted by its

6  website's Terms of Use;

7      (d) otherwise accessing and using Ticketmaster's website in excess of

8  the license granted by the Terms of Use posted thereon; and

9      (e) breaching or facilitating the breach by others of the Terms of Use

10  posted on Ticketmaster's website, as they may be amended from time to time;

11  **III.  IMPOUNDMENT AND DESTRUCTION.**

12      6.  Within seven (7) calendar days after the date that this Injunction is

13  entered as an order of the Court, RMG shall cause to have sent to each of its

14  business partners, affiliates, parents, subsidiaries, officers, directors, employees,

15  servants, representatives, agents, and attorneys a copy of the permanent injunction

16  included in this judgment;

17      7.  RMG's violation of the permanent injunction included in this

18  judgment shall constitute contempt of court, and Ticketmaster shall recover all

19  reasonable costs and attorneys' fees expended in bringing a contempt motion.

20  **IV.  FEES, COSTS, AND RETENTION OF JURISDICTION.**

21      8.  Ticketmaster is hereby awarded its reasonable attorneys' fees in the

22  amount of $368,344.00, pursuant to 17 U.S.C. Sections 505 and 1203 based on its

23  claims for relief for copyright infringement and violation of the Digital Millennium

24  Copyright Act; California Penal Code Section 502(e) based on its claim for relief

25  for violation of the California Penal Code § 502; and 18 U.S.C. Section 1964 based

26  on its claims for relief for violation of RICO, 18 U.S.C. §§ 1962(c) and 1962(d);

27      9.  Ticketmaster is awarded its costs of suit in an amount to be determined

28  by the Clerk of the Court;

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41284141.3

238

3

[PROPOSED] DEFAULT JUDGMENT AND
PERMANENT INJUNCTION

1      10.    The Court shall retain jurisdiction to enforce the permanent injunction

2    included in this judgment, as well as to consider any post trial motions to increase

3    damages or award attorney's fees.

4

5    Dated:  June 19, 2008

6

7

8    _____
                             The Honorable Audrey B. Collins
                             United States District Judge

9

10

11    Submitted By:

12

13     /s/ Donald R. Brown
    DONALD R. BROWN
    MANATT, PHELPS & PHILLIPS, LLP

14    11355 West Olympic Boulevard
    Los Angeles, CA  90064-1614

15    Attorneys for *Plaintiff and Counter-Defendant*
    TICKETMASTER L.L.C. and *Counter-Defendant*

16    IAC/INTERACTIVECORP

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41284141.3                    4          [PROPOSED] DEFAULT JUDGMENT AND
                                        PERMANENT INJUNCTION

239

# EXHIBIT J

Westlaw.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
**(Cite as: 507 F.Supp.2d 1096)**

▷

United States District Court,
C.D. California,
Western Division.
TICKETMASTER L.L.C., a Virginia limited liability
company, Plaintiff,
v.
RMG TECHNOLOGIES, INC., a Delaware corpora-
tion, and Does 1 through 10, inclusive, Defendants.

No. CV 07–2534 ABC (JWJx).
Oct. 15, 2007.

**Background:** Copyright owner brought action alleg-
ing that competitor developed and marketed auto-
mated devices to access and navigate through its
Internet ticketing website, thereby infringing its
copyrights and violating website's terms of use and a
number of federal and state statutes. Owner brought
motion for preliminary injunction.

**Holdings:** The District Court, Audrey B. Collins, J.,
held that:
(1) owner demonstrated by preponderance of evi-
dence that competitor viewed its website, thereby
copying its webpages;
(2) owner demonstrated that it was highly likely that
competitor directly infringed its copyrights by ac-
cessing and using website in excess of authorization
granted in website's terms of use;
(3) owner demonstrated that it was highly likely that
it could show that competitor received notice of
terms of use;
(4) owner granted nonexclusive license to consumers
to copy pages from website in compliance with terms
of use;
(5) terms of use of website were not too uncertain or
vague to be enforced;
(6) owner demonstrated that it was highly likely that
competitor's use or design of computer software ap-
plications that accessed owner's website were auto-
mated devices;
(7) owner demonstrated that it was highly likely that
competitor's use or design of computer software ap-
plications that accessed owner's website violated pro-
vision in terms of use which limited frequency of

requests to no more than one every three seconds;
and
(8) competitor's use of automatically-made cache
copies of owner's webpages was not fair use.

Motion granted.

West Headnotes

**[1] Injunction 212 ⟲1565**

212 Injunction
   212V Actions and Proceedings
      212V(E) Evidence
         212k1564 Admissibility
           212k1565 k. In general. Most Cited
Cases
   (Formerly 212k147)

   In the preliminary injunction context, a court is
not strictly bound by all rules of evidence.

**[2] Injunction 212 ⟲1092**

212 Injunction
   212II Preliminary, Temporary, and Interlocutory
Injunctions in General
      212II(B) Factors Considered in General
         212k1092 k. Grounds in general; multiple
factors. Most Cited Cases
   (Formerly 212k138.21)

   To obtain a preliminary injunction, a plaintiff
must show either: (1) a likelihood of success on the
merits and the possibility of irreparable injury; or (2)
that serious questions going to the merits were raised
and the balance of hardships tips sharply in its favor.

**[3] Injunction 212 ⟲1093**

212 Injunction
   212II Preliminary, Temporary, and Interlocutory
Injunctions in General
      212II(B) Factors Considered in General
         212k1093 k. Balancing or weighing fac-
tors; sliding scale. Most Cited Cases

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



EXHIBIT
J

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
**(Cite as: 507 F.Supp.2d 1096)**

(Formerly 212k138.21)

Preliminary injunction test's two alternative formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases; they are not separate tests but, rather, outer reaches of a single continuum.

**[4] Injunction 212 ☜1100**

212 Injunction
    212II Preliminary, Temporary, and Interlocutory Injunctions in General
        212II(B) Factors Considered in General
            212k1100 k. Public interest considerations.
Most Cited Cases
    (Formerly 212k138.12)

On a motion for a preliminary injunction, a district court must consider whether the public interest favors issuance of the injunction.

**[5] Injunction 212 ☜1075**

212 Injunction
    212II Preliminary, Temporary, and Interlocutory Injunctions in General
        212II(A) Nature, Form, and Scope of Remedy
            212k1075 k. Extraordinary or unusual nature of remedy. Most Cited Cases
    (Formerly 212k132)

**Injunction 212 ☜1095**

212 Injunction
    212II Preliminary, Temporary, and Interlocutory Injunctions in General
        212II(B) Factors Considered in General
            212k1094 Entitlement to Relief
                212k1095 k. In general. Most Cited Cases
    (Formerly 212k132)

A preliminary injunction is an extraordinary remedy for which the need must be clear and unequivocal.

**[6] Copyrights and Intellectual Property 99 ☜51**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)1 What Constitutes Infringement
                99k51 k. Nature and elements of injury.
Most Cited Cases

To prevail on a claim for copyright infringement, a plaintiff must (1) show ownership of the allegedly infringed material and (2) it must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders. 17 U.S.C.A. § 106.

**[7] Copyrights and Intellectual Property 99 ☜10.4**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(A) Nature and Subject Matter
            99k3 Subjects of Copyright
                99k10.4 k. Other works. Most Cited Cases

An Internet website may constitute a work of authorship fixed in a tangible medium of expression; copyright protection for a website may extend to both the screen displays and the computer code for the website.

**[8] Copyrights and Intellectual Property 99 ☜67.3**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)1 What Constitutes Infringement
                99k67.3 k. Other works. Most Cited Cases

The copies of Internet webpages stored automatically in a computer's cache or random access memory (RAM) upon a viewing of the webpage fall within the Copyright Act's definition of "copy." 17 U.S.C.A. § 101 et seq.

**[9] Copyrights and Intellectual Property 99 ☜85**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
**(Cite as: 507 F.Supp.2d 1096)**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
         99I(J)2 Remedies
            99k72 Actions for Infringement
               99k85 k. Preliminary injunction.
Most Cited Cases

Copyright owner demonstrated by preponderance of evidence on its motion for preliminary injunction in lawsuit alleging infringement, without direct evidence, that competitor viewed its Internet website, thereby copying its webpages, where owner presented expert testimony that competitor necessarily had to view website in order to create applications which enabled competitor's customers to enter and navigate through website. 17 U.S.C.A. § 101 et seq.

**[10] Copyrights and Intellectual Property 99**
   **85**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
         99I(J)2 Remedies
            99k72 Actions for Infringement
               99k85 k. Preliminary injunction.
Most Cited Cases

Copyright owner demonstrated on its motion for preliminary injunction that it was highly likely to succeed on its infringement claim alleging that competitor directly infringed its copyrights by accessing and using copyrighted Internet website in excess of authorization granted in website's terms of use, which created non-exclusive license to view, and thus copy, pages from website, where competitor used automated devices, made excessive requests, and interfered with proper working of website by using or designing applications that accessed website. 17 U.S.C.A. § 101 et seq.

**[11] Copyrights and Intellectual Property 99**
   **85**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
         99I(J)2 Remedies
            99k72 Actions for Infringement

               99k85 k. Preliminary injunction.
Most Cited Cases

Copyright owner demonstrated on its motion for preliminary injunction that it was highly likely that it would show on its infringement claim that competitor received notice of terms of use which created non-exclusive license to copy website, and assented to them, by actually using Internet website, where owner presented evidence showing that access to website was governed by specific terms of use, any person viewing website was put on notice of terms of use, and competitor had to have viewed and navigated through website due to its use or design of applications that accessed website. 17 U.S.C.A. § 101 et seq.

**[12] Copyrights and Intellectual Property 99**
   **48**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(E) Transfer
         99k48 k. Licenses in general. Most Cited Cases

No magic words must be included in a document to create a copyright license. 17 U.S.C.A. § 101 et seq.

**[13] Copyrights and Intellectual Property 99**
   **48**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(E) Transfer
         99k48 k. Licenses in general. Most Cited Cases

Nonexclusive copyright licenses can be implied from conduct. 17 U.S.C.A. § 101 et seq.

**[14] Copyrights and Intellectual Property 99**
   **48**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(E) Transfer
         99k48 k. Licenses in general. Most Cited Cases

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
**(Cite as: 507 F.Supp.2d 1096)**

Copyright owner granted nonexclusive license to consumers to copy pages from Internet website in compliance with terms of use where viewers were authorized to view, and thereby copy, pages of website when they did so in accordance with terms of use and owner reserved right to terminate any person's access to website if it believed that person violated terms of use. 17 U.S.C.A. § 101 et seq.

**[15] Copyrights and Intellectual Property 99**
⇒67.3

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)1 What Constitutes Infringement
                99k67.3 k. Other works. Most Cited Cases

Terms of use of Internet website which required viewers to agree to "not use any robot, spider or other automated device, process, or means to access the Site" were not too uncertain or vague to be enforced on claim of infringement under Copyright Act; although terms did not include additional definition of "automated device," they identified robots and spiders as examples of such devices, which were programs that ran by their very nature without interfacing with humans. 17 U.S.C.A. § 101 et seq.

**[16] Copyrights and Intellectual Property 99**
⇒85

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k85 k. Preliminary injunction. Most Cited Cases

Copyright owner demonstrated on its motion for preliminary injunction that it was highly likely to succeed on its infringement claim alleging that competitor's use or design of computer software applications which accessed owner's Internet ticketing website were automated devices, prohibited by website's terms of use, where competitor's software included "workers" that could automatically navigate website,

search for tickets according to set parameters, and provide alert when tickets matching those parameters were found. 17 U.S.C.A. § 101 et seq.

**[17] Copyrights and Intellectual Property 99**
⇒85

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k85 k. Preliminary injunction. Most Cited Cases

Copyright owner demonstrated on its motion for preliminary injunction that it was highly likely to succeed on its infringement claim alleging that competitor's use or design of computer software applications which accessed owner's Internet ticketing website violated provision in terms of use which limited frequency of requests to no more than one every three seconds, where competitor's applications enabled person to make several requests per second. 17 U.S.C.A. § 101 et seq.

**[18] Copyrights and Intellectual Property 99**
⇒85

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k85 k. Preliminary injunction. Most Cited Cases

Copyright owner demonstrated on its motion for preliminary injunction that it was highly likely to succeed on its infringement claim alleging that competitor's software application violated terms of use which prohibited users from using "any device, software or routine that interferes with the proper working of the Site nor shall you attempt to interfere with the proper working of the Site," where competitor stated that its "stealth technology lets you hide your IP address, so you never get blocked by [the owner]." 17 U.S.C.A. § 101 et seq.

**[19] Copyrights and Intellectual Property 99**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
(Cite as: 507 F.Supp.2d 1096)

67.3

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)1 What Constitutes Infringement
                99k67.3 k. Other works. Most Cited
Cases

    Competitor in infringement action did not carry its burden of proving fair use of automatically-made cache copies of copyright owner's Internet webpages, where competitor did not come forward with evidence of fair use and competitor did not attempt to explain how its use satisfied any of four statutory fair use factors. 17 U.S.C.A. § 107.

[20] Copyrights and Intellectual Property 99
85

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k85 k. Preliminary injunction.
Most Cited Cases

    Because the defendant in an infringement action has the burden of proving fair use, the defendant is responsible for introducing evidence of fair use in responding to a motion for a preliminary injunction. 17 U.S.C.A. § 107.

[21] Copyrights and Intellectual Property 99
67.3

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)1 What Constitutes Infringement
                99k67.3 k. Other works. Most Cited
Cases

    Competitor's use of automatically-made cache copies of copyright owner's Internet ticketing webpages was not fair use, where purpose of competitor's viewing of website, that necessarily occurred, was to engage in conduct that violated terms of use, competitor's use of website was to create and sell ticket purchasing applications that could gain unauthorized access to website in furtherance of competitor's own commercial objectives, and such copying had significant, as opposed to minimal, effect on owner's rights because competitor's conduct also empowered its customers to violate terms of use, infringe on owner's rights, and collectively cause owner harm. 17 U.S.C.A. § 107.

[22] Copyrights and Intellectual Property 99
85

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k85 k. Preliminary injunction.
Most Cited Cases

    Copyright owner demonstrated on its motion for preliminary injunction that it was highly likely to succeed on its contributory infringement claim alleging that competitor induced or encouraged its clients' direct infringement by providing them with devices that enabled them to access, and use, owner's Internet website without authorization. 17 U.S.C.A. § 101 et seq.

[23] Copyrights and Intellectual Property 99
77

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k77 k. Persons liable. Most Cited
Cases

    One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it; although the Copyright Act does not expressly render anyone liable for infringement committed by another, these doctrines of secondary liability emerged from common law principles and are well established in the law. 17 U.S.C.A. § 101 et seq.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
(Cite as: 507 F.Supp.2d 1096)

**[24]  Copyrights  and  Intellectual  Property  99**
🔑**77**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
        99I(J)2 Remedies
          99k72 Actions for Infringement
            99k77 k. Persons liable. Most Cited
Cases

Designing and marketing a device whose purpose is to allow unauthorized access to, and thus to infringe on, a copyrighted website is sufficient to trigger contributory liability for infringement committed by the device's immediate users. 17 U.S.C.A. § 101 et seq.

**[25]  Copyrights  and  Intellectual  Property  99**
🔑**85**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
        99I(J)2 Remedies
          99k72 Actions for Infringement
            99k85 k. Preliminary injunction.
Most Cited Cases

Copyright owner demonstrated on its motion for preliminary injunction that it was highly likely to succeed on its claim under Digital Millennium Copyright Act (DMCA) provision which prohibited trafficking in devices designed to circumvent technological measures that effectively control access to a work, where owner demonstrated ownership to copyrights to Internet website and specific portions thereof, owner employed technological measures to block automated access to its copyrighted ticket purchase pages, competitor's customers were third parties who could access those copyrighted pages, those parties accessed those pages without owner's authorization, such access entailed copying pages in excess of third parties' license to do so, and those third parties had such access because of competitor's products which were designed primarily for circumvention and marketed for use in circumvention of controlling technological measure. 17 U.S.C.A. § 1201.

**[26]  Copyrights  and  Intellectual  Property  99**

🔑**67.3**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
        99I(J)1 What Constitutes Infringement
          99k67.3 k. Other works. Most Cited
Cases

A plaintiff alleging a violation of the Digital Millennium Copyright Act (DMCA) provision prohibiting trafficking in devices designed to circumvent technological measures that effectively control access to a work must prove: (1) ownership of a valid copyright on a work, (2) effectively controlled by a technological measure, which has been circumvented, (3) that third parties can now access (4) without authorization, in a manner that (5) infringes or facilitates infringing a right protected by the Copyright Act, because of a product that (6) the defendant either designed or produced primarily for circumvention, made available despite only limited commercial significance other than circumvention, or marketed for use in circumvention of the controlling technological measure. 17 U.S.C.A. § 1201(a)(2).

**[27]  Copyrights  and  Intellectual  Property  99**
🔑**67.3**

99 Copyrights and Intellectual Property
   99I Copyrights
      99I(J) Infringement
        99I(J)1 What Constitutes Infringement
          99k67.3 k. Other works. Most Cited
Cases

Computer security program that presented box with stylized random characters partially obscured behind hash marks when user made ticket request on Internet website and required user to type characters into entry on screen in order to proceed with request was technological measure that effectively controlled access to a work protected by Digital Millennium Copyright Act (DMCA), since program was designed to distinguish between human users and computer programs, and thereby prevent purchasers from using automated devices to purchase tickets, and most automated devices could not decipher and type random characters and thus could not proceed to copyrighted ticket purchase pages. 17 U.S.C.A. § 1201(a)(2).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
**(Cite as: 507 F.Supp.2d 1096)**

**[28] Copyrights and Intellectual Property 99**
🔑**67.3**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)1 What Constitutes Infringement
                99k67.3 k. Other works. Most Cited
Cases

Computer security program that presented box with stylized random characters partially obscured behind hash marks when user made ticket request on Internet website and required user to type characters into entry on screen in order to proceed with request regulated access to copyrighted work protected by Digital Millennium Copyright Act (DMCA), since user could not proceed to copyright protected webpages without solving question presented and program prevented users from copying ticket purchase webpage pages by preventing automated access. 17 U.S.C.A. § 1201(b)(1).

**[29] Copyrights and Intellectual Property 99**
🔑**109**

99 Copyrights and Intellectual Property
    99II Intellectual Property
        99k109 k. Remedies. Most Cited Cases

Copyright owner demonstrated on its motion for preliminary injunction that it was highly likely to succeed on its claim under California law that competitor breached terms for using Internet website, on evidence that use of website was governed by terms of use, competitor was on notice of, and assented to, terms of use, and competitor violated terms of use by using automated devices to access website, used application that made several requests per second in violation of provision limiting frequency of requests to no more than one every three seconds, and used application designed to thwart owner's access controls in breach of user's agreement to "not use any device, software or routine that interferes with the proper working of the Site nor shall you attempt to interfere with the proper working of the Site."

**[30] Telecommunications 372** 🔑**1342**

372 Telecommunications
    372VIII Computer Communications
        372k1339 Civil Liabilities; Illegal or Improper Purposes
        372k1342 k. Fraud; unauthorized access or transmission. Most Cited Cases

Under Computer Fraud and Abuse Act (CFAA), required $5,000 of harm could consist of harm to computer system, and did not have to be suffered by just one computer during one particular intrusion. 18 U.S.C.A. § 1030(a, g).

**[31] Copyrights and Intellectual Property 99**
🔑**85**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k85 k. Preliminary injunction.
Most Cited Cases

Court could presume irreparable harm on copyright owner's motion for preliminary injunction on claim of infringement under Copyright Act against competitor, where owner demonstrated strong likelihood of success on merits of its copyright claim and competitor did not do anything to rebut that presumption. 17 U.S.C.A. § 101 et seq.

**[32] Copyrights and Intellectual Property 99**
🔑**85**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k85 k. Preliminary injunction.
Most Cited Cases

On a motion for a preliminary injunction, a showing of a reasonable likelihood of success on the merits of a copyright claim raises a presumption of irreparable harm; therefore, a copyright holder seeking a preliminary injunction is not required to make an independent demonstration of irreparable harm. 17 U.S.C.A. § 101 et seq.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
**(Cite as: 507 F.Supp.2d 1096)**

**[33] Copyrights and Intellectual Property 99**
🔑85

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k85 k. Preliminary injunction.
Most Cited Cases

Owner of Internet ticketing website demonstrated possibility of irreparable harm by competitor's devices which enabled third parties to make automated purchases, as required to support issuance of preliminary injunction on its Digital Millennium Copyright Act (DMCA) and breach of contract claims, where there was growing public perception among buying public that owner did not provide public with fair opportunity to buy tickets, unavailability was due to hundreds of thousands of automated ticket requests wrongfully made of owner's website, and owner had attempted, with only limited success, to use technological countermeasures to prevent automated ticket requests. 17 U.S.C.A. § 1201.

**[34] Copyrights and Intellectual Property 99**
🔑85

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k85 k. Preliminary injunction.
Most Cited Cases

Evidence of growing public perception among buying public that owner of Internet ticketing website did not provide public with fair opportunity to buy tickets was properly before court as non-hearsay evidence of irreparable harm caused by competitor's devices which enabled third parties to make hundreds of thousands of automated ticket requests, as required to support issuance of preliminary injunction on Digital Millennium Copyright Act (DMCA) and breach of contract claims. 17 U.S.C.A. § 1201.

**[35] Injunction 212 🔑1566**

212 Injunction
    212V Actions and Proceedings
        212V(E) Evidence
            212k1564 Admissibility
                212k1566 k. Hearsay. Most Cited Cases
(Formerly 212k147)

Court had wide latitude to consider newspaper articles offered for hearsay purpose in preliminary injunction context.

**[36] Injunction 212 🔑1106**

212 Injunction
    212II Preliminary, Temporary, and Interlocutory Injunctions in General
        212II(B) Factors Considered in General
            212k1101 Injury, Hardship, Harm, or Effect
                212k1106 k. Irreparable injury. Most Cited Cases
(Formerly 212k138.6)

Intangible injuries, such as damage to goodwill, can constitute irreparable harm, for the purpose of a motion for a preliminary injunction.

**[37] Copyrights and Intellectual Property 99**
🔑85

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k85 k. Preliminary injunction.
Most Cited Cases

In the copyright infringement context, once a plaintiff has established a strong likelihood of success on the merits, any harm to the defendant that results from being preliminarily enjoined from continuing to infringe is legally irrelevant. 17 U.S.C.A. § 101 et seq.

**[38] Copyrights and Intellectual Property 99**
🔑85

99 Copyrights and Intellectual Property

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
**(Cite as: 507 F.Supp.2d 1096)**

<u>99</u>I Copyrights
    <u>99</u>I(J) Infringement
        <u>99</u>I(J)2 Remedies
           <u>99</u>k72 Actions for Infringement
                <u>99</u>k85 k. Preliminary injunction.
Most Cited Cases

Possibility that competitor possibly would lose all of its profits from sale of applications that infringed copyrights did not tip hardships in competitor's favor, on owner's motion for preliminary injunction, where owner persuasively demonstrated likelihood of success on merits of several of its claims. <u>17 U.S.C.A. § 101 et seq.</u>

**[39] Copyrights and Intellectual Property 99** ☜**85**

<u>99</u> Copyrights and Intellectual Property
    <u>99</u>I Copyrights
        <u>99</u>I(J) Infringement
           <u>99</u>I(J)2 Remedies
               <u>99</u>k72 Actions for Infringement
                  <u>99</u>k85 k. Preliminary injunction.
Most Cited Cases

Public interest favored issuance of preliminary injunction in lawsuit under Copyright Act against competitor who enabled third parties to make hundreds of thousands of automated ticket requests from Internet ticketing website, where competitor's conduct not only harmed website owner, but also harmed public because it denied opportunity to consumers to purchase tickets to events at face price; thus, insofar as competitor's misconduct allowed its ticket broker clients to unfairly purchase numerous tickets for resale resulting in immediately sold-out events, ordinary consumers either had to forego event or pay ticket brokers inflated prices for resold tickets. <u>17 U.S.C.A. § 101 et seq.</u>

**[40] Injunction 212** ☜**1653**

<u>212</u> Injunction
    <u>212</u>VI Bonds and Other Security
        <u>212</u>VI(A) Requirement in General
           <u>212</u>k1653 k. Necessity and waiver in general. <u>Most Cited Cases</u>
      (Formerly 212k148(2))

**Injunction 212** ☜**1656**

<u>212</u> Injunction
    <u>212</u>VI Bonds and Other Security
        <u>212</u>VI(A) Requirement in General
           <u>212</u>k1656 k. Grounds and considerations in general. <u>Most Cited Cases</u>
      (Formerly 212k148(1))

**Injunction 212** ☜**1658**

<u>212</u> Injunction
    <u>212</u>VI Bonds and Other Security
        <u>212</u>VI(A) Requirement in General
           <u>212</u>k1658 k. Amount. <u>Most Cited Cases</u>
      (Formerly 212k148(2))

On a motion for a preliminary injunction, a bond may not be required, or may be minimal, when the harm to the enjoined party is slight or where the movant has demonstrated a likelihood of success. <u>Fed.Rules Civ.Proc.Rule 65(c), 28 U.S.C.A.</u>

**[41] Injunction 212** ☜**1656**

<u>212</u> Injunction
    <u>212</u>VI Bonds and Other Security
        <u>212</u>VI(A) Requirement in General
           <u>212</u>k1656 k. Grounds and considerations in general. <u>Most Cited Cases</u>
      (Formerly 212k148(1))

A court retains discretion to require a bond when the party seeking a preliminary injunction has not offered evidence of its own harm in posting a bond. <u>Fed.Rules Civ.Proc.Rule 65(c), 28 U.S.C.A.</u>

**\*1102 ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**
AUDREY B. COLLINS, District Judge.

Pending before the Court is Plaintiff Ticketmaster LLC's Motion for Preliminary Injunction ("Motion"), filed on August 27, 2007. Defendant RMG Technologies, Inc. ("Defendant" or "RMG") opposed on September 17, 2007, and Plaintiff replied on September 24, 2007. On October 5, 2007, Plaintiff submitted a Court-ordered supplemental declaration of Kevin McLain, and Defendant submitted a supplemental declaration of Cipriano Garibay on October 9, 2007. The hearing on this matter was held on October

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
(Cite as: 507 F.Supp.2d 1096)

15, 2007. Upon consideration of the parties' submissions, arguments of counsel, and the case file, the Court hereby GRANTS the Motion.

## I. FACTUAL AND PROCEDURAL BACK-GROUND

In this action, Plaintiff Ticketmaster ("Plaintiff" or "Ticketmaster") alleges that Defendant RMG has developed and marketed automated devices to access and navigate through Ticketmaster's website, thereby infringing Plaintiff's copyrights and violating the website's Terms of Use and a number of federal and state statutes.

Plaintiff Ticketmaster sells tickets for entertainment and sports events on behalf of its clients to the general public through a variety of means, including its copyrighted website ticketmaster.com ("website"). (First Amended Complaint ("FAC") ¶ 3.) Recognizing that competition to purchase tickets can be intense, Plaintiff contends that it attempts to ensure a fair and equitable ticket buying process on the website by contract and through technological means. (*Id.*) First, visitors to ticketmaster.com are required to accept contractual provisions set forth in the website's "Terms of Use." (FAC ¶¶ 16–20.) These terms permit viewers to use ticketmaster.com for personal use only, prohibit commercial use, prohibit the use of automatic devices, prohibit users from accessing ticketing pages more than once during any three second interval, and prohibit consumers from purchasing more than a specific number of tickets in a single transaction. (FAC ¶¶ 21–26; Pl.'s Exhs. 8, 9.)

Second, Plaintiff contends that it employs a number of technological means to ensure that ticket buying over the website is fair and equitable. One of these measures is a computer security program known as CAPTCHA that is designed to distinguish between human users and computer programs, and thereby prevent purchasers from using automated devices to purchase tickets. (FAC ¶ 14.)

Plaintiff contends that Defendant RMG has marketed and sold applications that enable Defendant's customers to use automated devices to enter and navigate through its website in violation of the Terms of Use governing the website, thereby causing injury to Plaintiff. (FAC ¶¶ 3–5, 17–27.) For example, Plaintiff contends that Defendant's applications are prohibited "automatic devices," that the applications

circumvent Plaintiff's access control and copy protection systems, including CAPTCHA, inundate Plaintiff's **\*1103** computers with thousands of automatic requests thereby preventing ordinary consumers from accessing the website, and enable Defendant's clients to purchase large quantities of tickets. (FAC ¶¶ 28–30, 34.) Based on these allegations, Plaintiff's FAC, filed on June 25, 2007, states eleven causes of action against Defendant.

[1] Plaintiff now moves for a preliminary injunction based on five of its claims. Plaintiff's evidence in support of its motion includes declarations from its Senior Director of Applications Support, Kevin McLain, wherein Mr. McLain testifies how he was able to trace ticket requests and purchases made on ticketmaster.com back to individual users and, ultimately, to Defendant. Based on his methodology, McLain discovered, for example, that Chris Kovach, a ticket broker and one of Defendant's clients, purchased over 9,500 ticket orders—or 24,000 tickets—over the last several years. (McLain Decl. ¶ 24.) McLain also explains that he identified Gary Charles Bonner and Thomas J. Prior as Defendant's clients. Using IP addresses registered to Defendant, Bonner made almost 13,000 ticket purchases over several years, and made more than 425,000 ticket requests in a single day. (*Id.*) Using IP addresses registered to Defendant, Prior made almost 22,000 ticket orders over several years, and made more than 600,000 ticket requests in a single day. (*Id.*) [FN1] Plaintiff also submitted declarations from Kovach; Adam Lieb, a computer and internet consultant; Steven Obara, Plaintiff's Director of Customer Service Operations; Mark Lee, an attorney representing Plaintiff in this matter; and a number of exhibits. [FN2]

> FN1. Mr. McLain's Court-ordered Supplemental Declaration, filed on October 5, 2007, explains in detail, to the Court's satisfaction, the steps Mr. McLain took to trace ticket purchases to Defendant, using purchases made by Mr. Prior as an example.

> FN2. Defendant objects to these declarations and the exhibits attached thereto on numerous grounds. The Court finds Defendant's objections meritless. Kovach, McLain, Obara, and Lee supplied sufficient foundation that their testimony is based on their personal knowledge and experience. To the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
(Cite as: 507 F.Supp.2d 1096)

extent they offered opinion testimony, they did so in conformance with the Rules of Evidence. Nor are Defendant's hearsay objections well-taken. Defendant also objects to the Lieb Declaration. However, Lieb laid a foundation sufficient to show that his testimony is based on personal knowledge, and that the opinions he offers are not "speculative" because they are based on his examination of Kovach's computer and his experience as a computer consultant. Further, in the preliminary injunction context, the Court is not strictly bound by all rules of evidence. *See, e.g., Flynt Distributing Co., Inc. v. Harvey,* 734 F.2d 1389, 1394 (9th Cir.1984) ("The urgency of obtaining a preliminary injunction necessitates a prompt determination ... The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.") Thus, the Court has discretion to consider the proffered evidence even if it might not be admissible if presented in other settings.

Defendant challenges the Motion on both legal and factual grounds. Defendant states that the computer application Plaintiff seeks to enjoin Defendant from using and selling is its Ticket Broker Acquisition Tool ("TBAT"), and that this application is not an "automated device" but, rather, is simply a type of internet browser, akin to Internet Explorer, requiring human interaction. (Garibay Decl. ¶¶ 3, 4) Defendant also urges that it should not be bound by the Terms of Use and that, in any case, Plaintiff has presented no evidence upon which it-as opposed to the persons using TBAT-can be enjoined. Defendant also argues that Plaintiff's legal theories are flawed in various ways.[FN3]

> FN3. The Court rejects Defendant's argument that the Motion should be denied as *premature* because it was brought prior to the Court's ruling on Defendant's Motion to Dismiss. Defendant also appears to argue, rather inconsistently, that the Motion is *untimely* because it was filed approximately three months after Plaintiff obtained the Kovach Declaration. None of the cases Defendant cites is persuasive. In view of the facts and posture of this case, the Court

finds that the Motion is neither premature nor untimely. In any event, the Court did consider the motion to dismiss together with the present Motion, and issued an order on October 12 denying the motion to dismiss.

## *1104 II. LEGAL STANDARD FOR A PRELIMINARY INJUNCTION

[2][3][4][5] To obtain a preliminary injunction, a plaintiff must show "either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." *Walczak v. EPL Prolong, Inc.,* 198 F.3d 725, 731 (9th Cir.1999). "These two alternatives represent extremes of a single continuum, rather than two separate tests." *Id.* (internal quotations omitted). "Thus, the greater the relative hardship to [a plaintiff], the less probability of success must be shown." *Id.; see also International Jensen, Inc. v. Metrosound U.S.A., Inc.,* 4 F.3d 819, 822 (9th Cir.1993). "The district court must also consider whether the public interest favors issuance of the injunction." *Southwest Voter Registration Educ. Project v. Shelley,* 344 F.3d 914, 917 (9th Cir.2003). A preliminary injunction is an "extraordinary remedy" for which the need must be "clear and unequivocal." *Shelton v. National Collegiate Athletic Ass'n,* 539 F.2d 1197, 1199 (9th Cir.1976).

### III. ANALYSIS

The five claims on which Plaintiff seeks a preliminary injunction are its claims for violation of the United States Copyright Act, 17 U.S.C. §§ 501 *et seq.,* the Digital Millenium Copyright Act ("DMCA") 17 U.S.C. § 1201, California Penal Code § 502, and the Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. § 1030(g), and on its breach of contract claim.

### A. Likelihood of Success on the Merits.
#### 1. *Plaintiff's Copyright Claim*

[6] To prevail on its claim for copyright infringement, Plaintiff must (1) "show ownership of the allegedly infringed material and (2) [it] must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir.2001). Ticketmaster alleges that RMG is violating its copyright in the ticketmaster.com website.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
(Cite as: 507 F.Supp.2d 1096)

[7] Ticketmaster has submitted evidence that it owns registered copyrights in the website ticketmaster.com, and, separately, in portions of the website. (Lee Decl. ¶ 2; McLiam Decl. ¶ 5, Pl.'s Exh. 2.) "A website may constitute a work of authorship fixed in a tangible medium of expression ... Copyright protection for a website may extend to both the screen displays and the computer code for the website." *Integrative Nutrition, Inc. v. Academy of Healing Nutrition,* 476 F.Supp.2d 291, 296 (S.D.N.Y.2007). Defendant does not dispute Plaintiff's claim that its website is copyrighted. Ticketmaster has thus satisfied the first element of its copyright claim.

Ticketmaster alleges that RMG infringes its copyrights in ticketmaster.com both directly and indirectly. First, Ticketmaster states that each time Defendant views a page from ticketmaster.com, a copy of that page is necessarily downloaded or "cached" from Plaintiff's computers onto the Defendant's computer's random access memory ("RAM"), thus rendering *1105 Defendant *directly liable* for such copying. (Mot. 13:9–12; McLain Decl. ¶ 4.) Plaintiff also argues that Defendant directly participates in its customers' unauthorized access of the website because its customers do not acquire physical possession of the software. Rather, Defendant's devices are kept on Defendant's own computer systems; in order to gain access to Defendant's devices, its customers must log onto Defendant's website ticketbrokertools.com, and use the devices hosted on ticketbrokertools.com to improperly access ticketmaster.com. (Pl.'s Mot. 6:18–24; Kovach Decl. 2:18–25.) Thus, Defendant allows and, indeed, requires its customers to go through its own infrastructure in order to employ the devices that access ticketmaster.com. Defendant denies this factual allegation and states that "TBAT [has never been] operated from RMG's computer system on behalf of any client, as it is not, nor has it ever, been centrally run on behalf of any client." (Garibay Decl. ¶ 5.)

Second, Plaintiff states that Defendant is liable for contributory infringement, vicarious infringement, and inducing copyright infringement because it provides its clients with bots and other automated devices to infringe Plaintiff's copyright in its website. (Mot.15:9–14.) Both direct and indirect infringement occur insofar as the person viewing the website does so in excess of the authorization Plaintiff grants

through the website's Terms of Use.

### a. *Defendant's Direct Liability for Copyright Infringement*

Defendant's *direct* liability for copyright infringement is based on the automatically-created copies of ticketmaster.com webpages that are stored on Defendant's computer each time Defendant accesses ticketmaster.com. (Lieb Decl. ¶ 9.) Defendant does not contest that, as a technological question, whenever a webpage is viewed on a computer, copies of the viewed pages are made and stored on the viewer's computer. However, Defendant contends that such "cached" copies are not "copies" within the meaning of the Copyright Act, that such copies could not give rise to copyright liability because their creation constitutes fair use, and that Plaintiff has not shown that any pages from ticketmaster.com were ever downloaded or stored on Defendant's computer.

Section 101 of the Copyright Act defines "copies" as "material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 101. The Copyright Act also provides that "[a] work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id.*

[8] The copies of webpages stored automatically in a computer's cache or random access memory ("RAM") upon a viewing of the webpage fall within the Copyright Act's definition of "copy." *See, e.g., MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 519 (9th Cir.1993) ("We recognize that these authorities are somewhat troubling since they do not specify that a copy is created regardless of whether the software is loaded into the RAM, the hard disk or the read only memory ('ROM'). However, since we find that the copy created in the RAM can be 'perceived, reproduced, or otherwise communicated,' we hold that the loading of software into the RAM creates a copy under the Copyright Act.") *See also* *1106*Twentieth Century Fox Film Corp. v. Cablevision Systems Corp.,* 478 F.Supp.2d 607, 621 (S.D.N.Y.2007) (agreeing with the "numerous courts

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
**(Cite as: 507 F.Supp.2d 1096)**

[that] have held that the transmission of information through a computer's random access memory or RAM ... creates a 'copy' for purposes of the Copyright Act," and citing cases.) Thus, copies of ticketmaster.com webpages automatically stored on a viewer's computer are "copies" within the meaning of the Copyright Act.

[9] The Court must next determine whether Plaintiff has shown by a preponderance of the evidence that Defendant did in fact view the website, thereby copying its webpages. Although Plaintiff does not present direct evidence of such viewing, the logic from which such an inference may be drawn is compelling. Plaintiff presents expert testimony that Defendant necessarily had to view ticketmaster.com in order to create the applications that enable Defendant's customers to enter and navigate through the website. (Lieb Decl. ¶ 9.) Indeed, in order to test the applications to determine whether they worked as intended, Defendant would have had to actually *use* the applications to purchase tickets from the website. (*Id.*) By Defendant's own description, TBAT is "a browser geared for the purchase of tickets from a variety of websites including ... ticketmaster.com." (Garibay Decl. ¶ 5.) It also follows that Defendant's clients would have had to visit the website, and thus copy pages, in order to make ticket purchases. The Court thus finds that Plaintiff is indeed likely to prove that Defendant visited (and used) ticketmaster.com and necessarily made copies of pages from the copyrighted website.

Plaintiff also argues that Defendant is directly liable for infringement because its clients must work through Defendant's website and computer system in order to use Defendant's ticket purchasing software and thereby gain unauthorized access to ticketmaster.com. Defendant disputes this allegation. However, the Court finds it unnecessary to decide whether Plaintiff will prevail in its claim for direct infringement by showing that Defendant directly participates in its clients' conduct by acting as an intermediary for their unauthorized use of ticketmaster.com. As discussed above, Plaintiff will likely succeed in its claim for direct liability by showing that Defendant itself viewed and/or used the website.[FN4]

> FN4. In addition, even accepting Defendant's version of the facts-that its clients download TBAT onto their own computers

and operate it independent of Defendant-its conduct would still render it liable for contributory infringement, discussed *infra.*

[10] Next, the Court will consider whether Plaintiff is likely to demonstrate that such copying constitutes copyright infringement. Plaintiff contends that Defendant infringed its copyrights by accessing and using the copyrighted website in excess of the authorization granted in the website's Terms of Use, which Plaintiff contends creates a non-exclusive license to view (and thus copy) pages from the website. Defendant presents a number of legal and factual arguments against this theory, but none of them is meritorious.

[11][12][13] First, the Court agrees that the Terms of Use presented on ticketmaster.com create a non-exclusive license to copy the website. "The word 'license,' means permission, or authority; and a license to do any particular thing, is a permission or authority to do that thing." *Federal Land Bank of Wichita v. Board of County Com'rs,* 368 U.S. 146, 154, 82 S.Ct. 282, 7 L.Ed.2d 199 (1961). "No magic words must be included in a document" to create a copyright license. *Radio Television Espanola S.A. v. New World Entertainment, Ltd.,* 183 F.3d 922, 927 (9th Cir.1999). Furthermore, nonexclusive licenses**1107** can be implied from conduct. *See Effects Associates, Inc. v. Cohen,* 908 F.2d 555, 558–559 (9th Cir.1990) (holding that by creating a work at defendant's request and handing it over to defendant to copy and distribute, plaintiff granted defendant an implied nonexclusive license to the work.) Use of a work in excess of a license gives rise to liability for copyright infringement. *LGS Architects, Inc. v. Concordia Homes of Nevada,* 434 F.3d 1150, 1156 (9th Cir.2006) ("When a licensee exceeds the scope of the license granted by the copyright holder, the licensee is liable for infringement.")

Plaintiff has presented evidence showing that access to the website is governed by specific Terms of Use, and that any person viewing the website is put on notice of the Terms of Use. For example, the ticketmaster.com homepage displays the following warning: "Use of this website is subject to express *Terms of Use* which prohibit commercial use of this site. By continuing past this page, you agree to abide by these terms." (McLain Decl. ¶ 10; Pl.'s Exh. 4.) The underlined phrase "Terms of Use" is a hyperlink to the full

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
**(Cite as: 507 F.Supp.2d 1096)**

Terms of Use; the same phrase appears on almost every page of ticketmaster.com. (*Id.* ¶¶ 10–11; Exhs. 4–5.) In addition, since 2003, users of ticketmaster.com have had to affirmatively agree to the Terms of Use as part of the procedure to set up an account, and since mid–2006, users have had to affirmatively agree to the Terms of Use for every ticket purchase. (*Id.* ¶¶ 12, 13; Exhs. 6, 7.)

[14] Having determined that Plaintiff is highly likely to succeed in showing that Defendants viewed and navigated through ticketmaster.com, the Court further concludes that Plaintiff is highly likely to succeed in showing that Defendant received notice of the Terms of Use and assented to them by actually using the website. *See, e.g., Register.com, Inc. v. Verio, Inc.,* 126 F.Supp.2d 238, 248 (S.D.N.Y.2000) (where website's terms of use stated "by submitting this query, you agree to abide by these terms," court held "there can be no question that [the user of website] manifested its assent to be bound" by the terms of use when it electronically submitted queries to the database); *Hotmail Corp. v. Van$ Money Pie Inc.,* 1998 WL 388389, *2, 6 (N.D.Cal.1998) (granting preliminary injunction based in part on breach of "Terms of Service" agreement, to which defendants had assented.) Indeed, Defendant does not contest that it was on notice of the Terms of Use; rather, Defendant argues that the Terms of Use do not amount to an agreement or a license, and that the Terms are too uncertain to be enforced. The Court finds no merit in these arguments.

The Terms of Use governing ticketmaster.com include the following terms:

"You [the viewer] agree that you are only authorized to visit, view and to retain a copy of pages of this site for your own personal use, and that you shall not duplicate, download, [or] modify ... the material on this Site for any purpose other than to review event and promotions information, for personal use ..." (Pl.'s Ex. 8 at 70).

"No ... areas of this Site may be used by our visitors for any commercial purposes ..." (*Id.* at 71.)

"You agree that you will not use any robot, spider or other automated device, process, or means to access the Site.... You agree that you will not use any device, software or routine that interferes with the

proper working of the Site nor shall you attempt to interfere with the proper working of the Site." (*Id.* at 71.)

"You agree that you will not take any action that imposes an unreasonable or disproportionately large load on our infrastructure." (*Id.* at 71–72.)

**\*1108** "You agree that you will not access, reload or 'refresh' transactional event or ticketing pages, or make any other request to transactional servers, more than once during any three second interval." (*Id.* at 72.)

"You do not have permission to access this Site in any way that violates ... these terms of use." (*Id.* at 72.)

"You understand and agree that ... Ticketmaster may terminate your access to this Site, cancel your ticket order or tickets acquired through your ticket order ... if Ticketmaster believes that your conduct or the conduct of any person with whom Ticketmaster believes you act in concert ... violates or is inconsistent with these Terms or the law, or violates the rights of Ticketmaster, a client of Ticketmaster or another user of the Site." (*Id.* at 72.)

Viewers are thus authorized to view-and thereby copy-pages of the website when they do so in accordance with the Terms of Use. In addition, Plaintiff reserves the right to terminate any person's access to the website if it believes that person violated the Terms of Use. Thus, by the Terms of Use, Plaintiff grants a nonexclusive license to consumers to copy pages from the website in compliance with those Terms. Inasmuch as Defendant used the website, Defendant assented to the terms.

[15] Nor are the terms so vague as to be unenforceable. The above terms permit access for personal use only, prohibit commercial use, prohibit the use of bots and automated devices, limit the frequency with which users can make requests of the website, and require the user to agree not to interfere with the proper working of the website. Defendant argues, however, that the term "automated device" is confusing. Specifically, Defendant's President, Cipriano Garibay, a software designer, testifies in his declaration that TBAT-which he appears to claim is the only product in issue in this case-is just a web

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
**(Cite as: 507 F.Supp.2d 1096)**

browser and is not an "automated device" because it requires human interaction to function. (Garibay Decl. ¶ 4.) Garibay further claims that he does not know what Plaintiff is referring to by the term "automated device" because "every computer in the world, as well as all computer programs and web browsers, have [sic] a large degree of automation built in since they are not run manually. Clearly, Ticketmaster is not seeking to prohibit all computers and browsers from accessing its website, otherwise the website would be useless. However, as Ticketmaster has not defined 'automated device' in its 'Terms of Use,' I can only speculate as to what it means by same." (*Id.*)

[16] This claim is specious. First, the term appears in the provision in which website viewers agree to "not use any robot, spider or *other* automated device, process, or means to access the Site." (emphasis added). Although the terms of use include no additional definition of "automated device," they identify robots and spiders as examples of such devices, which Garibay states are "programs which by their very nature run without interfacing with humans." (Garibay Decl. ¶ 4.) Plaintiff has submitted credible testimony showing that Defendant's applications are, in fact, automated devices. For example, Adam Lieb, a computer consultant who studied a directory Defendant placed on Kovach's computer, testified that "the term 'automated device' is easy to understand in the context of computer programming"—a field in which Garibay claims 10 years of experience—and that TBAT is an automated device. (Lieb Reply Decl. ¶ 2; Garibay Decl. ¶ 1.) Lieb explains that even though TBAT may require human initialization or set up, the application generates automated requests thereafter. Based on his examination of the "super proxy" log **\*1109** files on Kovach's computer, Lieb states that "several webpage requests per second were made to Ticketmaster, via the proxy, from the same source IP address. Thousands of requests were made per day. No human would be able to generate that many requests during manual, non-automated web browsing. These were automated request[s] made by an 'automated device.' " (Lieb Reply Decl. ¶ 4.)

Based on his personal experience, Kovach describes Defendant's software as "including automated devices that RMG calls 'workers' that can automatically navigate the Ticketmaster website.... [M]y level of service enabled me to use multiple workers-

sometimes over one hundred of them-simultaneously to search for and request tickets." (Kovach Decl. ¶ 5.) Kovach further describes how he could command the workers to search for tickets according to parameters that he would set, and that the workers would search for tickets automatically and alert him when they found tickets matching his parameters. (Kovach Decl. ¶¶ 6–7, 9.) Indeed, Defendant's own website advertises its products as "let[ting] you do the work of a dozen people at once. Just enter the event information ... and the moment the event goes on sale, *Purchase-Master* goes into action." (Pl.'s Exh. 1.) In view of all of the evidence, Plaintiff is highly likely to succeed on its claim that Defendant's applications are automated devices that violate the Terms of Use.

[17][18] However, even setting aside Plaintiff's prohibition of automated devices, the application as described would violate other provisions of the Terms of Use. For example, using an application that enables a person to make several requests per second would violate the provision limiting the frequency of requests to no more than one every three seconds. Furthermore, use of an application designed to thwart Plaintiff's access control by, in Defendant's own description, "stealth technology [that] lets you hide your IP address, so you **never get blocked by Ticketmaster,**" (Pl.'s Exh. 1) (original emphasis) would breach the user's agreement to "not use any device, software or routine that interferes with the proper working of the Site nor shall you attempt to interfere with the proper working of the Site." *See also* Kovach Decl. ¶ 8 (explaining his understanding that the "workers are specifically designed to navigate or otherwise avoid various security measures on Ticketmaster's website.")

[19][20] Finally, Defendant argues in summary fashion that to the extent Plaintiff's claim is predicated on automatically-made cache copies of Plaintiff's webpages, such cache copies constitute fair use as a matter of law under *Perfect 10, Inc., v. Amazon.com, Inc.,* 487 F.3d 701, 716 (9th Cir.2007). This argument is unavailing for several reasons. First, "[b]ecause the defendant in an infringement action has the burden of proving fair use, the defendant is responsible for introducing evidence of fair use in responding to a motion for preliminary relief." *Perfect 10,* 487 F.3d at 714. Here, Defendant has come forward with no evidence of fair use. Nor did Defendant attempt to explain how its use satisfies any

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

254

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
(Cite as: 507 F.Supp.2d 1096)

of the four fair use factors set forth in 17 U.S.C. § 107. Accordingly, the fair use defense fails to defeat Plaintiff's motion on these grounds alone.

[21] Second, *Perfect 10* does not stand for the absolute principle of law that Defendant attributes to it. Rather, *Perfect 10* addressed, among other questions, whether users who link to infringing websites and thus make automatic cache copies of those infringing websites themselves commit copyright infringement. The Ninth Circuit agreed with the district court that such conduct was "fair use **in this context**" because the caching was **\*1110** "noncommercial, transformative ... and has a minimal impact on the potential market for the original work." ( *Perfect 10, 487 F.3d at 726* (emphasis added) (quoting district court).) Significantly, the Court also noted that "a cache copies no more than necessary to assist the user in Internet use," and, in the case before it, the "background copying has no more than a minimal effect" on the plaintiff's rights. *Id.* In this context, by contrast, Defendant is not an "innocent" third-party visitor to another person's website. Instead, the purpose of Defendant's viewing ticketmaster.com and the copying that necessarily entails is to engage in conduct that violates the Terms of Use in the ways described above. In addition, Defendant's use of the website is to further its own commercial objectives, that is, to create and sell ticket purchasing applications that can gain unauthorized access to ticketmaster.com. In addition, in this case, such copying has a significant, as opposed to minimal, effect on Plaintiff's rights because Defendant's conduct empowers its customers to also violate the Terms of Use, infringe on Plaintiff's rights, and collectively cause Plaintiff the harm described below. For all of these reasons, Defendant's fair use defense fails.

Because the Court finds that Plaintiff has a strong likelihood of proving that Defendant violated ticketmaster.com's Terms of Use by using automated devices, making excessive requests, and interfering with the proper working of the website when it used and/or designed applications that access ticketmaster.com, the Court finds that Plaintiff has a strong likelihood of succeeding on the merits of its claim for direct copyright infringement.

### b. *Defendant's Indirect Liability for Copyright Infringement*

[22] Plaintiff also argues that it has a strong like-

lihood of success on its claim for *indirect* copyright infringement. The Court agrees.

[23][24] "One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 930–931, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005) (citations omitted). Although "[t]he Copyright Act does not expressly render anyone liable for infringement committed by another, these doctrines of secondary liability emerged from common law principles and are well established in the law." *Id.* In *Grokster,* the Supreme Court held that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Id.* at 936–937, 125 S.Ct. 2764. Evidence to support an inducement theory includes, for example "advertisement[s] or solicitation[s] that broadcast [ ] a message designed to stimulate others to commit violations." *Id.* at 937, 125 S.Ct. 2764. Here, as described above, there is substantial evidence that Defendant designed its application for the purpose of giving its clients unauthorized access to ticketmaster.com; Defendant even advertises its product as "stealth technology [that] lets you hide your IP address, so you **never get blocked by Ticketmaster**" (Pl.'s Exh. 1.) (original emphasis). Designing and marketing a device whose purpose is to allow unauthorized access to, and thus to infringe on, a copyrighted website is sufficient to trigger contributory liability for infringement committed by the device's immediate users. *See, e.g., Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264 (9th Cir.1996) (stating that providing the **\*1111** site and facilities for known infringing activity is sufficient to establish contributory liability, and quoting with approval 2 William F. Patry, *Copyright Law & Practice* 1147, "Merely providing the means for infringement may be sufficient" to incur contributory copyright liability.)

As discussed in the Background section, Plaintiff has presented examples of Defendant's clients making numerous ticket purchases and ticket requests using Defendant's applications and resources, including the examples of Bonner making more than 425,000 requests in a single day, and Prior making

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
**(Cite as: 507 F.Supp.2d 1096)**

more than 600,000 requests in a single day, both through IP addresses registered to Defendant. (McLain Decl. ¶ 24.) Requests so numerous cannot be made other than with automated devices. (*See* Lieb Reply Decl. ¶ 4.) Kovach testified how he used Defendant's applications to make automated ticket requests, and that Defendant made representatives available to help him use its applications, circumvent Plaintiff's security measures, and set up his hardware for optimal use. (Kovach Decl. ¶¶ 6–11.) Such uses infringe on Plaintiff's copyrights for the reasons stated above with regard to Defendant's direct infringement.

Based on this evidence, the Court finds that Plaintiff is highly likely to prove that Defendant induced or encouraged its clients' direct infringement by providing them with devices that gain them unauthorized access to and use of ticketmaster.com. Plaintiff is therefore highly likely to succeed in its claim against Defendant for contributory infringement.

### 2. *Plaintiff's Claim Under the Digital Millenium Copyright Act*

[25] Plaintiff alleges that Defendant has violated the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq.*, by trafficking in technological products, services, devices, or components that are primarily designed to circumvent Plaintiff's access control and copy protection systems. (FAC ¶¶ 51–55.) Plaintiff's Motion relies on two provisions of the DMCA.

[26] First, Plaintiff claims Defendant is liable under section 1201(a)(2), which prohibits trafficking in devices designed to circumvent "technological measure[s] that effectively control[ ] access to a work protected under this title." 17 U.S.C. § 1201(a)(2). "A plaintiff alleging a violation of § 1201(a)(2) must prove: (1) ownership of a valid copyright on a work, (2) effectively controlled by a technological measure, which has been circumvented, (3) that third parties can now access (4) without authorization, in a manner that (5) infringes or facilitates infringing a right protected by the Copyright Act, because of a product that (6) the defendant either (i) designed or produced primarily for circumvention; (ii) made available despite only limited commercial significance other than circumvention; or (iii) marketed for use in circumvention of the controlling technological measure." *Chamberlain Group, Inc. v. Skylink Technologies,*

*Inc.*, 381 F.3d 1178, 1203 (Fed.Cir.2004).

The Court finds that Plaintiff is likely to prevail on its section 1201(a)(2) claim. Specifically, as stated above, Plaintiff is likely to prove that (1) Plaintiff owns copyrights to ticketmaster.com and specific portions thereof; (2) Plaintiff employs "technological measures" such as CAPTCHA to block automated access to its copyrighted ticket purchase pages; (3) Defendant's customers are third parties who can now access those copyrighted pages; (4) these parties access those pages without Plaintiff's authorization; and (5) that this access infringes Plaintiff's rights because it entails copying those pages in excess of the third parties' license to do so; and (6)(i), (iii) these third parties have such access because of Defendant's products designed**1112** primarily for circumvention, and marketed for use in circumvention of the controlling technological measure.

[27] The majority of Defendant's challenges to Plaintiff's Motion on the DMCA claim are repetitive of its arguments with regard to the copyright claim, and are unavailing for the same reasons. The only unique arguments as to the DMCA claim are that CAPTCHA is not a system or a program, but is simply an image (Def.'s Opp. 17:7–8; Garibay Decl. ¶ 6), and that CAPTCHA is designed to regulate ticket sales, not to regulate access to a copyrighted work. (Def.'s Opp. 17:9–20.)

First, the Court notes that the DMCA does not equate its use of the term "technological measure" with Defendant's terms "system" or "program." In any case, Plaintiff has submitted evidence that CAPTCHA is a technological measure that regulates access to a copyrighted work. Although the DMCA does not appear to include a definition of the term, it states that "a technological measure 'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C.A. § 1201(a)(3)(B). When the user makes a ticket request on ticketmaster.com, CAPTCHA presents "a box with stylized random characters partially obscured behind hash marks." (McLain Decl. ¶ 9.) The user is required to type the characters into an entry on the screen in order to proceed with the request. (*Id.*) Most automated devices cannot decipher and type the random characters and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
**(Cite as: 507 F.Supp.2d 1096)**

thus cannot proceed to the copyrighted ticket purchase pages. Thus, because CAPTCHA "in the ordinary course of its operation, requires the application of information ... to gain access to the work," it is a technological measure that regulates access to a copyrighted work. Plaintiff is therefore likely to prevail on its DMCA § 1201(a)(2) claim.

[28] Section 1201(b)(1) similarly prohibits the trafficking of devices primarily designed or produced for the purpose of circumventing "protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof." *See Sony Computer Entertainment America, Inc. v. Divineo, Inc.,* 457 F.Supp.2d 957, 964 (N.D.Cal.2006). Sections 1201(a)(2) and 1201(b)(1) differ only in that 1201(a)(2), by its terms, makes it wrongful to traffic in devices that circumvent technological measures that *control access to protected works,* while 1201(b)(1) makes it wrongful to traffic in devices that circumvent technological measures that *protect rights of a copyright owner in a work.* Here, CAPTCHA both *controls access* to a protected work because a user cannot proceed to copyright protected webpages without solving CAPTCHA, and *protects rights* of a copyright owner because, by preventing automated access to the ticket purchase webpage, CAPTCHA prevents users from copying those pages. For the foregoing reasons, the Court finds that Plaintiff is likely to prevail on its DMCA §§ 1201(a)(2) and 1201(b)(1) claims.

### 3. *Plaintiff's Breach of Contract Claim*

[29] Plaintiff argues that Defendant is breaching the ticketmaster.com Terms of Use in numerous ways, and is therefore liable for breach of contract. (FAC ¶¶ 84–93.) The facts and issues that this claim raises are the same as those raised by Plaintiff's contention, in connection with its copyright claims, that Defendant breached the Terms of Use. The Court addressed the merits of that claim in its discussion of Plaintiff's claim for copyright infringement,**\*1113** and concluded that Plaintiff is highly likely to prove that use of ticketmaster.com is governed by the Terms of Use; that Defendant was on notice of, and assented to, the Terms of Use; and that Defendant violated the Terms of Use by using automated devices to access the website, using an application that makes several requests per second (in violation of the provision limiting the frequency of requests to no more than one every three seconds), and by using an

application designed to thwart Plaintiff's access controls (which breaches the user's agreement to "not use any device, software or routine that interferes with the proper working of the Site nor shall you attempt to interfere with the proper working of the Site."). The Court therefore finds that Plaintiff is therefore likely to prevail on its breach of contract claim.

### 4. *Plaintiff's Computer Fraud and Abuse Act Claim*

[30] Plaintiff also argues that it is likely to prevail on its claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Although the CFAA is a criminal statute, it permits "any person who suffers damage or loss" through a violation of its provisions "to maintain a civil action ... to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). To prevail on its CFAA claim, Plaintiff must demonstrate that Defendant "intentionally access[ed] a computer without authorization or exceed[ed] authorized access, and thereby obtain[ed] information from any protected computer," 18 U.S.C. § 1030(a)(2)(C), or that Defendant "knowingly cause[d] the transmission of a program ... and ... cause [d] damage without authorization to a protected computer." 18 U.S.C. § 1030(a)(5)(A)(i). Plaintiff must also demonstrate that Defendant's unauthorized access caused $5,000 in loss or damage during a one year period. 18 U.S.C. § 1030(a)(5)(B)(i).

It appears likely that Plaintiff will be able to prove that Defendant gained unauthorized access to, and/or exceeded authorized access to, Plaintiff's protected computers, and caused damage thereby. Based on the statute and the cases Plaintiff cites, the Court also agrees that the required $5,000 of harm may consist of harm to a computer system, and need not be suffered by just one computer during one particular intrusion. *See, e.g., Creative Computing v. Getloaded.com LLC,* 386 F.3d 930, 934–935 (9th Cir.2004) (interpreting the CFAA). However, because Plaintiff has not quantified its harm as required by the statute or even attempted to show what portion of the harm is attributable to Defendant, the Court cannot find that Plaintiff has affirmatively shown that its harm caused by Defendant exceeds the $5,000 minimum. Thus, the CFAA claim does not provide a basis for a preliminary injunction.

In light of the Court's rulings on Plaintiff's copyright, DMCA, and breach of contract claims, the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
**(Cite as: 507 F.Supp.2d 1096)**

Court need not address whether Plaintiff is likely to succeed on its claims under California Penal Code § 502, the fifth basis asserted for the preliminary injunction.

## B. Irreparable Harm

[31] Having determined that Plaintiff has a strong likelihood of success on the merits of its copyright, DMCA, and breach of contract claims, the Court now addresses whether Plaintiff has shown "the possibility of irreparable injury." *Walczak,* 198 F.3d at 731.

[32] For Plaintiff's copyright claim, "a showing of a reasonable likelihood of success on the merits raises a presumption of irreparable harm." *LGS Architects, Inc. v. Concordia Homes of Nevada,* 434 F.3d 1150, 1155 (9th Cir.2006) (citing *Johnson* *1114 Controls,* 886 F.2d at 1174). "A copyright holder seeking a preliminary injunction is therefore not required to make an independent demonstration of irreparable harm." *Id.* at 1155–56. Here, because Plaintiff has shown a strong likelihood of success on the merits of its copyright claim, the Court presumes irreparable harm. Defendant has done nothing to rebut that presumption.

[33] The Court also finds that Plaintiff has otherwise shown the possibility of irreparable harm required to support the issuance of a preliminary injunction on its DMCA and breach of contract claims. Specifically, Plaintiff has submitted extensive evidence demonstrating that it is suffering a loss of goodwill with the buying public in that there is a growing public perception that Plaintiff does not provide the public with a fair opportunity to buy tickets due to automated purchases. (Obara Decl. ¶¶ 4–5.) Such evidence includes numerous complaints from consumers about the unavailability of tickets, some of which demonstrate extreme dissatisfaction with Plaintiff and indicate suspicions that Plaintiff is colluding with ticket brokers to deny consumers tickets. (*Id.*; Pl.'s Exh. 19.) [FN5] Plaintiff has also submitted copies of consumer comments posted on blogs expressing similar extreme dissatisfaction. (Pl.'s Exh. 20) [FN6] and evidence of numerous news stories discussing the unavailability of tickets. (*See* Pl.'s Exh. 24.) For example, many of the news stories concern the unavailability of tickets to concerts in Hannah Montana's "Best of Both Worlds" tour. Based on the reports, many parents expressed disappointed and

outrage at Plaintiff because tickets to many Hannah Montana concerts throughout the nation (Bossier City, Louisiana; Miami, Florida; Atlanta, Georgia; and Kansas City, Missouri, for example) were snapped up within several hours-and sometimes within minutes-of their release for sale. It also appears that the public's difficulty obtaining tickets to the Hannah Montana concerts was so severe and created such an outcry that the Attorneys General of Missouri and Arkansas initiated investigations into Plaintiff's ticket selling practices. (*See* Pl.'s Exhs. 26, 27.)

> FN5. Plaintiff's brief quotes several of the complaints compiled in Exhibit 19. (*See* Mot. 10, fn. 8.) One such complaint states: "I would like to know how within 20 seconds of a show going on sale I could not find ANY seats together at ANY price at this event. However, there are gobs of them for sale on many different scalper sites. How is this possible and why is this tolerated. The only explanation for this is that people inside TM are in cahoots with these criminals. I would just like to know if there are any plans whatsoever to address this situation."

> FN6. For example, the following is a comment posted by someone who could not obtain tickets to a performance of the rock group "Rush": "I am absolutely irate about TicketBxxxxxd and its practices. As has been mentioned on this site already, the whole process of getting tickets to concerts has gotten completely out of control with scalpers, brokers, and God-knows-who-else trying to make a buck at the expense of fans." (Mot.11, fn.9.)

[34][35] Such evidence demonstrating public dissatisfaction with Plaintiff is properly before the Court as non-hearsay evidence. *See, e.g., Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.,* 944 F.2d 1446, 1456 (9th Cir.1991) (error for the district court not to consider newspapers article and telephone calls as evidence of actual confusion). In addition, to the extent some of the newspaper articles may be offered for a hearsay purpose, the Court has wide latitude to consider such evidence in the preliminary injunction context. *Republic of the Philippines v. Marcos,* 862 F.2d

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

258

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
**(Cite as: 507 F.Supp.2d 1096)**

1355, 1363 (9th Cir.1988) (stating that it "was within the discretion of the district *1115 court to accept this hearsay for purposes of deciding whether to issue the preliminary injunction.")

Although the extent of Defendant's culpability for this harm to Plaintiff's goodwill cannot yet be determined, it is likely that some of Defendant's customers were able to obtain tickets to such concerts by using Defendant's applications. (*See* Suppl. Decl. McLain ¶¶ 4–5; Suppl. Lee Decl. ¶¶ 1–3; Exh. 23.) Given the alleged extent of Defendant's participation in the hundreds of thousands of automated ticket requests wrongfully made of Plaintiff's website, it is likely that Defendant's conduct has caused, and will continue to cause, some portion of Plaintiff's loss of goodwill unless Defendant's conduct is enjoined. As a consequence of Plaintiff's loss of consumer goodwill, Plaintiff also faces the possibility of loss of goodwill and loss of business from its clients. (McLain Reply Decl. ¶ 7.)

[36] In this Circuit, intangible injuries, such as damage to goodwill, can constitute irreparable harm. *See Rent–A–Center, Inc. v. Canyon Television and Appliance Rental, Inc.,* 944 F.2d 597, 603 (9th Cir.1991); *see also, Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.,* 240 F.3d 832, 841 (9th Cir.2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *eBay, Inc. v. Bidder's Edge, Inc.,* 100 F.Supp.2d 1058, 1066 (N.D.Cal.2000) ("Harm resulting from lost profits and lost customer goodwill is irreparable because it is neither easily calculable, nor easily compensable and is therefore an appropriate basis for injunctive relief.") Plaintiff has also submitted evidence that it has attempted to use technological countermeasures to prevent automated ticket requests, but that these efforts have had only limited success. (McLain Decl. ¶¶ 23–24, 26–27, 31–33.) Thus, the Court is not persuaded by Defendant's argument that Plaintiff's self-help measures (such as "blacklisting" IP addresses) are enough to prevent irreparable harm and thus obviate the need for injunctive relief. In addition, the cost to Plaintiff of developing and implementing such countermeasures is not easily calculable. (*Id.*) For the foregoing reasons, the Court finds that Plaintiff has demonstrated the possibility of irreparable harm.

**C. Balance of Hardships**

[37][38] Defendant contends that the balance of hardships tips sharply in its favor because it would go out of business if forced to stop selling TBAT. (Garibay Decl. ¶¶ 3–4.) However, in the copyright infringement context, once a plaintiff has established a strong likelihood of success on the merits, any harm to the defendant that results from being preliminarily enjoined from continuing to infringe is legally irrelevant. *See Triad Sys. Corp. v. Southeastern Exp. Co.,* 64 F.3d 1330, 1338 (9th Cir.1995) (defendant "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities."); *Cadence Design Sys., Inc. v. Avant! Corp.,* 125 F.3d 824, 830 (9th Cir.1997) (holding that it was reversible error for a district court to even consider "the fact that an injunction would be devastating to [defendant's] business," because "where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration.") Thus, the possibility that Defendant will lose possibly all of its profits from the sale of infringing applications does not tip the hardships in Defendant's favor. Moreover, because Plaintiff has persuasively demonstrated likelihood of success on the merits of several of its claims, the balance of hardships becomes less significant to the Court's analysis. *See id.* at 830 ("The balance of hardships factor may assume significance in cases where the plaintiff has not established a strong likelihood of success on the merits, but here [the plaintiff] established that it was likely to succeed on *1116 the merits of its copyright claim."). Therefore, to the extent to which the balance of hardships is significant in the instant case, it tips in Plaintiff's favor.

**D. Public Interest**

[39] The Court finds that the public interest favors the issuance of a preliminary injunction. Based on the consumer complaints and news reports referenced above (*see* Pl.'s Exhs. 19, 20, 24), it is evident that Defendant's conduct not only harms Plaintiff, but also harms the public because it denies consumers the opportunity to purchase tickets to events at the face price. Thus, insofar as Defendant's misconduct allows its ticket broker clients to unfairly purchase numerous tickets for resale resulting in immediately sold-out events, ordinary consumers must either forego the event or pay ticket brokers inflated prices for resold tickets. The public interest therefore weighs in favor of an injunction.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018
**(Cite as: 507 F.Supp.2d 1096)**

## IV. BOND

[40][41] Federal Rule of Civil Procedure 65(c) requires Plaintiff to post a bond, in a sum the Court deems appropriate, for the payment of costs and damages that Defendant may suffer if it is later found to have been wrongfully enjoined. A bond may not be required, or may be minimal, when the harm to the enjoined party is slight or where the movant has demonstrated a likelihood of success. *See, e.g., Jorgensen v. Cassiday,* 320 F.3d 906, 919 (9th Cir.2003); *Walczak,* 198 F.3d at 733. However, the Court retains discretion to require a bond when the party seeking the injunction has not offered evidence of its own harm in posting a bond, *see Barahona–Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir.1999).

Plaintiff asks the Court to require only a nominal bond of $1,000 because it has shown a likelihood of success. Defendant, by contrast, argues that a substantial bond of at least $10 million should be required because the injunction will put it out of business. Having considered these arguments, the Court ORDERS Plaintiff to post a **bond of $300,000,** an amount that is reasonable under the facts of this case, **within ten (10) days of the date of this Order.** Plaintiff is also ORDERED to prepare a proposed order consistent with this Order, including findings of fact and conclusions of law, **within ten (10) days of the date of this Order.**

## V. CONCLUSION

Plaintiff has persuasively demonstrated that it will likely succeed on the merits of its claims that Defendant has infringed Plaintiff's copyrights in the ticketmaster.com website, violated the Digital Millenium Copyright Act, and breached a contract (the website's Terms of Use). Plaintiff has also shown the likelihood of irreparable harm. Furthermore, the balance of hardships tips in Plaintiff's favor, not Defendant's. The public interest also favors the issuance of a preliminary injunction. Therefore, the Court hereby **GRANTS** Plaintiff's motion for a preliminary injunction and **ENJOINS** Defendant RMG Technologies, Inc., and all persons acting for its benefit or on its behalf, from:

1. Creating, trafficking in, facilitating the use of or using computer programs or other automatic devices to circumvent the technological copy protection systems in Ticketmaster's 10 website;

2. Using information gained from access of Ticketmaster's website to create computer programs to circumvent Ticketmaster's copy protection and website regulation systems;

3. Copying or facilitating the copying of portions of Ticketmaster's website in excess of any license Ticketmaster has granted;

**\*1117** 4. Purchasing or facilitating the purchase of tickets from Ticketmaster's website for the commercial purpose of reselling them; and

5. Otherwise accessing and using Ticketmaster's website in excess of the license granted by the Terms of Use posted thereon.

C.D.Cal.,2007.
Ticketmaster L.L.C. v. RMG Technologies, Inc.
507 F.Supp.2d 1096, 2007 Copr.L.Dec. P 29,477, 85 U.S.P.Q.2d 1018

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT K

1   ROBERT H. PLATT (State Bar No. 108533)
    rplatt@manatt.com
2   MARK S. LEE (State Bar No. 094103)
    mlee@manatt.com
3   DONALD R. BROWN (State Bar No. 156548)
    dbrown@manatt.com
4   MANATT, PHELPS & PHILLIPS, LLP
    11355 West Olympic Boulevard
5   Los Angeles, California 90064-1614
    Telephone:  (310) 312-4000
6   Facsimile:  (310) 312-4224

7   Attorneys for *Plaintiff and Counter-Defendant*
    TICKETMASTER L.L.C. and *Counter-Defendant*
8   IAC/INTERACTIVECORP

9                UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12   TICKETMASTER L.L.C., a Virginia        Case No. CV 07-2534-ABC (JCx)
     limited liability company,
13                                          Hon.  Audrey B. Collins
                   Plaintiff,
14                                          **NOTICE OF APPLICATION AND**
           vs.                              **APPLICATION BY**
15                                          **TICKETMASTER L.L.C. AND**
     RMG TECHNOLOGIES, INC., a              **IAC/INTERACTIVECORP FOR**
16   Delaware corporation, and DOES 1       **ENTRY OF DEFAULT JUDGMENT**
     through 10, inclusive,                 **AGAINST RMG TECHNOLOGIES,**
17                                          **INC.; MEMORANDUM OF POINTS**
                   Defendants.              **AND AUTHORITIES;**
18                                          **DECLARATIONS OF DONALD R.**
                                            **BROWN AND KEVIN McLAIN**
19   RMG TECHNOLOGIES, INC., a
     Delaware corporation,                  [[Proposed] Judgment and Permanent
20                                          Injunction submitted concurrently
                   Counterclaim-Plaintiff,  herewith]
21
           vs.                              Complaint filed:  April 17, 2007
22
     TICKETMASTER L.L.C., a Virginia
23   limited liability company,
     IAC/INTERACTIVE CORP., a
24   Delaware corporation, and ROES 1
     through 10, inclusive,
25
                   Counterclaim-Defendants.
26
27
28

MANATT, PHELPS &                            NOTICE OF APPLICATION AND
PHILLIPS, LLP      41283767.8               APPLICATION FOR ENTRY OF DEFAULT
ATTORNEYS AT LAW                                                     JUDGMENT
LOS ANGELES

EXHIBIT
K

1   TO DEFENDANT AND COUNTERCLAIMANT RMG TECHNOLOGIES, INC.:

2           PLEASE TAKE NOTICE THAT plaintiff and counterclaim-defendant

3   Ticketmaster     L.L.C.     ("Ticketmaster")    and    counterclaim-defendant

4   IAC/InterActiveCorp ("IAC," erroneously sued as "IAC/Interactive Corp.") hereby

5   apply, pursuant to Rule 55 of the Federal Rules of Civil Procedure and Rule 55 of

6   the Local Rules for the Central District of California, for entry of a default

7   judgment and permanent injunction in their favor and against defendant and

8   counterclaimant RMG Technologies, Inc. ("RMG").  This application is made on

9   the grounds that the Court has entered a default against RMG, stricken RMG's

10   Answer to Ticketmaster's First Amended Complaint, dismissed RMG's Second

11   Amended Counterclaims with prejudice, and ordered Ticketmaster and IAC to

12   submit a proposed default judgment to the Court no later than June 9, 2008.

13           As part of the proposed judgment, Ticketmaster seeks the entry of a

14   permanent injunction to prohibit RMG and all persons acting for its benefit or on its

15   behalf from (1) creating, trafficking in, facilitating the use of or using computer

16   programs or other automatic devices to circumvent the technological copy

17   protection systems in Ticketmaster's website; (2) using information gained from

18   access of Ticketmaster's website to create computer programs to circumvent

19   Ticketmaster's copy protection and website regulation systems; (3) copying or

20   facilitating the copying of portions of Ticketmaster's website in excess of any

21   license Ticketmaster has granted; (4) otherwise accessing and using Ticketmaster's

22   website in excess of the license granted by the Terms of Use posted thereon; and (5)

23   breaching or facilitating the breach by others of the Terms of Use posted on

24   Ticketmaster's website, as they may be amended from time to time.  Ticketmaster

25   also seeks to require the impoundment and destruction of all copies of all bots,

26   programs, or other automatic devices used by RMG and all persons acting for its

27   benefit or on its behalf to violate Ticketmaster's rights.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8

1

NOTICE OF APPLICATION AND
APPLICATION FOR ENTRY OF DEFAULT
JUDGMENT

1    Also as part of the proposed judgment, Ticketmaster seeks an award of
2    damages in the amount of $18,237,200, comprised of $10,237,200 based on
3    Ticketmaster's Eighth Claim for Relief for inducement to breach contract and Ninth
4    Claim for Relief for intentional interference with contractual relations, and $8
5    million based on Ticketmaster's First Claim for Relief for copyright infringement
6    and 17 U.S.C. Section 504.

7    Also as part of the proposed judgment, Ticketmaster seeks an award of
8    attorneys' fees under 17 U.S.C. Sections 505 and 1203(a)(5) based on the First
9    Claim for Relief for copyright infringement and the Second Claim for Relief for
10   violation of the Digital Millennium Copyright Act, California Penal Code Section
11   502(e) based on the Fourth Claim for Relief for violation of the California Penal
12   Code Section 502, and 18 U.S.C. Section 1964 based on the Fifth and Sixth Claims
13   for Relief for violation of RICO, 18 U.S.C. Sections 1962(c) and 1962(d).  This
14   application seeks fees in an amount to be calculated by reference to the fee schedule
15   in Local Rule 55-3, without waiver of any right by Ticketmaster or IAC to seek
16   actual attorneys' fees upon entry of a default judgment.  Based on damages of
17   $18,237,200, the amount of attorneys' fees recoverable under the Rule 55 schedule
18   would be $368,344.

19   Ticketmaster and IAC have provided notice of this application to
20   RMG on June 3, 2008 by mailing a copy of the application to RMG's Chief
21   Executive Officer, C.J. Garibay, at the address where RMG's former counsel served
22   its motion to withdraw as counsel from the case.

23   This application is based on this Notice of Application and
24   Application, the attached Memorandum of Points and Authorities, the attached
25   declarations of Donald R. Brown and Kevin McLain, the May 29, 2008 Order
26   entering default against RMG, the May 30, 2008 Order requiring Ticketmaster and
27   IAC to submit a proposed judgment on or before June 9, 2008, the proposed
28   Judgment and Permanent Injunction submitted concurrently herewith, all pleadings,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8

2

1    records and files herein, of which the Court is respectfully requested to take judicial

2    notice, and such other and further matters as may be presented in connection with

3    this application.

4    Dated: June 3, 2008          ROBERT H. PLATT
MARK S. LEE
5                             DONALD R. BROWN
MANATT, PHELPS & PHILLIPS, LLP

6

7

8                          By: _____
Donald R. Brown
9                             Attorneys for *Plaintiff and Counter-Defendant* TICKETMASTER L.L.C. and
10                             *Counter-Defendant*
IAC/INTERACTIVECORP

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8              3                   NOTICE OF APPLICATION AND
APPLICATION FOR ENTRY OF DEFAULT
JUDGMENT

264

1

# TABLE OF CONTENTS

2

Page

3   I.   INTRODUCTION ........................................................................... 1

4   II.   STATEMENT OF FACTS .............................................................. 2

5      A.   The Allegations of the First Amended Complaint Are Deemed True Because a Default Has Been Entered .............................. 2

6      B.   The Facts Which Supported Entry of a Preliminary Injunction Also Support Entry of a Permanent Injunction ..................................... 3

7

8         1.   Ticketmaster And Its Website ....................................... 3

        2.   Demand For Tickets .................................................... 4

9         3.   Ticketmaster's Technological Efforts To Maintain A Fair Website ........................................................ 5

10

11         4.   Ticketmaster's Contractual Efforts To Maintain A Fair Website ........................................................ 5

12         5.   Ticket Brokers ........................................................... 7

        6.   RMG's Wrongful Conduct ........................................... 7

13         7.   The Harm Caused By RMG's Wrongful Conduct ................... 11

14      C.   Additional Facts Relevant to Ticketmaster's Request for a Permanent Injunction and Damages ...................................... 12

15

16         1.   The Use of Automated Devices Has Continued ................... 12

        2.   Other Harm Resulting From RMG's Conduct ................... 13

17         3.   RMG Has Profited from its Misconduct ..................... 14

18   III.   TICKETMASTER IS ENTITLED TO A PERMANENT INJUNCTION ............................................................................. 15

19

20      A.   Ticketmaster Has Suffered Irreparable Injury ..................... 16

     B.   Money Damages Are Inadequate .......................................... 17

21      C.   The Balance of Harms Favors an Injunction ..................... 17

     D.   The Public Interest Favors a Permanent Injunction ............ 18

22      E.   RMG Will Almost Certainly Continue Its Misconduct in the Absence of a Permanent Injunction ...................................... 19

23

24   IV.   TICKETMASTER IS ENTITLED TO DAMAGES ..................... 19

25      A.   Ticketmaster is Entitled to Liquidated Damages from RMG's Inducement to Breach Contract and Intentional Interference with Contractual Relations ...................................................... 19

26

27      B.   Ticketmaster is Also Entitled to Disgorgement of the Profits RMG Derived By Infringing Ticketmaster's Copyrights ............ 21

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8

i

265

1

**TABLE OF CONTENTS**

2

(continued)

Page

3    V.    TICKETMASTER IS ENTITLED TO ATTORNEYS' FEES ....................22

4    VI.    THERE IS NO NEED FOR AN EVIDENTIARY HEARING....................22

     VII.    TICKETMASTER AND IAC HAVE PROVIDED NOTICE OF THIS

5            APPLICATION.............................................................................................23

6    VIII.    CONCLUSION .............................................................................................23

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8

ii

NOTICE OF APPLICATION AND
APPLICATION FOR ENTRY OF DEFAULT
JUDGMENT

266

# TABLE OF AUTHORITIES

**Page**

## CASES

*Corning Glass Works v. Jeannette Glass Co.,*
308 F. Supp. 1321 (S.D.N.Y.), *aff'd* 432 F.2d 784 (2nd Cir. 1970) ................ 18

*Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc.,*
722 F.2d 1319 (7th Cir. 1983) ........................................................................ 22

*eBay, Inc. v. MercExchange, LLC,*
547 U.S. 388, 126 S. Ct 1837 (2006) ............................................................. 16

*Geddes v. United Financial Group,*
559 F.2d 557 (9th Cir. 1977) ............................................................................ 3

*GHK Assoc. v. Mayer Group, Inc.,*
224 Cal. App. 3d 856 (1990) .......................................................................... 20

*MAI Sys. Corp. v. Peak Computer, Inc.,*
991 F.2d 511 (9th Cir. 1993) .......................................................................... 16

*Metro-Goldwyn-Mayer Studios, Inc., v. Grokster, Ltd.,*
518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................... 17, 18

*Register.com, Inc. v. Verio, Inc.,*
126 F. Supp. 2d 238 (S.D.N.Y. 2000), *aff'd.*, 356 F.3d 393 (2d Cir.
2004) ............................................................................................................... 17

*Seaboard Music Co. v. Germano,*
24 Cal. App. 3d 618 (1972) ............................................................................ 20

*TeleVideo Sys., Inc. v. Heidenthal,*
826 F.2d 915 (9th Cir. 1987) ............................................................................ 3

*Ticketmaster L.L.C. v. RMG Technologies, Inc.,*
507 F. Supp. 2d 1096 (C.D. Cal. 2007) ........................................................... 3

*Triad Sys. Corp. v. SE. Exp. Co.,*
64 F. 3d, 1330 (9th Cir. 1995) ....................................................................... 17

*Western Oil & Fuel Co. v. Kemp,*
245 F.2d 633 (8th Cir. 1957) ......................................................................... 20

## STATUTES

17 U.S.C. § 1203 ............................................................................................. 15

17 U.S.C. § 1203(a)(5) .................................................................................... 22

17 U.S.C. § 502 ............................................................................................... 15

17 U.S.C. § 504(a)(1) ...................................................................................... 21

17 U.S.C. § 504(b) ..................................................................................... 21, 22

17 U.S.C. § 505 ............................................................................................... 22

18 U.S.C. § 1030(g) ........................................................................................ 15

18 U.S.C. § 1962(c) ........................................................................................ 15

18 U.S.C. § 1962(d) ........................................................................................ 15

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8

iii

267

NOTICE OF APPLICATION AND
APPLICATION FOR ENTRY OF DEFAULT
JUDGMENT

**TABLE OF AUTHORITIES**
(continued)

Page

18 U.S.C. § 1964.................................................................................15, 22
California Penal Code § 502....................................................1, 2, 15, 22
California Penal Code § 502(e) .........................................................15, 22

**RULES**

F.R.C.P. 55(b)(2) .................................................................................22, 23
Local Rule 55-2 ........................................................................................23
Local Rule 55-3 ....................................................................................2, 22

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8

iv

NOTICE OF APPLICATION AND
APPLICATION FOR ENTRY OF DEFAULT
JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This Court has already entered a default against RMG.  Ticketmaster and IAC now seek entry of a default judgment, including a permanent injunction and an award of damages and attorneys' fees, to end this action.

As alleged in Ticketmaster's First Amended Complaint, RMG designs, manufactures, distributes and supports automated devices that enable its customers to jump to the front of the line on Ticketmaster's website, thus denying legitimate consumers a fair opportunity to buy tickets.  Ticketmaster has asserted claims against RMG for copyright infringement, violation of the Digital Millennium Copyright Act, violation of the Computer Fraud and Abuse Act, violation of California Penal Code Section 502, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), breach of contract, inducing breach of contract, intentional interference with contractual relations, fraud, and aiding and abetting fraud.  Ticketmaster's First Amended Complaint seeks a permanent injunction, compensatory damages, treble damages, punitive damages, disgorgement of RMG's ill-gotten gains, imposition of a constructive trust, and recovery of attorneys' fees and costs incurred by Ticketmaster to prosecute this lawsuit.

Entry of a permanent injunction at this time is necessary and appropriate.  Earlier in this case, the Court entered a preliminary injunction based on the irreparable harm RMG's automated devices were causing to Ticketmaster and the public.  The same factors that warranted entry of a preliminary injunction against RMG still apply.  A permanent injunction is needed to ensure that RMG does not recommence infringing activity after judgment is entered.

Ticketmaster also respectfully requests damages in the amount of $18,237,200, comprised of $10,237,200 based RMG's inducement to breach contract and interference with contractual relations, and $8 million based on profits

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                                    1

NOTICE OF APPLICATION AND
APPLICATION FOR ENTRY OF DEFAULT
JUDGMENT

269

1  derived by RMG through its direct and contributory copyright infringement.   In

2  confining its request for damages to these claims and in these amounts in the

3  interest of judicial economy, Ticketmaster is not waiving any right or contention

4  regarding other damages as alleged in the First Amended Complaint.

5        Ticketmaster further requests an award of attorneys' fees in

6  accordance with the schedule in Local Rule 55-3, based on Ticketmaster's claims

7  under copyright laws, the Digital Millennium Copyright Act, California Penal Code

8  Section 502, and civil RICO.   In seeking fees under the Local Rule 55-3 schedule,

9  neither Ticketmaster nor IAC is waiving any right to apply for actual fees upon

10  entry of the requested default judgment.

11  **II.    STATEMENT OF FACTS**

12        There are three primary factual bases for the relief requested in this

13  application: (i) the allegations of the First Amended Complaint, (ii) evidence

14  previously submitted in support of Ticketmaster's motion for a preliminary

15  injunction, and (iii) additional evidence submitted with this application.

16        **A.    The Allegations of the First Amended Complaint Are Deemed**

17        **True Because a Default Has Been Entered.**

18        On April 8, 2008, the Court granted the motion of RMG's counsel to

19  withdraw as counsel.   RMG is a corporation and thus can neither prosecute claims

20  nor defend against claims except through counsel.   After RMG failed to retain new

21  counsel within a reasonable time, Ticketmaster and IAC moved to enter default

22  against RMG, and that motion was granted on May 29, 2008.   The Court ordered

23  that a default be entered against RMG, that RMG's Answer to the First Amended

24  Complaint be stricken, and that RMG's Second Amended Counterclaims be

25  dismissed with prejudice.   On May 30, 2008, the Court ordered Ticketmaster and

26  IAC to file a proposed judgment "immediately" and in no event later than June 9,

27  2008.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                             2                  NOTICE OF APPLICATION AND
                                                         APPLICATION FOR ENTRY OF DEFAULT
                                                                              JUDGMENT

270

1    Because a default has been entered, the factual allegations in the First

2  Amended Complaint must be treated as true. *TeleVideo Sys., Inc. v. Heidenthal*,

3  826 F.2d 915, 917-18 (9th Cir. 1987), *quoting Geddes v. United Financial Group,*

4  559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the

5  factual allegations of the complaint, except those relating to the amount of

6  damages, will be taken as true.").

7    **B.    The Facts Which Supported Entry of a Preliminary Injunction**
        **Also Support Entry of a Permanent Injunction.**
8

9    This Court entered a preliminary injunction against RMG on October

10  16, 2007, and entered Findings of Fact and Conclusions of Law in support of its

11  preliminary injunction ruling on October 26, 2007. *See Ticketmaster L.L.C. v.*

12  *RMG Technologies, Inc.*, 507 F. Supp. 2d 1096 (C.D. Cal. 2007).

13    All of the facts and supporting evidence discussed below were

14  previously submitted to the Court in support of Ticketmaster's preliminary

15  injunction motion, and thus have previously been considered by the Court in

16  substantial detail.  Rather than re-file this extensive evidence, Ticketmaster will

17  merely cite to it by reference to previous filings which contain the evidence and the

18  Courts' Findings of Fact and Conclusions of Law.  Ticketmaster will also cite to

19  now-admitted allegations in the First Amended Complaint that support these facts.

20    1.    Ticketmaster And Its Website

21    Ticketmaster distributes tickets for live entertainment events to the

22  general public on behalf of Ticketmaster's clients, which are venues, promoters,

23  entertainers and sports franchises.  Those clients contract with Ticketmaster to

24  distribute their tickets because of Ticketmaster's demonstrated ability to do so

25  quickly, efficiently and fairly. (Declaration of Kevin McLain, dated August 24,

26  2007 and filed August 27, 2007 (Docket No. 28) in support of motion for

27  preliminary injunction ("*August 24, 2007 McLain Decl.*") ¶ 2; Findings of Fact and

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8

3

NOTICE OF APPLICATION AND
APPLICATION FOR ENTRY OF DEFAULT
JUDGMENT

271

1   Conclusions of Law (Docket No, 61) ("*Findings*"), Fact No, 1; First Amended

2   Complaint ("*FAC*") ¶ 11.) [1]

3          Ticketmaster sells tickets through various distribution channels,

4   including its website, viewable at "http://www.ticketmaster.com"

5   ("ticketmaster.com"). Ticketmaster created its website for consumers who want to

6   purchase event tickets for their own, personal use. (*August 24, 2007 McLain Decl.*

7   ¶ 3; *Findings*, Fact No. 1; *FAC* ¶ 11.)

8          Consumers generally must first visit ticketmaster.com's home page,

9   and then navigate through a series of web pages, to buy tickets. Consumers

10  navigate through those pages by clicking on designated hypertext "links" located on

11  each of those pages, culminating in a ticket purchase page. Viewing any

12  Ticketmaster web page causes electronic copies of each of those pages to be created

13  and to appear on a user's computer screen. (*August 24, 2007 McLain Decl.* ¶ 4;

14  Declaration of Adam Lieb (Docket No. 28) in support of motion for preliminary

15  injunction ("*Lieb Decl.*") ¶ 8; *Findings*, Fact No. 3; *FAC* ¶ 20.) Ticketmaster has

16  obtained copyright registrations for various versions of its website or portions

17  thereof, including registrations for its home page, event purchase pages, and access

18  control and copy protection systems. (Declaration of Mark S. Lee (Docket No. 28)

19  in support of motion for preliminary injunction ("*Lee Decl.*") ¶ 2; *August 24, 2007*

20  *McLain Decl.* ¶ 5 and Exh. 2; *Findings*, Fact No. 11 and Concl. No. 3; *FAC* ¶ 15.)

21          2.   Demand For Tickets

22          The number of tickets available for purchase for any particular event is

23  determined by Ticketmaster's clients. Demand for tickets sold through

24  ticketmaster.com often exceeds the supply of tickets available for purchase. Such

25  high demand for entertainment events inspires intense competition to purchase

26

27  [1]   Ticketmaster submitted several declarations by Kevin McLain in connection
    with the preliminary injunction. Therefore, each McLain declaration discussed
28  above will be identified by date.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                           4         NOTICE OF APPLICATION AND
                                               APPLICATION FOR ENTRY OF DEFAULT
                                               JUDGMENT

272

1   tickets, because many consumers seek to acquire the same tickets to the same event

2   at the same time, *i.e.*, when they go "on sale" on ticketmaster.com.  Recognizing

3   this competitive reality, Ticketmaster tries to make the ticket buying process as fair

4   and equitable to consumers as possible. (*August 24, 2007 McLain Decl.* ¶ 6; *FAC*

5   ¶¶ 12-13.)

6          3.     Ticketmaster's Technological Efforts To Maintain A Fair
                  Website

7

8          Ticketmaster has engaged in extensive technical efforts to make the

9   ticket purchasing process on ticketmaster.com as fair and equitable to consumers as

10  possible.  Among other things, it tries to prevent the use of computer programs,

11  sometimes called "software robots" or "bots," that provide an unfair advantage over

12  human consumers in the ticket purchasing process.  It also blocks people who use

13  such programs to buy tickets when it discovers them. (*August 24, 2007 McLain*

14  *Decl.* ¶¶ 7-8, 22; *Findings*, Fact No. 16; *FAC* ¶¶ 13-14.)

15         One of the technical measures Ticketmaster has undertaken is a

16  security computer program, commonly known as CAPTCHA ("Completely

17  Automated Public Turing Test To Tell Computers And Humans Apart"), that is

18  designed to distinguish between human users and computer programs.  With

19  CAPTCHA, a box appears on a user's computer screen with stylized, partially

20  obscured random characters whenever a user submits a ticket request.  The user

21  must retype those characters to proceed to purchase tickets.  Most automated

22  devices cannot decipher and retype these random characters, and thus cannot

23  proceed past that screen to complete a ticket transaction. (*August 24, 2007 McLain*

24  *Decl.* ¶ 9 and Exh. 3; *Findings*, Fact Nos. 16-18 and Concl. No. 25; *FAC* ¶ 14.)

25         4.     Ticketmaster's Contractual Efforts To Maintain A Fair Website

26         Use of ticketmaster.com requires the acceptance of contractual

27  provisions that restrict access to the website and give consumers the fairest

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                           5               NOTICE OF APPLICATION AND
                                                     APPLICATION FOR ENTRY OF DEFAULT
                                                     JUDGMENT

273

1   opportunity to purchase tickets from ticketmaster.com at the "face" price.   The

2   ticketmaster.com home page prominently displays the following warning:

3           "Use of this website is subject to express Terms of Use
            which prohibit commercial use of this site. By continuing
4           past this page, you agree to abide by these terms."

5   The underlined phrase "Terms of Use" on the home page is a readily visible

6   hypertext link that, when clicked, causes the full Terms of Use to appear on the

7   user's screen.   The same message and hyperlink appear on virtually every webpage

8   on ticketmaster.com.   (*August 24, 2007 McLain Decl.* ¶¶ 10-11 and Exhs. 4-5;

9   *Findings*, Fact No. 3; *FAC* ¶¶ 16-17.)

10          Users of ticketmaster.com must affirmatively agree to the Terms of

11  Use to purchase tickets.   Since 2003, users of ticketmaster.com have had to

12  affirmatively agree to Ticketmaster's Terms of Use as part of the account setup

13  procedure.   Since mid-2006, users have had to affirmatively agree to the Terms of

14  Use every time they purchase tickets. (*August 24, 2007 McLain Decl.* ¶¶ 12-13 and

15  Exhs. 6-7; *Findings*, Fact No. 3; *FAC* ¶¶ 18-19.)

16          Ticketmaster's Terms of Use act as a license agreement that describes,

17  *inter alia*, when and under what conditions a user may permissibly access and copy

18  pages from ticketmaster.com.   Among other things, the Terms of Use permit access

19  only for personal use, prohibit commercial use of Ticketmaster's website, prohibit

20  the use of "bots" and other computer programs to access ticketmaster.com, and

21  prohibit unauthorized use of the site. (*August 24, 2007 McLain Decl.* ¶ 14 and Exh.

22  8; *Findings*, Fact No. 2 and Concl. Nos. 7, 9; *FAC* ¶¶ 20-24.)

23          The Terms of Use also prohibit consumers from purchasing more than

24  a specified number of tickets in a single transaction, pursuant to Ticketmaster's

25  "ticket purchase policy."   The Terms of Use contain a hyperlink to and expressly

26  incorporate the ticket purchase policy.   Ticket limits are meant to ensure that more

27  individuals have fair access to event tickets.   The ticket limit for a particular event

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                                          6                NOTICE OF APPLICATION AND
                                                            APPLICATION FOR ENTRY OF DEFAULT
                                                                                    JUDGMENT

274

1    is included on the event page and ticket purchase page. (*August 24, 2007 McLain*

2    *Decl.* ¶ 15 and Exh. 9; *FAC* ¶¶ 25-26.)

3         5.    Ticket Brokers

4         Certain individuals and entities have capitalized on the demand for

5    event tickets by circumventing Ticketmaster's technical measures, breaching its

6    Terms of Use, and using computer programs to improperly access and copy

7    portions of Ticketmaster's website. They do this to robotically "cut in line" in front

8    of human customers so they can acquire and resell tickets at prices far above that

9    designated by the sponsors of the event (the "face" price shown on the ticket).

10   Such persons, sometimes called "ticket brokers," reduce the number of tickets

11   available for fans and customers at the "face" price. Ticketmaster has undertaken

12   the technical and legal measures described above to try to prevent such actions.

13   (*August 24, 2007 McLain Decl.* ¶ 16; *Findings*, Fact No. 4; *FAC* ¶ 28.)[2]

14        6.    RMG's Wrongful Conduct

15        RMG has developed marketed and sold approximately 21 computer

16   programs that enable its ticket broker customers to access Ticketmaster's website,

17   block access to the best tickets, copy purchase pages, and quickly purchase large

18   quantities of tickets faster than human customers can. (*Lee Decl.* ¶¶ 3-5 and

19   Exhs. 10-12; *August 24, 2007 McLain Decl.* ¶ 25 and Exh. 1; *Lieb Decl.* ¶ 8 and

20   Exhs. 13-16; Declaration of Chris Kovach (Docket No. 28) in support of motion for

21   preliminary injunction ("*Kovach Decl.*") ¶ 3; *Findings*, Fact No. 4 and Concl. Nos.

22   12-13; *see also FAC* ¶ 28.) Those automated devices are designed to, and do, allow

23   RMG's customers to covertly circumvent Ticketmaster's access control and copy

24   protection systems, including CAPTCHA. (*Kovach Decl.* ¶¶ 5-9; *August 24, 2007*

25   ───────────────
     [2]    This case is <u>not</u> about stopping ticket reselling. Ticketmaster has no
26   objection to ticket reselling that complies with applicable laws and the Terms of
     Use of its website. Instead, this case is about fairness, and RMG's use of technical
27   measures to improperly access Ticketmaster's website, breach its Terms of Use,
     and give its clients an unfair technological advantage over consumers in the ticket
28   purchasing process.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                         7          NOTICE OF APPLICATION AND
                                              APPLICATION FOR ENTRY OF DEFAULT
                                              JUDGMENT

275

1  *McLain Decl.* ¶ 25 and Exh. 1; *FAC* ¶ 30; *see also Findings*, Fact No. 10 and Concl.
2  Nos. 12-13.)  RMG boasts that its programs "do the work of a dozen people at
3  once[,]" and employ "stealth technology" so its customers "**never get blocked by**
4  **Ticketmaster**."  (*August 24, 2007 McLain Decl.* ¶ 25 and Exh. 1, emphasis in
5  original; *Findings*, Fact No. 6 and Concl. No. 13; *see also FAC* ¶ 30.)

6          RMG had to visit, and thereby copy pages from, Ticketmaster's
7  website to develop its computer programs. (*Lieb Decl.* ¶ 9; *Findings*, Fact Nos. 5,
8  13 and Concl. No. 8; *FAC* ¶ 33.)  RMG necessarily saw repeated reminders of the
9  Terms of Use each time it viewed a ticketmaster.com webpage during that process.
10 (*August 24, 2007 McLain Decl.* ¶¶ 9-12, Exhs. 4-6; *Findings*, Fact No. 13 and
11 Concl. Nos. 8, 27; *FAC* ¶ 33.)  RMG necessarily purchased tickets on
12 Ticketmaster's website as part of the ongoing testing of its computer programs, and
13 has affirmatively clicked on the "accept" button on the ticket purchase page with
14 each purchase. (*August 24, 2007 McLain Decl.* ¶¶ 12-13 and Exhs. 6-7; *Lieb Decl.*
15 ¶ 9; *Findings*, Fact Nos. 5, 13; *FAC* ¶ 33.)  RMG's unauthorized invasions into and
16 copying from Ticketmaster's website exceed the scope of the license created by and
17 breach the Terms of Use.  (*August 24, 2007 McLain Decl.* ¶ 14 and Exh. 8;
18 *Findings*, Concl. Nos. 17, 27; *FAC* ¶¶ 34 and 48.)

19         RMG also participates with its ticket broker customers in every
20 unauthorized access of Ticketmaster's website and every breach of Ticketmaster's
21 Terms of Use.  RMG's ticket broker customers do not acquire physical possession
22 of or download RMG's software.   Instead, they log onto RMG's website at
23 "www.ticketbrokertools.com" and use a suite of devices and products available
24 there to improperly access Ticketmaster's website in excess of the authorization
25 granted by Ticketmaster's Terms of Use.  (*Kovach Decl.* ¶ 4; *August 24, 2007*
26 *McLain Decl.*, Exh. 1; *Lieb Decl.* ¶ 8 and Exhs. 13-16; *FAC* ¶¶ 29-31; *see also*
27 *Findings*, Fact No. 9 and Concl. Nos. 12-13.)

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                           8          NOTICE OF APPLICATION AND
                                                APPLICATION FOR ENTRY OF DEFAULT
                                                JUDGMENT

276

1    RMG provides a variety of online software schemes to maximize the

2    effectiveness of its "stealth technology." (*Kovach Decl.* ¶¶ 5-9; *McLain Decl.* ¶ 25,

3    Exh. 1; *Lieb Decl.* ¶ 8; *FAC* ¶¶ 29-30; *see also Findings*, Fact Nos. 9-10 and Concl.

4    Nos. 12-13.)  Among other things, RMG utilizes a computer program known as a

5    "proxy server" to accomplish its goals and conceal its and its customers' identities.

6    (*Lieb Decl.* ¶ 8 and Exhs. 12, 14-16; *Findings*, Concl. Nos. 12-13.)  Through the

7    proxy server, RMG rewrites ticketmaster.com's own domain names to help it

8    overcome Ticketmaster's technical protections. (*Lieb Decl.* ¶ 8.)  Depending on the

9    level of service and features a customer purchases from RMG, it can use multiple

10   bots—sometimes hundreds of them—to simultaneously flood the Ticketmaster

11   website with requests for tickets. (*Kovach Decl.* ¶ 5; *Findings*, Concl. No. 12; *FAC*

12   ¶ 30.)

13   RMG and its customers purchase tickets on a massive scale, thereby

14   denying the public access to tens of thousands of the best tickets to many events.

15   One RMG customer alone placed about 9,500 orders to purchase almost 24,000

16   tickets using RMG's technology; and while Ticketmaster does not know how many

17   customers RMG has, two other known RMG customers have purchased a total of

18   about 36,000 tickets, and RMG customers have purchased more than 65,800 tickets

19   so far in 2007 alone.  Indeed, for one event, RMG's customers acquired about 40%

20   of the tickets in one of the most desirable sections and 13% of all "floor" seats; they

21   also acquired significant portions of tickets to other events. (*August 24, 2007*

22   *McLain Decl.* ¶ 24; *see also Findings*, Fact Nos. 7-8, 24; *FAC* ¶¶ 39-40.)

23   Further, RMG and its customers make millions of ticket requests, and

24   thus copy millions of copies of ticketmaster.com web pages, through their ticket

25   purchases.  Ticketmaster tracked over 425,000 automated ticket requests from one

26   individual who used RMG technology on one day, and about 600,000 automated

27   ticket requests from another individual who used RMG technology on another day.

28   Ticketmaster estimates that RMG and the three identified RMG customers alone

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                               9            NOTICE OF APPLICATION AND
                                                      APPLICATION FOR ENTRY OF DEFAULT
                                                      JUDGMENT

277

1    copied millions of pages in this manner to purchase the 60,000 tickets they bought

2    for resale.  Consistent with that estimate, Ticketmaster has confirmed that millions

3    of automated ticket requests have been made to ticketmaster.com on many days,

4    with automated requests constituting up to 80% of all ticket requests made to

5    ticketmaster.com on some days.  Ticketmaster also estimates that on one day after

6    this lawsuit was filed, RMG customers contacted ticketmaster.com at least once

7    every .25 seconds.  (*August 24, 2007 McLain Decl.* ¶¶ 23-24, 27; Supplemental

8    Reply Declaration of Kevin McLain dated and filed October 5, 2007 (Docket No.

9    54) in support of motion for preliminary injunction ("*October 5, 2007 McLain*

10    *Decl.*"); *see also Findings*, Fact Nos. 7-8, 24 and Concl. No. 20; *FAC* ¶ 34.)

11           RMG conceals its actions from Ticketmaster in various ways.  It

12    spreads its automated requests for tickets over multiple IP addresses to conceal the

13    source of its requests, and helps customers obtain new IP addresses from their

14    internet service providers.  (*Lieb Decl.* ¶ 8e; *Kovach Decl.* ¶ 11; *Findings*, Fact No.

15    10; *FAC* ¶¶ 36-37.)  RMG also screens potential customers to ensure that they have

16    no affiliation with or loyalty to Ticketmaster and warns its customers not to

17    publicize the existence of RMG's ticket buying services.  If an existing customer

18    wishes to recommend RMG's services to another broker, he or she is instructed to

19    provide the name of the potential customer to RMG, so that RMG may first screen

20    the potential customer before deciding whether to initiate contact.  (*Kovach Decl.*

21    ¶¶ 3, 12, and Exh. 18; *Findings*, Fact No. 10; *FAC* ¶ 32.)

22           If a customer encounters any obstacle in securing tickets or

23    circumventing Ticketmaster's security measures, the customer may immediately

24    consult with an RMG representative to receive advice concerning how to obtain

25    improper access to the Ticketmaster website.  RMG also offers consulting services

26    to enable its customers to set up hardware, telecommunications equipment and

27    other tools to expand their invasion of Ticketmaster's website.  (*Kovach Decl.*

28    ¶¶ 10-11; *Findings*, Fact No. 9; *FAC* ¶ 31.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                10          NOTICE OF APPLICATION AND
APPLICATION FOR ENTRY OF DEFAULT
JUDGMENT

278

7.     The Harm Caused By RMG's Wrongful Conduct

As described below, the use of automated devices to access Ticketmaster's website for commercial purposes causes ongoing expenses of technical countermeasures, harm to Ticketmaster's goodwill, and continued harm to the public trying to obtain tickets. (*August 24, 2007 McLain Decl.* ¶¶ 8-9, 20-21, 30-35; *Findings*, Fact Nos. 19-22, 24-26 and Concl. No. 36; *FAC* ¶¶ 35-45.)

The massive volume of ticket requests strains Ticketmaster's technical systems, and forces Ticketmaster to incur significant expense to increase the scale of its infrastructure to insure that its computer systems will remain functional in the face of the overwhelming increase in traffic caused by automated ticket requests. (*August 24, 2007 McLain Decl.* ¶ 34; *FAC* ¶ 45.)  Ticketmaster has been forced to reassign its technical personnel from productive development tasks that would improve the functionality of its website to technical measures to mitigate the harm caused by these automated invasions, as well as discover who is invading its computer systems. (*August 24, 2007 McLain Decl.* ¶¶ 20-21; *FAC* ¶ 45.)  It is impossible for Ticketmaster to precisely calculate the costs it has incurred through these efforts, but it easily amounts to more than hundreds of thousands of dollars per year. (*August 24, 2007 McLain Decl.* ¶ 21.)

Although Ticketmaster's technical countermeasures have had some success, automated intrusions continue, and Ticketmaster will continue to have to incur significant expenses to combat this problem, and to divert precious resources from important, more productive endeavors. (*August 24, 2007 McLain Decl.* ¶¶ 34-35.)  It is not realistic to believe that technical countermeasures, no matter how expensive or extensive, can ever fully stop this problem.

RMG's misconduct also injures Ticketmaster's goodwill in ways that are real but impossible to quantify, and in ways that are difficult if not impossible to repair. Many consumers are unable to purchase event tickets from Ticketmaster at the face price because ticket brokers using RMG's programs have already blocked

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                               11                      NOTICE OF APPLICATION AND
APPLICATION FOR ENTRY OF DEFAULT
JUDGMENT

279

1    their access to and purchased such tickets. Such customers understandably become
2    frustrated and tend to blame Ticketmaster for the unavailability of these tickets.
3    (Declaration of Steven J. Obara (Docket No. 28) in support of motion for
4    preliminary injunction ("*Obara Decl.*") ¶ 4 and Exh. 19; *Lee Decl.* ¶¶ 7-8 and Exhs.
5    20-21; *Findings*, Fact Nos. 19-22; *FAC* ¶¶ 39-40.) Many complain to Ticketmaster,
6    and accuse Ticketmaster of colluding with brokers to divert tickets. (*Obara Decl.*
7    ¶¶ 3-5 and Exh. 19.) Others complain in public forums, exacerbating the goodwill
8    problem. RMG's actions also threaten to harm Ticketmaster's client relationships
9    by impairing its ability to provide accurate ticket sales information and jeopardizing
10   the fairness of its online ticket purchasing system. (*August 24, 2007 McLain Decl.*
11   ¶¶ 36-41; *Findings*, Fact No. 25; *FAC* ¶ 40.)

12          Ticketmaster will suffer such harm as long as RMG and its customers
13   are permitted to use their computer programs to invade Ticketmaster's website.
14   Further, the public will continue to be denied a chance to buy tickets at the "face"
15   price, and will continue to pay RMG's customers' inflated prices to acquire those
16   tickets, unless this Court permanently orders RMG to stop its misconduct.

17          **C.**   **Additional Facts Relevant to Ticketmaster's Request for a**
18          **Permanent Injunction and Damages.**

19          1.   The Use of Automated Devices Has Continued.

20          In the time since the preliminary injunction was entered in October
21   2007, automated devices, including RMG's, have continued to access
22   Ticketmaster's website. (Declaration of Kevin McLain dated June 3, 2008,
23   attached hereto ("*June 3, 2008 McLain Decl.*") ¶ 2.) As described in the
24   Declaration of Kevin McLain dated November 6, 2007 (Docket No. 66), two of
25   RMG's customers, Thomas Prior and Gary Bonner, used RMG's automated devices
26   to access Ticketmaster's website in the weeks after the preliminary injunction was
27   entered.

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

41283767.8

12

NOTICE OF APPLICATION AND
APPLICATION FOR ENTRY OF DEFAULT
JUDGMENT

280

1    Prior, a defendant in a related action, has continued to use RMG's
2    devices even up to the present. In verified discovery responses from the related
3    action, Prior explained that he only uses automated devices from RMG.
4    (Declaration of Donald R. Brown attached hereto ("*Brown Decl.*") ¶ 3 and Exh. 1.)
5    As a recent example, on May 13, 2008, Prior made 917 requests to Ticketmaster's
6    website in a single hour from one IP address. That volume can only be achieved
7    through the use of automated devices. (*June 3, 2008 McLain Decl.* ¶ 2.)

8            2.      Other Harm Resulting From RMG's Conduct.

9            The First Amended Complaint describes harm to Ticketmaster's
10   website and infrastructure that was only briefly argued in support of the motion for
11   preliminary injunction but is relevant to the need for a permanent injunction. Every
12   ticket request to Ticketmaster's website causes tickets to be placed temporarily on
13   reserve. When a large number of requests is made through an automated device,
14   not only is the inventory of tickets for legitimate consumers diminished, but
15   Ticketmaster's ability to provide an important service to its clients is compromised.
16   Clients use the Ticketmaster system to monitor ticket sales activity to make a
17   variety of decisions, including whether to open more seats or move the seats to
18   other distribution channels. The artificially high volume of seats revolving in and
19   out of reserve status due to the use of automated devices makes it difficult to gauge
20   how well tickets for the event are actually selling, which in turn interferes with the
21   clients' ability to make the ongoing decisions that are based on sales activity. (*FAC*
22   ¶ 40.)

23           In addition, Ticketmaster's website allocates traffic to various servers
24   through a load balancing program that is designed to ensure consumer requests are
25   processed equitably and that no consumer receives slower service merely because
26   his or her request was directed to one server rather than another. However, users of
27   automated devices bypass the load balancing program and target specific servers
28   directly with thousands of requests, thus interfering with the website's traffic

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                                  13          NOTICE OF APPLICATION AND
                                                        APPLICATION FOR ENTRY OF DEFAULT
                                                        JUDGMENT

281

1   allocation feature and putting some consumers whose requests were allocated to the
2   same server that was targeted by the automated device at risk of slower service.
3   (*FAC* ¶ 41.)

4           Further, Ticketmaster's website is part of a carefully crafted business
5   model that integrates other services and features into the ticket purchasing process.
6   The website is designed so that users will follow certain steps and will see certain
7   pages in the process of requesting and purchasing tickets. Based on this expected
8   flow of traffic, clients, advertisers and Ticketmaster itself offer particular services
9   or opportunities on particular pages, ranging from parking at the event to signing up
10  for client newsletters. However, automated devices, which do not use traditional
11  browsers, bypass the HTML code for these features, so the users of those devices
12  never even see these offers. These same offenders further exacerbate the problem
13  by purchasing enormous quantities of tickets, which diminishes the ticket inventory
14  for legitimate consumers and reduces the number of legitimate consumers who will
15  reach the pages that provide these up-sell opportunities. (*FAC* ¶ 42.)

16          Automated devices also alter the security features of the website itself
17  by accessing the Ticketmaster system at targeted points. Normally, users receive
18  automatic and temporary permission—in effect, a token—to make requests on the
19  system. That token is automatically revoked if the pace of requests exceeds a
20  certain limit. However, by systematically deleting cookies on the user's system,
21  automated devices enable the user to constantly assume a new identity and acquire
22  new tokens even though that same user is far exceeding the request limit. (*FAC* ¶
23  43.)

24          3.   RMG Has Profited from its Misconduct.

25          RMG has earned substantial revenue through its automated devices.
26  According to a March 2008 article in TicketNews—which was based on an
27  "exclusive interview" with RMG's President, C.J. Garibay—RMG was "generating
28  more than $12 million in annual revenues." (*Brown Decl.* ¶ 4, Exh. 2.) Moreover,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                                        14        NOTICE OF APPLICATION AND
                                                           APPLICATION FOR ENTRY OF DEFAULT
                                                                              JUDGMENT

282

1    during a videotaped May 13, 2008 interview on an ESPN news program, Garibay

2    said that gross sales from RMG's automated devices were $2 million in 2007.

3    (*Brown Decl.* ¶¶ 5-6, Exhs. 3-4.)  Even accepting the more conservative of these

4    two figures, RMG has earned annual revenues of $2 million through its

5    Ticketmaster-related automated devices.[3]

6            Assuming, *arguendo*, that RMG started marketing and distributing

7    these devices at the beginning of 2004 (there is reason to believe RMG started

8    sooner) and that RMG's revenues from those devices ceased by the end of 2007,

9    RMG has derived at least $8 million in revenue through these devices.

10   **III.    TICKETMASTER IS ENTITLED TO A PERMANENT INJUNCTION**

11           Ticketmaster is entitled to a permanent injunction under its breach of

12   contract claim as well as the various statutory claims.  The website's Terms of Use

13   expressly provide for injunctive relief in the event of a breach of the Terms of Use.

14   Moreover, the following statutes provide for injunctive relief: 17 U.S.C. § 502

15   (First Claim for Relief for copyright infringement); 17 U.S.C. § 1203 (Second

16   Claim for Relief for violation of the Digital Millennium Copyright Act); 18 U.S.C.

17   § 1030(g) (Third Claim for Relief for violation of the Computer Fraud and Abuse

18   Act); California Penal Code § 502(e) (Fourth Claim for Relief for violation of the

19   California Penal Code Sec 502); and 18 U.S.C. § 1964 (Fifth and Sixth Claims for

20   Relief for violation of RICO, 18 U.S.C. §§ 1962(c) and 1962(d)).

21           To obtain a permanent injunction, Ticketmaster "must demonstrate: (1)

22   that it has suffered an irreparable injury; (2) that remedies available at law, such as

23   monetary damages, are inadequate to compensate for that injury; (3) that,

24   considering the balance of hardships between the plaintiff and defendant, a remedy

25   in equity is warranted; and (4) that the public interest would not be disserved by a

26   permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 126 S. Ct

27

---

28   [3]    Because RMG has defaulted, Ticketmaster has not had the opportunity to
     obtain revenue figures from RMG in discovery. (*Brown Decl.* ¶ 7.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                          15          NOTICE OF APPLICATION AND
                                                APPLICATION FOR ENTRY OF DEFAULT
                                                JUDGMENT

283

1   1837, 1839-40 (2006). Such injunctions are routinely granted where copyright

2   infringement is shown. *See, e.g., MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d

3   511, 520 (9th Cir. 1993) ("as a general rule, a permanent injunction will be granted

4   when liability has been established and there is a threat of continuing violations").

5   RMG should be permanently enjoined under these criteria.

6           **A.**    **Ticketmaster Has Suffered Irreparable Injury.**

7           RMG's actions have significantly harmed Ticketmaster, and will

8   continue to cause harm if RMG is permitted to distribute its infringing software

9   products after termination of this case. Should that occur, Ticketmaster would once

10  again be faced with massive numbers of automated ticket requests that strain its

11  technical systems. Ticketmaster would again have to reassign technical personnel

12  from productive tasks that improve the functionality of its website to technical

13  measures to mitigate the harm caused by automated intrusions. (*August 24, 2007*

14  *McLain Decl.* ¶ 21.) It would again be faced with frustrated consumers who are

15  denied a fair opportunity to buy tickets. (*Obara Decl.* and Exh. 20; *Findings*, Fact

16  Nos. 19-22 and Concl. No. 36.)

17          Moreover, Ticketmaster could again be faced with nationwide negative

18  publicity in which frustrated consumers mistakenly blame Ticketmaster for their

19  inability to get tickets. (*Lee Decl.*; *Obara Decl.* and Exhs. 19-20; *Findings*, Fact

20  Nos. 20-22.) Ticketmaster could again have to address governmental investigations

21  that are driven by the misimpression that Ticketmaster is colluding with ticket

22  brokers to deny the public a fair opportunity to buy tickets. (Declaration of Mark S.

23  Lee dated September 24, 2007 (Docket No. 49) in support of motion for

24  preliminary injunction ("*Sept. 24, 2007 Lee Decl.*") and Exh. 24, pp. 46-47, and

25  Exhs. 25-26; *Findings*, Fact No. 22.) In addition, Ticketmaster would again risk

26  losing clients if they are publicly criticized for using Ticketmaster to sell their

27  tickets. (*August 24, 2007 McLain Decl.* ¶¶ 35-41; *Findings*, Fact No. 25.)

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8      16      NOTICE OF APPLICATION AND
APPLICATION FOR ENTRY OF DEFAULT
JUDGMENT

284

1          Such losses are "irreparable" and support a permanent injunction.

2   *Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238, 252 (S.D.N.Y. 2000), *aff'd.*,

3   356 F.3d 393, 404 (2d Cir. 2004) (potential harm from loss of customers and

4   uncertain but significant expense involved in insuring that computer system can

5   withstand unauthorized automated attacks constitute "irreparable" harm that

6   supports an injunction); *Metro-Goldwyn-Mayer Studios, Inc., v. Grokster, Ltd.*, 518

7   F. Supp. 2d 1197, 1215 (C.D. Cal. 2007) (hereinafter, "*MGM*") (damage to brand

8   recognition and goodwill caused by infringement establishes permanent irreparable

9   harm that supports a permanent injunction).

10        **B.**   **Money Damages Are Inadequate.**

11          Money damages are inadequate here because the monetary value of

12   harm caused by diversion of employee resources, and the harm to Ticketmaster's

13   goodwill, while real and significant, cannot be computed with sufficient precision

14   to fully compensate Ticketmaster.  Further, any future infringement by RMG and

15   future RMG customers would harm Ticketmaster in amounts that cannot now be

16   computed, and require future suits to obtain compensation.  "A legal remedy is

17   inadequate if it would require a multiplicity of suits."  *MGM, supra*, 518 F. Supp.

18   2d at 1220 (internal quotations and citation omitted).

19        **C.**   **The Balance of Harms Favors an Injunction.**

20          Ticketmaster will be significantly harmed if RMG is permitted to once

21   again distribute its computer programs that deny the public a fair chance to buy

22   tickets from the tickemaster.com website as described above.  In contrast, the only

23   harm that RMG would suffer if a permanent injunction issues is that it would be

24   prevented from engaging in illegal conduct.  Such "harm" is not cognizable under

25   applicable law.  *Triad Sys. Corp. v. SE. Exp. Co.*, 64 F. 3d, 1330, 1338 (9th Cir.

26   1995) ("when the only harm that defendant will suffer is lost profits from an

27   activity which has been shown . . . infringing, such an argument merits little

28   equitable consideration") (internal citation omitted).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8

17

NOTICE OF APPLICATION AND
APPLICATION FOR ENTRY OF DEFAULT
JUDGMENT

285

1    The balance of harms thus favors a permanent injunction here.  A
2  company that has built its business on infringing conduct has no equitable right to
3  continue the infringing conduct to survive.   Otherwise, anyone could justify
4  infringing activities by claiming he or she needed to "avoid going out of business,"
5  and no permanent injunction could be obtained against a professional infringer.

6         **D.    The Public Interest Favors a Permanent Injunction.**

7         "[T]he public interest is . . . served when the rights of copyright
8  holders are protected against acts constituting infringement." *MGM, supra,* 518 F.
9  Supp. 2d at 1222.  "An injunction is thus in the public interest; only if the
10 distribution of [RMG's infringing software] is stopped can further fraud be
11 avoided." *Corning Glass Works v. Jeannette Glass Co.*, 308 F. Supp. 1321, 1328
12 (S.D.N.Y.), *aff'd* on the opinion below, 432 F.2d 784 (2nd Cir. 1970).

13        The public interest obviously favors a permanent injunction here.
14 RMG's misconduct denied consumers the opportunity to purchase many event
15 tickets from Ticketmaster at the face price and instead forced them to purchase
16 tickets from RMG's ticket broker clients at inflated prices.  Such actions enrich
17 RMG and its clients at the public's expense.

18        The public interest in an injunction is underscored by actions of the
19 Kansas City Council and Attorneys General of Missouri and Arkansas, as described
20 in connection with Ticketmaster's motion for preliminary injunction.  The Kansas
21 City Council held a televised hearing on September 20, 2007 to investigate whether
22 Ticketmaster was improperly withholding tickets from the public, and the
23 Attorneys General of Missouri and Arkansas launched investigations into
24 Ticketmaster's distribution of tickets for the Hannah Montana concerts. (*Sept. 24,*
25 *2007 Lee Decl.* and Exh. 24, pp. 46-47, and Exhs. 25-26; *Findings*, Fact No. 22.)[4]

26 ───────────────
   [4]    In the time since Ticketmaster moved for a preliminary injunction, other
27 states have also been in contact with Ticketmaster regarding possible investigations
   into ticket distribution issues created by the use of automated devices. (*June 3,*
28 *2008 McLain Decl.* ¶ 5.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                        18         NOTICE OF APPLICATION AND
                                             APPLICATION FOR ENTRY OF DEFAULT
                                             JUDGMENT

1    The public obviously is very interested in this issue, and the public

2  interest favors giving the public a fair chance to acquire as many tickets as possible

3  at the face price from ticketmaster.com's website, as Ticketmaster and its clients

4  intend. A permanent injunction will help give the public that chance.

5  **E.    RMG Will Almost Certainly Continue Its Misconduct in the
         Absence of a Permanent Injunction.**

6

7    The volume of assaults decreased after a preliminary injunction was

8  entered in this case. (*June 3, 2008 McLain Decl.* ¶ 2.)  Nonetheless, the use of

9  automated devices has not disappeared, and there is evidence, discussed above, that

10  RMG's automated devices continue to access Ticketmaster's website.  Without a

11  permanent injunction, there is a significant risk that the volume of automated

12  devices assaulting Ticketmaster's website will only increase.

13    Therefore, Ticketmaster seeks a permanent injunction in the form

14  incorporated in the proposed judgment filed concurrently with this application.

15  **IV.    TICKETMASTER IS ENTITLED TO DAMAGES**

16    The First Amended Complaint asserts a variety of claims for relief for

17  damages.  In the interest of judicial economy, and without waiver of any rights or

18  contentions regarding other damages, Ticketmaster is only requesting damages for

19  its inducement/interference and copyright infringement claims.

20  **A.    Ticketmaster is Entitled to Liquidated Damages from RMG's
         Inducement to Breach Contract and Intentional Interference with
         Contractual Relations.**

21

22    The Terms of Use for Ticketmaster's website include a provision for

23  liquidated damages in the amount of $10 for every page request that exceeds 1000

24  page requests in a 24-hour period. (*FAC* ¶ 90.)[5]  As alleged in the Seventh, Eighth

25  ---
   [5]    The full provision reads as follows:

26    You agree that Abusive Use of the Site, as defined above,
      causes damage and harm to Ticketmaster in the form of,

27    among other things, impaired goodwill, lost sales, and
      increased expenses associated with responding to Abusive

28    Use of the Site. You further agree that monetary damages

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                    19          NOTICE OF APPLICATION AND
                                          APPLICATION FOR ENTRY OF DEFAULT
                                          JUDGMENT

287

1  and Ninth Claims for Relief (breach of contract, inducement to breach contract, and
2  intentional interference with contractual relations), RMG was aware of this
3  provision in the Terms of Use and agreed to it when accessing Ticketmaster's
4  website and requesting and purchasing tickets. (*FAC* ¶¶ 86, 95-96, 106.)

5      RMG breached the Terms of Use. (*FAC* ¶ 89.) RMG also induced its
6  customers to breach the Terms of Use by using RMG's automated devices to access
7  Ticketmaster's website and purchase tickets. (*FAC* ¶¶ 99-101.) In addition, RMG
8  intentionally interfered with the contractual relationships between Ticketmaster and
9  RMG's customers who accessed Ticketmaster's website through RMG's automated
10  devices. (*FAC* ¶¶ 109-111.)

11      RMG is liable to Ticketmaster for damages resulting from this conduct.
12  Because the Terms of Use contain a liquidated damages clause, RMG is liable for
13  the liquidated damages resulting from its inducement to breach contract and its
14  interference with contractual relations. *See GHK Assoc. v. Mayer Group, Inc.*, 224
15  Cal. App. 3d 856, 877 (1990) (measure of damages for inducement to breach
16  contract is the measure of damages applicable to the breach of contract); *Seaboard*
17  *Music Co. v. Germano*, 24 Cal. App. 3d 618, 622 (1972) (same); *see also Western*
18  *Oil & Fuel Co. v. Kemp,* 245 F.2d 633, 644-45 (8th Cir. 1957) (damages for
19  inducement to breach contract measured by liquidated damages clause in contract).

20
21

22      for Abusive Use of the Site are difficult to ascertain and
       that proof of monetary damages for Abusive Use would
23      be costly and inconvenient to calculate. Accordingly you
       agree that liquidated damages are warranted for Abusive
24      Use. Therefore, you agree that if you, or others acting in
       concert with you, alone or collectively request more than
25      1000 pages of the Site in any twenty-four hour period,
       you, and those acting in concert with you, will be jointly
26      and severally liable for liquidated damages in the amount
       of ten dollars ($10.00) per page request each time that a
27      page request is made after that first 1000 during that
       twenty-four hour period.
28  (*FAC* ¶ 90.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                    20        NOTICE OF APPLICATION AND
                                        APPLICATION FOR ENTRY OF DEFAULT
                                        JUDGMENT

288

1    The liquidated damages clause at issue here provides for damages to
2    the full extent of each customer's request for web pages in excess of the 1000-page
3    limit for each 24-hour period. (*FAC* ¶¶ 102-03, 112-13.) Without waiving any
4    right to recover damages for all of the times that RMG induced its customers to
5    breach the Terms of Use or interfered with that contract, Ticketmaster is only
6    seeking damages for two such instances.

7    As described above and in Ticketmaster's motion for preliminary
8    injunction, Thomas Prior used RMG's automated devices on May 26, 2007 to make
9    approximately 600,000 requests on Ticketmaster's website. (*August 24, 2007*
10   *McLain Decl.* ¶ 24; *October 5, 2007 McLain Decl.*) As further clarified in the
11   attached McLain Declaration, the precise number of page requests on that day was
12   600,569. (*June 3, 2008 McLain Decl.* ¶ 3.)

13   Similarly, Gary Bonner used RMG's automated devices on May 21,
14   2007 to make approximately 425,000 requests on Ticketmaster's website. (*August*
15   *24, 2007 McLain Decl.* ¶ 24; *October 5, 2007 McLain Decl.*) As further clarified in
16   the attached McLain Declaration, the precise number of page requests on that day
17   was 425,451. (*June 3, 2008 McLain Decl.* ¶ 4.)

18   At $10 per page request after the first 1000 requests, the total damage
19   figure for these two incidents alone is $10,237,200.

20   **B.    Ticketmaster is Also Entitled to Disgorgement of the Profits RMG**
21   **Derived By Infringing Ticketmaster's Copyrights.**

22   RMG is liable for direct and contributory copyright infringement under
23   Ticketmaster's First Claim for Relief. This infringement was integral both to
24   RMG's development of the automated devices and the use of those devices by
25   RMG's customers. Whenever one of RMG's automated devices copied a webpage
26   from Ticketmaster's website, a copyright infringement occurred.

27   Under 17 U.S.C. Sections 504(a)(1) and (b), Ticketmaster can recover
28   the profits that RMG obtained through its direct and contributory infringement of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                    21          NOTICE OF APPLICATION AND
                                          APPLICATION FOR ENTRY OF DEFAULT
                                                            JUDGMENT

1   Ticketmaster's copyrights.  RMG's revenues from its infringing activity are at least

2   $8 million, as discussed above.  Ticketmaster is entitled to damages in that amount,

3   except insofar as RMG can establish any offsetting costs.  *See* 17 U.S.C. § 504(b).

## V.   TICKETMASTER IS ENTITLED TO ATTORNEYS' FEES

5           Ticketmaster seeks an award of attorneys' fees pursuant to 17 U.S.C.

6   Section 505 based on its First Claim for Relief for copyright infringement, 17

7   U.S.C. Section 1203(a)(5) based on its Second Claim for Relief for violation of the

8   Digital Millennium Copyright Act, California Penal Code Section 502(e) based on

9   its Fourth Claim for Relief for violation of the California Penal Code Section 502;

10   and 18 U.S.C. Section 1964 based on its Fifth and Sixth Claims for Relief for

11   violation of RICO.

12           In this application, Ticketmaster only seeks fees in accordance with the

13   fee schedule in Local Rule 55-3, which first requires a determination of

14   Ticketmaster's compensatory damages.   Based on the compensatory damages

15   requested by Ticketmaster, the award of fees under the fee schedule would be

16   $368,344.[6]

## VI.   THERE IS NO NEED FOR AN EVIDENTIARY HEARING.

18           The Court need not conduct an evidentiary hearing to enter a default

19   judgment.  "If, in order to enable the court to enter judgment or to carry it into

20   effect, it is necessary . . . to establish the truth of any averment by evidence . . . the

21   court may conduct such hearings or other such references as it deems necessary."

22   F.R.C.P. 55(b)(2) (emphasis added); *see also Dundee Cement Co. v. Howard Pipe*

23   *& Concrete Prod., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("district court did not

24   abuse its discretion in determining that a hearing on the truth of any allegation

25   relating to liability was unnecessary").

26

---

27   [6]   Ticketmaster respectfully reserves its right under Local Rule 55-3 to seek
     actual attorneys' fees upon entry of a default judgment (which, depending on the
28   amount of compensatory damages awarded, may turn out to be unnecessary).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8                                    22

NOTICE OF APPLICATION AND
APPLICATION FOR ENTRY OF DEFAULT
JUDGMENT

290

1             In light of the detailed pleadings and substantial evidence relating to

2 this motion for default judgment, there is ample evidence—and certainty—to enter

3 the requested default judgment without an evidentiary hearing.

4 **VII.   TICKETMASTER AND IAC HAVE PROVIDED NOTICE OF THIS**

5         **APPLICATION.**

6             Pursuant to F.R.C.P. Rule 55(b)(2) and Local Rule 55-2, Ticketmaster

7 and IAC have given notice of this application to RMG by mailing a copy of this

8 Notice and Application to the address for RMG that was set forth in the Proof of

9 Service attached to the motion of RMG's former counsel to withdraw as counsel.

10 (*Brown Decl.* ¶ 2.)

11 **VIII. CONCLUSION**

12             Ticketmaster and IAC respectfully request that the Court enter a

13 default judgment in their favor and against RMG on Ticketmaster's First Amended

14 Complaint and RMG's Second Amended Counterclaims. As part of that judgment,

15 Ticketmaster respectfully requests that the Court enter a permanent injunction in the

16 form incorporated into the proposed judgment, and that the Court award

17 Ticketmaster damages in the amount of $18,237,200, attorneys' fees in the amount

18 of $368,344, and allowable costs.

19 Dated: June 3, 2008           ROBERT H. PLATT

20                               MARK S. LEE

                                DONALD R. BROWN

21                           MANATT, PHELPS & PHILLIPS, LLP

22

23                 By: _____

24                      Donald R. Brown

                     Attorneys for *Plaintiff and Counter-*

25                      *Defendant* TICKETMASTER L.L.C. and

                     *Counter-Defendant*

                     IAC/INTERACTIVECORP

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41283767.8            23         NOTICE OF APPLICATION AND
APPLICATION FOR ENTRY OF DEFAULT
JUDGMENT

291

**DECLARATION** 292

1

## DECLARATION OF DONALD R. BROWN

2        I, Donald R. Brown, declare:

3        1.      I am an attorney admitted to practice before this Court and am a
4    member of the firm of Manatt, Phelps & Phillips, LLP, counsel for plaintiff and
5    counterclaim-defendant Ticketmaster L.L.C. ("Ticketmaster") and counterclaim-
6    defendant IAC/InterActiveCorp ("IAC") in this action.

7        2.      Notice of the application by Ticketmaster and IAC for entry of a
8    default judgment and permanent injunction was sent under my direction by regular
9    mail on June 3, 2008 to the address for RMG Technologies, Inc. ("RMG") that was
10   set forth in the Proof of Service attached to the motion of RMG's former counsel to
11   withdraw as counsel. This is the same address for RMG that our firm has used for
12   other transmissions to RMG in the time since RMG's counsel withdrew from the
13   case.

14       3.      Thomas Prior is a defendant in a related action before this Court,
15   Case No. CV07-2535 ABC (JCx). A copy of Mr. Prior's interrogatory responses
16   from that action, dated January 16, 2008, is attached hereto as Exhibit 1. In his
17   responses to Interrogatory Nos. 12 and 13, Mr. Prior stated that he only uses
18   automated devices from RMG. These responses have not been changed by any
19   supplemental responses by Mr. Prior.

20       4.      Attached hereto as Exhibit 2 is a copy of an article dated March
21   26, 2008, in a ticketing industry periodical called TicketNews. The article is
22   entitled "RMG Technologies claims they are not the bad guys." In the article, the
23   author explains that he had conducted an "exclusive interview" with "C.J. Garibay,
24   President of RMG Technologies." The article states that RMG was "generating
25   more than $12 million in annual revenues."

26       5.      Attached hereto as Exhibit 3 is a transcript prepared by my
27   firm's word processing department of portions of a videotaped interview of C.J.
28   Garibay that was broadcasted on May 13, 2008 on an ESPN news program.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41284592.1

1    During this interview, Mr. Garibay said that RMG's gross sales from ticketing

2    automated devices for the previous year (2007) were $2 million.

3            6.      Attached hereto as Exhibit 4—but not in the electronically filed

4    copy of this Declaration—is a disc with a copy of the actual footage from the

5    videotaped interview described above in paragraph 5. The disc contains the same

6    portions that are transcribed in Exhibit 3 hereto.

7            7.      Because RMG has defaulted in this action, we have not had the

8    opportunity to obtain revenue figures from RMG in discovery.

9

10           I declare under penalty of perjury under the laws of the United States

11   of America that the forgoing is true and correct. Executed on June 3, 2008 in Los

12   Angeles, California.

14                                         _____
15                                              DONALD R. BROWN

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41284592.1                              2

DECLARATION OF DONALD R. BROWN

294

**EXHIBIT 1**

295

Caryn Brottman Sanders, SBN 175378
LAW OFFICES OF CARYN SANDERS
27240 Turnberry Lane, Suite 200
Valencia, California 91355
(661) 362-0788
Fax (661) 362-0789

Attorney for Defendant Thomas Prior dba
USA Entertainment

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TICKETMASTER L.L.C., Virginia limited liability company, | CASE NO.: CV07-2535ABC (JCx) Honorable Audrey B. Collins |
| Plaintiff, | RESPONSE TO INTERROGATORIES |
| vs. | |
| THOMAS PRIOR and USA ENTERTAINMENT, | |
| Defendants. | |

PROPOUNDING PARTY:     PLAINTIFF TICKETMASTER

RESPONDING PARTY:     DEFENDANT THOMAS PRIOR dba USA ENTERTAINMENT

SET NO:     ONE

It should be noted that these responding parties have not fully completed the investigation of the facts relating to this case, have not fully completed discovery in this action and have not completed preparation for the trial. All of the responses contained herein are based only upon such information and documents

1  which are presently available to and specifically known to these responding parties

2  and disclose only those contentions which presently occur to such responding

3  parties. It is anticipated that further discovery, independent investigation, legal

4  research and analysis will supply additional facts, add meaning to the known facts,

5  as well as establish entirely new factual conclusions and legal contentions, and

6  may discover new or additional documents, all of which may lead to substantial

7  additions to or changes in these responses.

8      The following responses are given without prejudice to responding parties'

9  right to produce evidence of any subsequently discovered fact or facts which this

10  responding parties may later recall, or to produce any subsequently discovered

11  documents. Responding parties accordingly reserve the right to change any and

12  all responses herein as additional facts and documents are ascertained or

13  discovered, analyses are made, legal research is completed and contentions are

14  made.

15      The responses contained herein are made in a good faith effort to supply as

16  much factual information and documents as are presently known, but should in no

17  way be to the prejudice of these responding parties in relation to further discovery,

18  research, or analysis.

19                     **RESPONSES TO INTERROGATORIES**

20  Interrogatory 1: Identify all persons who acted at your direction or on your behalf

21  in the purchase of any tickets.

22  Response: None

23

24  Interrogatory 2: Identify all persons who acted at your direction or on your behalf

25  in the sale or transfer of any tickets.

26  Response: None

27

28  Interrogatory 3: Identify every person, including but not limited to brokers or

- 2 -

297

1 | resellers, with whom you communicated regarding Ticketmaster or Tickets

2 | Response:  See document production.  No such list is maintained.

3

4 | Interrogatory 4:  Describe how you decided which events to purchase tickets for.

5 | Response:  Defendant buys what he thinks will sell.

6

7 | Interrogatory 5:  Describe how you decided how many tickets to purchase for a

8 | particular event.

9 | Response:  If an event is selling out all over the country I buy as many as I can, if

10 | an event is only selling out half the venue I buy a select few.

11

12 | Interrogatory 6:  Identify every occasion on which you purchased tickets, and for

13 | each such occasion state the date of purchase, the number of tickets purchased, the

14 | purchase price and the name of the event.

15 | Response:  Records are not kept in this manner.  See Production responses for

16 | related information.

17

18 | Interrogatory 7:  Identify every occasion on which you sold tickets to third parties,

19 | and for each occasion state the date of sale, the number of tickets sold, the sale

20 | price, and the name of the person.

21 | Response:  Records are not kept in this manner.  See Production responses for

22 | related information.

23

24 | Interrogatory 8:  Describe what you did with the monies received from tickets you

25 | sold to third parties, including identifying bank accounts to which such funds have

26 | been deposited.

27 | Response:  All credit cards, cash and checks get deposited in the Citizens Bank-

28 | Massachuttes.

1   Interrogatory 9:  Describe your method for accessing Ticketmaster's website and
2   purchasing tickets.

3   Response: Purchase methods are only:  Usually manual purchasing, tbat on certain
4   occasions.

5

6   Interrogatory 10:  Describe all software and/or automated devices you, or anyone
7   acting on your behalf, use or have used to purchase tickets.

8   Response:  Tbat.

9

10   Interrogatory 11:  Identify all persons from whom you, or anyone acting on your
11   behalf, obtained automated devices or software for the purpose of purchasing
12   tickets from Ticketmaster.

13   Response:  RMG

14

15   Interrogatory 12:  Identify the manufacturer of all automated devices and/or
16   software you, or anyone acting on your behalf have used or considered using that
17   can be used to purchase tickets from Ticketmaster.

18   Response:  RMG

19

20   Interrogatory 13:  Identify all persons to whom you transferred automated devices
21   and/or software which can be used to purchase tickets from Ticketmaster or other
22   websites.

23   Response:  None

24

25   Interrogatory 14:  Identify the make model and serial number of all computers and
26   other hardware used to purchase tickets.

27   Response: HP ZE4500, Serial CNF3451Y54

28

- 4 -

1  Interrogatory 15: Identify all IP addresses used by you and on your behalf to
2  purchase tickets.

3  Response: Current IP address - 24.34.108.243

4

5  Interrogatory 16: Identify all email addresses used by you or on your behalf to
6  purchase tickets.

7  Response:  TPRIOR@COMCAST.NET;  PRIORC@COMCAST.NET;

8  PRIORTJ@COMCAST.NET;  PRIORRT@COMCAST.NET;  PRIORKA@COMCAST.NET

9  TOMPRIOR@COMCAST.NET

10

11  Interrogatory 17: Identify all credit cards that have been used by you or on your
12  behalf to purchase tickets.

13  Response:  See attached.

14

15  Interrogatory 18: Identify all persons who are employed by you or who work on
16  your behalf.

17  Response: None

18

19  Interrogatory 19: Identify and describe your source of funds to buy tickets.

20  Response: Credit cards

21

22  DATED: March 3, 2008                    LAW OFFICES OF CARYN SANDERS

23

24                                         BY
25                                         Caryn Brottman Sanders    Attorney
                                           for Thomas Prior dba USA Entertainment

26

27

28

- 5 -

306

## VERIFICATION

STATE OF MASSACHUSETTS,

I have read the foregoing ___Responses to Special Interrogatories___ and know its contents.

### Check Applicable Lines

__X____    I am a party to this action. The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated on information and belief, an as to those matters, I believe them to be true.

_____    I am ___ an Officer ___ a Partner___ a _____ of _____
_____ a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. ____ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true. _____ The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

Executed on ___2/27___, 2008, at Reading, MA.

I declare under penalty of perjury under the laws of the State of MA that the foregoing is true and correct.

_____
Tony Prior

301

1

2

## PROOF OF SERVICE

**STATE OF CALIFORNIA**

3      ) ss:

**COUNTY OF LOS ANGELES**

4

5      I am employed in the County of Los Angeles, State of California. I am over

the age of 18 and not a party to the within action; my business address is: **27240**

6

**Turnberry Lane, Suite 200, Valencia, California  91355**

7

On **March 4, 2008,** I served the foregoing document described as **Response**

8

**to Interrogatories** on all interested parties in this action by placing true copies

9

thereof, enclosed in sealed envelopes, and addressed as follows:

10

11  Alison Sultan, Esq.
    Manatt Phelps & Phillips LLP
12  11355 West Olympic Blvd.
    Los Angeles, California  90064

13

14

(**X**) **BY MAIL.**  I caused such envelopes to be deposited in the mail.  I am

15

"readily familiar" with the firm's practice of collection and processing

16

correspondence for mailing.  Under that practice it would be deposited with U.S.

17

postal service on the same day with postage thereon, fully prepaid, at Los Angeles,

18

California in the ordinary course of business.

19

I declare that I am a member of the bar of this court.

20

Executed on this **4th** day of **March, 2008** at Valencia, California.

21

22

23      Caryn Brottman Sanders

24

25

26

27

28

- 6 -

302

**EXHIBIT 2**

303

Get in the know with **TICKET** news

| Home | Rankings | Industry Resources | About Us |

Home

# RMG Technologies claims they are not the bad guys

Wed, Mar 26th 2008 10:32 am EST
By Brian Thompson



In the wake of the Hannah Montana ticket fiasco, fingers have been pointed in various directions as people look for answers. But, one company has emerged as the villain, Pittsburgh-based RMG Technologies, whose software gives ticket brokers the ability to quickly navigate the Ticketmaster website and snatch up blocks of tickets as they go on sale.

And, therein lies the problem for some, the ability of brokers to buy lots of tickets at a clip, making it difficult, if not impossible in some cases, for the general public to get a crack at those same tickets. Numerous state politicians and attorneys general are considering legislative action in the wake of the Hannah Montana concert tour to ban the use of RMG's software.

In an exclusive interview with TicketNews, C.J. Garibay, President of RMG Technologies, said that his company is being made a scapegoat for the practices of Ticketmaster and other companies, and that nothing RMG has done has violated the Digital Millennium Copyright Act (DMCA).

"We expected Ticketmaster to adapt their software to lock us out any day after we rolled out our program. But few days turned into a few months, which turned into a years," Garibay said. The two sides are locked in a legal battle, and in October, Ticketmaster won an injunction against RMG to prevent them from using and distributing their software.

Garibay is confident that RMG will be triumphant in court, if not in the mind of the public. "Once all of the facts are known, I have no doubt that we will win our lawsuit." To him there was no question, to the best of Garibay's knowledge, RMG has at no point broken any laws.

In the beginning, like a lot of other companies, RMG started on a whim. About six years ago, Garibay was turning in his rent to his landlord, and noticed that the landlord's office was also being used to run a ticket brokerage. Sensing an opportunity, he developed software to enable ticket brokers to more easily navigate Ticketmaster's website. This simple idea would lead to RMG growing, at its peak, to become a 12 person team generating more than $12 million in annual revenues.

Garibay created a unique web browser to circumvent the cookies on Ticketmaster's website, cookies that prevented a broker from monitoring multiple events in multiple browsers. When Ticketmaster countered this solution with captchas which forced individuals browsing the website to enter in letters from an image to browse a page, RMG found a new solution.

Rather than create software "bots" which could enter the required captchas, RMG outsourced the captcha typing to workers in India. Thus, a single broker using RMG's software could not purchase an infinite number of tickets, but could realistically "browse the website as fast as perhaps 15-20 users. This is fair because plenty of people ask their friends to log on to Ticketmaster to help them make sure they are able to buy tickets to an event."

Garibay expected Ticketmaster to realize what RMG was doing and adapt their code to keep the company's software from working, but they didn't. RMG provided its services to brokers for $1,000 per month. They did not go into business as ticket brokers themselves, Garibay said, because RMG was a technology company, not a ticket brokerage. Its software is not the instant cash machine that Ticketmaster alleges.

In fact, Garibay feels that Ticketmaster is using them as a scapegoat to cover for their own activities in the secondary ticket market. Front row seats to the Hannah Montana concert went directly to Ticketmaster's resale service, and as prices soared for Hannah Montana tickets, Ticketmaster actually put a halt to one of its own auctions.

While the current injunction blocks RMG only from working on Ticketmaster's website, Garibay said the company is continuing to move forward; RMG is already developing software for the efficient navigation of other ticketing websites besides Ticketmaster.

When asked about the future of ticketing, Garibay sees the role of technology will continue to expand: "Technology will be the most important driving force in the ticket industry. Tickets on cell phones, more efficient ticket selling websites technology will continue to get better in the industry."

The "fat, dumb, and lazy" companies of the world like Ticketmaster will be put under pressure to step up their efforts to create technological innovation, as RMG is developing its own ticketing software with which to beat Ticketmaster at its own game.

However, waiting for that to happen could be for quite some time. RMG has filed an appeal against Ticketmaster's primary injunction, and the two sides will have their full trial in October. RMG is confident that it did not violate the DMCA, nor does it have an army of ticket grabbing bots, Garibay claimed. Lacking RMG's solution, Garibay believes that his clients will still browse the website through more than one person; cheap outsourcing options remain in India and Mexico.

SHARE

Add new comment   Email this page   Rate this story!

304

**EXHIBIT 3**

305

### E: 60-Ticketmaster
### (6.2.08)

| | |
|---|---|
| Announcer: | This is the hottest ticket in Cleveland. And these are the best seats. And you are not in them. But outside this venue and others across the country this is where you have always been able to buy tickets to sold-out games – for a price. |
| Scalper 1: | Who needs tickets? Anyone need tickets? Need tickets? Anyone got extra tickets? |
| Announcer: | It's scalping. The free market at its finest, some say. Now perfectly legal in 40 states. |
| Scalper 2: | $350 a piece for 'em. |
| Announcer: | This 3 billion dollar industry has taken a 21st century turn: from the street to the computer. Where scalpers are now called ticket brokers. |
| Scalper 3: | Who needs tickets? |
| CJ Garabay | It's, you know, somebody who buys and resells tickets. You know, it's a kind of a speculator. |
| Announcer: | 34-year old CJ Garabay, a software engineer and owner of RMG Technologies in Pittsburgh, is a ticket broker's dream. |
| CJ Garabay | Have you been putting this, uh, data in here? |
| Announcer: | All because four years ago he discovered his landlord was running a scalping operation and he saw an opportunity. |
| CJ Garabay | [...] Major League Baseball, through Tickets.com. |
| | They were a bit behind the times. They were a bit antiquated. They were still using older technologies and they weren't quite up to the 20th century, so to speak. |
| Announcer: | Like people standing in line, or like what were the methods they were using? |
| CJ Garabay | That's, that's one method. But having people stand in line or people call in on the phone to get tickets, that's kind of antiquated. |
| Announcer: | Garabay created software that allowed brokers to make up 600,000 ticket requests a day. Ticketmaster, the nation's largest primary seller of tickets, says Garabay's software inundated their computers and prevented ordinary customers from accessing their website, while brokers were buying hundreds of tickets almost immediately after they went on sale. Ticketmaster thought the brokers were cheating, so it found a way to stop automation. It's an on screen code called CAPTCHA. |
| Announcer: | In ballpark figure, how much money you've made from this software? |
| CJ Garabay | It wasn't that much. I mean, I think in 2007 we broke the two million mark in gross sales. |

41284650.1

306

307   **EXHIBIT 4**

# CD MANUALLY FILED IN ACCORDANCE WITH GENERAL ORDER 08-02 AND LOCAL RULE 5-4

**DECLARATION**  309

## DECLARATION OF KEVIN McLAIN

I, Kevin McLain, declare:

1.    I am the Vice President of Applications Support for Ticketmaster L.L.C. ("Ticketmaster"), and I have worked for Ticketmaster for approximately eleven years. As Vice President, I am responsible for the day-to-day uptime, maintenance, performance and availability of Ticketmaster's website, www.ticketmaster.com. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify to the facts contained in this declaration.

2.    In the time since the preliminary injunction in this case was entered in October 2007, the volume of automated devices accessing Ticketmaster's website has declined, but there nonetheless continues to be regular and frequent use of automated devices on the website. In fact, recently, on May 13, 2008, Thomas Prior, who is known to be a customer of RMG Technologies, Inc. ("RMG"), made 917 requests on Ticketmaster's website from a single IP address in one hour. From my knowledge of the Ticketmaster website and user interface, I am confident that this number of requests could only have been achieved through the use of an automated device.

3.    In my previous declarations dated August 24, 2007 and October 5, 2007, I described how I reached the conclusion that, on May 26, 2007, Thomas Prior had used RMG's automated devices to make approximately 600,000 requests on Ticketmaster's website. Ticketmaster's records for that day show that the precise number of page requests made by Mr. Prior on that day was 600,569.

4.    Similarly, in my previous declarations dated August 24, 2007 and October 5, 2007, I described how I reached the conclusion that, on May 21, 2007, Gary Charles Bonner had used RMG's automated devices to make approximately 425,000 requests on Ticketmaster's website. Ticketmaster's records

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41284570.3

1    for that day show that the precise number of page requests made by Mr. Bonner on
2    that day was 425,451.

3              5.    At the time Ticketmaster moved for a preliminary injunction in
4    2007, and as described in support of Ticketmaster's motion for preliminary
5    injunction, Attorneys General in Missouri and Arkansas had launched
6    investigations into Ticketmaster's distribution of tickets for the Hannah Montana
7    concerts. I am aware that, since that time, other states have also been in contact
8    with Ticketmaster regarding possible investigations into ticket distribution issues
9    created by the use of automated devices.

10

11             I declare under penalty of perjury under the laws of the United States
12   of America that the forgoing is true and correct. Executed on June 3, 2008 in West
13   Hollywood, California.

14

15                                                    _____
16                                                    KEVIN McLAIN
17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41284570.3                               2

DECLARATION OF KEVIN McLAIN

311